## AFFIDAVIT IN SUPPORT OF APPLICATION FOR COMPLAINT AND ARREST WARRANT

I, FBI Agent Erin L. Sheridan, (hereinafter "Your Affiant"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. Your Affiant, is a Federal Agent, authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants issued under the authority of the United States. I am a Special Agent with the Federal Bureau of Investigation ("FBI") currently assigned to the Washington Field Office's Violent Crimes Task Force. Prior to this assignment, Your Affiant was in the San Juan and New York Field Divisions. Your Affiant has been employed by the FBI for twenty-four years and as a duly appointed Special Agent since October 2000. As a result of my training and experience, I am familiar with the tactics, methods and techniques utilized by those who commit violent crimes.

2. As a Special Agent with the FBI, Your Affiant has worked on cases involving violent crimes, including serial murder, serial sexual assaults, cold cases, police killings, bank robberies, threats, crimes against children, and kidnappings; extraterritorial crimes, including crimes on the high seas and sexual assaults to U.S. persons; as well as terrorism related and counterintelligence investigations.

3. The information set forth in this affidavit is known to me as a result of an investigation personally conducted by me and by other law enforcement agents. Thus, the statements contained in this affidavit are based in part on information provided to me by other agents, Department of State investigators and the FBI. Statements in this affidavit are also based in part on a review of records obtained during the investigation, interviews, documents

1

obtained during the execution of search warrants/subpoenas, and my training and experience as a law enforcement officer.

4. This affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue an arrest warrant. I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are sufficient to establish the necessary foundation for the warrant.

5. This affidavit is made in support of an application for criminal complaint and arrest warrant for **Brian Jeffrey Raymond** (date of birth 05/XX/1976) for violations of 18 U.S.C §§ 2242(2) (sexual abuse), 2244(a)(2) (abusive sexual contact), and 2422(a) (attempted coercion and enticement) that occurred in Raymond's U.S.-embassy-leased housing in Mexico City, Mexico between the dates of September 2018 and June 1, 2020.

## PROBABLE CAUSE

6. Between on or about August 21, 2018 and June 1, 2020, **Raymond** was a U.S. government employee working at the U.S. Embassy in Mexico City, Mexico. During that time, **Raymond** lived in an apartment assigned to him by the U.S. government. **Raymond**'s residence in Mexico City has been leased by the U.S. government since April 2013 for use by U.S. personnel assigned to diplomatic, consular, military, and other U.S. government missions in Mexico City. The U.S. government currently maintains a nine-year lease of the property. This residence falls within the Special Maritime and Territorial Jurisdiction ("SMTJ") of the United States, pursuant to 18 U.S.C. § 7(9).

**AV-1 Violations of § 2242(2)**

7. On May 31, 2020, the Department of State, Diplomatic Security Service ("DSS") began investigating **Raymond** after he was detained by foreign law enforcement outside of his apartment overseas. At the time, **Raymond** was a U.S. government employee working at a U.S. Embassy in Mexico City and lived in embassy-leased housing. The FBI joined the investigation shortly thereafter.

8. On May 31, 2020, local law enforcement officials in Mexico City responded to reports of a naked, hysterical woman screaming for help on **Raymond's** balcony (Adult Victim 1, hereinafter "AV-1"), and DSS personnel arrived shortly thereafter, at approximately 6:30 p.m. AV-1 was escorted to an ambulance and transported offsite for immediate medical treatment. AV-1's medical examination revealed a vaginal injury consistent with friction, an anal laceration compatible with the introduction of a hard object with blunt edges, generalized redness throughout her perianal area, bruises on her forearm, elbow, and knee, and a laceration inside her cheek.

9. AV-1 was later interviewed about the incident. She explained that she met **Raymond** on Tinder, a dating application, and they agreed to meet at an outdoor shopping area for a date at approximately 2 or 2:30 p.m. **Raymond** brought a backpack with wine and coffee mugs, and he filled and subsequently refilled the coffee mug with wine for AV-1. AV-1 said he ducked behind a trashcan to pour the wine because they were in a public area, so she was unable to observe him filling her mug. She remembers that the date continued, with the two walking to **Raymond**'s apartment. However, she stated that after eating light snacks and drinking from a wine glass **Raymond** provided at the apartment, she suddenly blacked

out. She did not consent to having sex with **Raymond** and did not remember having sexual contact with him. She could not recall being on the balcony screaming for help.

10. **Raymond** agreed to speak to law enforcement and admitted that he and AV-1 had sex but stated it was consensual. **Raymond** reported that during sex, AV-1 suddenly and inexplicably started screaming and ran out to the balcony. During his interview, **Raymond** also said that he had sex with another woman the night before at his apartment.

11. AV-1 said that she has never used illegal drugs and that the only substance or medication she had taken the week of the incident was a natural sleep aid, which she had not taken on the day she met **Raymond**. Mexican authorities collected a urine sample from AV-1 at approximately 11:50 p.m. on May 31, 2020, and laboratory testing showed that her alcohol level was 0.274 percent. Because the urine sample was taken several hours after law enforcement responded to Raymond's apartment, AV-1's alcohol level would have been higher at the time of the incident. This initial testing did not reveal the presence of any controlled substances. Additional laboratory testing, later conducted by the FBI in the United States, revealed that AV-1 also had cocaine and methamphetamine in her system.

12. DSS and FBI agents obtained, at various times, search warrants for **Raymond's** electronic devices, including several phones, laptops, tablets, thumb drives, and memory cards, his Mexico City residence, his parents' residence in La Mesa, California, Tinder and other social media accounts, and his iCloud account, among others.

13. Internet artifacts on **Raymond**'s devices revealed a number of relevant searches. For example, there were searches for "passed out black girl," on February 8, 2020, for "passed out gorl," [sic] on February 22, 2020, and for "deep sleep" on February 23, 2020. There were multiple videos of unconscious or "passed out" women in his YouTube viewing

history. Moreover, law enforcement discovered internet artifacts on one of **Raymond's** ASUS laptops revealing searches for: "passed out," "ambien," "ambien and alcohol side effects, Zolpidem Tartrate tablets and 10mg," "Ambien," "dissolve," "Zolpidem and pharmacies," "Ambien and alcohol and pass out," "passed out and carried," and "deep sleep" between 2010 and 2011.[1]

14. Agents found approximately 478 videos and images of unconscious women in various states of undress on multiple devices belonging to **Raymond** and in his iCloud account.

### AV-7 Violations of §§ 2242(2), 2244(a)(2)

15. Some of the photographs and videos were of AV-7, a resident of Mexico. Approximately 77 photographs and four videos of AV-7 were recovered, and the metadata indicates that all were taken on the night of May 30, 2020 into the early morning hours of May 31, 2020 at **Raymond**'s embassy-leased residence. The images and videos appear to be taken in **Raymond**'s bed, and the sheets match sheets agents recovered during the search warrants there.

16. In the photographs and videos recovered from Raymond's devices, AV-7 is nude and unconscious. Some of the photos and videos depict a male hand, believed to be **Raymond**'s, opening her eyelids. Another depicts the male hand putting his fingers in her mouth. In one photo, the lower body of a nude male is straddling AV-7, with both of his inner thighs touching her outer thighs and his erect penis visable. Her vagina is in the center of the photograph. AV-7 was identified and interviewed. She remembered going to **Raymond**'s apartment that night, kissing him, and waking up in his bed fully nude, but she does not remember taking off her clothing. She recalled vomiting at his apartment at

---

[1] Zolpidem is a sedative medication, sold under the brand name Ambien, among others.

least twice. At one point, she had a memory of **Raymond** grabbing her breast. She stated that she blacked out and has only ever blacked out like this once before. She was unaware of any photographs and videos from that evening, never had any conversations with **Raymond** about photographs or videos, did not consent to them being taken, and did not consent to Raymond touching her body while she was unconscious.

### AV-5 Violations of § 2244(a)(2)

17. Also, among the photos and videos recovered from Raymond's devices were 25 photographs and 10 videos of AV-5, a resident of Mexico. Metadata from these photographs and videos shows that they were taken at **Raymond**'s embassy-leased residence on May 17, 2019. The images and videos appear to be taken in **Raymond**'s bed at the residence (with the same sheets and furniture as depicted in the videos and images of AV-7). AV-5 is nude and completely unconscious. A male hand, believed to be **Raymond**'s, can be seen opening her eyelids and playing with her mouth and tongue. AV-5 appears nonresponsive. The male hand is also visible in one photograph grabbing AV-5's naked breast and touching her inner thigh. AV-5 was identified and interviewed. She remembered going to **Raymond**'s residence and vomiting while she was there, but she stated that there were gaps in her memory. She had no memory of being in his bed or removing her clothing. She was unaware of the photographs and videos until agents showed them to her, and said she did not consent to the photographs or videos or to **Raymond** touching her body while she was unconscious.

### AV-6 Violations of § 2244(a)(2)

18. Among the photos and videos were photographs and videos of AV-6, a resident of Mexico, taken on two separate occasions: 29 photographs and six videos from June 23, 2019 and

35 photographs from December 21, 2019. Metadata from the photographs and videos shows that they were taken at **Raymond**'s embassy-leased residence in Mexico City. The sheets and furniture seen in the photographs and videos match those depicted in the images/videos of AV-5 and AV-7. AV-6 is nude and unconscious. In both sets, a male hand believed to be **Raymond**'s can be seen opening her eyelids. In the series of photos and videos, the male hand can be seen manipulating AV-6's limbs and placing them in different positions. In one video, the male hand moves AV-6's hand from her breast down to her genitals. In yet another, a male hand lifts AV-6's arm and drops it on the bed several times. AV-6 was identified and interviewed. She remembered going to **Raymond**'s residence and knows that they had sex, which she noted was consensual. But, she could only recall flashes of their physical contact. AV-6 said she did not consent to any photographs or videos being taken of her or to **Raymond** touching her body while she was unconscious. She was unaware of the existence of the photographs and videos.

### AV-9 Violations of §§ 2242(2), 2244(a)(2)

19. Investigators also discovered 20 photographs and 15 videos of AV-9, a resident of Mexico. Metadata from the photographs and videos shows that they were taken at **Raymond**'s embassy-leased residence in Mexico City on March 26, 2020. The images and videos appear to be taken in **Raymond**'s bed, with the same sheets as those depicted in the images of AV-5, AV-6 and AV-7. AV-9 is nude and unconscious. Some of the photographs show a male hand, believed to be **Raymond**'s, opening AV-9's eyelid, and others depict close-ups of her breasts and genitals. **Raymond** also appears to pose her body in different ways throughout the series of photos. A video shows the male hand on her buttocks. Another shows the male hand touching her breasts and buttocks. Yet another shows the male hand

forcefully grabbing AV-9's breast and then moving towards her pubic area. There is also a video depicting a nude man, believed to be **Raymond**, in bed with AV-9, touching her unconscious body and manipulating her limbs. His erect penis is visible in the video. AV-9 was identified and interviewed. She stated that she lost all memory shortly after arriving at **Raymond**'s apartment, and the last thing she remembers is walking down a hallway with him. She does not recall having sex or consenting to sex. Nevertheless, she awoke naked in his bed, and her body felt as if she had been penetrated vaginally. She did not consent to him taking any photographs or videos of her or to **Raymond** touching her body while she was unconscious, and she was unaware of the existence of the photographs and videos prior to the interview.

20. Numerous other women, captured in the photographs and videos, have been identified and interviewed, including several others who appear to have been photographed and/or recorded at **Raymond**'s embassy-leased residence in Mexico City without their knowledge or consent, including but not limited to AV-8, AV-10, AV-11, and AV-12.

## AV-2 Violations of § 2422(a)

21. In addition, a number of communications were recovered from **Raymond**'s electronic devices and iCloud, including conversations with AV-2, a resident of California. **Raymond**'s communications with AV-2 begin in late 2017. AV-2 had one date with Raymond in San Diego in February 2018, during which she blacked out. In September 2018, **Raymond** told her that he moved to Mexico City and began sending her messages from Mexico, requesting that she visit him there. He sent her photographs of his new apartment, told her about the location and restaurants nearby, and suggested that Halloween would be a great time to visit. He also sent numerous photographs of himself. On multiple

occasions from September 20, 2018 to mid-October 2018, he encouraged her to visit. Based upon **Raymond**'s invitation, AV-2 tried to arrange a work trip to Mexico for Halloween, but she was unable to go. However, she was ultimately able to arrange a work trip to Mexico in November 2018. From the photographs and videos recovered, agents discovered depictions of AV-2 on two separate occasions: 33 photographs and one video from February 2-3, 2018 and 44 photographs and seven videos from November 23, 2018. Metadata shows that the first set of videos and images were taken in San Diego, California, and the second were taken at a hotel in Mexico. In the photographs and videos, AV-2 is nude and unconscious. In both sets, a male hand, believed to be **Raymond**'s, can be seen pulling down her underwear to reveal her genital area and/or pulling up her bra to reveal her breasts. The male hand is also seen opening her eyelids. AV-2 was identified and interviewed. She stated that she had only seen **Raymond** on two occasions, once in California, and a second time on a trip she took to Mexico, in which they had dinner one night and lunch two days later. She stated that both nights she saw Raymond, she blacked out and does not recall all of the details of either night. She was unaware of the existence of any photographs and videos and did not consent to them being taken. She did not consent to **Raymond** touching her body while she was unconscious.

22. Your Affiant knows that video recording someone who is unconscious without their consent and touching an unconscious person's intimate areas (including that person's genitalia, anus, groin, breast, or buttocks) or the material covering those areas without their consent constitute "sexual activity for which any person can be charged with a criminal offense" because they are violations of state and/or federal law.

## CONCLUSION

23. Based on the foregoing, there is probable cause to believe that **Brian Jeffrey Raymond (DOB 05/XX/1976)** has violated 18 U.S.C. §§ 2242(2) (sexual abuse), 2244(a)(2) (abusive sexual contact),  and 2422(a) (attempted coercion and enticement) and that he did so within the Special Territorial and Maritime Jurisdiction of the United States.

Respectfully submitted,

Erin L. Sheridan
Federal Bureau of Investigation

Subscribed and sworn telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on December 31, 2020.

_____
Zia Faruqui
UNITED STATES MAGISTRATE JUDGE