**Exhibit D**



| | **Memorandum for Record** | Case Number<br>PR-2020-00108 | Case Title<br>RAYMOND, Brian |
|---|---|---|---|
| | | Date<br>6/6/22020 | Time<br>1325 hrs |
| Name: Brian Jeffrey Raymond<br>DOB:<br>ID TYPE/#: | | Location<br>Fairfield Inn and Suites<br>485 Elden St.<br>Herndon, VA 20170 | |

*Statements in parentheses are comments by the Case Agent (CA). Statements made by parties herein are not direct quotations unless contained in quotation marks.*

On 6/6/2020 at 1325 hrs, Diplomatic Security (DS) Special Agent (SA) Mikel Gajkowski and SA Ted Nelson, assigned to the Office of Special Investigations (OSI), initiated a law enforcement interaction with Brian RAYMOND wherein the agents requested RAYMOND's cooperation in unlocking two of his mobile devices seized approximately 90 minutes earlier in the execution of a search warrant. The interaction took place in the lobby of the Fairfield Inn and Suites located at 485 Elden St. Herndon, VA 20170. RAYMOND's phones were seized subsequent to a voluntary interview conducted by SAs Gajkowski and Nelson with RAYMOND outside of Jimmy John's, located at 454 Elden St. Herndon, VA 20170.

Following the seizure of the devices and the conclusion of the interview with RAYMOND, which ended at approximately 1226 hrs, SAs Gajkowski and Nelson met at a rally point with DS Supervisory Special Agent (SSA) Viktor Karabin, and SA David Palmer Jones for a debrief. [Agent Note: SSA Karabin and SA Jones had supported the interview and phone seizure by conducting remote, vehicular surveillance and serving as a response and coordination element in case of emergency.]

Following the debrief, the agents departed and SA Gajkowski contacted a trial attorney with the Department of Justice (DOJ) Office of Human Rights and Special Prosecutions Office. SA Gajkowski relayed that the phones had been seized and that RAYMOND declined to provide a passcode, which he identified as the means for unlocking both devices. DOJ advised that the warrant authorized the agents to compel RAYMOND's fingerprint and/or facial recognition. DOJ requested that the agents reengage RAYMOND to determine whether the devices could be unlocked through such means.

SA Gajkowski called the other agents and requested that the team reconvene for a subsequent interaction with RAYMOND. It was determined that the agents would go to RAYMOND's hotel, which he identified during the interview as the Fairfield Inn and Suites across the street from Jimmy John's. Prior to their departure for the hotel, the agents discussed and planned the subsequent operation.

The agents determined that a uniformed police presence onsite would be appropriate in the event the agents needed to temporarily detain RAYMOND to compel the fingerprint or facial recognition. SA Gajkowski

| Case Agent<br>Mikel Gajkowski | Date | Distribution |
|---|---|---|
| **Approving Official** *(If applicable)* | Date | |

**Diplomatic Security Service**
This memorandum report is the property of the Diplomatic Security Service.
Neither it or its contents may be disclosed to unauthorized persons.

SENSITIVE BUT UNCLASSIFIED

contacted Herndon PD Sgt. Hamilton by phone, who stated that he would send an officer to the hotel. [Agent Note: SA Gajkowski had coordinated with Sgt. Hamilton the day prior to notify Herndon PD that the agents would be conducting an interview and search warrant seizure in his jurisdiction. Per SA Gajkowski's request, Herndon PD planned to respond only in the event of emergency, or if a uniformed police presence was otherwise needed.]

The agents arrived at approximately 1325 hrs and met Herndon PD Officer Sawyer (badge # 5195). SAs Gajkowski and Nelson approached a female receptionist at the front desk, and identified themselves as law enforcement. The agents advised that RAYMOND was not in trouble, but that they needed to speak to him. The receptionist agreed to call RAYMOND's room and tell him that someone was in the lobby who needed to speak to him, providing no further details. The receptionist relayed that RAYMOND said he would come down in a few minutes.

Outside the lobby, the agents briefed Officer Sawyer, who initiated his bodycam to record the encounter for documentation **(ATTACHMENT A)**. [Agent Note: Prior to RAYMOND's arrival, SSA Karabin and SA Palmer waited outside of the hotel, leaving SAs Gajkowski and Nelson, and Officer Sawyer inside the lobby.]

Approximately 5 minutes later, RAYMOND approached via the hallway to the left of the reception desk. The agents presented a copy of the warrant to RAYMOND and showed him the verbiage describing their authority to press RAYMOND's fingers onto the device or hold it up to his face to unlock the phone. Raymond agreed to cooperate.

SA Gajkowski presented one device to RAYMOND, which he unlocked and returned to SA Gajkowski. While SA Gajkowski attempted to remove or change the passcode settings of the first device, RAYMOND unlocked the second device and gave it to SA Nelson. Seconds later, the device in Nelson's hands locked. SA Nelson again provided the device to RAYMOND, which RAYMOND unlocked by fingerprint.

SA Gajkowski placed both devices into airplane mode and told RAYMOND the agents were finished. Approximately one minute later, SA Gajkowski determined that one of the devices had timed out and required a passcode or facial recognition to unlock. SA Gajkowski further that the lock settings on the other device could not be removed or changed without the passcode, even while the device was unlocked.

SA Gajkowski subsequently made a series of phone calls to contacts with the Department of Justice as well as the DS Office of Computer Investigations and Forensics (CIF) for additional guidance. [Agent Note: SA Gajkowski consulted with CIF personnel prior to the date of the search warrant execution, and CIF designated specific personnel to be available by phone during the time of the warrant's execution.] While on the phone, SA Gajkowski navigated through the phone to change the settings and inadvertently accessed Raymond's photos.

The agents requested the receptionist to contact RAYMOND and ask him to come down to the lobby again. At approximately 1421 hrs, RAYMOND returned to the lobby. SA Nelson explained that the agents were having difficulty keeping the phones unlocked. SA Nelson further stated that the agents did not want to inconvenience RAYMOND and wanted to respect his rights, while suggesting the possibility of RAYMOND "meeting us [the agents] halfway."

SA Gajkowski provided the first device to RAYMOND, which he unlocked using facial recognition and passcode. SA Gajkowski asked RAYMOND if he felt comfortable changing the PIN to a generic number, like "1, 2, 3, 4" so that the agents would not have RAYMOND's personally created passcode. RAYMOND shrugged and replied "Sure," noting that the passcode might be six digits.

SA Gajkowski handed the device to RAYMOND and advised that she needed to observe RAYMOND's activity on the phone to ensure there was no destruction of evidence. SA Gajkowski helped RAYMOND navigate to the "face and passcode" settings of the device, and suggested selecting the "passcode off" setting. In order to enable the setting, the phone required RAYMOND to enter his passcode, which SA Gajkowski did not observe. The phone subsequently required RAYMOND to enter the password to his Apple iCloud account before the change could be finalized. SA Gajkowski observed "Yahoo" in the prepopulated username but did not watch RAYMOND enter the password.

After RAYMOND handed the device back, SA Gajkowski pressed the "lock device" button on the side of the phone, then confirmed that the phone could be opened successfully without a passcode.

SA Gajkowski handed the second phone to RAYMOND, which he unlocked. RAYMOND navigated to the device settings and removed the passcode. [Agent Note: this device required only a passcode to change the settings, not an iCloud account password.] When RAYMOND returned the phone to SA Gajkowski, she ensured the phone would open successfully without a passcode.

The agents thanked RAYMOND for his cooperation. RAYMOND asked the agents if they were sure they had everything they needed. The agents assured RAYMOND they did, upon which RAYMOND departed. Officer Sawyer and all DS agents departed the lobby at approximately 1426 hrs.

At the conclusion of the interaction, SA Nelson, in the presence of SA Gajkowski, recorded a voice memo summarizing the encounter **(ATTACHMENT B)**.