**Exhibit M**

```
 1                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
     * * * * * * * * * * * * * * *    )
 3   UNITED STATES OF AMERICA,        )    CRIMINAL ACTION
                                      )      NO. 21-00380
 4                 PLAINTIFF,         )
                                      )
 5     VS.                            )
                                      )
 6   BRIAN JEFFREY RAYMOND,           )    WASHINGTON, DC
                                      )    JULY 23, 2021
 7                 DEFENDANT.         )    1:45 P.M.
                                      )
 8   * * * * * * * * * * * * * * *    )

 9

10                TRANSCRIPT OF CHANGE OF PLEA
                      REPORTED VIA ZOOM
11          BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY,
                   UNITED STATES DISTRICT JUDGE
12

13

     APPEARANCES:
14

     FOR THE GOVERNMENT:     JAMIE B. PERRY, ESQ.
15                           DANIELLE L. HICKMAN, ESQ.
                             U.S. DEPARTMENT OF JUSTICE
16                           HUMAN RIGHTS AND SPECIAL
                               PROSECUTIONS SECTION
17                           1301 NEW YORK AVENUE, NORTHWEST
                             TWELFTH FLOOR
18                           WASHINGTON, D.C. 20530

19                           APRIL N. RUSSO, ESQ.
                             UNITED STATES ATTORNEY'S OFFICE
20                             FOR THE DISTRICT OF COLUMBIA
                             555 FOURTH STREET, NORTHWEST
21                           ELEVENTH FLOOR
                             WASHINGTON, D.C. 20530
22

23    FOR THE DEFENDANT:     COURTNEY R. FORREST, ESQ.
                             KAISERDILLON, PLLC
24                           1099 14TH STREET, NORTHWEST
                             SUITE 800 WEST
25                           WASHINGTON, DC 20005
```

```
 1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                                OFFICIAL COURT REPORTER
 2                              UNITED STATES DISTRICT COURT FOR THE
                                  DISTRICT OF COLUMBIA
 3                              333 CONSTITUTION AVENUE, NW
                                ROOM 6706
 4                              WASHINGTON, DC 20001
                                (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  GOOD AFTERNOON, EVERYONE.

 2              THE COURTROOM DEPUTY:  GOOD AFTERNOON, JUDGE.

 3              THE COURT:  SORRY ABOUT THE DELAY.  WE HAD A

 4     JUDGES' MEETING AND IT RAN OVER.  I'LL JUST GET MY PAPERWORK

 5     READY.

 6              THE COURTROOM DEPUTY:  CRIMINAL CASE 21-380, THE

 7     UNITED STATES OF AMERICA VERSUS BRIAN JEFFREY RAYMOND.

 8              COUNSEL, WOULD YOU PLEASE IDENTIFY YOURSELVES FOR

 9     THE RECORD.

10              MS. PERRY:  GOOD AFTERNOON, YOUR HONOR.  JAMIE

11     PERRY, APRIL RUSSO AND DANIELLE HICKMAN FOR THE UNITED

12     STATES.

13              MS. FORREST:  GOOD AFTERNOON, YOUR HONOR.

14     COURTNEY FORREST FOR MR. RAYMOND.

15              THE COURT:  ALL RIGHT.  GOOD AFTERNOON.

16              AND MR. RAYMOND IS PRESENT.

17              WE DO HAVE AN OVERFLOW COURTROOM THAT IS OPEN.  IS

18     THERE ANYBODY THAT'S ACTUALLY GOING TO BE USING IT?  WE

19     DIDN'T GET A LIST OF PEOPLE, JUST SO THAT THEY COULD GET IN

20     THE COURTHOUSE.  IF YOU'RE NOT GOING TO USE IT, THEN WE'LL

21     LET PEOPLE KNOW AND IT CAN BE USED FOR OTHER PURPOSES.

22              MS. PERRY:  YOUR HONOR, OUR UNDERSTANDING IS NO

23     ONE WILL BE HERE PRESENT IN PERSON.

24              THE COURT:  OKAY.  THEN YOU CAN PROBABLY LET JOHN

25     CRAMER KNOW THAT THE OVERFLOW COURTROOM, IT APPEARS, IS NOT
```

```
 1    GOING TO BE NECESSARY.

 2              THE COURTROOM DEPUTY:  OKAY.

 3              THE COURT:  AND I'M ASSUMING WE'RE ON THE PUBLIC

 4    LINE?

 5              THE COURTROOM DEPUTY:  YES, JUDGE.

 6              THE COURT:  OKAY.  AS I UNDERSTAND IT, HE'S

 7    ALREADY BEEN ARRAIGNED.

 8              MS. PERRY:  THAT'S CORRECT, YOUR HONOR.

 9              THE COURT:  THEN WE NEED TO SWEAR IN MR. RAYMOND.

10    I THINK HE CAN SPEAK THROUGH -- IS MR. RAYMOND VACCINATED?

11              MS. FORREST:  YES, HE IS, YOUR HONOR.

12              THE COURT:  SO WE'LL HEAR HOW YOUR VOICE SOUNDS

13    WITH THE MASK ON.  IF NOT, WE CAN GIVE YOU A CLEAR ONE.  OR

14    WHEN YOU ARE SPEAKING, YOU MAY WANT TO PULL IT DOWN IF

15    YOU'RE VACCINATED.  BUT IF YOU CAN BE HEARD WITH THE MASK

16    ON, THAT'S FINE.

17              SO WE NEED TO MAKE SURE THAT THE MICROPHONE WORKS

18    THERE.

19              MS. FORREST:  YES, YOUR HONOR.  MR. RAYMOND HAS

20    INFORMED ME HE'S SLIGHTLY HARD OF HEARING.  SO IF HE'S

21    HAVING A HARD TIME HEARING WITH THE MASK, I MAY JUST FLAG

22    THAT.

23              THE COURT:  WE ALSO HAVE EARPHONES WHICH CAN

24    ASSIST HIM.  SO WHY DON'T WE TRY THOSE FOR A SECOND AND SEE

25    IF THAT HELPS.
```

```
 1              MS. FORREST:  OKAY.

 2              THE COURT:  THE PLEXIGLASS HAS RAISED SOME

 3    CHALLENGES IN TERMS OF MAKING THESE WORK.

 4              THE COURTROOM DEPUTY:  (ASSISTS THE DEFENDANT WITH

 5    THE AUDIOVISUAL EQUIPMENT.)

 6              THE COURT:  CAN YOU HEAR ME, MR. RAYMOND?  IS THAT

 7    BETTER?

 8              THE DEFENDANT:  YES, YOUR HONOR.  THANK YOU.

 9              THE COURT:  MAYBE WE COULD GET THE MICROPHONE SO

10    HE DOESN'T HAVE TO KEEP LEANING OVER, IF THERE'S A WAY OF

11    SITUATING IT OR JUST MOVING THE CHAIR.

12              MS. FORREST:  THERE'S ONLY ONE MICROPHONE FOR THE

13    BOTH OF US, SO WE'RE GOING TO HAVE TO KIND OF LEAN IN.

14              THE COURT:  BUT MOST OF THE QUESTIONS WILL BE

15    FRANKLY ASKED OF HIM.

16              MS. FORREST:  OKAY.

17              (WHEREUPON, THE DEFENDANT WAS DULY SWORN.)

18              THE COURT:  MR. RAYMOND, IF AT ANY TIME YOU CAN'T

19    HEAR ME OR YOU DON'T UNDERSTAND THE QUESTION, PLEASE ASK ME

20    TO CLARIFY IT.  I MAY EXPLAIN THINGS DIFFERENTLY THAN WHAT

21    YOU HAVE DISCUSSED WITH YOUR COUNSEL.  DON'T JUST GIVE ME

22    THE ANSWER YOU THINK I WANT TO HEAR.  I WANT TO MAKE SURE

23    THAT YOU UNDERSTAND WHAT'S BEING ASKED.

24              I MAY DESCRIBE THINGS DIFFERENTLY THAN YOUR

25    COUNSEL DID, AND THAT'S ALSO SOMETHING TO MAKE SURE THAT YOU
```

1    UNDERSTAND WHAT I'M ASKING YOU SPECIFICALLY.

2         I NEED TO MAKE A FINDING AT THE END THAT YOU'RE

3    ENTERING THIS PLEA KNOWINGLY AND VOLUNTARILY.  WE'LL GO

4    THROUGH THE QUESTIONS CAREFULLY.  I NEED TO MAKE SURE WE PUT

5    ON THE RECORD EITHER IN WRITING OR ORALLY ALL OF THE ANSWERS

6    AND QUESTIONS AND WHATEVER DISCUSSIONS YOU MIGHT HAVE HAD.

7         SO IF YOU THINK THERE'S SOMETHING THAT'S PART OF

8    THE AGREEMENT THAT IS NOT IN WRITING OR WE DO NOT BRING IT

9    UP ORALLY, YOU NEED TO BRING IT UP.  YOU CAN'T COME BACK IN

10   A WEEK OR SO AND SAY THIS OR THAT I THOUGHT WAS PART OF THE

11   AGREEMENT.  WE NEED TO MAKE SURE EVERYTHING THAT'S PART OF

12   THE AGREEMENT IS PUT ON THE RECORD ONE WAY OR THE OTHER.

13        THE OTHER THING IS, I WANT TO MAKE SURE THIS IS

14   REALLY WHAT YOU WANT TO DO.  SO YOU CAN'T COME BACK IN A

15   WEEK OR SO AND SAY, JUDGE, I'VE CHANGED MY MIND.  SO WE'LL

16   GO THROUGH THIS CAREFULLY AND MAKE SURE THIS IS ACTUALLY

17   WHAT YOUR DECISION IS.

18        WHAT I'M GOING TO DO IS I'M GOING TO SET OUT THE

19   VERY BASICS OF THE PLEA AGREEMENT.  I HAVE SOME BACKGROUND

20   QUESTIONS THAT I'LL BE ASKING YOU.  I'LL GO OVER YOUR

21   CONSTITUTIONAL RIGHTS THAT YOU'RE GIVING UP BY PLEADING

22   GUILTY.  I WILL GO THROUGH THE CONSEQUENCES OF YOUR PLEADING

23   GUILTY, BOTH IN TERMS OF STATUTORY PENALTIES, SENTENCING

24   GUIDELINES.

25        THE GOVERNMENT WILL STATE AS A PROFFER THE

1   EVIDENCE THAT THEY HAVE RELATING TO THE CHARGES THAT YOU'RE

2   PLEADING GUILTY TO.  AND THEY WILL NEED TO ATTACH THE FACTS

3   TO THE ELEMENTS OF THE OFFENSES IN ORDER FOR THE COURT TO

4   FIND THAT YOU'RE GUILTY BASED ON THEIR PROFFER, THAT THEY

5   HAVE EVIDENCE BEYOND A REASONABLE DOUBT.  I WILL THEN ASK

6   YOU IF YOU AGREE WITH THE INFORMATION THAT'S INCLUDED IN THE

7   STATEMENT OF OFFENSE IN TERMS OF THEIR FACTUAL PROFFER TO

8   MAKE SURE YOU'RE AGREEING TO THE ELEMENTS OF THE OFFENSE

9   THAT YOU'RE PLEADING GUILTY TO.

10          I WILL GO OVER THE PLEA LETTER.  I WON'T GO

11  THROUGH EVERY SINGLE THING, SINCE IT'S NOT SHORT.  BUT I

12  WILL GO THROUGH THOSE AREAS THAT ARE REQUIRED BY THE RULES

13  OR IF THERE ARE AREAS THAT ARE DIFFICULT OR MORE COMPLICATED

14  OR THAT I KNOW FROM PAST EXPERIENCE SOMETIMES CAN CAUSE SOME

15  CONFUSION.

16          IF I DON'T GO THROUGH SOMETHING THAT YOU THINK IS

17  IMPORTANT, BRING IT UP; OR, COUNSEL, YOU SHOULD BRING IT UP

18  TO MAKE SURE THAT WE COVER EVERYTHING.  AND THEN I WILL HAVE

19  SOME FINAL QUESTIONS ABOUT THE VOLUNTARINESS OF YOUR PLEA.

20          SO WE'VE JUST SWORN YOU IN.  YOU'RE NOW UNDER

21  OATH.  AND I WANT TO MAKE SURE THAT IF YOU DON'T ANSWER MY

22  QUESTIONS TRUTHFULLY, THAT YOU UNDERSTAND THAT YOU COULD BE

23  PROSECUTED FOR PERJURY OR FOR MAKING A FALSE STATEMENT.

24          DO YOU UNDERSTAND THAT?

25          THE DEFENDANT:  YES, YOUR HONOR.

1      THE COURT:  IN TERMS OF THE PLEA AGREEMENT, THE

2   INFORMATION THAT'S BEEN FILED, WHICH IS WHAT YOU'RE PLEADING

3   GUILTY TO, IS COUNT 1 IS SEXUAL ABUSE THAT INVOLVES AV 7;

4   COUNT 2 IS SEXUAL ABUSE WHICH INVOLVES AV 9; COUNT 3 IS

5   TRANSPORTATION OF OBSCENE MATERIAL; AND THE LAST ITEM IN THE

6   INFORMATION IS THE CRIMINAL FORFEITURE.

7      AND THESE ARE -- WHAT'S IN THE INFORMATION IS WHAT

8   YOU'RE GOING TO BE PLEADING GUILTY TO.

9      THE GOVERNMENT HAS AGREED NOT TO BRING OTHER

10  CHARGES THAT RELATE TO AV 1 THROUGH 26, ADDITIONAL ONES,

11  EXCEPT FOR 7 AND 9, WHICH OF COURSE ARE PART OF THE CHARGES

12  IN THIS CASE.

13     THIS ALSO INCLUDES THAT YOU WILL NOT BE CHARGED AS

14  I UNDERSTAND IT IN THE EASTERN DISTRICT OF MARYLAND -- THE

15  U.S. ATTORNEY'S OFFICE IN MARYLAND, THE EASTERN DISTRICT OF

16  VIRGINIA, THE NORTHERN DISTRICT OF ILLINOIS, INCLUDING THE

17  TRANSPORTATION OF OBSCENE MATERIALS.

18     MS. PERRY:  YOUR HONOR, MAY I CLARIFY ONE THING

19  QUICKLY?

20     THE COURT:  OKAY.

21     MS. PERRY:  IN TERMS OF THE GOVERNMENT AGREEING

22  NOT TO BRING CHARGES REGARDING AV 1 THROUGH 26, IT DOES

23  STATE IN THERE IF THERE WERE OFFENSES FOUND, SUCH AS

24  TRAFFICKING, FOR EXAMPLE, THAT THOSE WOULD STILL BE VIABLE

25  CHARGES NOT PRECLUDED BY THE PLEA AGREEMENT.  I JUST WANTED

```
1     TO MAKE THAT CLEAR.

2              THE COURT:  ALL RIGHT.  THE OTHER PARTS OF THE

3     AGREEMENT IN TERMS OF JUST THE BASIC ONES IS THAT YOU'VE

4     AGREED TO REMAIN DETAINED AT THIS POINT PENDING SENTENCING.

5              BOTH SIDES HAVE RESERVED ALLOCUTION, WHICH MEANS

6     YOU'VE RESERVED THE RIGHT TO MAKE RECOMMENDATIONS AT THE

7     TIME OF SENTENCING, WHICH THE GOVERNMENT HAS RESERVED AS

8     WELL AS YOURSELF.  THE LETTER DOES ADDRESS SOME ISSUES WITH

9     THAT, AND I'LL GO THROUGH THAT WHEN I GET TO THAT.

10             IS THAT YOUR UNDERSTANDING OF JUST THE BASIC

11    AGREEMENT?

12             THE DEFENDANT:  YES, YOUR HONOR.

13             THE COURT:  LET ME START WITH SOME BACKGROUND

14    INFORMATION.

15             HOW OLD ARE YOU?

16             THE DEFENDANT:  45 YEARS OLD.

17             THE COURT:  AND WHAT IS YOUR DATE OF BIRTH?

18             THE DEFENDANT:  MAY 8, 1976.

19             THE COURT:  AND HOW FAR HAVE YOU GONE IN SCHOOL?

20    WHAT'S THE HIGHEST LEVEL OF EDUCATION?

21             THE DEFENDANT:  GRADUATE LEVEL.

22             THE COURT:  COLLEGE?

23             THE DEFENDANT:  MASTER'S DEGREE.

24             THE COURT:  WHAT WAS THE MASTER'S DEGREE IN?

25             THE DEFENDANT:  INTERNATIONAL POLICY.
```

```
 1                    THE COURT:  AND WHERE WERE YOU BORN?
 2                    THE DEFENDANT:  THE SAN DIEGO AREA IN CALIFORNIA.
 3                    THE COURT:  HAVE YOU TAKEN ANY MEDICATION IN THE
 4     LAST 48 HOURS?
 5                    THE DEFENDANT:  YES, YOUR HONOR.
 6                    THE COURT:  IS IT MEDICATION THAT YOU THINK WOULD
 7     AFFECT YOUR ABILITY TO UNDERSTAND WHAT YOU'RE DOING TODAY?
 8                    THE DEFENDANT:  NO.
 9                    THE COURT:  CAN YOU INDICATE TO ME WHAT THE
10     MEDICATION IS RELATED TO?
11                    THE DEFENDANT:  IT'S RELATED TO INSOMNIA AND
12     DEPRESSION.
13                    THE COURT:  AND WHEN WOULD YOU HAVE TAKEN THE
14     MEDICATION LAST?
15                    THE DEFENDANT:  I TAKE IT IN THE EVENING DAILY.
16                    THE COURT:  SO YOU WOULD NOT HAVE HAD IT THIS
17     MORNING?
18                    THE DEFENDANT:  THAT'S CORRECT.
19                    THE COURT:  COUNSEL, HAVE YOU HAD ANY ISSUES IN
20     TERMS OF HIS UNDERSTANDING ANYTHING OR YOUR CONVERSATIONS
21     WITH HIM TODAY?
22                    MS. FORREST:  NO, YOUR HONOR.
23                    THE COURT:  WHAT IS THE PROCESS WITHIN WHICH YOU
24     WENT OVER THE MATERIALS THAT YOU LOOKED AT AND SIGNED?
25                    THE DEFENDANT:  I REVIEWED THEM WITH MY ATTORNEYS
```

1    IN PERSON AS WELL AS VIA VIDEO CALL.

2              THE COURT:  OKAY.  HAVE YOU EVER RECEIVED ANY

3    TREATMENT FOR ANY TYPE OF MENTAL ILLNESS OR EMOTIONAL

4    DISTURBANCE?

5              THE DEFENDANT:  NOTHING FORMALLY DIAGNOSED, BUT I

6    HAVE RECEIVED AND AM CURRENTLY RECEIVING THERAPY OR

7    COUNSELING.

8              THE COURT:  AND ARE YOU GETTING IT STILL WHILE

9    YOU'RE LOCKED UP OR WAS THIS PRIOR TO YOUR BEING DETAINED?

10             THE DEFENDANT:  THAT'S CORRECT.  WHILE I'VE BEEN

11   INCARCERATED.

12             THE COURT:  AND THAT'S RESULTED IN THE MEDICATION

13   FOR DEPRESSION?

14             THE DEFENDANT:  THAT'S CORRECT.  IT WAS

15   PRESCRIBED.

16             THE COURT:  AND I TAKE IT THAT YOU HAVE A COPY OF

17   THE INFORMATION, WHICH SETS OUT THE CHARGES AGAINST YOU.  IS

18   THAT CORRECT?

19             THE DEFENDANT:  YES, I DO.

20             THE COURT:  AND HAVE YOU FULLY DISCUSSED THOSE

21   CHARGES AND THE CASE IN GENERAL WITH YOUR COUNSEL?

22             THE DEFENDANT:  YES, I HAVE.

23             THE COURT:  ARE YOU COMPLETELY SATISFIED WITH THE

24   SERVICES OF YOUR ATTORNEY IN THIS CASE?

25             THE DEFENDANT:  YES.

```
 1              THE COURT:  HAVE YOU HAD ENOUGH TIME TO TALK WITH
 2    YOUR ATTORNEY, DISCUSS THE CASE, THE PLEA OFFER AND WHETHER
 3    OR NOT YOU SHOULD ACCEPT IT?
 4              THE DEFENDANT:  YES, YOUR HONOR.
 5              THE COURT:  LET ME GO OVER YOUR CONSTITUTIONAL
 6    RIGHTS.
 7              DO YOU HAVE ALL OF THE PAPERWORK, HOPEFULLY, IN
 8    FRONT OF YOU?
 9              THE DEFENDANT:  I BELIEVE I DO.
10              THE COURT:  WE'LL GET TO THAT A LITTLE LATER.
11              SO LET ME GO THROUGH YOUR CONSTITUTIONAL RIGHTS.
12    AND I WANT TO MAKE SURE YOU UNDERSTAND WHAT THEY ARE AND
13    THEN WE'LL DISCUSS IN TERMS OF YOUR GIVING THEM UP OR
14    WAIVING THEM.
15              SO THE FIRST:  YOU'RE PLEADING TO WHAT WE CALL A
16    FELONY INFORMATION, WHICH MEANS THAT THE CASE HAS NOT BEEN
17    INDICTED.  I WANT TO MAKE SURE YOU UNDERSTAND YOU HAVE A
18    RIGHT TO A GRAND JURY INDICTMENT.  THE GOVERNMENT WOULD HAVE
19    TO CONVINCE 12 GRAND JURORS OUT OF AT LEAST 16 AND NOT MORE
20    THAN 23 THAT THERE'S PROBABLE CAUSE THAT THIS CRIME WAS
21    COMMITTED, EACH OF THESE CRIMES, AND THAT YOU ARE THE PERSON
22    WHO COMMITTED IT.
23              DO YOU UNDERSTAND YOUR RIGHT TO HAVE A GRAND JURY
24    INDICTMENT?
25              THE DEFENDANT:  YES, YOUR HONOR.
```

```
1              THE COURT:  AND ARE YOU WILLING TO GIVE THAT UP?

2              THE DEFENDANT:  I AM.

3              THE COURT:  YOU ALSO HAVE A RIGHT TO PLEAD NOT

4    GUILTY AND HAVE A JURY TRIAL IN THIS CASE.  CITIZENS OF THE

5    DISTRICT OF COLUMBIA WOULD BE SUMMONED TO THE COURTROOM.

6    THEY WOULD BE ASKED QUESTIONS BY COUNSEL AND THE COURT IN

7    ORDER TO HAVE A SELECTION OF FAIR AND IMPARTIAL JURORS AND

8    THAT THEY WOULD ALSO MAKE A DECISION BASED ON THE EVIDENCE

9    PRESENTED IN THE COURTROOM.

10             SO YOU WOULD HAVE 12 CITIZENS WHO WOULD DETERMINE

11   YOUR GUILT OR INNOCENCE BASED ON THE EVIDENCE PRESENTED IN

12   THE COURTROOM.

13             DO YOU UNDERSTAND YOUR RIGHT TO A JURY TRIAL?

14             THE DEFENDANT:  YES, I DO.

15             THE COURT:  YOU LOOK VERY UNCOMFORTABLE.  CAN YOU

16   PUT THE MASK ON AND THEN THE OTHER SO YOU DON'T HAVE TO KEEP

17   HOLDING IT?  WILL IT STAY ON ITS OWN?

18             THE DEFENDANT:  I THINK SO.

19             THE COURT:  THAT WAY, YOU DON'T HAVE TO KEEP

20   HOLDING IT UP.  YOU'RE GOING TO GET TIRED.

21             THE DEFENDANT:  THANK YOU.

22             THE COURT:  CAN YOU STILL HEAR ME?

23             THE DEFENDANT:  I CAN.

24             THE COURT:  IF AT ANY TIME IT SLIPS AND YOU CAN'T,

25   LET ME KNOW.
```

1          DO YOU UNDERSTAND THAT IF YOU DID HAVE A TRIAL,

2     YOU WOULD HAVE A RIGHT TO BE REPRESENTED BY A LAWYER AT THE

3     TRIAL AND, IF YOU COULD NOT AFFORD ONE, ONE COULD BE

4     APPOINTED FOR YOU?

5          THE DEFENDANT:  YES, I DO.

6          THE COURT:  DO YOU UNDERSTAND THAT AT A TRIAL, YOU

7     WOULD HAVE A RIGHT THROUGH YOUR ATTORNEY TO CONFRONT AND

8     CROSS-EXAMINE ANY WITNESSES AGAINST YOU?

9          THE DEFENDANT:  YES, I DO.

10         THE COURT:  DO YOU UNDERSTAND THAT IF YOU WENT

11    FORWARD TO TRIAL, YOU WOULD HAVE A RIGHT TO TESTIFY, PRESENT

12    EVIDENCE ON YOUR OWN BEHALF IF YOU WANTED TO, BUT YOU

13    WOULDN'T HAVE TO TESTIFY OR PRESENT ANY EVIDENCE IF YOU

14    DIDN'T WANT TO?  AND THAT'S BECAUSE YOU CAN'T BE FORCED TO

15    INCRIMINATE YOURSELF; THAT IS, TO PRESENT EVIDENCE OF YOUR

16    OWN GUILT.  AND IF YOU DID ASSERT THAT RIGHT, THE COURT

17    WOULD INSTRUCT THE JURY THAT THEY COULD NOT HOLD YOUR

18    DECISION TO NOT TESTIFY AGAINST YOU, NOR COULD THEY INFER

19    ANY GUILT FROM THAT DECISION.

20         DO YOU UNDERSTAND THAT?

21         THE DEFENDANT:  YES, I DO, YOUR HONOR.

22         THE COURT:  DO YOU UNDERSTAND THAT UNLESS AND

23    UNTIL I ACCEPT YOUR GUILTY PLEA, YOU ARE PRESUMED BY THE LAW

24    TO BE INNOCENT, BECAUSE IT'S THE GOVERNMENT'S BURDEN TO

25    PROVE YOUR GUILTY BEYOND A REASONABLE DOUBT?  AND UNTIL IT

1    DOES, YOU CANNOT BE CONVICTED AT TRIAL?

2             THE DEFENDANT:  I UNDERSTAND.

3             THE COURT:  DO YOU UNDERSTAND THAT IF YOU WENT

4    FORWARD TO TRIAL AND WERE CONVICTED, YOU WOULD HAVE A RIGHT

5    TO APPEAL YOUR CONVICTION TO THE COURT OF APPEALS AND HAVE A

6    LAWYER HELP YOU PREPARE YOUR APPEAL?

7             THE DEFENDANT:  I DO.

8             THE COURT:  DO YOU UNDERSTAND THAT BY PLEADING

9    GUILTY, YOU'RE GIVING UP YOUR RIGHT TO APPEAL?  AND WHAT I

10   WOULD SUGGEST IS THAT YOU LOOK AT PAGE 10 OF THE LETTER.

11   IT'S SUBSECTION D.  THIS RELATES TO YOUR APPEAL RIGHTS AND

12   WAIVER THAT YOU'RE MAKING IN THIS PARTICULAR CASE.  SO LET

13   ME GO THROUGH IT.

14             YOU'RE AGREEING TO WAIVE -- "WAIVE" MEANS GIVE

15   UP -- INSOFAR AS SUCH WAIVER IS PERMITTED BY LAW -- AND I'LL

16   EXPLAIN THAT -- THE RIGHT TO APPEAL THE CONVICTION IN THIS

17   CASE ON ANY BASIS, INCLUDING, BUT NOT LIMITED TO CLAIMS,

18   ONE, THAT THE STATUTE TO WHICH YOU'RE PLEADING GUILTY IS

19   UNCONSTITUTIONAL; AND, TWO, THAT THE ADMITTED CONDUCT

20   DOESN'T FALL WITHIN THE SCOPE OF THE STATUTES.

21             NOW, INSOFAR AS SUCH WAIVER IS PERMITTED BY LAW,

22   WHICH MEANS THAT ALTHOUGH YOU CANNOT TAKE A DIRECT APPEAL

23   RELATING TO THOSE TWO ISSUES, IF THERE IS ANOTHER CASE THAT

24   GOES UP TO THE COURT OF APPEALS AND THAT APPELLATE DECISION

25   DECIDES THAT THE STATUTE THAT YOU'RE PLEADING GUILTY TO IS

1    UNCONSTITUTIONAL OR THAT YOUR ADMITTED CONDUCT DOESN'T FALL

2    WITHIN THE SCOPE OF THE STATUTE WHICH WOULD MAKE YOU

3    CRIMINALLY RESPONSIBLE, THEN YOU WOULD BE IN A POSITION TO

4    APPEAL, BECAUSE THERE WOULD BE PRECEDENT AT THAT POINT THAT

5    WOULD INDICATE THAT THE STATUTES WERE UNCONSTITUTIONAL

6    AND/OR THAT YOUR CONDUCT WAS NOT CRIMINAL.

7              DO YOU UNDERSTAND THAT?

8              THE DEFENDANT:  YES, I DO.

9              THE COURT:  AND THERE'S ALSO A STATUTE THAT

10   AFFORDS YOU THE RIGHT TO APPEAL YOUR SENTENCE IN CERTAIN

11   CIRCUMSTANCES.  AND YOU'RE AGREEING TO WAIVE OR GIVE UP THE

12   RIGHT TO APPEAL THE SENTENCE IN THIS CASE, WHICH WOULD

13   INCLUDE, BUT NOT BE LIMITED TO, ANY TERM OF IMPRISONMENT,

14   FINE, FORFEITURE OR ORDER OF RESTITUTION, TERM OR CONDITION

15   OF SUPERVISED RELEASE, AUTHORITY OF THE COURT TO SET

16   CONDITIONS OF RELEASE AND THE MANNER IN WHICH THE SENTENCE

17   WAS DETERMINED EXCEPT TO THE EXTENT THAT -- AND THESE WOULD

18   BE THE EXCEPTIONS -- IF I SENTENCED YOU ABOVE THE STATUTORY

19   MAXIMUM, WHICH WOULD BE AN UNLAWFUL SENTENCE, OR IF IT WAS

20   ABOVE THE GUIDELINE RANGE WHICH I HAD DETERMINED.

21             DO YOU UNDERSTAND THAT AND AGREE?

22             THE DEFENDANT:  YES, YOUR HONOR.

23             THE COURT:  SKIPPING TO THE BOTTOM, DESPITE THIS

24   AGREEMENT OF WHICH THINGS YOU'RE WAIVING, THE RIGHT TO

25   APPEAL AND THE SENTENCE, YOU DO RETAIN THE RIGHT TO APPEAL

1    ON THE BASIS OF INEFFECTIVE ASSISTANCE OF COUNSEL, BUT NOT

2    TO RAISE ON APPEAL OTHER ISSUES REGARDING THE CONVICTION OR

3    SENTENCE.

4              DO YOU UNDERSTAND AND AGREE?

5              THE DEFENDANT:  YES, I DO.

6              THE COURT:  AND IF THERE WAS A BASIS TO FILE AN

7    APPEAL, WITH FEW EXCEPTIONS, THE NOTICE OF APPEAL WOULD HAVE

8    TO BE FILED WITHIN 14 DAYS OF JUDGMENT BEING ENTERED IN YOUR

9    CASE.  AND IF YOU WERE UNABLE TO PAY THE COST OF AN APPEAL,

10   YOU COULD ASK TO FILE IT WITHOUT COST TO YOU.

11             DO YOU UNDERSTAND THAT?

12             THE DEFENDANT:  YES, I DO.

13             THE COURT:  NOW, DO YOU UNDERSTAND THAT IF YOU

14   PLEAD GUILTY IN THIS CASE AND I ACCEPT YOUR GUILTY PLEA,

15   YOU'LL BE GIVING UP THE RIGHTS I'VE JUST EXPLAINED TO YOU

16   BECAUSE THERE WON'T BE ANY TRIAL OR ANY APPEAL EXCEPT ON THE

17   VERY NARROW GROUNDS THAT I HAVE SET OUT?  DO YOU UNDERSTAND

18   THAT?

19             THE DEFENDANT:  I UNDERSTAND.

20             THE COURT:  DO YOU WANT TO PLEAD GUILTY IN THIS

21   CASE, GIVE UP YOUR RIGHTS TO A TRIAL AND YOUR RIGHT TO

22   APPEAL AND THE OTHER RIGHTS THAT I'VE EXPLAINED THAT YOU

23   WOULD HAVE IF YOUR CASE HAD GONE FORWARD TO TRIAL?

24             THE DEFENDANT:  YES, I DO, YOUR HONOR.

25             THE COURT:  AT THIS POINT, THE GOVERNMENT IS GOING

1    TO STATE THE EVIDENCE THEY WOULD HAVE PRESENTED IF THE CASE

2    HAD GONE TO TRIAL, AT THE END OF WHICH THEY WILL INDICATE

3    WHICH FACTS SUPPORT THE ELEMENTS OF THE OFFENSES THAT YOU'RE

4    PLEADING GUILTY TO.

5            I'D ASK THAT YOU HAVE YOUR STATEMENT OF OFFENSE IN

6    FRONT OF YOU, WHICH MAKES IT EASIER.

7            AND, COUNSEL, I DON'T HAVE A PROBLEM.  I THINK

8    IT'S HARD TO SUMMARIZE THIS.  SO ALTHOUGH IT'S A FAIRLY LONG

9    STATEMENT OF OFFENSE, I THINK YOU SHOULD READ IT INTO THE

10   RECORD.

11           MS. PERRY:  VERY WELL, YOUR HONOR.

12           THE PARTIES IN THIS CASE, THE UNITED STATES OF

13   AMERICA AND THE DEFENDANT, BRIAN JEFFREY RAYMOND, STIPULATE

14   AND AGREE THAT THE FOLLOWING FACTS ARE TRUE AND ACCURATE.

15   THESE FACTS DO NOT CONSTITUTE ALL OF THE FACTS KNOWN TO THE

16   PARTIES CONCERNING THE CHARGED OFFENSE.  THEY ARE BEING

17   SUBMITTED TO DEMONSTRATE THAT SUFFICIENT FACTS EXIST THAT

18   THE DEFENDANT COMMITTED THE OFFENSES TO WHICH HE IS PLEADING

19   GUILTY:  SEXUAL ABUSE OF ADULT VICTIM 7 AND ADULT VICTIM 9,

20   IN VIOLATION OF 18 UNITED STATES CODE SECTION 2242(2), AND

21   TRANSPORTATION OF OBSCENE MATERIAL IN VIOLATION OF 18 USC

22   SECTION 1462.

23           BETWEEN ON OR ABOUT AUGUST 21ST, 2018, AND JUNE

24   1ST, 2020, RAYMOND, NOW 45 YEARS OLD, WAS A U.S. GOVERNMENT

25   EMPLOYEE WORKING AT THE U.S. EMBASSY IN MEXICO CITY,

```
 1    MEXICO --

 2              THE COURT:  YOU'RE GOING TOO FAST FOR THE COURT

 3    REPORTER.  SHE'LL GET A COPY OF THIS, BUT SHE STILL DOESN'T

 4    HAVE THAT IN FRONT OF HER RIGHT NOW.

 5              MS. PERRY:  THANK YOU, YOUR HONOR.

 6              DURING THAT TIME, RAYMOND LIVED IN AN APARTMENT

 7    ASSIGNED TO HIM BY THE UNITED STATES GOVERNMENT.  RAYMOND'S

 8    RESIDENCE IN MEXICO CITY HAS BEEN LEASED BY THE U.S.

 9    GOVERNMENT SINCE APRIL 2013 FOR USE BY U.S. PERSONNEL

10    ASSIGNED TO DIPLOMATIC, CONSULAR, MILITARY AND OTHER U.S.

11    GOVERNMENT MISSIONS IN MEXICO CITY.

12              THE U.S. GOVERNMENT CURRENTLY MAINTAINS A

13    NINE-YEAR LEASE OF THE PROPERTY, AND THIS RESIDENCE FALLS

14    WITHIN THE SPECIAL MARITIME AND TERRITORIAL JURISDICTION OF

15    THE UNITED STATES PURSUANT TO 18 USC SECTION 7(9).

16              ON MAY 31ST, 2020, THERE WAS AN INCIDENT AT

17    RAYMOND'S EMBASSY-LEASED RESIDENCE IN MEXICO CITY.  DURING

18    AN INTERVIEW WITH LAW ENFORCEMENT ON JUNE 2ND, 2020, RAYMOND

19    STATED THAT HE HAD SEXUAL INTERCOURSE WITH AN ADULT WOMAN,

20    HEREINAFTER REFERRED TO AS ADULT VICTIM 1, ON MAY 31ST AND

21    THAT IT WAS CONSENSUAL.

22              ADULT VICTIM 1 WAS INTERVIEWED AND REPORTED THAT

23    SHE HAD NO MEMORY OF THE INCIDENT AND DID NOT CONSENT TO

24    SEXUAL INTERCOURSE WITH RAYMOND.

25              AFTER THE MAY 31ST, 2020, INCIDENT, LAW
```

1    ENFORCEMENT EXECUTED SEVERAL PREMISES AND DEVICE SEARCH

2    WARRANTS, INCLUDING, BUT NOT LIMITED TO, SEARCH WARRANTS FOR

3    RAYMOND'S PHONES, LAPTOPS, TABLETS, THUMB DRIVES AND MEMORY

4    CARDS AS WELL AS RAYMOND'S MEXICO CITY RESIDENCE, HIS

5    PARENTS' RESIDENCE IN LA MESA, CALIFORNIA, TINDER AND OTHER

6    SOCIAL MEDIA ACCOUNTS, EMAIL ACCOUNTS AND HIS ICLOUD

7    ACCOUNT.

8              INTERNET ARTIFACTS ON RAYMOND'S DEVICES REVEALED A

9    NUMBER OF SEARCHES.  FOR EXAMPLE, THERE WERE SEARCHES FOR

10   PASSED-OUT BLACK GIRL ON FEBRUARY 8, 2020; FOR PASSED-OUT

11   GIRL ON FEBRUARY 22ND, 2020; AND FOR DEEP SLEEP ON FEBRUARY

12   23RD, 2020.  THERE WERE MULTIPLE VIDEOS OF UNCONSCIOUS OR

13   PASSED-OUT WOMEN IN HIS YOUTUBE VIEWING HISTORY.

14             MOREOVER, LAW ENFORCEMENT DISCOVERED INTERNET

15   ARTIFACTS ON ONE OF RAYMOND'S ASUS LAPTOPS REVEALING

16   SEARCHES FOR:  PASSED-OUT; AMBIEN; AMBIEN AND ALCOHOL SIDE

17   EFFECTS; ZOLPIDEM TARTRATE TABLETS IN 10 MILLIGRAMS; AMBIEN

18   DISSOLVE; ZOLPIDEM AND PHARMACIES; AMBIEN AND ALCOHOL AND

19   PASSED OUT; PASSED OUT AND CARRIED; AND DEEP SLEEP BETWEEN

20   2010 AND 2011.

21             AGENTS FOUND APPROXIMATELY 487 VIDEOS AND IMAGES

22   OF UNCONSCIOUS WOMEN IN VARIOUS STATES OF UNDRESS ON

23   MULTIPLE DEVICES BELONGING TO RAYMOND AND IN HIS ICLOUD

24   ACCOUNT.

25             THE SEARCH WARRANTS ON RAYMOND'S PHONES WERE

1    EXECUTED ON JUNE 6TH, 2020.  BETWEEN MAY 31ST, 2020, WHICH

2    THE INVESTIGATION BEGAN, AND JUNE 6TH, 2020, RAYMOND DELETED

3    NUMEROUS IMAGES AND VIDEOS OF UNCONSCIOUS WOMEN FROM HIS

4    PHONE.  HE ALSO ATTEMPTED TO DELETE THE IMAGES AND VIDEOS HE

5    HAD MADE OF NUDE OR PARTIALLY NUDE UNCONSCIOUS WOMEN TO

6    INCLUDE IMAGES AND VIDEOS OF ADULT VICTIM 7 AND ADULT VICTIM

7    9 THAT WERE SAVED TO HIS ICLOUD ACCOUNT, BUT HE WAS

8    UNSUCCESSFUL DUE TO A PRESERVATION REQUEST SENT BY LAW

9    ENFORCEMENT.  THE EXAMINATION OF THE ICLOUD ACCOUNT REVEALED

10   THAT THESE MATERIALS HAD BEEN DELETED BUT PRESERVED.

11         ALSO, THE FORENSIC EXAMINATION REVEALED THAT ON

12   JUNE 3RD, 2020, RAYMOND CONDUCTED THE FOLLOWING INTERNET

13   SEARCH:  HOW TO SAVE PHOTOS FROM ICLOUD TO ANOTHER DEVICE

14   AND THAT THE DATING APPLICATION BUMBLE WAS DELETED FROM HIS

15   PHONE SOMETIME AFTER JUNE 2ND.

16         WHEN ASKED BY FEDERAL LAW ENFORCEMENT AGENTS ABOUT

17   THE USE OF HIS DATING APPLICATIONS, HE ANSWERED THAT HE USED

18   THEM VERY LITTLE, WHEN IN FACT HE MET MANY OF THE WOMEN

19   REFERENCED HEREIN ON SUCH APPLICATIONS.

20         THROUGHOUT ITS INVESTIGATION, LAW ENFORCEMENT

21   LEARNED THAT FROM 2006 TO 2020, WHILE WORKING AS A U.S.

22   GOVERNMENT EMPLOYEE, RAYMOND RECORDED AND/OR PHOTOGRAPHED AT

23   LEAST 24 UNCONSCIOUS, NUDE OR PARTIALLY NUDE WOMEN,

24   INCLUDING ADULT VICTIM 2 THROUGH ADULT VICTIM 25.  MANY OF

25   THESE WOMEN WERE IDENTIFIED AND INTERVIEWED, INCLUDING ADULT

1    VICTIM 7 AND ADULT VICTIM 9.  NONE OF THE WOMEN INTERVIEWED

2    KNEW THAT RAYMOND HAD RECORDED THEM IN AN UNCONSCIOUS AND

3    NUDE OR PARTIALLY NUDE STATE, NOR DID THEY CONSENT TO ANY

4    SUCH RECORDINGS OR DEPICTIONS OR ANY SEXUAL CONTACT WHILE IN

5    THAT STATE.

6         ALL OF THE WOMEN INTERVIEWED DESCRIBED DRINKING

7    ALCOHOL SUPPLIED AND/OR PREPARED BY RAYMOND AND EXPERIENCING

8    MEMORY LOSS DURING THEIR TIME WITH RAYMOND.

9         DURING HIS INTERVIEWS WITH LAW ENFORCEMENT AFTER

10   THE INCIDENT ON MAY 31ST, 2020, RAYMOND ACKNOWLEDGED HAVING

11   SEX WITH A WOMAN AT HIS EMBASSY-LEASED APARTMENT IN MEXICO

12   ON MAY 30TH, 2020, LATER IDENTIFIED AS ADULT VICTIM 7.

13        ADULT VICTIM 7 IS A RESIDENT OF MEXICO, BORN IN

14   1994, SPEAKS PRIMARILY SPANISH AND VERY LITTLE ENGLISH AND

15   WORKS AT A CALL CENTER.

16        RAY INVITED HER TO HIS APARTMENT OR MAY 30, 2020.

17   ADULT VICTIM 7 TOOK AN UBER TO GET TO THE APARTMENT AND DID

18   NOT HAVE A CAR.

19        RAYMOND PREPARED DRINKS FOR HER IN THE KITCHEN

20   WHILE SHE SAT IN THE LIVING ROOM.

21        SOON AFTER ARRIVING AT RAYMOND'S RESIDENCE, ADULT

22   VICTIM 7 TOLD RAYMOND THAT SHE LOST CELL PHONE RECEPTION AND

23   COULD NOT TEXT OR CALL OUT.

24        AT SOME POINT, ADULT VICTIM 7 BECAME SICK AND

25   VOMITED IN RAYMOND'S BATHROOM, DURING WHICH RAYMOND CAME TO

1    COMFORT HER.

2         AFTER THAT, KNOWING ADULT VICTIM 7 WAS AT THE

3    POINT WHERE SHE WAS INCAPABLE OF APPRAISING THE NATURE OF

4    THE CONDUCT, RAYMOND HAD SEXUAL INTERCOURSE WITH ADULT

5    VICTIM 7.  RAYMOND DISCUSSED HAVING SEX WITH ADULT VICTIM 7

6    WITH A FRIEND VIA TEXT MESSAGE THE FOLLOWING DAY.

7         ADULT VICTIM 7 STATED THAT SHE COULD NOT RECALL

8    ANYTHING AFTER VOMITING IN THE BATHROOM UNTIL SHE WOKE UP IN

9    RAYMOND'S BED NAKED OTHER THAN ONE FRAGMENTED MEMORY OF

10   LYING FACEDOWN ON A BED WHEN IT WAS VERY DARK AND FEELING

11   RAYMOND GRABBING HER BREAST.

12        SHE DID NOT RECALL CONSENTING TO HIM REMOVING HER

13   CLOTHING AND SHE DID NOT RECALL CONSENTING TO OR HAVING

14   SEXUAL INTERCOURSE WITH HIM AFTER VOMITING IN THE BATHROOM.

15        SHE OBSERVED A USED CONDOM WHEN SHE AWOKE THE

16   FOLLOWING MORNING AND ASSUMED THAT SHE AND RAYMOND HAD HAD

17   SEX THE NIGHT BEFORE.

18        AFTER ADULT VICTIM 7 AWOKE, HER CELL PHONE WAS

19   STILL NOT WORKING, SO RAYMOND USED HIS PHONE TO ORDER AN

20   UBER FOR HER.

21        APPROXIMATELY 77 PHOTOGRAPHS AND FOUR VIDEOS OF

22   ADULT VICTIM 7 WERE RECOVERED FROM RAYMOND'S ICLOUD AND

23   MACBOOK.  THESE PHOTOGRAPHS AND VIDEOS WERE RECORDED ON THE

24   NIGHT OF MAY 30TH, 2020.  THEY DEPICT ADULT VICTIM 7, FULLY

25   NUDE AND UNCONSCIOUS, LYING ON RAYMOND'S BED.  THEY SHOW

1  RAYMOND'S HAND OPENING HER EYELID AND PULLING DOWN HER LOWER

2  LIP.  IN ONE VIDEO, ADULT VICTIM 7 FLINCHES WHEN RAYMOND'S

3  FINGERS ARE IN HER MOUTH AND HE QUICKLY PULLS HIS HAND BACK.

4       THERE ARE MANY CLOSEUPS OF ADULT VICTIM 7'S

5  BREASTS AND GENITALS.  NOTABLY, THERE IS A PHOTO IN WHICH

6  ADULT VICTIM 7 IS ON HER BACK WITH HER LEGS TIGHTLY CLOSED

7  AND RAYMOND IS STRADDLING HER BODY WITH HIS KNEES AND INNER

8  THIGHS ON EITHER SIDE OF HER LEGS ON THE BED AND HIS ERECT

9  PENIS IS VISIBLE.

10       ADULT VICTIM 7 STATED SHE DID NOT CONSENT TO

11  RAYMOND TAKING THESE IMAGES OR VIDEOS, NOR WAS SHE AWARE OF

12  THEIR EXISTENCE PRIOR TO THE INTERVIEW WITH LAW ENFORCEMENT.

13       IN MARCH 2020, APPROXIMATELY TWO MONTHS BEFORE HIS

14  INTERACTION WITH ADULT VICTIM 7, RAYMOND ALSO TEXTED THE

15  SAME FRIEND MENTIONED ABOVE ABOUT HAVING SEXUAL INTERCOURSE

16  WITH ADULT VICTIM 9.  ADULT VICTIM 9 IS A RESIDENT OF MEXICO

17  AND PRIMARILY A SPANISH SPEAKER.  HE TEXTED THE SAME FRIEND

18  THAT HE HAD TO PAY FOR AN UBER FOR ADULT VICTIM 9 AND

19  EXPRESSED THAT IT WAS ANNOYING BUT ULTIMATELY WORTHWHILE

20  BECAUSE HE WAS ABLE TO HAVE SEX WITH HER.

21       AFTER CONNECTING ON A DATING APPLICATION, ADULT

22  VICTIM 9 AND RAYMOND INITIALLY MET AT A RESTAURANT ON OR

23  ABOUT MARCH 26TH, 2020, IN MEXICO CITY.

24       LATER THAT SAME DAY, RAYMOND INVITED ADULT VICTIM

25  9 TO HIS EMBASSY-LEASED APARTMENT, WHERE THEY DRANK A LOT OF

1   WINE AND TEQUILA.  RAYMOND HAD SEXUAL INTERCOURSE WITH ADULT

2   VICTIM 9 IN HIS BED.  DURING THE SEXUAL ACT, RAYMOND KNEW

3   THAT ADULT VICTIM 9 WAS INCAPABLE OF APPRAISING THE NATURE

4   OF THE CONDUCT.  ADULT VICTIM 9 DID NOT RECALL ANYTHING THAT

5   OCCURRED THE NIGHT AFTER SHE AND RAYMOND DRANK WINE AND

6   KISSED IN HIS KITCHEN.

7           ADULT VICTIM 9'S LAST MEMORY WAS OF THEM WALKING

8   IN HIS HALLWAY.  SHE WOKE UP IN HIS BED NAKED AND DID NOT

9   REMEMBER TAKING OFF HER CLOTHING AND SHE DID NOT RECALL

10  CONSENTING TO RAYMOND TAKING OFF HER CLOTHING OR CONSENTING

11  TO OR HAVING SEXUAL INTERCOURSE WITH RAYMOND.

12          RAYMOND RECORDED OR TOOK 20 PHOTOGRAPHS AND 15

13  VIDEOS OF ADULT VICTIM 9 AT HIS EMBASSY-LEASED APARTMENT IN

14  MEXICO CITY ON MARCH 26TH, 2020.

15          IN THE PHOTOGRAPHS AND VIDEOS, ADULT VICTIM 9 IS

16  FULLY UNCONSCIOUS AND NUDE.  SOME OF THE PHOTOGRAPHS SHOW

17  RAYMOND'S HAND OPENING ADULT VICTIM 9'S EYELID AND SOME

18  DEPICT CLOSEUPS OF HER BREASTS AND GENITALS.  RAYMOND ALSO

19  APPEARS TO POSE HER BODY IN DIFFERENT POSITIONS THROUGHOUT

20  THE PHOTO SET.

21          A VIDEO SHOWS RAYMOND'S HANDS ON THE OUTSIDE OF

22  ADULT VICTIM 9'S BUTTOCKS.  ANOTHER VIDEO SHOWS RAYMOND'S

23  HAND TOUCHING ADULT VICTIM 9'S BREASTS AND BUTTOCKS.

24  ANOTHER VIDEO SHOWS RAYMOND'S HAND COARSELY GRABBING ADULT

25  VICTIM 9'S BREASTS.  HIS HAND THEN APPEARS TO MOVE DOWN TO

1    HER PUBIC REGION OUT OF THE FRAME.

2         IN ONE VIDEO, RAYMOND IS NUDE AND LYING IN BED

3    WITH ADULT VICTIM 9'S LIMP BODY, MANIPULATING HER LIMBS.

4    RAYMOND'S ERECT PENIS CAN BE SEEN IN THE VIDEO.

5         ADULT VICTIM 9 DID NOT CONSENT TO THE PHOTOGRAPHS

6    AND VIDEOS BEING TAKEN AND WAS UNAWARE THAT THEY EXISTED

7    PRIOR TO HER INTERVIEW WITH LAW ENFORCEMENT.

8         THE FOLLOWING PHOTOS AND VIDEOS IN ADDITION TO

9    THOSE LISTED ABOVE WERE RECOVERED FROM RAYMOND'S PHONES,

10   ICLOUD ACCOUNT, EMAIL ACCOUNT, SEVERAL LAPTOPS AND SEVERAL

11   THUMB DRIVES.  AND FOR THE RECORD, THERE'S A CHART IN THE

12   STATEMENT OF FACTS THAT STATES THE VICTIM NUMBER, THE NUMBER

13   OF PHOTOS AND VIDEOS, LOCATION, DATE AND EXAMPLE OF OBSCENE

14   DEPICTION FOR THIS VICTIM.

15        FOR ADULT VICTIM 2, THERE WERE 33 PHOTOGRAPHS AND

16   ONE VIDEO TAKEN IN CALIFORNIA ON FEBRUARY 2ND, 2018.  AN

17   EXAMPLE OF A DEPICTION IS A CLOSEUP OF A BREAST WITH A SHIRT

18   PULLED DOWN BY AN ADULT MALE HAND.  THERE ARE ALSO 44

19   PHOTOGRAPHS AND SEVEN VIDEOS OF ADULT VICTIM 2 TAKEN IN

20   MEXICO ON NOVEMBER 23RD, 2018, WITH A CLOSEUP OF GENITALIA.

21        ADULT VICTIM 3:  THERE ARE 16 PHOTOS AND THREE

22   VIDEOS TAKEN IN COUNTRY 5, WHICH IS KNOWN TO THE GOVERNMENT

23   AND TO THE DEFENDANT.  THEY WERE TAKEN ON DECEMBER 1ST,

24   2017, AND DEPICT CLOSEUPS OF THEIR BREASTS AND GENITALIA.

25        ADULT VICTIM 4:  THERE ARE EIGHT PHOTOS AND TWO

1    VIDEOS TAKEN IN VIRGINIA ON MAY 14, 2017, WITH CLOSEUP OF

2    BREASTS WITH BRA PULLED DOWN.

3          ADULT VICTIM 5:  THERE ARE 25 PHOTOS AND TEN

4    VIDEOS TAKEN IN MEXICO ON MAY 17, 2019, WITH A CLOSEUP OF AN

5    ADULT MALE GRABBING A BARE BREAST.

6          ADULT VICTIM 6:  THERE ARE 29 PHOTOS AND SIX

7    VIDEOS TAKEN IN MEXICO ON JUNE 23RD, 2019, DEPICTING A

8    CLOSEUP OF BARE BREAST AND GENITALIA AND ONE IN WHICH HE

9    PLACES HER OWN HAND ON HER BREAST AND GENITALIA.  THERE ARE

10   ALSO 35 PHOTOS OF ADULT VICTIM 6 TAKEN IN MEXICO ON DECEMBER

11   21ST, 2019, DEPICTING SIMILAR IMAGES.

12         ADULT VICTIM 7:  THERE ARE 77 PHOTOS AND FOUR

13   VIDEOS TAKEN IN MEXICO ON MAY 30, 2020, WITH CLOSEUP OF

14   GENITALIA AND AN ADULT MALE STRADDLING HER.

15         ADULT VICTIM 8:  THERE ARE 13 PHOTOS AND ONE VIDEO

16   TAKEN IN MEXICO ON MARCH 27, 2020, WITH A CLOSEUP OF A BARE

17   BREAST.

18         ADULT VICTIM 9:  20 PHOTOS AND 15 VIDEOS TAKEN IN

19   MEXICO ON MARCH 26TH, 2020, WITH A CLOSEUP OF AN ADULT MALE

20   TOUCHING A BARE BREAST.

21         THE COURT:  IF I CAN INTERRUPT FOR A SECOND.  YOU

22   HAVE "ADULT MALE."  IS IT THAT YOU CAN'T TELL IF IT LOOKS

23   LIKE THE DEFENDANT OR THE ADULT MALE IS THE DEFENDANT?

24         MS. PERRY:  YOUR HONOR, WE WOULD ESTABLISH THAT

25   THE ADULT MALE IS THE DEFENDANT.

1          THE COURT:  OKAY.

2          MS. PERRY:  ADULT VICTIM 11:  THERE ARE THREE

3     VIDEOS TAKEN IN MEXICO ON MAY 11, 2019, DEPICTING HER NUDE

4     BODY WITH HER LEG DRAPED OVER AN ADULT MALE WHOSE PENIS IS

5     VISIBLE.

6          ADULT VICTIM 12:  THERE ARE TEN PHOTOS TAKEN IN

7     MEXICO ON SEPTEMBER 15, 2018, WITH CLOSEUPS OF BARE BREASTS.

8          ADULT VICTIM 13:  THERE ARE NINE PHOTOS TAKEN IN

9     COUNTRY 5, AGAIN, KNOWN TO THE DEFENDANT AND THE GOVERNMENT,

10    ON NOVEMBER 28, 2017, DEPICTING CLOSEUP SIDE VIEW OF A BARE

11    BREAST.

12         ADULT VICTIM 15:  THERE ARE FOUR PHOTOS TAKEN IN

13    MARYLAND ON APRIL 9, 2017, DEPICTING A FULLY NUDE BODY AND

14    BUTTOCKS.

15         ADULT VICTIM 16:  THERE ARE TWO PHOTOS TAKEN IN

16    VIRGINIA ON NOVEMBER 5, 2016, DEPICTING A BRA PULLED DOWN

17    EXPOSING BARE BREASTS.

18         ADULT VICTIM 17:  THERE ARE SIX PHOTOS TAKEN IN

19    VIRGINIA ON NOVEMBER 6TH, 2015, WITH A CLOSEUP OF A MAN'S

20    HANDS PULLING DOWN UNDERWEAR TO EXPOSE GENITALIA.

21         ADULT VICTIM 18:  THERE ARE NINE PHOTOS TAKEN IN

22    VIRGINIA ON NOVEMBER 1ST, 2015, DEPICTING BARE BREASTS.

23         ADULT VICTIM 20:  THERE ARE SEVEN PHOTOS TAKEN IN

24    COUNTRY 6, KNOWN TO BOTH THE DEFENDANT AND THE GOVERNMENT,

25    IN NOVEMBER OF 2007 DEPICTING A CLOSEUP OF BARE BREASTS.

1              ADULT VICTIM 22:  THERE ARE SEVEN PHOTOS TAKEN IN

2      COUNTRY 3, KNOWN TO BOTH THE DEFENDANT AND THE GOVERNMENT,

3      ON APRIL 21ST, 2006, DEPICTING CLOSEUPS OF BARE BREASTS AND

4      BARE GENITALIA.

5              ADULT VICTIM 23:  THERE ARE 40 PHOTOS TAKEN FROM

6      COUNTRY 6 ON DECEMBER 2013 DEPICTING BARE BREASTS AND

7      GENITALIA WITH HER BODY STRETCHED AND LEG TO ONE SIDE

8      DEPICTING A CLOSEUP OF HER GENITALIA.

9              ADULT VICTIM 24:  THERE ARE 27 PHOTOS TAKEN IN

10     COUNTRY 6 BETWEEN OCTOBER 11 AND 12, 2013, DEPICTING

11     CLOSEUPS OF HER BARE BREASTS AND BARE GENITALIA.

12             AND ADULT VICTIM 25:  THERE ARE SIX PHOTOS TAKEN

13     IN WASHINGTON, D.C., ON DECEMBER 25TH, 2015, DEPICTING BARE

14     GENITALIA AND BREASTS.

15             AND THERE'S A NOTE HERE THAT THIS CHART ONLY

16     DEPICTS VICTIMS WHOSE PHOTOGRAPHS AND/OR VIDEOS MEET THE

17     DEFINITION OF OBSCENITY.  PHOTOGRAPHS OF FOUR ADDITIONAL

18     WOMEN WERE RECOVERED FROM RAYMOND'S DEVICES AND/OR ACCOUNTS.

19     THOSE PHOTOGRAPHS WERE TAKEN WHILE THE WOMEN WERE EITHER

20     SLEEPING OR UNCONSCIOUS WITHOUT THEIR KNOWLEDGE OR CONSENT.

21             FOR EXAMPLE, THREE PHOTOS OF ADULT VICTIM 14 WERE

22     TAKEN IN VIRGINIA ON AUGUST 4, 2017.  SHE IS UNCONSCIOUS AND

23     PARTIALLY NUDE, WEARING ONLY HER UNDERWEAR.  HER ARM IS

24     CONCEALING HER NAKED BREAST IN THE PHOTO.

25             SIMILARLY, THREE PHOTOGRAPHS OF ADULT VICTIM 21

1   WERE TAKEN IN COUNTRY 4, KNOWN TO THE DEFENDANT AND THE

2   GOVERNMENT, ON MAY 30TH, 2011.  ONLY WHEN LIGHTENED DO THESE

3   PHOTOGRAPHS SHOW THAT ADULT VICTIM 21 IS UNCONSCIOUS OR

4   SLEEPING AND NUDE.

5         THE PHOTOS AND VIDEOS TAKEN BY RAYMOND COMMONLY

6   FOCUS ON HIS VICTIMS' BREASTS AND GENITALS.  RAYMOND POSED

7   THEIR BODIES AND MANIPULATED THEIR EYELIDS, MOUTHS AND LIMBS

8   WITH SOME OF THE WOMEN, TO INCLUDE ADULT VICTIMS 4, 5, 6, 7

9   AND 9.  THE RECORDINGS DEPICT HIM TOUCHING OR CAUSING THEM

10  TO TOUCH THEIR BREASTS, GENITAL AREA, BUTTOCKS AND/OR INNER

11  THIGHS.

12        THE DEPICTIONS SHOW RAYMOND LYING IN BED WITH

13  ADULT VICTIM 9 AND ADULT VICTIM 11 WHILE BOTH ARE NUDE AND

14  UNCONSCIOUS.

15        THE WOMEN LISTED IN THIS CHART DID NOT CONSENT TO

16  BEING RECORDED OR PHOTOGRAPHED NUDE, NOR DID THEY CONSENT TO

17  RAYMOND TOUCHING THEM WHILE THEY WERE UNCONSCIOUS.

18        ONE OR MORE OF THE PHOTOS AND VIDEOS RAYMOND

19  RECORDED OF EACH OF AV 2 THROUGH 9, AV 11 THROUGH 13, AV 15

20  THROUGH 18, AV 20 AND AV 22 THROUGH 25, CONSTITUTE OBSCENE

21  MATERIAL; THAT IS, THEY APPEAL PREDOMINANTLY TO THE PRURIENT

22  INTEREST.  THEY DEPICT SEXUAL CONDUCT IN A PATENTLY

23  OFFENSIVE WAY AND THEY LACK SERIOUS LITERARY, ARTISTIC,

24  POLITICAL OR SCIENTIFIC VALUE.

25        FROM 2006 TO JUNE OF 2020, RAYMOND KNOWINGLY

31

1    IMPORTED THESE PHOTOS AND VIDEOS INTO THE UNITED STATES,

2    TRANSPORTING THEM ON HIS ELECTRONIC DEVICES.

3          DURING THE SAME TIME FRAME, HE ALSO KNOWINGLY

4    UPLOADED THE OBSCENE RECORDINGS AND IMAGES OF AV 2 THROUGH

5    9, AV 11 THROUGH 13, AND AV 15 THROUGH 18 TO HIS ICLOUD

6    ACCOUNT AND INTERACTIVE COMPUTER SERVICE THROUGH SERVERS IN

7    THE UNITED STATES.

8          AT THE TIME OF THE IMPORTATION AND UPLOADS,

9    RAYMOND KNEW THAT THE VIDEOS AND IMAGES HE HAD MADE WERE

10   SEXUALLY ORIENTED IN NATURE.

11         RAYMOND STIPULATES AND AGREES THAT FROM 2006 UNTIL

12   2020, INCLUDING ON THE DATES LISTED ON THE CHART, HE

13   RECORDED AND/OR PHOTOGRAPHED AT LEAST 24 UNCONSCIOUS AND

14   NUDE OR PARTIALLY NUDE WOMEN, SOME OF WHOM ARE NOT MENTIONED

15   IN THIS PLEA AGREEMENT OR STATEMENT OF FACTS, AND THAT

16   DURING THIS SAME TIME FRAME HE TOUCHED THE BREASTS,

17   BUTTOCKS, GROIN AREA AND/OR GENITALIA OF NUMEROUS WOMEN,

18   SOME OF WHOM HE RECORDED AND PHOTOGRAPHED AND SOME OF WHOM

19   ARE MENTIONED IN THIS AGREEMENT.  RAYMOND ENGAGED IN THIS

20   CONDUCT WHILE THE WOMEN WERE INCAPABLE OF APPRAISING THE

21   NATURE OF THE CONDUCT.

22         THE WOMEN WHO HAVE BEEN INTERVIEWED REPORTED

23   COMMONALITIES IN THEIR CONTACT WITH RAYMOND, INCLUDING

24   RAYMOND'S PROVISION AND/OR PREPARATION OF ALCOHOLIC

25   BEVERAGES AND THEIR SUBSEQUENT MEMORY LOSS.

1    NONE OF THE WOMEN CONSENTED TO BEING TOUCHED WHILE

2    UNCONSCIOUS AND/OR ASLEEP AND NONE OF THEM CONSENTED TO

3    RAYMOND'S PHOTOGRAPHING AND RECORDING OF THEM IN THAT STATE.

4    THE COURT:  IF YOU COULD IN SUMMARY FORM INDICATE

5    WHAT EVIDENCE YOU HAVE AS TO THE ELEMENTS OF THE OFFENSE.

6    MS. PERRY:  THANK YOU, YOUR HONOR.

7    FOR COUNT 1, SEXUAL ABUSE OF ADULT VICTIM 7, THE

8    FIRST ELEMENT IS THAT THE DEFENDANT KNOWINGLY ENGAGED IN A

9    SEXUAL ACT WITH ADULT VICTIM 7.  THAT ACT WAS CONTACT

10   BETWEEN THE DEFENDANT'S PENIS AND ADULT VICTIM 7'S VULVA;

11   AND THE DEFENDANT REPORTED TO A FRIEND THAT HE HAD SEX WITH

12   ADULT VICTIM 7.  HE ALSO REPORTED TO THE GOVERNMENT THAT

13   HE'D HAD SEX WITH A WOMAN ON THE NIGHT THAT ADULT VICTIM 7

14   WAS AT HIS APARTMENT.

15   AT THE TIME OF THE SEXUAL -- I'M SORRY.  THE NEXT

16   ELEMENT IS THAT AT THE TIME OF THE SEXUAL ACT, THE DEFENDANT

17   KNEW OR HAD REASON TO KNOW THAT ADULT VICTIM 7 WAS INCAPABLE

18   OF APPRAISING THE NATURE OF THE CONDUCT OR PHYSICALLY

19   INCAPABLE OF DECLINING PARTICIPATION IN OR COMMUNICATING AN

20   UNWILLINGNESS TO ENGAGE IN THE SEXUAL ACT.

21   HERE, THE DEFENDANT SERVED HER SEVERAL DRINKS.  HE

22   OBSERVED HER VOMITING IN THE BATHROOM PRIOR TO THE SEXUAL

23   ACT.  HE WAS IN THE BATHROOM WITH HER, STROKING HER HAIR.

24   SHE HAD VOMIT ON HER CLOTHING.  ADULT VICTIM 7'S UNCONSCIOUS

25   STATE AS REFLECTED IN THE PHOTOS SHOWS THAT SHE WAS

1    INCAPABLE OF APPRAISING THE NATURE OF THE CONDUCT.  AND

2    ADULT VICTIM 7 HAS REPORTED HERSELF THAT SHE HAS NO MEMORY

3    OF CONSENT OR UNDRESSING AND ONLY ONE FRAGMENTED MEMORY OF

4    BEING FACEDOWN ON A BED WITH RAYMOND GRABBING HER BREAST,

5    BUT NO MEMORY OF INTERCOURSE.

6            THE SEXUAL ACT OCCURRED WITHIN THE SPECIAL

7    MARITIME AND TERRITORIAL JURISDICTION OF THE UNITED STATES.

8    RAYMOND LIVED IN EMBASSY-LEASED HOUSING; AND 18 USC 7(9)(B)

9    STATES THAT RESIDENCES IN FOREIGN STATES, IRRESPECTIVE OF

10   OWNERSHIP, USED FOR THE PURPOSES OF THOSE MISSIONS OR

11   ENTITIES, OR USED BY UNITED STATES PERSONNEL ASSIGNED TO

12   THOSE MISSIONS AND ENTITIES, ARE SUBJECT TO THE JURISDICTION

13   OF THE UNITED STATES.

14           HERE, THERE ARE LEASE DOCUMENTS PROVIDED BY THE

15   EMBASSY SHOWING THE LONG-TERM LEASE FOR RAYMOND'S RESIDENCE.

16   THE EMBASSY PROVIDED SECURITY FOR THE BUILDING.  HOUSING

17   DOCUMENTS WERE PROVIDED BY THE EMBASSY SHOWING RAYMOND WAS

18   ASSIGNED TO THAT PARTICULAR RESIDENCE, AND ALL OF THE OTHER

19   BUILDING OCCUPANTS WERE EMBASSY EMPLOYEES.

20           WOULD YOU LIKE ME TO GO ON TO COUNT 2?

21           THE COURT:  JUST GO THROUGH THEM AND THEN I'LL

22   TALK TO THE DEFENDANT.

23           MS. PERRY:  I'M SORRY.  I COULDN'T HEAR YOU.

24           THE COURT:  MOVE ON TO COUNT 2.

25           MS. PERRY:  THANK YOU.

```
1              COUNT 2, SEXUAL ABUSE OF ADULT VICTIM 9:  THE

2    DEFENDANT KNOWINGLY ENGAGED IN A SEXUAL ACT WITH ADULT

3    VICTIM 9; THAT IS, CONTACT BETWEEN THE DEFENDANT'S PENIS AND

4    ADULT VICTIM 9'S VULVA.  THE DEFENDANT REPORTED TO A FRIEND

5    THAT HE HAD HAD SEXUAL INTERCOURSE WITH ADULT VICTIM 9.

6              AT THE TIME OF THE SEXUAL ACT, THE DEFENDANT KNEW

7    OR HAD REASON TO KNOW THAT ADULT VICTIM 9 WAS INCAPABLE OF

8    APPRAISING THE NATURE OF THE CONDUCT OR PHYSICALLY INCAPABLE

9    OF DECLINING PARTICIPATION IN OR COMMUNICATING AN

10   UNWILLINGNESS TO ENGAGE IN THE SEXUAL ACT.

11             HERE, THE DEFENDANT SERVED HER SEVERAL DRINKS.

12   SHE IS SEEN THAT NIGHT IN AN UNCONSCIOUS, NAKED STATE, AS

13   REFLECTED IN THE PHOTOGRAPHS.  HE MANIPULATED HER BODY.

14   ADULT VICTIM 9 HAS NO MEMORY OF CONSENT, UNDRESSING OR THE

15   SEXUAL ACT.

16             AND AGAIN, THE SEXUAL ACT OCCURRED WITHIN THE

17   SPECIAL MARITIME AND TERRITORIAL JURISDICTION OF THE UNITED

18   STATES IN RAYMOND'S EMBASSY-LEASED APARTMENT IN MEXICO.

19             THE COURT:  SO IS THIS ONE IN TERMS OF THE

20   ENGAGEMENT OF IT -- IT'S THE REPORT TO THE FRIEND IN THE

21   PHOTOGRAPHS IN TERMS OF ELEMENT 1?

22             MS. PERRY:  HE REPORTED TO A FRIEND THAT HE HAD

23   HAD SEXUAL INTERCOURSE WITH ADULT VICTIM 9.

24             THE COURT:  THAT'S THE SAME THING THAT WE HAVE FOR

25   ADULT VICTIM 7; IS THAT CORRECT?
```

```
 1              MS. PERRY:  THAT'S CORRECT.

 2              THE COURT:  OKAY.

 3              MS. PERRY:  COUNT 3, TRANSPORTATION OF OBSCENE

 4      MATERIAL:  THE FIRST ELEMENT IS THE DEFENDANT KNOWINGLY

 5      BROUGHT INTO THE UNITED STATES OR ANYPLACE SUBJECT TO THE

 6      JURISDICTION OF THE UNITED STATES OBSCENE PHOTOGRAPHS AND

 7      VIDEOS OR KNOWINGLY USED A COMMON CARRIER OR INTERACTIVE

 8      COMPUTER SERVICE FOR CARRIAGE OF OBSCENE PHOTOGRAPHS AND

 9      VIDEOS IN INTERSTATE OR FOREIGN COMMERCE.

10              HERE, WE HAVE EVIDENCE THAT THE DEFENDANT BROUGHT

11      ON HIS PHONE, LAPTOPS, THUMB DRIVES, MACBOOK INTO THE UNITED

12      STATES PHOTOS AND VIDEOS OF THESE VICTIMS.  WE ALSO HAVE

13      EVIDENCE THAT VICTIMS 2 THROUGH 18 WERE FOUND ON HIS ICLOUD

14      ACCOUNT, SHOWING THAT HE USED AN INTERACTIVE COMPUTER

15      SERVICE FOR CARRIAGE OF THOSE PHOTOS AND VIDEOS IN

16      INTERSTATE OR FOREIGN COMMERCE.

17              THE SECOND ELEMENT IS THAT THE DEFENDANT KNEW THE

18      GENERAL NATURE OF THE CONTENTS OF THE PHOTOGRAPHS AND VIDEOS

19      AT THE TIME OF SUCH TRANSPORTATION.  HERE, RAYMOND CREATED

20      THE PHOTOS AND VIDEOS HIMSELF.  HE KEPT POSSESSION OF THEM

21      FOR AN EXTENDED PERIOD OF TIME AND HE KNEW WHAT THEY

22      DEPICTED AT THE TIME THAT HE TRANSPORTED THEM.

23              FINAL, THE PHOTOGRAPHS AND VIDEOS ARE OBSCENE IN

24      THAT THEY APPEAL TO PRURIENT INTERESTS, DEPICT SEXUAL

25      CONDUCT IN A PATENTLY OFFENSIVE WAY AND, TAKEN AS A WHOLE,
```

1    LACK SERIOUS LITERARY, ARTISTIC, POLITICAL OR SCIENTIFIC

2    VALUE.

3           IN TERMS OF THE FIRST, APPEAL TO PRURIENT

4    INTEREST:  THESE DEPICTIONS WERE TAKEN WITHOUT THE VICTIMS'

5    KNOWLEDGE OR CONSENT AND THEY WERE DEPICTED UNCONSCIOUS AND

6    FULLY OR PARTIALLY NUDE WITHOUT THEIR KNOWLEDGE OR CONSENT.

7           THE DEFENDANT'S INTEREST IN RECORDING AND TOUCHING

8    OF UNCONSCIOUS WOMEN REPRESENTS A DEGRADING AND UNHEALTHY

9    INTEREST DISTINGUISHABLE FROM MERE INTEREST IN SEX OR

10   SEXUALLY EXPLICIT MATERIALS.  THEY ALSO SHOW CLOSEUPS OF

11   GENITALS AND BREASTS.

12          IN TERMS OF DEPICTING SEXUAL CONDUCT IN A PATENTLY

13   OFFENSIVE WAY, THE NONCONSENSUAL PHOTOS AND VIDEOS OF

14   UNCONSCIOUS NUDE WOMEN EXCEEDS THE LIMITS OF PUBLIC

15   TOLERANCE TO THE POINT THAT IT IS CLEARLY OFFENSIVE.

16          AND THERE IS A LACK OF SERIOUS LITERARY, ARTISTIC,

17   POLITICAL OR SCIENTIFIC VALUE.  HERE, THESE PHOTOS WERE

18   CREATED BY RAYMOND FOR HIS OWN CONSUMPTION AND HAD NO

19   PERCEIVABLE VALUE.

20          THE COURT:  MR. RAYMOND, DO YOU AGREE WITH

21   EVERYTHING THAT HAS BEEN STATED IN THE STATEMENT OF FACTS?

22          THE DEFENDANT:  YES, YOUR HONOR.

23          THE COURT:  IS THERE ANYTHING THAT YOU DON'T AGREE

24   WITH?

25          THE DEFENDANT:  NO.

1            THE COURT:  COUNSEL, BEFORE I GO THROUGH THIS --

2    AND I WON'T GO THROUGH ALL OF IT, BUT PARTS OF IT -- SINCE

3    PRESUMABLY THE PHOTOGRAPHS AND THE VIDEOS WERE NOT PROVIDED

4    TO MR. RAYMOND, HOW DID YOU GO THROUGH DISCUSSING WHAT WAS

5    DEPICTED?  AND ALSO, IN TERMS OF THE PARTICULAR VICTIMS AS

6    TO WHERE THEY WERE, DATES, ET CETERA, IN TERMS OF VALIDATING

7    THAT THESE WERE CORRECT?  IF YOU'D GIVE US THE PROCESS, I'D

8    APPRECIATE IT.

9            MS. FORREST:  YES, YOUR HONOR.

10           SO THE GOVERNMENT MADE THE PHOTOS AND VIDEOS

11   AVAILABLE TO ME, AND I TOOK NOTES ON THEIR GENERAL CONTENTS.

12   THE GOVERNMENT ALSO PROVIDED THE DATES AND LOCATIONS OF --

13           THE COURT:  COULD YOU SPEAK UP A LITTLE BIT?

14   THESE MASKS ARE A PAIN.

15           MS. FORREST:  YES, YOUR HONOR.

16           THE GOVERNMENT PROVIDED FOR MY REVIEW THE PHOTOS

17   AND THE VIDEOS, WHICH I REVIEWED MYSELF AND TOOK NOTES ON

18   THEIR GENERAL CONTENT TO CONFIRM THAT THEY WERE INDEED

19   OBSCENE AND DEPICTED WHAT THE GOVERNMENT DESCRIBES.

20           THEY ALSO PROVIDED THE DATES AND LOCATIONS THAT

21   THE IMAGES AND THE VIDEOS WERE TAKEN, WHICH I EXPLAINED TO

22   MR. RAYMOND.

23           IN TERMS OF IDENTIFYING THE PARTICULAR VICTIM

24   DEPICTED IN THE PARTICULAR IMAGES, WE WERE PROVIDED WITH

25   INITIALS.  SOME OF THE VICTIMS MR. RAYMOND REMEMBERS; SOME

1    OF THEM HE DOES NOT.  BUT WE ACCEPTED THE GOVERNMENT'S

2    PROFFER OF EVIDENCE AS TO THEIR IDENTIFICATION.

3              THE COURT:  SO IF YOU HAVE THE STATEMENT OF FACTS

4    IN FRONT OF YOU, LET ME GO THROUGH IT.

5              I TAKE IT THAT BETWEEN AUGUST 21ST OF 2018 AND

6    JUNE 1ST OF 2020, YOU WERE A GOVERNMENT EMPLOYEE WORKING AT

7    THE EMBASSY IN MEXICO CITY, MEXICO.  IS THAT CORRECT?

8              THE DEFENDANT:  THAT'S CORRECT.

9              THE COURT:  AND YOU WERE LIVING IN AN APARTMENT

10   THAT HAD BEEN ASSIGNED TO YOU BY THE U.S. GOVERNMENT; IN

11   OTHER WORDS, THEY HAD LEASED IT.  IS THAT CORRECT?

12             THE DEFENDANT:  THAT'S CORRECT.

13             THE COURT:  AND IN TERMS OF YOUR KNOWING HOW LONG

14   THEY HAD LEASED IT, I ASSUME YOU'RE JUST SIMPLY ACCEPTING

15   THE DOCUMENTATION THAT WOULD HAVE BEEN PROVIDED.  IS THAT

16   CORRECT?

17             THE DEFENDANT:  YES.

18             THE COURT:  MOVING TO PAGE 2, ON MAY 31ST, 2020,

19   EVIDENTLY THERE WAS AN INCIDENT AT YOUR EMBASSY-LEASED

20   RESIDENCE IN MEXICO CITY.  AND THERE WAS AN INTERVIEW WITH

21   LAW ENFORCEMENT ON JUNE 2ND, 2020, AT WHICH TIME DID YOU

22   STATE THAT YOU HAD SEXUAL INTERCOURSE WITH AN ADULT WOMAN

23   WHO WE'LL NOW CALL AV 1 ON MAY 31ST AND THAT IT WAS

24   CONSENSUAL?  IS THAT CORRECT?

25             THE DEFENDANT:  YES.

39

```
1              THE COURT:  AND TO YOUR KNOWLEDGE, DO YOU KNOW
2    WHETHER AV 1 WAS INTERVIEWED AND INDICATED SHE HAD NO MEMORY
3    OF THE INCIDENT AND DID NOT CONSENT TO SEXUAL INTERCOURSE
4    WITH YOU?
5              THE DEFENDANT:  I DID NOT KNOW THAT ON JUNE 2ND.
6    BUT SUBSEQUENTLY, I DID GET AND HAVE THAT INFORMATION.
7              THE COURT:  AND WAS HER INFORMATION ACCURATE?  IN
8    OTHER WORDS, WAS IT CORRECT THAT SHE HAD -- WELL, THE MEMORY
9    YOU WOULDN'T KNOW.  IS IT CORRECT THAT SHE DID NOT CONSENT
10   TO SEXUAL INTERCOURSE WITH YOU?
11             MS. FORREST:  YOUR HONOR, MR. RAYMOND MAINTAINS
12   THAT THAT SEXUAL CONTACT WAS CONSENSUAL WITH AV 1.  HE'S
13   AGREEING THAT SHE HAD A DIFFERENT ACCOUNT.
14             MS. PERRY:  YOUR HONOR, HE'S ACKNOWLEDGING THAT
15   SHE REPORTED THAT SHE HAS NO MEMORY AND DID NOT CONSENT.  HE
16   HAS MAINTAINED THAT IT WAS CONSENSUAL.  SO HE'S
17   ACKNOWLEDGING THAT SHE MADE THAT STATEMENT.
18             THE COURT:  ISN'T THAT SOMEWHAT OF A PROBLEM IN
19   TERMS OF YOUR SEXUAL ABUSE AND WHAT YOU'RE INDICATING?
20             MS. FORREST:  YOUR HONOR --
21             THE COURT:  YOU HAVE IT AS KNOWINGLY ENGAGED IN A
22   SEXUAL ACT.  THE DEFENDANT KNEW OR HAD REASON TO KNOW THAT
23   SHE WAS INCAPABLE OF DETERMINING THE CONDUCT.
24             MS. PERRY:  YOUR HONOR, ADULT VICTIM 1 IS NOT THE
25   VICTIM IN EITHER CHARGED COUNT.  THESE ARE ADDITIONAL
```

1    STIPULATED FACTS THAT THE DEFENDANT IS AGREEING TO.

2            THE COURT:  OKAY.  BECAUSE THEY'RE NOT INCLUDED IN

3    1 AND 2, SO WE'RE LEAVING IT AS THESE ARE ADDITIONAL PEOPLE;

4    AND HE INDICATED IT WAS CONSENSUAL AND SHE HAS INDICATED IT

5    WAS NOT AND SHE HAS NO MEMORY.  AND WE'RE LEAVING IT AS A

6    DISPUTE.  IS THAT ACCURATE, GOVERNMENT?

7            MS. PERRY:  THAT'S CORRECT, YOUR HONOR.

8            THE COURT:  I TAKE IT AFTER MAY 31ST, 2020 -- LET

9    ME JUST MAKE A NOTE -- LAW ENFORCEMENT EXECUTED VARIOUS

10   SEARCH WARRANTS IN TERMS OF YOUR PHONE, LAPTOP, TABLETS,

11   THUMB DRIVES, MEMORY CARDS, BOTH IN YOUR APARTMENT IN MEXICO

12   CITY, YOUR PARENTS' RESIDENCE IN CALIFORNIA, TINDER AND

13   OTHER SOCIAL MEDIA ACCOUNTS, EMAIL ACCOUNTS AND ICLOUD.  IS

14   THAT CORRECT?

15           THE DEFENDANT:  THAT'S CORRECT, YOUR HONOR.

16           THE COURT:  AND LOOKING AT PARAGRAPH 3 ON PAGE 2,

17   WOULD YOU AGREE THAT THERE WERE VARIOUS SEARCHES AND THAT

18   THESE WOULD HAVE BEEN THE SEARCHES THAT WOULD HAVE BEEN

19   REFLECTED ON THE VARIOUS DATES?

20           THE DEFENDANT:  YES.  WHILE I CAN'T RECALL THE

21   SPECIFIC DATES, I BELIEVE THAT THAT IS -- PARAGRAPH 3 IS

22   ACCURATE.

23           THE COURT:  COUNSEL, WOULD YOU HAVE HAD

24   INFORMATION RELATING TO THIS?

25           MS. FORREST:  WE HAVE DISCOVERY FROM THE

1    GOVERNMENT SHOWING THAT THESE DATES ARE CORRECT, YOUR HONOR.

2            THE COURT:  OKAY.  PARAGRAPH 4:  THAT THERE WERE

3    APPROXIMATELY 487 VIDEOS AND IMAGES OF UNCONSCIOUS WOMEN IN

4    VARIOUS STATES OF UNDRESS ON YOUR VARIOUS ELECTRONIC DEVICES

5    AND IN YOUR ICLOUD ACCOUNT.  WOULD YOU AGREE WITH THAT?

6            THE DEFENDANT:  YES, YOUR HONOR.

7            THE COURT:  AND THE SEARCH WARRANTS ON YOUR

8    PHONES, WHICH WERE EXECUTED ON JUNE 6TH, 2020, THAT BETWEEN

9    MAY 31ST, 2020, WHEN THE INVESTIGATION BEGAN, AND JUNE 6TH,

10   2020, WHEN THEY EXECUTED THE SEARCH WARRANTS, YOU DELETED

11   NUMEROUS IMAGES AND VIDEOS OF UNCONSCIOUS WOMEN FROM YOUR

12   PHONE.  WOULD YOU AGREE WITH THAT?

13           THE DEFENDANT:  YES.  THAT'S CORRECT.

14           THE COURT:  YOU ALSO ATTEMPTED TO DELETE THE

15   IMAGES AND VIDEOS YOU HAD MADE OF NUDE OR PARTIALLY NUDE

16   UNCONSCIOUS WOMEN, WHICH WOULD INCLUDE IMAGES AND VIDEOS OF

17   AV 7 AND AV 9, WHO WERE THE TWO WOMEN THAT ARE CHARGED IN

18   THIS CASE, OR THE VICTIMS CHARGED IN THIS CASE, THAT HAD

19   BEEN SAVED IN YOUR ICLOUD ACCOUNT.  WOULD YOU AGREE WITH

20   THAT?

21           THE DEFENDANT:  YES, YOUR HONOR.  I AGREE.

22           THE COURT:  AND EVIDENTLY, YOU WERE UNSUCCESSFUL,

23   AND SO THE PRESERVATION REQUEST BY LAW ENFORCEMENT WAS

24   EVIDENTLY -- THEY WERE NOT DELETED.

25           SO THE EXAMINATION WOULD HAVE SHOWN THAT THE

1    MATERIALS HAD BEEN DELETED BUT HAD BEEN PRESERVED BASED ON

2    THE PRESERVATION REQUEST BY LAW ENFORCEMENT.  IS THAT YOUR

3    UNDERSTANDING, COUNSEL?

4          MS. FORREST:  YES, YOUR HONOR.

5          THE COURT:  AND THERE WAS A FORENSIC EXAMINATION

6    WHICH REVEALED THAT ON JUNE 3RD, 2020, YOU CONDUCTED THE

7    FOLLOWING INTERNET SEARCH, QUOTE:  "HOW TO SAVE PHOTOS FROM

8    ICLOUD TO ANOTHER DEVICE" AND THAT THE DATING APPLICATION

9    BUMBLE WAS DELETED FROM YOUR PHONE SOMETIME AFTER JUNE 2ND,

10   2020.

11         WOULD YOU AGREE WITH THAT?

12         THE DEFENDANT:  YES.  I AGREE.

13         THE COURT:  AND WHEN YOU WERE ASKED BY LAW

14   ENFORCEMENT ABOUT YOUR USE OF DATING APPLICATIONS, YOU

15   INDICATED YOU USED THEM VERY LITTLE, BUT YOU HAD IN FACT MET

16   MANY OF THE WOMEN THAT ARE INCLUDED IN REFERENCES IN SUCH

17   APPLICATIONS.  IS THAT ACCURATE?

18         THE DEFENDANT:  THAT'S CORRECT.

19         THE COURT:  SO BETWEEN 2006 AND 2020, WHILE

20   WORKING AS A U.S. GOVERNMENT EMPLOYEE, YOU RECORDED AND/OR

21   PHOTOGRAPHED AT LEAST 24 UNCONSCIOUS, NUDE OR PARTIALLY NUDE

22   WOMEN, WHICH WOULD BE AV 2 THROUGH AV 25.  WOULD YOU AGREE

23   WITH THAT?

24         THE DEFENDANT:  YES, YOUR HONOR.

25         THE COURT:  EVIDENTLY, THEY WERE IDENTIFIED AND

43

```
 1    INTERVIEWED, INCLUDING THE TWO VICTIMS AT ISSUE IN COUNTS 1

 2    AND 2.

 3              WOULD THE WOMEN HAVE KNOWN THAT YOU WERE RECORDING

 4    THEM WHEN THEY WERE UNCONSCIOUS, NUDE OR PARTIALLY NUDE?

 5              THE DEFENDANT:  NO, YOUR HONOR.

 6              THE COURT:  SO THEY DIDN'T CONSENT TO ANY OF THOSE

 7    RECORDINGS OR DEPICTIONS OR ANY SEXUAL CONTACT YOU MIGHT

 8    HAVE HAD WITH THEM WHILE THEY WERE IN THAT STATE.  IS THAT

 9    CORRECT?

10              MS. FORREST:  TO CLARIFY, YOUR HONOR, YOU ARE

11    ASKING ABOUT SEXUAL CONTACT WHILE THEY WERE UNCONSCIOUS?

12              THE COURT:  YES.  I'M TALKING ABOUT -- IT'S

13    PARAGRAPH 6 ON PAGE 3:  NONE OF THE WOMEN INTERVIEWED KNEW

14    THAT RAYMOND HAD RECORDED THEM IN AN UNCONSCIOUS OR NUDE OR

15    PARTIALLY NUDE STATE, NOR DID THEY CONSENT TO ANY SUCH

16    RECORDING OR DEPICTIONS OR ANY SEXUAL CONTACT WHILE IN THAT

17    STATE.

18              SO IS THAT ACCURATE?

19              THE DEFENDANT:  YOUR HONOR, MAY I HAVE A MOMENT

20    WITH MY ATTORNEY?

21              THE COURT:  SURE.

22              THE DEFENDANT:  (CONFERS WITH COUNSEL PRIVATELY.)

23              THAT'S CORRECT, YOUR HONOR.

24              THE COURT:  AND WOULD YOU AGREE THAT THE WOMEN

25    THAT ARE AT ISSUE WERE PROVIDED ALCOHOL BY YOU?
```

44

```
1              THE DEFENDANT:  YES, THEY WERE.
2              THE COURT:  DURING YOUR INTERVIEWS WITH LAW
3     ENFORCEMENT AFTER THIS INCIDENT ON MAY 31ST, 2020, YOU
4     ACKNOWLEDGE HAVING SEX WITH A WOMAN AT YOUR EMBASSY-LEASED
5     APARTMENT IN MEXICO ON MAY 30TH, 2020, WHO WAS LATER
6     IDENTIFIED AS AV 7.  IS THAT CORRECT?
7              THE DEFENDANT:  THAT'S CORRECT.
8              THE COURT:  AND AV 7 YOU KNOW IS A RESIDENT OF
9     MEXICO?
10             THE DEFENDANT:  YES.
11             THE COURT:  AND DOES SHE SPEAK PRIMARILY SPANISH
12    AND VERY LITTLE ENGLISH AND WORKS AT A CALL CENTER?  DO YOU
13    KNOW THAT?
14             THE DEFENDANT:  I WASN'T AWARE OF HER ENGLISH
15    ABILITIES, BECAUSE WE USED SPANISH.  AND GENERALLY, I KNEW
16    WHAT HER OCCUPATION WAS.
17             THE COURT:  AND HAD YOU INVITED HER TO YOUR
18    APARTMENT?
19             THE DEFENDANT:  YES, YOUR HONOR.
20             THE COURT:  AND DID YOU KNOW SHE HAD TAKEN AN UBER
21    TO GET TO YOUR APARTMENT AND DID NOT HAVE A CAR?
22             THE DEFENDANT:  I BELIEVE SO.  I DID NOT KNOW IF
23    SHE HAD A CAR OR DID NOT HAVE A CAR.
24             THE COURT:  BUT DID YOU KNOW SHE TOOK AN UBER?
25             THE DEFENDANT:  YES.
```

1    THE COURT:  AND YOU PREPARED DRINKS FOR HER IN THE

2  KITCHEN WHILE SHE WAS IN THE LIVING ROOM.  IS THAT CORRECT?

3    THE DEFENDANT:  INITIALLY, YES.  I DON'T RECALL

4  EVERY DETAIL.  BUT I BELIEVE THAT'S CORRECT.

5    THE COURT:  AND ARE YOU AWARE THAT SHE HAD -- THIS

6  IS AV 7 -- HAD TOLD YOU THAT SHE'D LOST CELL PHONE RECEPTION

7  AND WAS NOT IN A POSITION TO TEXT OR CALL OUT?

8    THE DEFENDANT:  I WAS AWARE THAT SHE WAS HAVING AN

9  ISSUE WITH AN INTERNET APPLICATION, A FOOD DELIVERY SERVICE.

10  AND I UNDERSTAND SHE WAS TRYING TO USE MY WI-FI CONNECTION,

11  BUT WAS UNSUCCESSFUL.

12    THE COURT:  AND DID AT SOME POINT SHE BECOME SICK

13  AND VOMIT IN YOUR BATHROOM?

14    THE DEFENDANT:  I BELIEVE SO.

15    THE COURT:  WELL, DO YOU KNOW OR...

16    MS. FORREST:  YOUR HONOR, MR. RAYMOND WAS ALSO

17  DRINKING ALCOHOL ON THAT NIGHT, SO HE DOES NOT HAVE A

18  PERFECT MEMORY OF THIS INCIDENT.

19    WE HAVE AGREED BASED ON THE GOVERNMENT'S PROFFERED

20  EVIDENCE AND BASED ON AV 7'S STATEMENT THAT THESE FACTS ARE

21  TRUE.  BUT HE DOES NOT HAVE A PERFECT MEMORY OF ALL OF THE

22  FACTS IN THIS PARAGRAPH.

23    THE COURT:  BUT DO YOU REMEMBER SOMEBODY -- ONE OF

24  THESE WOMEN VOMITING IN YOUR BATHROOM?

25    THE DEFENDANT:  NOT VIVIDLY.  I CANNOT RECALL

```
1    THAT.
2              THE COURT:  WELL, WERE YOU AWARE THAT AV 7 AT THIS
3    POINT WAS NOT IN A POSITION TO GIVE CONSENT?
4              MS. FORREST:  IF WE COULD HAVE ONE SECOND, YOUR
5    HONOR.
6              THE COURT:  SURE.  IT'S THE SENTENCE WHERE SHE WAS
7    INCAPABLE OF APPRAISING THE NATURE OF THE CONDUCT.  SO IN
8    OTHER WORDS, SHE WAS NOT IN A POSITION TO CONSENT OR NOT
9    CONSENT.
10             THE DEFENDANT:  (CONFERS WITH COUNSEL PRIVATELY.)
11             MS. FORREST:  YES, YOUR HONOR.  AS I SAID,
12   MR. RAYMOND DOESN'T HAVE A GOOD MEMORY OF THIS INCIDENT.  SO
13   BASED ON THE DISCOVERY THAT THE GOVERNMENT HAS PROVIDED,
14   INCLUDING THE IMAGES OF AV 7 THAT WERE TAKEN AFTER THE
15   SEXUAL INTERCOURSE OCCURRED, AS EVIDENCE OF HER INTOXICATED
16   STATE, AS WELL AS HER STATEMENT, MR. RAYMOND HAS STIPULATED
17   THAT THESE FACTS ARE CORRECT.
18             THE COURT:  SO IN ESSENCE, YOU'RE NOT DISPUTING
19   WHAT THE GOVERNMENT IS SAYING IN THIS PARAGRAPH.  WOULD THAT
20   BE A FAIR WAY OF EXPRESSING IT?
21             THE DEFENDANT:  THAT'S CORRECT.
22             THE COURT:  AND DID YOU HAVE SEXUAL INTERCOURSE
23   WITH AV 7?
24             THE DEFENDANT:  I RECALL HAVING INTERCOURSE WITH
25   HER THE FOLLOWING MORNING.
```

```
1            THE COURT:  AND DID YOU DISCUSS HAVING SEX WITH
2    HER WITH A FRIEND IN A TEXT MESSAGE THE FOLLOWING DAY?
3            THE DEFENDANT:  I BELIEVE SO.  YES.
4            THE COURT:  THE NEXT PART TALKS ABOUT THAT AV 7
5    DOESN'T RECALL ANYTHING AFTER VOMITING IN THE BATHROOM AND
6    THAT SHE WOKE UP IN YOUR BED NAKED OTHER THAN SOME
7    FRAGMENTED MEMORY.  SO OBVIOUSLY, I TAKE IT THAT -- WOULD
8    YOU AGREE THAT SHE WOKE UP THE NEXT DAY IN YOUR BED NAKED?
9            THE DEFENDANT:  YES.
10           THE COURT:  AND DO YOU HAVE ANY REASON TO DISPUTE
11   THAT SHE DOESN'T RECALL CONSENTING TO HAVING YOU TAKE OFF
12   HER CLOTHES OR TO HAVING SEX WITH YOU?
13           THE DEFENDANT:  NO.  I DON'T RECALL THOSE DETAILS
14   MYSELF, BUT I DON'T DISPUTE THEM.
15           THE COURT:  AND SHE OBSERVED A USED CONDOM WHEN
16   SHE AWOKE THE FOLLOWING MORNING.  DO YOU KNOW ANYTHING ABOUT
17   THAT?
18           THE DEFENDANT:  IF I COULD HAVE ONE MOMENT, YOUR
19   HONOR.
20           THE COURT:  SURE.
21           THE DEFENDANT:  (CONFERS WITH COUNSEL PRIVATELY.)
22           MS. FORREST:  YES.  IT'S SIMILAR AS BEFORE, YOUR
23   HONOR.  HE DOES NOT RECALL THAT.  HE DOESN'T RECALL HAVING
24   SEX WITH AV 7 THAT NIGHT.  HE ONLY RECALLS HAVING SEX WITH
25   HER THE FOLLOWING MORNING.
```

```
1              BUT BASED ON THE GOVERNMENT'S PROFFERED EVIDENCE,

2    HE'S NOT DISPUTING THAT THAT OCCURRED.

3              THE COURT:  SO IS THAT CORRECT, THAT YOU'RE NOT

4    DISPUTING IT?

5              THE DEFENDANT:  THAT'S CORRECT.

6              THE COURT:  AND SO PARAGRAPH 8 TALKS ABOUT 77

7    PHOTOGRAPHS AND FOUR VIDEOS OF AV 7 WHICH WERE RECOVERED

8    FROM YOUR ICLOUD AND MACBOOK.  I TAKE IT THAT YOUR COUNSEL

9    HAS CHECKED ON THAT AND HAS VERIFIED THAT.  IS THAT

10   ACCURATE?  SO YOU'RE ACCEPTING IT?

11             THE DEFENDANT:  THAT'S ACCURATE.

12             THE COURT:  AND THAT THE PHOTOGRAPHS AND VIDEOS

13   WERE RECORDED ON MAY 30TH, 2020, AND SHOW AV 7 NUDE AND

14   UNCONSCIOUS ON YOUR BED.  WOULD THAT BE ACCURATE?  IS THAT

15   WHAT YOU WERE TOLD BY COUNSEL?

16             THE DEFENDANT:  YES, YOUR HONOR.

17             THE COURT:  THEY ALSO INDICATE THAT IT SHOWS YOUR

18   HAND OPENING HER EYELID AND PULLING DOWN HER LOWER LIP.

19             SO I TAKE IT, COUNSEL, YOU WERE ABLE TO SEE THAT?

20             MS. FORREST:  YES, YOUR HONOR, I WAS.

21             THE COURT:  SO THAT YOU'RE NOT CONTESTING IT BASED

22   ON THAT.  IS THAT CORRECT?

23             THE DEFENDANT:  THAT'S CORRECT, YOUR HONOR.

24             THE COURT:  AND, COUNSEL, DID YOU ALSO SEE IN THE

25   VIDEO MR. RAYMOND'S FINGERS IN HER MOUTH AND SHE FLINCHES OR
```

```
1     MAKES A MOVEMENT AND HE PULLS HIS HAND BACK?  DID YOU ALSO

2     SEE THAT?

3               MS. FORREST:  YES, I DID, YOUR HONOR.

4               THE COURT:  SO BASED ON WHAT YOUR COUNSEL HAS

5     SEEN, ARE YOU ACCEPTING THAT?

6               THE DEFENDANT:  YES, YOUR HONOR.

7               THE COURT:  AND, COUNSEL, DID YOU SEE CLOSEUPS OF

8     HER BREASTS AND GENITALS?

9               MS. FORREST:  YES, I DID.

10              THE COURT:  BASED ON THAT, ARE YOU AGREEING THAT

11    THAT PHOTO SHOWED THAT?

12              THE DEFENDANT:  YES, YOUR HONOR.

13              THE COURT:  AND THEY SPECIFICALLY FOCUS ON ONE

14    PHOTO IN WHICH AV 7 IS ON HER BACK, HER LEGS TIGHTLY CLOSED;

15    AND YOU'RE STRADDLING HER BODY, KNEES AND INNER THIGHS ON

16    EITHER SIDE OF HER LEGS ON THE BED WITH AN ERECT PENIS.

17              IS THAT WHAT YOU SAW?

18              MS. FORREST:  YES, YOUR HONOR.

19              THE COURT:  BASED ON THAT, ARE YOU AGREEING TO IT?

20              THE DEFENDANT:  YES, I AM.

21              THE COURT:  NOW, IF AT SOME POINT IT'S MORE THAN

22    JUST YOUR COUNSEL AND YOU HAVE A SEPARATE MEMORY, TELL ME

23    THAT.  I'M ASSUMING BASED ON WHAT YOU SAID EARLIER THAT YOU

24    DON'T HAVE A CLEAR RECOLLECTION.  BUT IF YOU DO, INDICATE

25    THAT.
```

```
 1                  THE DEFENDANT:  I UNDERSTAND.

 2                  THE COURT:  AND I ASSUME YOU'RE AWARE THAT SHE

 3    INDICATES SHE DIDN'T CONSENT TO TAKING THE VIDEOS OR IMAGES

 4    AND WASN'T AWARE OF THEM.  SO DO YOU RECALL THE FACT THAT

 5    YOU DID NOT ASK HER IF YOU COULD TAKE VIDEOS OR IMAGES?

 6                  THE DEFENDANT:  THAT'S CORRECT.

 7                  MS. PERRY:  YOUR HONOR, MAY I ADDRESS TWO THINGS

 8    IN PARAGRAPH 7?

 9                  THE COURT:  HOLD ON.  I HAVE 7.

10                  MS. PERRY:  YOUR HONOR --

11                  THE COURT:  ON PAGE 3 OR 4?

12                  MS. PERRY:  I'M SORRY, YOUR HONOR.  PAGE 4.

13                  THE GOVERNMENT IS NOT ALLEGING THAT VICTIM 7 WAS

14    INCAPABLE OF APPRAISING THE NATURE OF THE CONDUCT THE

15    FOLLOWING MORNING.  WE ARE ALLEGING THAT THAT NIGHT THAT THE

16    PHOTOS AND VIDEOS WERE TAKEN, RAYMOND HAD SEXUAL INTERCOURSE

17    WITH ADULT VICTIM 7.

18                  THE COURT:  OKAY.  SO IF WE COULD CLARIFY, AS I

19    UNDERSTAND IT, MR. RAYMOND, YOU'RE INDICATING YOU DON'T

20    REMEMBER HAVING SEX WITH HER THAT NIGHT, BUT YOU DO REMEMBER

21    IT IN THE MORNING.  IS THAT WHAT YOU'RE SAYING?

22                  THE DEFENDANT:  THAT'S CORRECT, YOUR HONOR.

23                  THE COURT:  DO YOU REMEMBER WHEN YOU TOOK THE

24    PHOTOGRAPHS AS TO WHETHER THEY WOULD HAVE BEEN THAT NIGHT OR

25    THE NEXT MORNING?
```

```
 1              THE DEFENDANT:  THEY WERE TAKEN THAT NIGHT.

 2              THE COURT:  SO YOU'RE ACCEPTING -- ALTHOUGH YOUR

 3    RECOLLECTION IS THAT YOU HAD SEX IN THE MORNING, ARE YOU

 4    ACCEPTING BASED ON THE OTHER EVIDENCE THAT'S PRESENTED IN

 5    TERMS OF WHEN THE PHOTOGRAPHS WERE TAKEN AND HER STATEMENT

 6    THAT SEX DID OCCUR THAT NIGHT?

 7              THE DEFENDANT:  I AM IN AGREEMENT WITH HER

 8    STATEMENT THAT IT WAS PROBABLY -- IT PROBABLY OCCURRED.

 9              THE COURT:  THAT NIGHT?

10              THE DEFENDANT:  THAT'S CORRECT.

11              MS. PERRY:  THANK YOU, YOUR HONOR.

12              THE COURT:  PAGE 5, PARAGRAPH 9:  IN MARCH OF

13    2020, WHICH WOULD HAVE BEEN TWO MONTHS BEFORE AV 7, YOU SENT

14    A TEXT TO THE SAME FRIEND AND SAID YOU'D HAD SEXUAL

15    INTERCOURSE WITH VICTIM AV 9, WHO IS A RESIDENT OF MEXICO

16    AND PRIMARILY A SPANISH-SPEAKER.

17              IS THAT ACCURATE?

18              THE DEFENDANT:  THAT'S ACCURATE.  YES.

19              THE COURT:  AND DID YOU ALSO INDICATE THAT YOU HAD

20    TO PAY FOR AN UBER AND YOU WERE ANNOYED ABOUT IT, BUT YOU

21    THOUGHT IT WAS WORTHWHILE BECAUSE ULTIMATELY YOU HAD SEX

22    WITH HER?  IS THAT ACCURATE?

23              THE DEFENDANT:  YES, YOUR HONOR.

24              THE COURT:  AND YOU CONNECTED ON A DATING

25    APPLICATION AND INITIALLY MET AT A RESTAURANT ON OR ABOUT
```

```
1     MARCH 26TH, 2020, IN MEXICO CITY.  IS THAT ACCURATE?
2               THE DEFENDANT:  YES, YOUR HONOR.
3               THE COURT:  AND YOU LATER THAT DAY INVITED HER TO
4     YOUR EMBASSY-LEASED APARTMENT, WHERE YOU DRANK A LOT OF WINE
5     AND TEQUILA.  IS THAT CORRECT?
6               THE DEFENDANT:  THAT'S CORRECT.
7               THE COURT:  AND DO YOU RECALL HAVING SEXUAL
8     INTERCOURSE WITH HER ON YOUR BED?
9               THE DEFENDANT:  YES, YOUR HONOR.
10              THE COURT:  WERE YOU AWARE WHILE YOU WERE HAVING
11    SEX WITH HER THAT SHE WOULD BE CAPABLE OF GIVING CONSENT OR
12    NOT GIVING CONSENT TO THE SEX?
13              THE DEFENDANT:  MAY I HAVE ONE MOMENT, PLEASE?
14              THE COURT:  SURE.
15              THE DEFENDANT:  THANK YOU.
16              (CONFERS WITH COUNSEL PRIVATELY.)
17              MS. FORREST:  YES, YOUR HONOR.  HE'S AGREED THAT
18    SHE WAS IN A STATE WHERE SHE WAS INCAPABLE OF APPRAISING THE
19    NATURE OF THE CONDUCT.  THE STATEMENT OF FACTS DOES NOT
20    REFLECT CONSENT OR NONCONSENT.
21              THE COURT:  THAT'S MY READING OF IT, BUT I'M
22    PERFECTLY HAPPY TO GO ALONG WITH "INCAPABLE OF APPRAISING
23    THE NATURE OF THE CONDUCT," WHICH I ASSUME IF SHE COULD NOT
24    APPRAISE IT, SHE WOULDN'T BE ABLE TO CONSENT.  BUT I'M
25    WILLING TO HAVE THE LANGUAGE "INCAPABLE OF APPRAISING THE
```

1    NATURE OF THE CONDUCT."

2           HOW WOULD YOU DEFINE WHAT THAT MEANS TO YOU,

3    MR. RAYMOND?

4           THE DEFENDANT:  IT SHOULD NOT HAVE HAPPENED.

5           THE COURT:  WELL, DOES IT MEAN THAT SHE KNEW WHAT

6    WAS GOING ON?

7           THE DEFENDANT:  WELL, WE WERE BOTH INTOXICATED AND

8    MY JUDGMENT WAS IMPAIRED, AND I DON'T BELIEVE WE SHOULD HAVE

9    HAD THE SEXUAL INTERCOURSE.

10          THE COURT:  BUT THE QUESTION IS WHAT STATE THE

11   VICTIM WAS IN IN TERMS OF WHETHER OR NOT SHE WAS IN A

12   POSITION TO DECIDE THAT THAT'S THE CONDUCT SHE WANTED TO

13   ENGAGE IN.

14          THE DEFENDANT:  I UNDERSTAND.  CAN YOU PLEASE GIVE

15   ME ONE MOMENT?

16          THE COURT:  SURE.

17          THE DEFENDANT:  THANK YOU.

18          (CONFERS WITH COUNSEL PRIVATELY.)

19          MS. FORREST:  YOUR HONOR, MR. RAYMOND IS AGREEING

20   THAT, BASED ON THE AMOUNT OF ALCOHOL THAT AV 9 CONSUMED,

21   BASED ON THE IMAGES OF HER TAKEN AFTER THEIR SEXUAL

22   INTERCOURSE, THAT -- AND HER STATEMENT, GIVEN THE EVIDENCE,

23   THAT SHE MUST HAVE BEEN INCAPABLE OF APPRAISING THE NATURE

24   OF THE CONDUCT AT THE TIME THE INTERCOURSE OCCURRED.

25          THE COURT:  WOULD YOU AGREE WITH THAT STATEMENT,

1    MR. RAYMOND?

2              THE DEFENDANT:  YES, I WOULD.

3              MS. PERRY:  YOUR HONOR, MAY WE HAVE A BRIEF MOMENT

4    TO SPEAK WITH DEFENSE COUNSEL?

5              THE COURT:  SURE.

6              (COUNSEL CONFER PRIVATELY OFF THE RECORD.)

7              THE COURT:  ANYTHING WE WANT TO ADDRESS AT THIS

8    POINT?

9              MS. FORREST:  YOUR HONOR, IF I COULD HAVE ONE

10   MOMENT TO CONSULT WITH MY CLIENT, I THINK WE CAN MOVE

11   FORWARD.

12             THE COURT:  NO PROBLEM.  TAKE YOUR TIME.

13             MS. FORREST:  (CONFERS WITH DEFENDANT PRIVATELY.)

14             THE DEFENDANT:  YOUR HONOR, FOR PARAGRAPH 9, THE

15   STIPULATION THAT SHE WAS INCAPABLE OF APPRAISING THE NATURE

16   OF THE CONDUCT, BASED ON THE AMOUNT OF ALCOHOL THAT WAS

17   CONSUMED, THAT IS TRUE.

18             MS. PERRY:  AND THE GOVERNMENT WOULD JUST CLARIFY

19   THAT MR. RAYMOND IS SAYING THAT HE STIPULATES THAT, BASED ON

20   THE AMOUNT OF ALCOHOL, HE WOULD HAVE KNOWN AT THAT TIME THAT

21   SHE WAS UNABLE TO APPRAISE THE NATURE OF THE CONDUCT.

22             THE COURT:  WELL, ALTHOUGH YOU INDICATE THAT YOU

23   ALSO HAD BEEN CONSUMING ALCOHOL.  BUT ARE YOU AGREEING THAT

24   YOU WERE NOT SO IMPAIRED THAT YOU DIDN'T REALIZE THAT SHE

25   WAS NOT IN A POSITION TO AGREE OR NOT AGREE TO SEX?

 1              THE DEFENDANT:  THAT'S CORRECT.

 2              THE COURT:  I TAKE IT THAT SHE WAS IN YOUR BED

 3     NAKED THE NEXT MORNING AND THAT SHE DID NOT CONSENT TO YOUR

 4     TAKING OFF HER CLOTHING OR HAVING ANY KIND OF SEXUAL

 5     INTERCOURSE.  IS THAT CORRECT?

 6              THE DEFENDANT:  IF YOU'D GIVE ME ONE MOMENT,

 7     PLEASE, YOUR HONOR.

 8              THE COURT:  SURE.

 9              THE DEFENDANT:  THANK YOU.

10              (CONFERS WITH COUNSEL PRIVATELY.)

11              THANK YOU, YOUR HONOR.  YES.  THAT'S CORRECT.  I

12     DO RECALL HER WAKING UP IN BED NAKED THE FOLLOWING MORNING.

13     AND I DON'T RECALL THE SPECIFIC DETAILS OF THE INTERCOURSE.

14     AND SO THE REST OF THE INFORMATION IS BASED ON HER

15     STATEMENT, WHICH I STIPULATE AS ACCURATE.

16              THE COURT:  PARAGRAPH 10:  EVIDENTLY, THERE ARE 20

17     PHOTOGRAPHS AND 15 VIDEOS OF AV 9 THAT WERE TAKEN AT YOUR

18     APARTMENT IN MEXICO CITY ON MARCH 26TH, 2020.  YOU OBVIOUSLY

19     HAVE NOT SEEN THESE.

20              SO, COUNSEL, IS THE DESCRIPTION THAT'S IN HERE IN

21     TERMS OF AV UNCONSCIOUS, NUDE, MR. RAYMOND'S HANDS, ALL OF

22     WHAT'S RELATED IN PARAGRAPH 10, WHICH DESCRIBED WHAT IT

23     SHOWS OF HIS HANDS, WHAT IT SHOWS OF AV 9, IS ALL THAT

24     ACCURATE IN TERMS OF YOUR HAVING LOOKED AT THESE VIDEOS OR

25     PHOTOGRAPHS?

```
 1              MS. FORREST:  YES, IT IS, YOUR HONOR.

 2              THE COURT:  SO EVERY DESCRIPTION THAT'S IN HERE,

 3    WHICH IS PARAGRAPH 9 AT THE BOTTOM OF 5 AND A LITTLE BIT ON

 4    THE TOP OF 6, IS ALL ACCURATE.  IS THAT CORRECT?

 5              MS. FORREST:  THAT'S CORRECT.

 6              THE COURT:  AND, MR. RAYMOND, YOU'RE ACCEPTING

 7    YOUR COUNSEL'S STATEMENT THAT SHE'S REVIEWED THESE AND THAT

 8    IT MATCHES UP WITH THIS DESCRIPTION.  IS THAT CORRECT?

 9              THE DEFENDANT:  THAT'S CORRECT, YOUR HONOR.

10              MS. PERRY:  YOUR HONOR, MY APOLOGIES.

11              WERE YOU ABLE TO COVER THE FIRST SENTENCE OF

12    PARAGRAPH 10, THAT RAYMOND RECORDED AND TOOK THOSE PHOTOS

13    HIMSELF?  YOU MAY HAVE ASKED THAT.  I MAY HAVE MISSED THAT.

14              THE COURT:  WERE YOU THE ONE WHO ACTUALLY TOOK

15    PHOTOS AND VIDEOS OF HER?

16              THE DEFENDANT:  YES.

17              THE COURT:  PARAGRAPH 11 BASICALLY HAS THIS CHART

18    STARTING WITH AV 2 ONTO THE NEXT PAGE OF AV 25, AND IT LISTS

19    THE PHOTOS OR VIDEOS.  IT LISTS THE LOCATION AND IT LISTS

20    DATES AND INDICATES SOME OF WHAT WOULD HAVE BEEN ON THE

21    DEPICTION.

22              IF YOU COULD INDICATE, COUNSEL, DID YOU ACTUALLY

23    TAKE A LOOK AT -- HOW DID YOU VALIDATE IT FOR HIM, SINCE HE

24    WOULD NOT HAVE LOOKED AT THE PHOTOGRAPHS, THAT THERE WERE

25    THESE NUMBERS OF PHOTOGRAPHS OR VIDEOS AND THAT THEY
```

```
 1    ACTUALLY DEPICTED SOME OF THESE THINGS?  DID YOU LOOK AT

 2    THAT?

 3              MS. FORREST:  YES, I DID, YOUR HONOR.

 4              THE COURT:  AND IS THAT ACCURATE?

 5              MS. FORREST:  YES, IT IS.

 6              THE COURT:  IN TERMS OF THE LOCATION AND THE

 7    DATES, HOW DID YOU DETERMINE THAT THESE WERE ACCURATE?

 8              MS. FORREST:  FOR THE LOCATIONS AND DATES,

 9    MR. RAYMOND WAS ABLE TO CONFIRM THAT THOSE WERE THE

10    LOCATIONS HE WAS IN ON THOSE DATES.

11              AND THEN WE ACCEPTED THE GOVERNMENT'S PROFFER OF

12    EVIDENCE THAT THE IMAGES WERE IN FACT TAKEN ON THOSE DATES.

13              THE COURT:  IN TERMS OF THE INDIVIDUALS THAT ARE

14    LISTED, WHICH IS THIS ADULT VICTIM AND THEN THE PARTICULAR

15    NUMBER, I TAKE IT THAT THERE WOULD BE DIFFERENT WOMEN AND

16    THEY WOULD MATCH UP WITH THE REST OF THE INFORMATION ACROSS

17    THE BOARD.  IS THAT CORRECT?

18              MS. FORREST:  CORRECT.

19              THE COURT:  AND IN GENERAL, MR. RAYMOND, I KNOW

20    YOU HAVEN'T SEEN THE PICTURES AGAIN, ALTHOUGH YOU HAD TAKEN

21    THEM, AS I UNDERSTOOD IT, IN TERMS OF MATCHING ALL OF THIS

22    UP, ARE YOU ACCEPTING THAT?

23              THE DEFENDANT:  YES, I AM, YOUR HONOR.

24              THE COURT:  AND WOULD THE NUMBER OF WOMEN THROUGH

25    25 BE ACCURATE?
```

```
 1                  THE DEFENDANT:  YES.

 2                  MS. PERRY:  YOUR HONOR, WE WOULD AGAIN ASK WHETHER

 3     HE ACKNOWLEDGES TAKING THESE PHOTOS AND VIDEOS AND FROM THE

 4     BEST OF HIS MEMORY OF THESE PHOTOS AND VIDEOS THAT HE TOOK,

 5     ARE THESE DESCRIPTIONS ACCURATE?

 6                  THE COURT:  ALL RIGHT.  DO YOU AGREE THAT YOU

 7     ACTUALLY TOOK THE PHOTOS AND VIDEOS AND THAT THEY WOULD

 8     MATCH UP GENERALLY WITH THE DESCRIPTIONS THAT ARE SET OUT

 9     HERE?

10                  THE DEFENDANT:  YES, BASED ON MY UNDERSTANDING.

11     YES.  I AGREE.

12                  THE COURT:  THERE ARE CERTAIN COUNTRIES THAT ARE

13     NOT LISTED SPECIFICALLY, BUT I TAKE IT YOU KNOW WHICH ONES

14     THEY ARE.  IS THAT CORRECT?

15                  THE DEFENDANT:  THAT'S CORRECT.

16                  THE COURT:  AND IT'S ACCURATE?

17                  THE DEFENDANT:  YES.

18                  THE COURT:  PARAGRAPH 12:  IS IT CORRECT THAT THE

19     PHOTOS AND VIDEOS THAT YOU TOOK GENERALLY FOCUSED ON THE

20     VICTIMS' BREASTS AND GENITALS?  IS THAT CORRECT?

21                  THE DEFENDANT:  THAT'S CORRECT.

22                  THE COURT:  AND THAT YOU POSED THEIR BODIES AND

23     MANIPULATED THEIR EYELIDS, MOUTHS AND LIMBS AT VARIOUS

24     POINTS?

25                  THE DEFENDANT:  WITH SOME OF THEM, YES.
```

1        THE COURT:  AND WITH SOME OF THE WOMEN -- AND THEY

2   LIST CERTAIN ONES -- DO YOU RECALL WHETHER THE RECORDINGS

3   SHOW YOU TOUCHING OR CAUSING THEM TO TOUCH THEIR BREASTS,

4   GENITAL AREAS, BUTTOCKS AND INNER THIGHS?

5        THE DEFENDANT:  BASED ON WHAT I WAS ADVISED BY

6   COUNSEL, YES, THAT'S ACCURATE, IN TERMS OF --

7        THE COURT:  WELL, DO YOU HAVE AN INDEPENDENT

8   MEMORY THAT YOU WOULD HAVE DONE THIS, EVEN IF YOU DON'T

9   REMEMBER THE SPECIFIC VICTIMS?

10        THE DEFENDANT:  BASED ON THE CHART, YES.

11        THE COURT:  COUNSEL, I TAKE IT THAT YOU LOOKED AT

12   PHOTOGRAPHS OR VIDEO OF THE DEFENDANT LYING IN BED WITH AV 9

13   AND 11, WHICH ARE NUDE, AND THEY APPEAR TO BE UNCONSCIOUS.

14   IS THAT CORRECT?

15        MS. FORREST:  THAT'S CORRECT.

16        JUST TO CLARIFY, THOSE WERE ON DIFFERENT

17   OCCASIONS.  HE WASN'T LYING WITH BOTH OF THOSE WOMEN

18   SIMULTANEOUSLY, BUT HE DID THAT WITH EACH OF THOSE WOMEN ON

19   SEPARATE OCCASIONS.

20        THE COURT:  DID YOU ASK ANY OF THESE WOMEN WHETHER

21   THEY WERE WILLING TO BE RECORDED OR PHOTOGRAPHED NUDE?

22        THE DEFENDANT:  NO, YOUR HONOR.

23        THE COURT:  AND DID YOU ASK THEM WHETHER THEY

24   WOULD ALLOW YOU TO TOUCH THEM IN ANY WAY WHILE THEY WERE NOT

25   FULLY CONSCIOUS?

```
 1                    THE DEFENDANT:  NO.

 2                    THE COURT:  13 TALKS ABOUT WHETHER THE PHOTOS AND

 3     VIDEOS WHICH YOU RECORDED OF THESE VARIOUS VICTIMS THAT ARE

 4     SET OUT THERE, WHETHER IT'S OBSCENE MATERIALS IN TERMS OF

 5     THEIR PRURIENT INTEREST AND THE FACT THAT YOU TOOK THEM FOR

 6     YOUR OWN SEXUAL GRATIFICATION AND NOT FOR SOME SORT OF OTHER

 7     REASON.  WOULD YOU AGREE WITH THAT?

 8                    THE DEFENDANT:  YES, YOUR HONOR.  I AGREE.

 9                    THE COURT:  AND DID YOU ALSO KNOWINGLY UPLOAD

10     THESE OBSCENE RECORDINGS AND IMAGES TO YOUR ICLOUD ACCOUNT

11     AND INTERACTIVE COMPUTER SERVICE THROUGH SERVERS IN THE

12     UNITED STATES?

13                    THE DEFENDANT:  YES, I DID.

14                    THE COURT:  AND AT THE TIME THAT YOU IMPORTED AND

15     UPLOADED THEM, DID YOU KNOW THAT THE VIDEOS AND IMAGES YOU

16     HAD MADE WERE SEXUALLY ORIENTED IN NATURE?

17                    THE DEFENDANT:  YES, I DID.

18                    MS. PERRY:  YOUR HONOR, I WOULD NOTE THIS

19     PARAGRAPH ALSO ESTABLISHES THAT, IN ADDITION TO UPLOADING,

20     THAT RAYMOND TRANSPORTED SOME OF THESE ITEMS ON HIS

21     ELECTRONIC DEVICES INTO THE UNITED STATES AS WELL.

22                    THE COURT:  WELL, THAT'S THE SERVERS INTO THE

23     UNITED STATES.  RIGHT?

24                    MS. PERRY:  YOUR HONOR, SOME WERE UPLOADED TO THE

25     ICLOUD AND SOME WERE BROUGHT IN ON ELECTRONIC DEVICES.  AND
```

1    THERE IS SOME OVERLAP BETWEEN THE TWO.

2              THE COURT:  OKAY.  WELL, WHERE DOES IT SAY THAT HE

3    BROUGHT THEM OTHER THAN THROUGH --

4              MS. PERRY:  RIGHT BELOW THE SERIOUS LITERARY,

5    ARTISTIC, POLITICAL, OR SCIENTIFIC VALUE, THERE IS A

6    SENTENCE SAYING HE KNOWINGLY IMPORTED THESE PHOTOS,

7    TRANSPORTING THEM ON HIS ELECTRONIC DEVICES.

8              THE COURT:  SO IS THAT CORRECT, THAT FROM 2006 TO

9    JUNE OF 2020 YOU IMPORTED THESE PHOTOS AND VIDEOS INTO THE

10   UNITED STATES, TRANSPORTING THEM ON YOUR OWN ELECTRONIC

11   DEVICES?  IS THAT CORRECT?

12             THE DEFENDANT:  THAT'S CORRECT.  IF THEY WERE ON

13   MY PERSONAL DEVICES WHEN I TRAVELED, THEY WOULD HAVE BEEN

14   WITH ME AT THE TIME, AND SO BY DEFAULT ENTERING THE UNITED

15   STATES.

16             THE COURT:  PARAGRAPH 14 I SORT OF SEE AS A

17   SUMMARY.  DO YOU STIPULATE AND AGREE -- IN OTHER WORDS, DO

18   YOU AGREE THAT IT'S CORRECT -- THAT FROM 2006 TO 2020,

19   INCLUDING THE SPECIFIC DATES ON THE CHART, THAT YOU RECORDED

20   AND/OR PHOTOGRAPHED AT LEAST 24 UNCONSCIOUS AND NUDE OR

21   PARTIALLY NUDE WOMEN?

22             THE DEFENDANT:  YES, I DO.

23             THE COURT:  ALTHOUGH SOME OF THEM ARE NOT IN THE

24   PLEA AGREEMENT, THAT AT THE TIME YOU TOUCHED THE BREASTS,

25   BUTTOCKS, GROIN AREA AND/OR GENITALIA OF NUMEROUS OF THESE

1   WOMEN, AND SOME OF WHICH YOU RECORDED AND/OR PHOTOGRAPHED

2   AND SOME OF WHICH ARE MENTIONED IN THIS AGREEMENT.  IS THAT

3   ACCURATE?

4        THE DEFENDANT:  THAT'S ACCURATE.

5        THE COURT:  AND YOU ENGAGED IN THIS CONDUCT WHILE

6   THE WOMEN WERE INCAPABLE OF APPRAISING THE NATURE OF THE

7   CONDUCT THEY WERE ENGAGING IN?

8        THE DEFENDANT:  THAT'S CORRECT.

9        THE COURT:  AND EVIDENTLY, THE WOMEN WHEN THEY

10  WERE INTERVIEWED REPORTED COMMONALITIES IN TERMS OF YOUR

11  PROVIDING OR PREPARING ALCOHOLIC BEVERAGES AND, FROM THEIR

12  PERSPECTIVE, A SUBSEQUENT MEMORY LOSS.

13        YOU'VE AGREED TO THE PREPARATION OF ALCOHOLIC

14  BEVERAGES.  IS THAT CORRECT?

15        THE DEFENDANT:  YES; PROVISION OR PREPARATION.

16        THE COURT:  AND WOULD YOU AGREE THAT NONE OF THE

17  WOMEN CONSENTED TO BEING TOUCHED WHILE THEY WERE ASLEEP OR

18  UNCONSCIOUS?  IS THAT CORRECT?

19        THE DEFENDANT:  THAT'S CORRECT.

20        THE COURT:  AND NONE OF THEM CONSENTED TO YOUR

21  PHOTOGRAPHING AND RECORDING THEM IN THAT STATE.  IS THAT

22  CORRECT?

23        THE DEFENDANT:  THAT'S CORRECT.

24        THE COURT:  IN TERMS OF THE ELEMENTS OF THE

25  OFFENSE, YOU'VE INDICATED THAT YOU KNOWINGLY ENGAGED IN

1    SEXUAL ACTS WITH VICTIM 7 AS WELL AS VICTIM 9.  YOU ALSO

2    REPORTED IT TO A FRIEND, AND YOU'VE AGREED TO IT.

3              AND YOU'VE INDICATED -- YOU'VE AGREED THAT AT THE

4    TIME OF THE SEXUAL ACT, YOU HAD REASON TO KNOW THE VICTIM

5    WAS INCAPABLE OF APPRAISING THE NATURE OF THE CONDUCT OR

6    COMMUNICATING IN SOME WAY WHETHER THE PERSON WAS WILLING TO

7    PARTICIPATE -- YOU'VE ALREADY INDICATED THAT IN TERMS OF THE

8    DRINKS -- AND THE PHOTOGRAPHS AND THE FACT THAT -- WHICH

9    WOULD DEPICT PEOPLE THAT APPEARED TO BE NOT CONSCIOUS AND

10   THEIR INDICATION THAT THEY HAD NO MEMORY, WHICH YOU HAVE NOT

11   CHALLENGED.

12             AS TO THE SEXUAL ACTS, WHICH WOULD HAVE BEEN SHOWN

13   EITHER ON VARIOUS OF THE RECORDINGS, AND THE SEXUAL ACT

14   OCCURRED WITHIN THE SPECIAL MARITIME AND TERRITORIAL

15   JURISDICTION OF THE UNITED STATES, YOU WERE LIVING IN AN

16   OFFICIAL EMBASSY RESIDENCE THAT HAD BEEN LEASED, AND THERE

17   ARE LEASE DOCUMENTS.

18             SO I'LL FIND AT TO COUNTS 1 AND 2 --

19             MS. PERRY:  YOUR HONOR, I APOLOGIZE, YOUR HONOR.

20   FOR COUNT 1, I JUST WANT TO MAKE SURE THE RECORD IS CLEAR

21   ABOUT MR. RAYMOND'S KNOWLEDGE OF HER INABILITY TO APPRAISE

22   THE NATURE OF THE CONDUCT AT THE TIME OF THE ACT IN THE SAME

23   WAY THAT WE ASKED ABOUT VICTIM 9.

24             THE COURT:  I THOUGHT I HAD ASKED THAT, BUT I'LL

25   ASK IT AGAIN.  WE'RE TALKING ABOUT AV 7, WHICH IS COUNT 1:

1    AT THE TIME OF THE SEXUAL ACT, YOU HAD REASON TO KNOW OR

2    KNEW THAT THAT PERSON, THAT WOMAN, WAS INCAPABLE OF

3    APPRAISING THE NATURE OF THE CONDUCT.  IS THAT CORRECT?

4              THE DEFENDANT:  YES, BASED ON OUR CONSUMPTION OF

5    ALCOHOL.  YES.

6              THE COURT:  AND PRESUMABLY, THE DESCRIPTION OF

7    WHAT WAS IN THE PHOTOGRAPHS.  IS THAT CORRECT?

8              THE DEFENDANT:  THAT'S CORRECT.  BUT THAT WOULD

9    HAVE FOLLOWED IF INTERCOURSE HAD OCCURRED BASED ON MY

10   RECOLLECTION.

11             MS. FORREST:  YOUR HONOR, IF I JUST MIGHT CLARIFY

12   ONE THING YOU SAID A MOMENT AGO:  THE SEXUAL ACTS WITH AV 7

13   AND AV 9, WHICH ARE DEFINED IN THE STATUTE, AND WE'VE AGREED

14   ARE SEXUAL INTERCOURSE, THAT SEXUAL ACT WAS NOT DEPICTED IN

15   ANY OF THE PHOTOS OR VIDEOS.

16             THE COURT:  SO THERE WERE OTHER THINGS THAT WERE

17   DEPICTED, BUT THE ACTUAL SEXUAL INTERCOURSE WAS NOT?

18             MS. FORREST:  CORRECT.

19             THE COURT:  BUT AS I UNDERSTAND IT, HE HAS AGREED

20   THAT HE ENGAGED IN A SEXUAL ACT WITH BOTH AV 7 AND AV 9?

21             MS. FORREST:  CORRECT.

22             THE COURT:  AND IN COUNT 3, TRANSPORTATION OF

23   OBSCENE MATERIAL, THE DEFENDANT HAS ACKNOWLEDGED THAT HE

24   BROUGHT INTO THE UNITED STATES RECORDINGS OF ALL OF THESE

25   PHOTOGRAPHS AND VIDEOS AND THAT THEY WERE OBSCENE

1    PHOTOGRAPHS.  HE KNEW THE CONTENT OF THE PHOTOGRAPHS AND

2    VIDEOS, BECAUSE HE WAS THE PERSON WHO ACTUALLY TOOK THEM.

3    THEY WERE ON HIS LAPTOP, THUMB DRIVE, AND THEY SHOW

4    CERTAINLY AN UNHEALTHY INTEREST IN CLOSEUPS OF BREASTS AND

5    GENITALIA AND APPEARED TO HAVE NO OTHER VALUE THAN TO

6    SATISFY HIS OWN SEXUAL INTEREST.  AND THE VICTIMS WOULD HAVE

7    BEEN UNCONSCIOUS, AND SO IT'S FOR HIS OWN CONSUMPTION OR HIS

8    OWN GRATIFICATION.

9            SO I'LL FIND THAT THERE'S EVIDENCE BEYOND A

10   REASONABLE DOUBT BASED ON THE PROFFER AND ON HIS ADMISSIONS

11   TO MEET THE ELEMENTS OF THE OFFENSES OF ALL THREE COUNTS.

12            IS THERE ANY PARTICULAR DEFENSE THAT HE NEEDS TO

13   WAIVE IN THIS PARTICULAR CASE?

14            MS. FORREST:  NO.  I DON'T BELIEVE SO.

15            MS. PERRY:  ALTHOUGH, YOUR HONOR, I KNOW IT'S NOT

16   A DEFENSE, WE WOULD NOTE THAT HE'S WAIVED VENUE IN THE PLEA

17   AGREEMENT FOR SOME OF THESE OFFENSES.

18            THE COURT:  ALL RIGHT.

19            MS. PERRY:  YOUR HONOR, MAY WE HAVE ONE MOMENT TO

20   ENSURE THAT THERE'S NOTHING ELSE IN THE STATEMENT OF FACTS

21   THAT WE NEED TO CLARIFY FOR THE RECORD?

22            THE COURT:  CERTAINLY.

23            MS. PERRY:  THANK YOU.

24            THANK YOU, YOUR HONOR, JUST TWO THINGS TO MAKE

25   SURE THAT THE RECORD IS ENTIRELY CLEAR.  LET ME FIND THE

```
 1    PARAGRAPH NUMBER.  PARAGRAPH 13 ON PAGE 8.

 2             THE COURT:  HANG ON ONE SECOND.  OKAY.

 3             MS. PERRY:  WHEN YOU ASKED WHETHER HE KNOWINGLY

 4    IMPORTED THESE PHOTOS AND VIDEOS ON HIS DEVICES, HE STATED

 5    BY DEFAULT THEY WOULD HAVE BEEN ON HIS DEVICES, WHEREAS THE

 6    ELEMENTS IS THAT AT THE TIME OF THE TRANSPORT, HE KNEW THAT

 7    THEY WERE THERE.  SO WE JUST WANT TO CLARIFY THAT BY DEFAULT

 8    AND THEN WHAT HE MEANT BY THAT.

 9             THE COURT:  I'M NOT SURE WHAT -- THE CLARIFICATION

10    IS THAT HE KNEW WHEN HE WAS TRANSPORTING THEM?

11             MS. PERRY:  RIGHT.  HE KNEW THEY WERE ON HIS

12    DEVICES.

13             THE COURT:  WHEN HE TRANSPORTED THEM?

14             MS. PERRY:  YES, YOUR HONOR.

15             THE COURT:  SO CAN WE CLARIFY THAT?  IS IT CORRECT

16    THAT YOU KNEW THAT THESE VIDEOS AND PHOTOGRAPHS WERE ON YOUR

17    DEVICES WHEN YOU ACTUALLY TRANSPORTED THEM?

18             THE DEFENDANT:  YES.  WHEN I TRAVELED, I WAS AWARE

19    THAT THEY WERE THERE.

20             MS. PERRY:  THANK YOU, YOUR HONOR.

21             AND THEN JUST BACK TO VICTIM 7, PARAGRAPH 7, I

22    KNOW THE DEFENDANT --

23             THE COURT:  WHICH ONE?

24             MS. PERRY:  I'M SORRY.  PARAGRAPH 7 ON PAGE -- IT

25    STARTS ON PAGE 3, BUT GOES INTO PAGE 4.
```

```
 1              THE COURT:  OKAY.
 2              MS. PERRY:  AND I KNOW WE JUST ESTABLISHED THAT AT
 3      THE TIME MR. RAYMOND KNEW OR SHOULD HAVE KNOWN THAT SHE
 4      COULD NOT CONSENT BECAUSE OF THE AMOUNT OF ALCOHOL SHE HAD
 5      CONSUMED.
 6              WE JUST WANT TO CLARIFY THAT SEEING THE PHOTOS AND
 7      VIDEOS AFTER THE FACT COULD NOT HAVE HAD AN EFFECT ON HIS
 8      KNOWLEDGE AT THAT TIME THAT HE ENGAGED IN THE SEXUAL ACT.  I
 9      BELIEVE THERE WAS A QUESTION IMMEDIATELY AFTER THAT ABOUT
10      WHETHER HE'D SEEN THE PHOTOS AND VIDEOS.
11              THE COURT:  WELL, I GUESS PART OF IT WAS, AS I
12      UNDERSTOOD -- WELL, LET ME GO BACK.
13              I TAKE IT THAT YOU PREPARED DRINKS FOR HER.  YOU
14      HAD INDICATED THAT.  AND THEN YOU AGREED THAT YOU HAD SEXUAL
15      INTERCOURSE WITH HER.  IS THAT CORRECT?
16              THE DEFENDANT:  BASED ON THE CIRCUMSTANCES.  I
17      DON'T RECALL THAT ACTUAL ACT THAT EVENING; ONLY THE
18      FOLLOWING MORNING.  BUT I STIPULATE BASED ON HER
19      RECOLLECTION THE FOLLOWING MORNING THAT IT PROBABLY
20      OCCURRED.  BUT I CAN'T RECALL THE EVENING.  BUT I'M AGREEING
21      THAT IT OCCURRED.
22              THE COURT:  SO WHAT CLARIFICATION DO YOU WANT IN
23      TERMS OF -- SINCE HE'S INDICATED HE DOESN'T HAVE -- ARE YOU
24      GETTING IN TERMS OF THE INTERCOURSE OR THE PHOTOGRAPHS?
25              MS. PERRY:  YOUR HONOR, JUST HIS KNOWLEDGE AT THE
```

```
1    TIME OF THE SEXUAL ACT THAT SHE WAS INCAPABLE OF APPRAISING

2    THE NATURE OF THE CONDUCT.  WE JUST WANT TO BE SURE THAT THE

3    QUESTION ABOUT VIEWING HER STATE AND THE PHOTOS AND THE

4    VIDEOS LATER IN DISCOVERY, THAT THAT WOULD HAVE NOT INFORMED

5    HIS KNOWLEDGE AT THE TIME OF THE SEXUAL ACT.  AND SO

6    CLARIFYING THAT IT WAS BECAUSE OF THE NUMBER OF DRINKS THAT

7    SHE HAD.

8              THE COURT:  BECAUSE OF THE NUMBER OF DRINKS SHE

9    HAD?

10             MS. PERRY:  WELL, THAT'S WHAT HE SAID INFORMED HIS

11   KNOWLEDGE.

12             THE COURT:  WELL, INFORMED HIS KNOWLEDGE OF WHAT?

13   HE INDICATES HE DOESN'T REMEMBER IT.

14             MS. PERRY:  THAT SHE WAS TOO -- THAT SHE WAS

15   UNABLE TO APPRAISE THE NATURE OF THE CONDUCT.  HE SAID

16   EARLIER THAT AT THE TIME HE KNEW SHE COULD NOT CONSENT

17   BECAUSE OF THE NUMBER OF DRINKS SHE HAD.  AND THE GOVERNMENT

18   THINKS THAT IS SUFFICIENT TO SHOW HIS KNOWLEDGE AT THE TIME.

19   WE JUST DIDN'T WANT THE RECORD TO BE CONFUSED BY THE

20   FOLLOWING QUESTION, THAT UPON SEEING THE PHOTOS AND VIDEOS

21   IN DISCOVERY, THAT THAT HAPPENING LATER COULD NOT HAVE

22   INFORMED HIS KNOWLEDGE THAT NIGHT.

23             THE COURT:  SO LET'S GET BACK TO THAT EVENING.

24   AND AS I UNDERSTAND IT, YOU WERE AWARE OF HOW MUCH SHE WAS

25   DRINKING.  IS THAT CORRECT?
```

```
 1          THE DEFENDANT:  YES.  WE BOTH HAD BEEN DRINKING.
 2          THE COURT:  BUT LET'S FOCUS ON HER FOR A SECOND IN
 3   TERMS OF AV 7.  KNOWING HOW MUCH SHE HAD TO DRINK, WERE YOU
 4   AWARE THAT SHE WAS NOT IN A POSITION TO MAKE SOME DECISIONS
 5   ABOUT HER CONDUCT?
 6          THE DEFENDANT:  YES.
 7          THE COURT:  HER CONDUCT BEING HER SEXUAL CONDUCT
 8   OR THE SEXUAL CONDUCT THAT YOU WERE ENGAGING IN.
 9          THE DEFENDANT:  THAT'S CORRECT.
10          THE COURT:  IS THAT ENOUGH?
11          MS. PERRY:  YES.  THANK YOU, YOUR HONOR.
12          THE COURT:  NO PROBLEM.  THAT'S WHY I JUST DON'T
13   ACCEPT THEM BASED ON THEIR SIGNING IT.
14          LET'S MOVE TO THE LETTER.
15          NOW, AS I INDICATED IN TERMS OF THE LETTER, I'M
16   NOT GOING TO GO THROUGH EVERYTHING.  IF AT SOME POINT AT THE
17   END YOU WANT ME TO GO BACK AND GO THROUGH SOMETHING I DIDN'T
18   JUST BRING UP, IT TAKES -- IT'S 15 PAGES LONG.  SO I
19   ORGANIZE IT SLIGHTLY DIFFERENTLY IN MY QUESTIONS.  I'LL GO
20   THROUGH THE STATUTORY PENALTIES AND THROUGH THE SENTENCING
21   GUIDELINES AND THOSE THAT ARE INVOLVED WITH THAT, WHICH ARE
22   SOME OF THE CONSEQUENCES OF HIS PLEADING GUILTY.
23          I WILL GO THROUGH THEN AREAS THAT I NEED TO
24   DISCUSS AS PART OF THE RULE 11 INQUIRY AND I WILL ALSO BRING
25   UP AREAS THAT I THINK ARE IMPORTANT TO MAKE SURE THAT HE
```

1    UNDERSTANDS AND IS AGREEING.  BUT IF THERE'S ADDITIONAL ONES

2    THAT I DON'T GO THROUGH, JUST RAISE IT AT THE END.

3            SO IF YOU HAVE IT IN FRONT OF YOU, THIS IS GOING

4    TO BE SLIGHTLY DIFFERENT THAN THE WAY THEY'VE SET IT OUT,

5    BUT I'LL GO THROUGH THE STATUTORY PENALTIES.

6            THE IMPORTANCE ABOUT THE STATUTORY PENALTIES IS

7    THAT YOU CANNOT BE SENTENCED ABOVE THE MAXIMUMS.  THAT WOULD

8    BE CONSIDERED AN UNLAWFUL SENTENCE.

9            SO FOR EACH OF COUNTS 1 AND 2, THE MAXIMUM IS A

10   LIFE SENTENCE.  THE MAXIMUM FINE IS $250,000.  AND THERE HAS

11   TO BE AT LEAST FIVE YEARS TO LIFE FOR SUPERVISED RELEASE AND

12   THERE'S A MANDATORY RESTITUTION.

13           COUNT 3 IS A MAXIMUM OF -- FIVE YEARS' MAXIMUM OF

14   JAIL TIME, A MAXIMUM FINE OF $250,000, ONE TO THREE YEARS OF

15   SUPERVISED RELEASE AND RESTITUTION.

16           THERE'S THE $100 PER COUNT FOR THE SPECIAL

17   ASSESSMENT -- SO THAT WOULD BE FOR COUNTS 1 AND 2 -- AND

18   THEN THERE'S AN ADDITIONAL $5,000 FOR EACH OF THEM BASED ON

19   THE VICTIMS.  SO IT WOULD BE -- AND THEN AN ADDITIONAL

20   $10,000, AND THIS IS AS I UNDERSTAND IT RESTITUTION.

21           WOULD IT FALL IN THAT CATEGORY?  OR A FINE?

22   GOVERNMENT?

23           MS. PERRY:  YES, YOUR HONOR.  THE SPECIAL

24   ASSESSMENT IS, IN FACT, SEPARATE FROM THE MANDATORY

25   RESTITUTION.

1          THE COURT:  SO WHAT IS THE 5,000 EACH AND 10,000?

2    IS THAT RESTITUTION OR IS THAT -- YOU'VE AGREED HE

3    UNDERSTANDS THAT HE PAYS AN ADDITIONAL ASSESSMENT IN THE

4    AMOUNT OF 10,000, 5,000 FOR EACH OF COUNTS 1 AND 2, UNLESS I

5    FIND THAT YOU'RE INDIGENT AT THE TIME.

6          MS. PERRY:  YOUR HONOR, THE SPECIAL ASSESSMENT OF

7    $5,000 WOULD APPLY TO COUNT 1 AND 2.  THE DEFENDANT IN THIS

8    AGREEMENT HAS AGREED TO PAY $10,000 IN RESTITUTION TO

9    VICTIMS 1 THROUGH 26.

10          THE COURT:  SO THERE'S TWO THINGS:  ONE IS THE

11    ASSESSMENT OF 5,000 ON COUNTS 1 AND 2.  AND THEN THERE'S AN

12    ADDITIONAL 10,000.  THAT'S A TOTAL FOR EACH OF THE VICTIMS,

13    1 THROUGH 26.  AM I CORRECT?  OR IS IT 10,000 TO EACH ONE OF

14    THEM?

15          MS. PERRY:  IT'S 10,000 TO EACH VICTIM, 1 THROUGH

16    26.

17          THE COURT:  OKAY.  SO COUNTS 1 AND 2 IS 5,000, A

18    SPECIAL ASSESSMENT ON EACH OF THEM, UNLESS I FIND YOU'RE

19    INDIGENT, WHICH WOULD BE 10,000.

20          ADDITIONALLY, YOU'RE AGREEING TO PAY RESTITUTION

21    OF $10,000 FOR EACH OF THE VICTIMS, WHICH WOULD BE VICTIMS 1

22    THROUGH 26.

23          IS THAT CORRECT?  GOVERNMENT?

24          MS. PERRY:  YES, YOUR HONOR.

25          THE COURT:  IS THAT YOUR UNDERSTANDING IN TERMS OF

```
1    WHAT YOU UNDERSTAND ARE THE STATUTORY PENALTIES AND/OR WHAT
2    YOU'VE AGREED TO?
3              THE DEFENDANT:  YES, YOUR HONOR.
4              THE COURT:  NOW, SUPERVISED RELEASE, IF I CAN
5    EXPLAIN:  IF YOU'RE GIVEN A PERIOD OF JAIL TIME AND YOU'RE
6    GIVEN A PERIOD TO BE SUPERVISED IN THE COMMUNITY, IT'S
7    SUPERVISED RELEASE; AND THERE ARE VARIOUS CONDITIONS THAT
8    ARE SET.  USUALLY, THERE ARE REPORTING AND VARIOUS OTHER
9    CONDITIONS; OR IF YOU COMMIT A NEW CRIME, THERE COULD BE A
10   VIOLATION.
11             SO IF YOU VIOLATE YOUR SUPERVISED RELEASE
12   CONDITIONS, EITHER BECAUSE YOU DON'T FOLLOW THROUGH WITH THE
13   CONDITIONS OR YOU COMMIT A NEW CRIME, YOUR SUPERVISED
14   RELEASE CAN BE REVOKED.
15             IF IT'S REVOKED, A NEW SENTENCE IS IMPOSED.  IT'S
16   A COMBINATION OF STATUTORY AS WELL AS THE SENTENCING
17   GUIDELINES.
18             THE IMPORTANT PART IS THAT YOU WILL NOT GET CREDIT
19   FOR THE PERIOD OF TIME YOU'VE ALREADY SERVED ON THE ORIGINAL
20   SENTENCE.  IN OTHER WORDS, YOU WILL NOT GET A REDUCTION
21   BASED ON THE FACT THAT YOU'VE ALREADY SERVED A SENTENCE ON
22   THE ORIGINAL ONE.  THIS WILL BE A TOTALLY NEW SENTENCE.
23             NOW, THE COMBINATION OF THE ORIGINAL SENTENCE AND
24   THE SENTENCE UNDER SUPERVISED RELEASE CANNOT BE BEYOND THE
25   TOTAL MAXIMUM PENALTY.
```

1              DID YOU UNDERSTAND THAT?

2              THE DEFENDANT:  I UNDERSTAND THAT.

3              THE COURT:  AND YOU'RE ALSO AGREEING TO FORFEIT

4     THE ELECTRONIC DEVICES AND SOME FIREARMS.  IS THAT CORRECT?

5              THE DEFENDANT:  THAT'S CORRECT.

6              THE COURT:  AND YOU'RE ALSO AGREEING -- SEX

7     OFFENDER REGISTRATION IS MANDATORY, BUT YOU'RE AGREEING TO

8     HAVE IT BE FOR LIFE.  IS THAT CORRECT?

9              THE DEFENDANT:  THAT'S CORRECT.

10             THE COURT:  IN TERMS OF SENTENCING, IN TERMS OF

11    WHAT OCCURS, THOSE ARE THE STATUTORY MAXIMUMS.  SO I CANNOT

12    SENTENCE YOU ABOVE THOSE.  AND IT ALSO SETS OUT CERTAIN

13    THINGS I NEED TO DO BY STATUTE AND/OR THAT YOU'VE AGREED TO,

14    SUCH AS THE RESTITUTION.

15             THE COURT WILL LOOK AT FACTORS THAT ARE SET OUT BY

16    A STATUTE, WHICH IS 3553(A).  AND THEY'RE GENERAL THINGS

17    SUCH AS YOUR BACKGROUND, YOUR REHABILITATION NEEDS, THE

18    SERIOUSNESS OF THE OFFENSE, JUST PUNISHMENT, DETERRENCE TO

19    YOU, DETERRENCE TO OTHERS, THOSE KINDS OF THINGS THAT THE

20    COURT NEEDS TO LOOK AT IN DECIDING WHAT'S A FAIR AND

21    REASONABLE SENTENCE.

22             A PRESENTENCE REPORT WILL BE PREPARED BY THE

23    PROBATION OFFICE.  THEY WILL GO THROUGH AND PREPARE

24    BACKGROUND INFORMATION ABOUT YOU, WHICH WILL CONSIDER YOUR

25    PERSONAL HISTORY, EDUCATION, IF THERE'S ANY CRIMINAL

1    OFFENSES OR CRIMINAL HISTORY, WORK HISTORY, IF THERE ARE ANY

2    ISSUES RELATING TO EITHER PHYSICAL ILLNESSES, MENTAL

3    ILLNESSES OR EMOTIONAL, SUBSTANCE ABUSE ISSUES AND YOUR

4    FINANCES, TO GIVE AN EXAMPLE OF WHAT WOULD BE THE

5    BACKGROUND.

6            THEY WILL ALSO SET OUT THE OFFENSE CONDUCT.

7    GENERALLY, IT'S TAKEN FROM THE STATEMENT OF OFFENSE.  SO IT

8    WILL GO THROUGH IT CAREFULLY, SINCE THERE ARE A COUPLE OF

9    NUANCES IN HERE IN TERMS OF WHAT WOULD BE SET OUT.

10           THEY THEN WOULD DO THE CALCULATION UNDER THE

11   SENTENCING GUIDELINES, AND THAT IS THE OFFICIAL ONE.  THERE

12   IS ONE THAT'S IN THE LETTER, WHICH IS THE BEST GUESS THAT

13   THE PARTIES HAVE.  BUT THERE WILL BE ONE THAT'S DONE

14   SPECIFICALLY BY THAT ONE.

15           ONCE THE PRESENTENCE REPORT IS PREPARED, IT'LL BE

16   SHARED WITH YOU AND YOUR COUNSEL AND THE GOVERNMENT.  YOU'LL

17   HAVE AN OPPORTUNITY, BOTH SIDES, TO OBJECT.  EITHER YOU

18   DISAGREE WITH THE WAY THEY'VE DONE THE CALCULATIONS AND/OR

19   YOU DISAGREE WITH SOME FACTUAL INFORMATION THAT'S IN THERE.

20           THE PRESENTENCE REPORT WRITER WILL EITHER CHANGE

21   IT OR INDICATE IN THE REPORT WHAT THE OBJECTION WAS AND WHY

22   IT'S NOT CHANGED.

23           I WILL GET THE REPORT AT THAT POINT.  I WILL

24   RESOLVE ANY OBJECTIONS THAT HAVE NOT BEEN RESOLVED PRIOR TO

25   GOING FORWARD FOR SENTENCING.

1           SO THE NEXT THING IS LOOKING AT THE ADVISORY

2     SENTENCING GUIDELINES.  AND THERE'S TWO VERSIONS.  THERE'S

3     ONE THAT THE GOVERNMENT HAS PREPARED AND THERE'S ONE THAT

4     THE DEFENSE HAS PREPARED.

5           NOW, OBVIOUSLY, THESE WILL BE RESOLVED AT

6     SENTENCING.  THE PROBATION OFFICE WILL COME UP WITH THEIR

7     OWN VERSION OF WHAT THEY THINK IS THE APPROPRIATE ONE.

8     THERE MAY BE OBJECTIONS OR NOT TO IT.  AND THE COURT WILL

9     RESOLVE THOSE BEFORE WE GO FORWARD, SO YOU'LL KNOW WHAT THE

10    SENTENCING GUIDELINES ARE BEFORE THE SENTENCING GOES

11    FORWARD.

12          AND I THINK IT'S PROBABLY EASIEST TO TAKE A LOOK

13    AT THE GOVERNMENT'S VERSION OF WHAT THEY THINK THE ADVISORY

14    SENTENCING GUIDELINES ARE.  AND THIS IS THE OFFENSE LEVEL,

15    SO THESE ARE ALL NUMBERS.  AND THEY'RE RELATED TO SORT OF A

16    BASE OFFENSE, WHICH RELATES TO THE ACTUAL CONDUCT THAT'S AT

17    ISSUE, CRIMINAL CONDUCT, AND THEN THERE'S DIFFERENT ASPECTS

18    OF THE CONDUCT WHICH MAY ADD ADDITIONAL POINTS.

19          SO THEIR VERSION, WHICH IS AT THE BOTTOM OF PAGE 3

20    OF THE LETTER, TALKS ABOUT THE OFFENSE BEING 30 AND THEN

21    SPECIFIC CHARACTERISTICS THAT WOULD ADD ADDITIONAL POINTS

22    UNDER THE SENTENCING GUIDELINES.

23          THEY HAVE IT AS FOUR POINTS FOR AN INTOXICANT,

24    WHICH IS PRESUMABLY THE ALCOHOL; TWO POINTS FOR VULNERABLE

25    VICTIM; TWO POINTS FOR OBSTRUCTION OF JUSTICE, WHICH I

1    ASSUME RELATES TO TRYING TO DELETE THE MATERIALS; AND THEN

2    THE LARGE NUMBER OF VULNERABLE VICTIMS, WHICH IS ANOTHER TWO

3    POINTS, WHICH COMES TO 40.

4              MS. PERRY:  YOUR HONOR, TO CLARIFY --

5              THE COURT:  THAT'S COUNT 1, I THINK.  I TAKE IT

6    BACK.  YES.  COUNT 1.

7              WAS THAT THE CLARIFICATION?

8              MS. PERRY:  NO.  JUST TO CLARIFY THAT THE PLUS

9    FOUR FOR ADMINISTERING A SUBSTANCE OR INTOXICANT, THE

10   GOVERNMENT INTENDS TO ARGUE AT SENTENCING THAT IT WAS

11   SOMETHING BEYOND JUST ALCOHOL.

12             THE COURT:  SO IT'S NOT JUST THE ALCOHOL, WHICH IS

13   IN THE STATEMENT OF OFFENSE; THERE'S ADDITIONAL INFORMATION

14   YOU'D BE PROVIDING?

15             MS. PERRY:  YES, YOUR HONOR.  WE'RE ANTICIPATING A

16   CONTESTED SENTENCING HEARING ON THAT ISSUE.

17             MS. FORREST:  YOUR HONOR, IF I COULD JUST ADD, TO

18   THE EXTENT THERE NEEDS TO BE EVIDENCE ON THAT ISSUE, THE

19   PROBATION OFFICE MAY NOT BE ABLE TO RESOLVE THAT PARTICULAR

20   ENHANCEMENT UNTIL THE EVIDENCE IS PUT BEFORE THE COURT.

21             THE COURT:  WHAT THEY MAY WISH TO DO IS TO

22   INDICATE THE ALTERNATIVES.  I WOULD POINT OUT THAT IT'S NOT

23   IN THE STATEMENT OF OFFENSE, AND THEREFORE THERE WOULD HAVE

24   TO BE ADDITIONAL TESTIMONY PRESUMABLY AT SENTENCING, SO THAT

25   THEY CAN DO ALTERNATIVELY WHETHER IT MAKES ANY DIFFERENCE.

1          IT MAY BE -- I DON'T KNOW, FRANKLY, THE ANSWER AS

2     TO WHETHER ALCOHOL BY ITSELF WOULD BE THAT NUMBER OF POINTS

3     OR IT WOULD BE SOMETHING DIFFERENT IF IT WAS ONLY ALCOHOL

4     AND NOT SOMETHING ELSE.

5          MS. FORREST:  WELL, IT HAS TO BE WITHOUT THE

6     VICTIM'S KNOWLEDGE.  SO THIS OFFENDER CHARACTERISTIC REFERS

7     TO THE AGGRAVATED SEXUAL ABUSE STATUTE, WHICH WOULD REQUIRE

8     ADMINISTERING A DRUG OR INTOXICANT WITHOUT THE VICTIM'S

9     KNOWLEDGE, WHICH IS WHAT THE GOVERNMENT WOULD HAVE TO SHOW.

10          THE COURT:  SO IT WOULDN'T BE THE ALCOHOL, BECAUSE

11     OBVIOUSLY THE PERSON WAS AWARE THAT THEY WERE DRINKING.  SO

12     THAT WAS COUNT 1.

13          COUNT 2 -- THIS IS STILL THE GOVERNMENT -- BASE

14     OFFENSE OF 30.  THIS IS ADMINISTERING A SUBSTANCE THAT THE

15     VICTIM WOULD KNOW ABOUT, FOR FOUR POINTS.  VULNERABLE

16     VICTIM, TWO POINTS.  LARGE NUMBER OF VULNERABLE VICTIMS, TWO

17     POINTS.  AND TWO POINTS FOR OBSTRUCTION OF JUSTICE.

18          I'M ASSUMING YOU'RE TALKING ABOUT THE DELETING OR

19     IS IT SOMETHING ELSE?

20          MS. PERRY:  YES, YOUR HONOR.  THE DELETING.  AND

21     THE DEFENDANT HAS STIPULATED IN THIS PLEA AGREEMENT THAT

22     OBSTRUCTION OF JUSTICE APPLIES AND THAT VULNERABLE VICTIM

23     APPLIES TO VICTIM 7.

24          THE COURT:  COUNT 3 IS A BASE OFFENSE OF 10.

25     UPLOADED TO ICLOUD OR COMPARABLE USE IS AN ADDITIONAL TWO

```
 1    POINTS.  AGAIN, OBSTRUCTION OF JUSTICE, TWO POINTS, TO 14.

 2            THEN YOU DO THIS ADJUSTMENT THAT YOU NEED TO DO,

 3    WHICH GENERALLY PROBATION DOES.  BUT ANYWAY, THEY COME TO

 4    42.

 5            SO I KNOW THERE'S DISAGREEMENTS.  I'M ONLY GOING

 6    TO PUT DOWN SORT OF WHAT YOUR VERSION OF IT IS SO IT'S ON

 7    THE RECORD.

 8            SO COUNT 1 PROPOSES THAT THE BASE OFFENSE BE 30,

 9    WHICH IS THE SAME.  AND THEN THE ONLY SPECIFIC OFFENSE

10    CHARACTERISTICS THAT THE DEFENSE FEELS ARE APPROPRIATE TO BE

11    APPLIED ARE OBSTRUCTION OF JUSTICE, TWO POINTS, AND THE

12    VULNERABLE VICTIM, TWO POINTS, WHICH COMES TO 34.

13            COUNT 2:  BASE OFFENSE, 30, AND ONLY OBSTRUCTION

14    OF JUSTICE, WHICH IS AN ADDITIONAL TWO POINTS, WHICH COMES

15    TO 32.

16            COUNT 3:  BASE OFFENSE IS 10, WHICH IS THE SAME;

17    UPLOADED TO ICLOUD OR COMPARABLE USE, TWO POINTS;

18    OBSTRUCTION OF JUSTICE, TWO POINTS.  SO ACTUALLY, THAT COMES

19    OUT TO BE THE SAME AS THE GOVERNMENT'S.

20            SO HAVE YOU DISCUSSED THE VARIOUS OPTIONS -- LET

21    ME JUST ADD ON PAGE 6 THAT YOU THEN TAKE THE THREE, AND

22    THERE IS A WAY OF TAKING ADJUSTED LEVELS FOR THREE DIFFERENT

23    CALCULATIONS, WHICH COMES TO 36 FROM THE DEFENSE

24    PERSPECTIVE; AND FROM THE GOVERNMENT'S PERSPECTIVE IT WOULD

25    BE 42, IS THE OFFENSE LEVEL.
```

1              MR. RAYMOND, DID YOU TALK TO YOUR COUNSEL ABOUT

2     THE DIFFERENCES THAT ARE HERE AND DO YOU UNDERSTAND IN TERMS

3     OF WHAT AN OFFENSE LEVEL IS AND HOW THEY CALCULATED IT?

4              THE DEFENDANT:  YES, I DO, YOUR HONOR.

5              THE COURT:  SO ONCE YOU DO THE OFFENSE LEVEL AND

6     THIS CRIMINAL HISTORY -- WHICH IS CONVICTIONS, NOT ARRESTS;

7     IT DEPENDS ON THE NATURE OF THE CONVICTIONS, THE SENTENCE

8     AND HOW LONG AGO IT WAS -- MY UNDERSTANDING IS YOU HAVE

9     NONE; THEREFORE, YOU WOULD BE CRIMINAL HISTORY CATEGORY I.

10             THE GOVERNMENT'S WOULD BE BASED ON THEIR

11    CALCULATIONS.  THE JAIL SENTENCE WOULD BE BETWEEN 262 MONTHS

12    TO 327 MONTHS.  THE FINE WOULD BE $50,000 TO $500,000.

13             FROM THE DEFENDANT'S PERSPECTIVE, IT WOULD BE 135

14    TO 168 MONTHS AND THE FINE RANGE WOULD BE 35,000 TO 350,000.

15             AND THE CALCULATIONS, WHAT YOU DO IS IF YOU HAVE

16    THE CHART IN FRONT OF YOU, YOU GO GOWN THE LEFT SIDE IN

17    TERMS OF REACHING AN OFFENSE LEVEL.  YOU GO ACROSS THE TOP

18    AS TO THE CRIMINAL HISTORY, AND WHERE THEY MEET TELLS YOU

19    WHAT THE RANGE IS.

20             DID YOU DO THAT WITH YOUR COUNSEL?

21             THE DEFENDANT:  YES, YOUR HONOR.

22             THE COURT:  NOW, IN TERMS OF -- STILL TALKING

23    ABOUT THE ADVISORY SENTENCING GUIDELINES, THERE'S TWO

24    ADDITIONAL ISSUES TO BE CONSIDERED.  ONE ARE DEPARTURES,

25    WHICH IS WITHIN THE SENTENCING GUIDELINES.  THEY'RE VERY

1    NARROW.  THERE CAN BE A DEPARTURE UPWARD OR DOWNWARD,

2    BECAUSE THE SENTENCING COMMISSION HAS DECIDED THAT THEY WANT

3    SENTENCES TO BE AS UNIFORM AS POSSIBLE AMONG THE JUDICIARY,

4    AND THEY WOULD CONSIDER THE SAME FACTORS.  SO TO COME UP

5    WITH SOMETHING DIFFERENT THAT CHANGES THAT, IT HAS TO BE

6    VERY UNUSUAL.  AND THEY'RE VERY, VERY NARROW.  I DON'T KNOW

7    WHAT FRANKLY WOULD BE A DEPARTURE, PARTICULARLY IN THIS

8    CASE.  BUT JUST SO YOU'RE AWARE OF IT.

9         ALSO, THESE ARE ADVISORY; THEY'RE NOT MANDATORY.

10   AND THEREFORE, THE COURT CAN DECIDE TO SENTENCE YOU PURSUANT

11   TO A VARIANCE.  SO IT COULD NEVER BE MORE THAN THE MAXIMUMS,

12   BUT THE COURT COULD VARY UP OR DOWN.  THE COURT IS REQUIRED

13   TO GIVE A VERY SPECIFIC DELINEATION OF WHY, HAVING

14   DETERMINED WHAT THE OFFICIAL SENTENCING GUIDELINE IS AND THE

15   RANGE, WHY I'M NOT SENTENCING YOU WITHIN THAT.  BUT YOU

16   SHOULD JUST BE AWARE THAT SINCE THEY ARE NOT MANDATORY AND

17   THEY ARE ADVISORY THAT THERE IS THAT OTHER PARTICULAR

18   OPTION.

19        DID YOU AND YOUR COUNSEL TALK ABOUT THESE

20   GUIDELINES AND HOW THEY MIGHT APPLY IN YOUR PARTICULAR CASE?

21        THE DEFENDANT:  YES, YOUR HONOR.

22        THE COURT:  AND DO YOU UNDERSTAND THAT I WON'T BE

23   ABLE TO DECIDE THE GUIDELINES SENTENCE FOR YOUR CASE UNTIL

24   AFTER I GET THE PRESENTENCE REPORT, AFTER YOU, YOUR LAWYER

25   AND THE GOVERNMENT HAVE HAD AN OPPORTUNITY TO OBJECT TO THE

```
1    FACTS OR CONCLUSIONS?

2              THE DEFENDANT:  YES, I DO.

3              THE COURT:  AND THAT THE SENTENCE MAY BE DIFFERENT

4    FROM ANY ESTIMATE THAT YOUR ATTORNEY OR THE GOVERNMENT HAS?

5              THE DEFENDANT:  YES.  I UNDERSTAND THAT.

6              THE COURT:  DO YOU ALSO UNDERSTAND THAT AFTER I'VE

7    DECIDED WHAT GUIDELINE APPLIES TO YOUR CASE, I HAVE THE

8    AUTHORITY IN SOME CIRCUMSTANCES TO IMPOSE A SENTENCE THAT'S

9    MORE SEVERE OR LESS SEVERE?  AND THAT'S WHAT I TALKED ABOUT

10   IN TERMS OF THE DEPARTURES.  DO YOU UNDERSTAND THAT?

11             THE DEFENDANT:  YES, YOUR HONOR.

12             THE COURT:  LET ME GET BACK TO THE LETTER.  SO LET

13   ME GO THROUGH THE LETTER IN WHICH THERE ARE DIFFERENT

14   PARAGRAPHS.

15             PAGE 1 TALKS ABOUT THE STATUTORY PENALTIES.

16             PAGE 2 TALKS ABOUT STATUTORY PENALTIES AND THE

17   SPECIAL ASSESSMENT ON COUNTS 1 AND 2.  AND IT ALSO INDICATES

18   THAT THERE'S A MANDATORY RESTITUTION, WHICH REFLECTS YOUR

19   ROLE IN TERMS OF THE VICTIMS' LOSSES.

20             IS THERE AN EXPECTATION, GOVERNMENT, THAT IN

21   ADDITION TO HIS AGREEMENT TO THE 10,000 FOR EACH OF THE

22   VICTIMS THAT THERE WOULD BE REQUESTS FOR OTHER RESTITUTION?

23   OR IS THAT AN AGREEMENT AS TO WHAT THE RESTITUTION IS?

24             MS. PERRY:  YOUR HONOR, THE AGREEMENT IS THAT THE

25   DEFENDANT WILL PAY 10,000 TO EACH.  THIS PLEA AGREEMENT
```

1    DOESN'T BIND THE VICTIMS FROM PRODUCING EVIDENCE THAT IT

2    SHOULD BE MORE FOR THEIR SPECIFIC NEEDS.

3              THE COURT:  AS PART OF SENTENCING?

4              MS. PERRY:  CORRECT.

5              THE COURT:  SO IT'S NOT CAPPED AT THAT.  IT'S

6    CAPPED AT THAT FROM THE GOVERNMENT'S PERSPECTIVE, BUT NOT

7    NECESSARILY INDIVIDUAL VICTIMS'.  WOULD THAT BE ACCURATE?

8              MS. PERRY:  I WOULDN'T USE THE WORD "CAP."  HE'S

9    AGREED TO THAT AMOUNT FOR EACH VICTIM.  BUT IT DOESN'T BIND

10   THE VICTIMS TO --

11             THE COURT:  WELL, I'M TRYING TO -- CAN YOU ASK FOR

12   MORE?

13             MS. PERRY:  THE VICTIMS INDIVIDUALLY COULD ASK FOR

14   MORE.  THE GOVERNMENT WILL NOT -- THE VICTIMS INDIVIDUALLY

15   COULD ASK FOR MORE.  THIS PLEA AGREEMENT DOES NOT BIND THEM.

16             THE COURT:  RIGHT.  BUT IF YOU DON'T LIKE THE WORD

17   "CAP," THEN IS THAT THE CEILING?  WHAT I'M TRYING TO FIGURE

18   OUT IS, ARE YOU, THE GOVERNMENT, NOT THE VICTIMS, YOU, THE

19   GOVERNMENT, ARE YOU BINDING YOURSELF NOT TO ASK FOR MORE?

20   YOU MAY REPRESENT WHAT THE VICTIMS ARE ASKING.  BUT YOU AS

21   THE GOVERNMENT, I TAKE IT, ARE NOT ASKING FOR MORE.  AM I

22   CORRECT OR NOT?

23             MS. PERRY:  IF THE VICTIMS WERE TO MAKE A REQUEST

24   FOR MORE, WE WOULD COMMUNICATE THAT REQUEST ON THEIR BEHALF.

25             THE COURT:  RIGHT.

1          BUT I'M MAKING A DISTINCTION BETWEEN YOU, THE

2    GOVERNMENT, ASKING FOR YOU, THE GOVERNMENT, AS RESTITUTION,

3    WHICH YOU'VE AGREED I THINK IS TO CAP IT AT THE 10,000 FOR

4    EACH VICTIM.  THE VICTIMS HAVE THEIR OWN PROCESS AND THEIR

5    OWN RIGHTS, AND THEY MAY WANT MORE THAN THAT.  YOU WOULD

6    REPRESENT THEM IN THAT CAPACITY, BUT YOU'D BE REPRESENTING

7    THEM AS THE VICTIMS' REQUESTS, NOT YOUR OWN.  IS THAT

8    CORRECT?

9          MS. PERRY:  THAT'S CORRECT, YOUR HONOR.

10          THE COURT:  IS THAT YOUR UNDERSTANDING,

11    MR. RAYMOND, OR NOT?

12          THE DEFENDANT:  YES.  THAT'S MY UNDERSTANDING,

13    YOUR HONOR.

14          THE COURT:  IN TERMS OF PAGE 2, THERE WILL NOT BE

15    ANY ADDITIONAL CHARGES OTHER THAN I BELIEVE IF THERE'S

16    SOMETHING THAT INDICATES THERE'S SOME SORT OF -- THAT WOULD

17    BE DISTINCT FROM WHAT HAS BEEN SET OUT, IF IT LATER REVEALS

18    YOU WERE INVOLVED IN SOME SORT OF COMMERCIAL ACT OR MONEY

19    LAUNDERING OR SOME OTHER THING THAT WAS UNRELATED TO WHAT'S

20    SET OUT.

21          BUT AS SET OUT BY THE FACTS, THEY'VE AGREED NOT TO

22    BRING ANY OTHER CHARGES, AS I UNDERSTAND IT.  AND THERE IS

23    AN AGREEMENT THAT THEY'VE CONSULTED WITH THE U.S. ATTORNEY'S

24    OFFICE FOR THE EASTERN DISTRICT OF VIRGINIA AND THE TWO

25    OTHER -- THE NORTHERN DISTRICT OF ILLINOIS AND THE SOUTHERN

1    DISTRICT OF CALIFORNIA, THE DISTRICT OF MARYLAND.  AND SO

2    THERE WOULD NOT BE ADDITIONAL CHARGES THAT MIGHT HAVE

3    OCCURRED -- CONDUCT THAT MIGHT HAVE OCCURRED IN THEIR

4    JURISDICTIONS, BUT THEY'RE AGREEING THAT THEY WOULD NOT

5    BRING ADDITIONAL CHARGES BEYOND THE ONES THAT ARE HERE.

6              IS THAT YOUR UNDERSTANDING?

7              THE DEFENDANT:  YES, YOUR HONOR.

8              THE COURT:  AND THEN THE GUIDELINES WE TALKED

9    ABOUT, WHICH ARE ON PAGE 3.  AND I HAVEN'T GOTTEN INTO WHAT

10   THE ARGUMENTS ARE, WHICH HAVE BEEN SET OUT HERE AS TO WHY

11   EACH SIDE IS REQUESTING WHAT THEY'RE REQUESTING.  BUT 3, 4

12   SETS OUT THE DISTINCTIONS BETWEEN THE ADVISORY SENTENCING

13   GUIDELINES, THE GOVERNMENT AND THE DEFENSE.

14             AND MOVING TO PAGE 6, ACCEPTANCE OF

15   RESPONSIBILITY:  IF YOU FULLY DEMONSTRATE YOU'VE ACCEPTED

16   RESPONSIBILITY, THERE'S AN ADDITIONAL TWO-POINT REDUCTION.

17   AND THERE WOULD BE AN ADDITIONAL ONE IF THEY DECIDE TO --

18   THEY NEED TO FILE A MOTION -- THAT WOULD INDICATE THAT

19   THEY'RE WILLING TO HAVE AN ADDITIONAL ONE BASED ON THE FACT

20   THAT YOU'VE TIMELY ASSISTED THE AUTHORITIES IN RESOLVING

21   THIS CASE.

22             THE GOVERNMENT CAN SEEK DENIAL OF THIS REGARDLESS

23   OF WHAT THE OTHER AGREEMENT IS IF YOU MOVE TO WITHDRAW YOUR

24   GUILTY PLEA AFTER IT'S ENTERED OR IF THE GOVERNMENT FINDS

25   OUT YOU'VE ENGAGED IN CONDUCT WHICH THEY DIDN'T KNOW OF AT

```
1    THE TIME OF THE AGREEMENT THAT WOULD BE CONSIDERED

2    OBSTRUCTION OF JUSTICE OR ANY ADDITIONAL CRIMINAL CONDUCT.

3              DO YOU UNDERSTAND AND AGREE?

4              THE DEFENDANT:  YES, I DO.

5              THE COURT:  IT TALKS ABOUT CRIMINAL HISTORY AT THE

6    BOTTOM.

7              LET'S MOVE TO PAGE 7, WHICH TALKS ABOUT THE RANGE,

8    WHICH I WENT OVER.

9              AND THEN THE LAST PARAGRAPH, UNDER D ON PAGE 7:

10   YOU UNDERSTAND AND AGREE THAT THEY ONLY APPLY TO CONDUCT

11   THAT OCCURRED BEFORE THE EXECUTION OF THE AGREEMENT.  SO IF

12   YOU COMMIT ANY CONDUCT AFTER THIS AGREEMENT IS EXECUTED THAT

13   COULD RESULT IN AN INCREASED DEPARTURE -- AND IT COULD BE

14   OBSTRUCTION OF JUSTICE, ANY KIND OF CRIMINAL CONDUCT -- THEN

15   THEY WOULD BE FREE TO REQUEST ADDITIONAL ENHANCEMENTS TO THE

16   BASE OFFENSE LEVEL.

17             DO YOU UNDERSTAND AND AGREE?

18             THE DEFENDANT:  YES, YOUR HONOR.  I AGREE.

19             THE COURT:  AND THEN THE PARTIES ARE AGREEING THAT

20   A SENTENCE WITHIN EITHER OF THE CALCULATIONS, WHAT THE

21   GOVERNMENT HAS PUT OUT OR WHAT THE DEFENDANT, WOULD BE A

22   REASONABLE SENTENCE IN LIGHT OF THE FACTORS THAT I TALKED

23   ABOUT.

24             ARE YOU AGREEING TO THAT?

25             THE DEFENDANT:  YES, YOUR HONOR.
```

1          THE COURT:  AND YOU'RE RESERVING THE RIGHT TO SEEK

2     A SENTENCE BELOW EITHER OF THE ESTIMATED GUIDELINE RANGES

3     BASED AGAIN ON FACTORS UNDER THE STATUTE.  AND THE

4     GOVERNMENT IS RESERVING THE RIGHT TO ASK FOR ONE OF THE

5     ABOVE.

6          DO YOU UNDERSTAND AND AGREE?

7          THE DEFENDANT:  YES, I DO.

8          THE COURT:  IN TERMS OF PAGE 8, THIS IS

9     ALLOCUTION, WHICH IS RECOMMENDATIONS FOR SENTENCING:  BOTH

10    OF YOU ARE RESERVING THE RIGHT TO DESCRIBE WHAT THE CONDUCT

11    WAS IN THIS CASE, INCLUDING ANY CONDUCT NOT DESCRIBED IN THE

12    CHARGE THAT YOU'RE PLEADING GUILTY TO, BUT WOULD BE RELATED

13    TO VICTIMS 1 THROUGH 26 AS WELL AS ANY OTHER VICTIM

14    DESIGNATED IN HERE.

15         THE PARTIES ANTICIPATE AN EVIDENTIARY HEARING AT

16    SENTENCING ABOUT THE VARIOUS ENHANCEMENTS.  AND THEY ALSO

17    ARE RESERVING, BOTH OF YOU, TO BE ABLE TO OBJECT TO THE

18    PRESENTENCE REPORT.

19         IS THAT YOUR UNDERSTANDING AND AGREEMENT?

20         THE DEFENDANT:  YES, IT IS.

21         THE COURT:  AND MOVING TO THE LAST PARAGRAPH,

22    UNDER 6, THIS IS POST-SENTENCE LITIGATION, WHICH COULD BE

23    FILED, SAY, BEFORE THE BUREAU OF PRISONS THAT BOTH SIDES

24    RETAIN FULL CONTROL OVER WHAT THEY CAN ARGUE.  AND YOU'RE

25    AGREEING THAT THE GOVERNMENT ISN'T OBLIGATED, NOR DOES IT

87

1   INTEND TO FILE, SOME SORT OF POST-SENTENCE DOWNWARD

2   DEPARTURE UNDER RULE 35(B).  THEY'RE THE ONLY ONES WHO CAN

3   FILE IT.  GENERALLY, IT'S RELATED TO PROVIDING SUBSTANTIAL

4   ASSISTANCE TO THE GOVERNMENT.  THEY'RE INDICATING UP FRONT

5   THEY DON'T PLAN ON FILING SUCH A MOTION.  AND THEY WOULD

6   CONTROL IT.

7           PAGE 8, AT THE BOTTOM:  YOU WILL NOT HAVE A RIGHT

8   TO WITHDRAW YOUR GUILTY PLEA IF I IMPOSE A SENTENCE THAT IS

9   OUTSIDE THE GUIDELINE RANGE.  OBVIOUSLY, IT HAS TO BE A

10  LAWFUL ONE, SO IT CAN'T BE ABOVE THE MAXIMUM.

11          AND BOTH YOU AND THE GOVERNMENT WILL BE BOUND BY

12  THE AGREEMENT, REGARDLESS OF WHAT SENTENCE I IMPOSE; AND ANY

13  EFFORT ON YOUR PART TO WITHDRAW THE GUILTY PLEA BASED ON THE

14  LENGTH OF THE SENTENCE WILL BE CONSIDERED A BREACH OF THE

15  AGREEMENT OR THAT YOU HAVE BROKEN YOUR END OF THE BARGAIN.

16          DO YOU UNDERSTAND AND AGREE?

17          THE DEFENDANT:  YES, YOUR HONOR.

18          THE COURT:  YOU'VE AGREED TO BE DETAINED, THE TOP

19  OF 9.

20          IN TERMS OF VENUE, THAT'S WHERE THE CASE WAS

21  BROUGHT.  IT WAS BROUGHT HERE IN THE DISTRICT OF COLUMBIA.

22  THERE ARE OTHER PLACES WHERE IT COULD HAVE BEEN POTENTIALLY

23  BROUGHT.  AND YOU'RE AGREEING NOT TO CHALLENGE HAVING THIS

24  CASE BROUGHT IN THE DISTRICT OF COLUMBIA.

25          IS THAT CORRECT?

1          THE DEFENDANT:  THAT'S CORRECT.

2          THE COURT:  DID YOU HAVE A DISCUSSION ABOUT THE

3    LEGAL ISSUES PERTAINING TO VENUE IN MAKING THAT DECISION?

4          THE DEFENDANT:  YES, I DID.

5          THE COURT:  THE STATUTE OF LIMITATIONS:  MOST

6    CHARGES HAVE A TIME PERIOD WITHIN WHICH THE GOVERNMENT HAS

7    TO CHARGE YOU AFTER THE CRIMINAL CONDUCT HAS OCCURRED.  AND

8    IF AT SOME POINT THE PLEA OR CONVICTION IS VACATED -- IN

9    OTHER WORDS, MADE NULL AND VOID FOR WHATEVER REASON -- AND

10   IT WAS NOT TIME-BARRED AT THE TIME THAT YOU PLED GUILTY,

11   THEN IF THERE'S A TIME FRAME WITHIN THE PERIOD OF TIME THAT

12   YOU PLED GUILTY OR ARE SENTENCED AND IT GOT VACATED AND THE

13   STATUTE OF LIMITATIONS RAN, YOU'RE AGREEING NOT TO RAISE IT

14   AS A DEFENSE.

15          DO YOU UNDERSTAND AND AGREE?

16          THE DEFENDANT:  YES, I DO.

17          THE COURT:  TRIAL RIGHTS I'VE GONE OVER.  LET ME

18   JUST ADD ONE OTHER ONE:  YOU'RE AGREEING TO FOREGO THE RIGHT

19   TO ANY FURTHER DISCOVERY OR DISCLOSURE OF INFORMATION THAT

20   HAS NOT ALREADY BEEN PROVIDED TO YOU PRIOR TO THE GUILTY

21   PLEA.

22          IS THAT CORRECT?

23          THE DEFENDANT:  THAT'S CORRECT.

24          THE COURT:  PAGE 10 AT THE TOP:  ORDINARILY, THEY

25   WOULD LIMIT THE ADMISSIBILITY OF STATEMENTS THAT YOU WOULD

```
1    BE MAKING, INCLUDING STATEMENTS YOU MADE HERE TODAY, IF --

2    AND THIS ONLY COMES UP IF THE PLEA IS WITHDRAWN, AT LEAST IN

3    THESE CIRCUMSTANCES.  ORDINARILY, THEN THE STATEMENTS YOU'VE

4    MADE INCRIMINATING YOURSELF IF YOU TOOK THE STAND COULD BE

5    USED TO IMPEACH YOU; IN OTHER WORDS, THAT YOU'D MADE EARLIER

6    STATEMENTS CONTRARY TO WHAT YOUR TESTIMONY MIGHT BE.  YOU'RE

7    AGREEING IN THIS THAT IF YOUR PLEA IS WITHDRAWN AFTER YOU

8    SIGN IT, THAT THE INFORMATION CAN BE USED AS DIRECT

9    EVIDENCE.

10             DO YOU UNDERSTAND THAT AND AGREE?

11             THE DEFENDANT:  YES, I DO, YOUR HONOR.

12             THE COURT:  WE'VE GONE OVER THE APPEAL RIGHTS.

13             COLLATERAL ATTACK, WHICH IS ANOTHER WAY OF

14   CHALLENGING THE CONVICTION OR THE SENTENCE OR TO ATTEMPT TO

15   MODIFY OR CHANGE THE SENTENCE.  AND THAT COULD BE DONE UNDER

16   2255, WHICH IS A FORM OF WRIT OF HABEAS CORPUS.  THE CIVIL

17   PROCEDURE IS A WAY OF CHANGING JUDGMENTS.  AND THE

18   EXCEPTION:  YOU'RE INDICATING THAT YOU WILL NOT COLLATERALLY

19   ATTACK THEM IN THOSE MODALITIES EXCEPT IF THE MOTION IS

20   BASED ON NEWLY DISCOVERED EVIDENCE OR YOU HAVE A CLAIM THAT

21   YOU RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

22             IF IT DOESN'T FALL IN THOSE EXCEPTIONS, THEN

23   YOU'RE AGREEING NOT TO BRING THEM UNDER THOSE OTHER MEANS TO

24   COLLATERALLY CHALLENGE YOUR CONVICTION OR YOUR SENTENCE.

25             IS THAT YOUR UNDERSTANDING AND AGREEMENT?
```

1           THE DEFENDANT:  YES, IT IS, YOUR HONOR.

2           THE COURT:  AND THE LAST SENTENCE THERE IS A

3    MOTION UNDER SECTION 3582(C)(2) IS IF THE SENTENCING

4    COMMISSION FROM TIME TO TIME CHANGES THEIR CALCULATIONS OF

5    THE SENTENCING GUIDELINES.  IT WOULD ONLY APPLY IF IT WAS

6    LOWER.  IT WOULD NOT CHANGE IT IF IT WENT HIGHER.  BUT IF IT

7    WAS LOWER, YOU ARE ALLOWED TO FILE A MOTION TO ASK, REQUEST,

8    THAT IT BE RETROACTIVELY APPLIED TO YOU.  BUT IF I DENY IT,

9    YOU'VE AGREED NOT TO APPEAL THAT DENIAL.

10          IS THAT YOUR UNDERSTANDING AND AGREEMENT?

11          THE DEFENDANT:  YES.

12          THE COURT:  PAGE 11, RESTITUTION:  SO THE COURT

13   NEEDS TO DETERMINE THE MANDATORY RESTITUTION AT THE TIME OF

14   SENTENCING.

15          AND WE'VE TALKED ABOUT RESTITUTION, 10,000 PER

16   VICTIM, VICTIMS 1 THROUGH 26, THAT HAVE BEEN SET OUT.  AND

17   THEY WOULD STILL HAVE WHATEVER RIGHTS UNDER THE STATUTE OF

18   THE CRIME VICTIMS' RIGHTS ACT.

19          NOW, YOU'VE PUT A CAVEAT IN HERE IN THE MIDDLE:

20   BY AGREEING TO THE 10,000, YOU'RE NOT ACKNOWLEDGING THAT

21   EACH OF THE VICTIMS WOULD BE A VICTIM OF A FEDERAL OFFENSE,

22   NOR ARE YOU AGREEING THAT THESE VICTIMS WOULD BE SO

23   DESIGNATED IF THE CASE WENT TO TRIAL.  HOWEVER, YOU ARE

24   AGREEING TO MAKE THOSE PAYMENTS.

25          IS THAT YOUR UNDERSTANDING AND AGREEMENT?

```
 1              THE DEFENDANT:  YES, YOUR HONOR.

 2              THE COURT:  ALL RIGHT.

 3              MS. PERRY:  YOUR HONOR, IN ADDITION TO MAKING THE

 4    PAYMENTS, HE'S AGREEING THEY SHOULD BE AFFORDED ALL THE

 5    RIGHTS UNDER THE CVRA, INCLUDING --

 6              THE COURT:  I UNDERSTAND THAT.  I'M JUST SAYING,

 7    IF I DIDN'T MAKE THAT CLEAR, I'M ASSUMING THAT THAT'S

 8    CORRECT IN TERMS OF THAT THAT'S STILL THERE.  BUT HE'S NOT

 9    ACKNOWLEDGING THAT EACH OF THE VICTIMS WOULD BE UNDER THE

10    FEDERAL OFFENSE, AS I UNDERSTAND IT.

11              MS. PERRY:  RIGHT.  HE'S NOT ACKNOWLEDGING GUILT

12    TO A FEDERAL OFFENSE FOR EACH OF THEM.

13              THE COURT:  AND THE GOVERNMENT DOESN'T CONCEDE

14    THAT FEDERAL OFFENSES DO NOT EXIST FOR THESE VICTIMS, SO

15    THERE'S OBVIOUSLY A DISPUTE, NOR DOES IT CONCEDE THAT THE

16    VICTIMS WOULD NOT BE VICTIMS UNDER THE CRIME VICTIMS' RIGHTS

17    ACT.  SO THAT'S OBVIOUSLY AN ISSUE.

18              AND YOU'RE AGREEING TO PAY RESTITUTION TO ANY

19    OTHER VICTIM THAT YOU RECORDED OR PHOTOGRAPHED NUDE WHILE

20    THE VICTIM WAS UNCONSCIOUS AS LONG AS THE VICTIM IS

21    IDENTIFIED AT OR BEFORE THE TIME OF SENTENCING AND THAT THEY

22    ARE VICTIMS OF CRIME IN THIS CASE AND ENTITLED TO THE RIGHTS

23    OF VICTIMS THAT WOULD BE SET OUT UNDER THE STATUTE.

24              DO YOU UNDERSTAND AND AGREE SO FAR?

25              THE DEFENDANT:  YES, I DO, YOUR HONOR.
```

1          THE COURT:  AND THEN YOU'RE ALSO AGREEING IF THE

2    VICTIMS STILL MAINTAIN A REQUEST TO REQUEST A LARGER AMOUNT

3    OF RESTITUTION FROM THE COURT, AND THAT YOU'RE AGREEING THAT

4    EACH VICTIM -- THAT THIS IS THE MINIMUM AMOUNT DUE, WHICH IS

5    THE 10,000 PER VICTIM.  IS THAT YOUR UNDERSTANDING AND

6    AGREEMENT?

7          THE DEFENDANT:  YES.

8          THE COURT:  THEN IT SETS OUT HOW YOU WOULD BE

9    MAKING THE RESTITUTION PAYMENTS.

10          AND YOU'LL BE MAKING DISCLOSURES SO THAT ONE COULD

11    BE ABLE TO DETERMINE WHAT YOUR FINANCIAL INFORMATION IS.  I

12    WON'T GO THROUGH ALL OF THOSE DETAILS.

13          PAGE 12 AT THE TOP:  YOU'RE AGREEING THAT THE

14    RESTITUTION OR ANY FINES, SHOULD I IMPOSE ANY, ARE DUE

15    IMMEDIATELY AND CAN BE ENFORCED, BUT THERE CAN BE OTHER

16    METHODS OF SETTING OUT A SCHEDULE OF PAYMENT.  BUT THAT

17    STILL DOES NOT IN ANY WAY TAKE AWAY THE RIGHTS OF THE

18    FEDERAL GOVERNMENT TO ENFORCE IT THROUGH A CRIMINAL

19    JUDGMENT.

20          DO YOU UNDERSTAND AND AGREE?

21          THE DEFENDANT:  YES, I DO.

22          THE COURT:  AND FORFEITURE IS ALL OF THE

23    ELECTRONIC DEVICES AND ALL OF THE VIDEOS AND PHOTOGRAPHS

24    THAT ARE AT ISSUE IN THIS CASE.  YOU ARE FORFEITING THEM.

25          IS THAT YOUR UNDERSTANDING AND AGREEMENT?

```
 1                THE DEFENDANT:  YES, IT IS.

 2                THE COURT:  YOU'RE ALSO ACKNOWLEDGING THAT YOU'RE

 3     REQUIRED TO REGISTER AS A SEX OFFENDER FOR THE REMAINDER OF

 4     YOUR LIFE AND KEEP IT CURRENT IN THE JURISDICTION WHERE YOU

 5     RESIDE, WHERE YOU'RE EMPLOYED AND IF YOU HAPPEN TO BE A

 6     STUDENT.

 7                DO YOU UNDERSTAND AND AGREE TO THAT?

 8                THE DEFENDANT:  YES, I DO.

 9                THE COURT:  IT ALSO SETS OUT WHAT'S REQUIRED IN

10     TERMS OF THE REGISTRATION, NAME, RESIDENCE, PLACES WHERE

11     YOU'LL BE EMPLOYED; AND IF YOU FAIL TO COMPLY WITH THIS

12     OBLIGATION, YOU COULD BE PROSECUTED FOR THE OFFENSE OF

13     FAILURE TO REGISTER AS A SEX OFFENDER AND WOULD BE SUBJECT

14     TO A TERM UP TO TEN YEARS, A FINE, OR BOTH, WHICH WOULD BE A

15     TOTALLY DIFFERENT CRIME AND A DIFFERENT SENTENCE THAN WHAT

16     YOU'VE ALREADY HAD, AND THAT COMPLIANCE WITH THOSE

17     REQUIREMENTS IS A SPECIFIC CONDITION OF SUPERVISED RELEASE.

18                SO LEAVING ASIDE -- YOUR SUPERVISED RELEASE COULD

19     BE REVOKED BASED ON YOUR FAILING TO REGISTER.  YOU ALSO

20     COULD HAVE A NEW CRIME BASED ON THE FACT THAT YOU DIDN'T

21     KEEP UP YOUR REGISTRATION OR REGISTER.

22                DO YOU UNDERSTAND AND AGREE?

23                THE DEFENDANT:  YES.

24                THE COURT:  IN TERMS OF A BREACH OF THE AGREEMENT,

25     WHICH IS IF YOU DON'T FOLLOW THROUGH WITH YOUR END OF THE
```

94

```
1    BARGAIN, YOU'RE AGREEING THAT IF AFTER ENTERING THIS
2    AGREEMENT YOU FAIL TO PERFORM OR FULFILL EACH OF THE
3    OBLIGATIONS OR ENGAGE IN ANY NEW CRIMINAL ACTIVITY PRIOR TO
4    SENTENCING, YOU'LL HAVE BREACHED THE AGREEMENT.  THERE ARE
5    CERTAIN CONSEQUENCES:
6             THE GOVERNMENT IS FREE FROM ITS OBLIGATIONS UNDER
7    THE AGREEMENT.  YOU WILL NOT HAVE A RIGHT TO WITHDRAW THE
8    GUILTY PLEA.  YOU'LL BE SUBJECT TO CRIMINAL PROSECUTION FOR
9    ANY OTHER CRIMES, WHICH COULD BE PERJURY OR OBSTRUCTION OF
10   JUSTICE OR ANYTHING ELSE.
11            THE GOVERNMENT WILL BE FREE TO USE AGAINST YOU,
12   DIRECTLY AND INDIRECTLY, IN ANY CRIMINAL OR CIVIL PROCEEDING
13   ALL THE STATEMENTS YOU'VE MADE, ANY INFORMATION OR MATERIALS
14   YOU'VE PROVIDED, INCLUDING THE INFORMATION THAT HAS BEEN
15   STATED HERE TODAY.
16            DO YOU UNDERSTAND AND AGREE?
17            THE DEFENDANT:  YES, YOUR HONOR.
18            THE COURT:  AND DO YOU UNDERSTAND AND AGREE THAT
19   THE GOVERNMENT'S GOING TO BE REQUIRED TO PROVE A BREACH OF
20   THIS AGREEMENT -- THE BREACH WOULD BE BY A PREPONDERANCE OF
21   THE EVIDENCE, WHICH IS LOWER, OBVIOUSLY, THAN BEYOND A
22   REASONABLE DOUBT.  IT'S THE STANDARD BURDEN FOR A CIVIL
23   CASE.  THAT'S IF IT'S A BREACH OF THE SPECIFICS OF THE
24   AGREEMENT YOU HAVE HERE, OR IF IT'S BASED ON A VIOLATION OF
25   FEDERAL, STATE OR LOCAL CRIMINAL LAW; IN OTHER WORDS, IF
```

1    IT'S A NEW CRIMINAL OFFENSE.  THEN THEY ONLY HAVE TO PROVE

2    IT BY PROBABLE CAUSE, WHICH IS AN EVEN LOWER STANDARD AND

3    BURDEN ON THEIR PART.

4              DO YOU UNDERSTAND AND AGREE?

5              THE DEFENDANT:  YES, I DO.

6              THE COURT:  AND DO YOU FURTHER UNDERSTAND THAT ANY

7    PERJURY, FALSE STATEMENTS, DECLARATIONS, OBSTRUCTING JUSTICE

8    RELATING TO YOUR OBLIGATIONS WILL ALSO BE A BREACH OF THE

9    AGREEMENT?  AND IF THAT HAPPENS, YOU WILL NOT BE ALLOWED TO

10   WITHDRAW YOUR GUILTY PLEA.  DO YOU UNDERSTAND AND AGREE?

11             THE DEFENDANT:  YES, I DO.

12             THE COURT:  AND IT INDICATES AT THE BOTTOM OF 13

13   AND THE TOP THAT THIS IS THE COMPLETE AGREEMENT, TO MAKE

14   SURE THAT THERE IS NOTHING ELSE THAT YOU THINK IS PART OF

15   THE AGREEMENT IN TALKING TO COUNSEL OR ANYBODY ELSE, THAT

16   WE'VE PUT IT ON THE RECORD EITHER ORALLY OR HERE IN WRITING.

17             IS THERE ANYTHING ELSE THAT IS NOT PART OF THE

18   AGREEMENT THAT YOU THINK NEEDS TO BE BROUGHT UP?

19             THE DEFENDANT:  NO, YOUR HONOR.

20             THE COURT:  AND THE AGREEMENT BINDS THE CRIMINAL

21   AND SUPERIOR COURT DIVISIONS OF THE U.S. ATTORNEY'S OFFICE

22   FOR D.C. AS WELL AS THE HUMAN RIGHTS AND SPECIAL

23   PROSECUTIONS SECTION OF THE U.S. DEPARTMENT OF JUSTICE.  IT

24   DOESN'T BIND THE CIVIL DIVISIONS FOR COLLECTING THINGS.  BUT

25   IT ALSO -- ALTHOUGH IT DOESN'T SAY IT HERE, PART OF THE

1    AGREEMENT IS THAT THE OTHER JURISDICTIONS THAT I'VE

2    MENTIONED, THERE WILL NOT BE CHARGES.

3              IS THAT CORRECT AS WELL?

4              MS. PERRY:  THAT IS CORRECT.

5              THE COURT:  IS THERE ANYTHING ELSE THAT I NEED TO

6    GO OVER IN THE PLEA LETTER THAT I DIDN'T THAT YOU THINK IS

7    IMPORTANT TO BRING UP?

8              MS. PERRY:  NOT IN THE PLEA LETTER.

9              WE DO HAVE ONE LAST NOTE ABOUT THE STATEMENT OF

10   FACTS.

11             THE COURT:  I'M SORRY?

12             MS. PERRY:  WE DO HAVE ONE LAST THING TO NOTE

13   REGARDING THE STATEMENT OF FACTS.

14             THE COURT:  LET ME GET BACK TO THE STATEMENT OF

15   FACTS FOR A SECOND AND THEN I'LL ASK DEFENSE COUNSEL.

16             WHAT PAGE AND PARAGRAPH?

17             MS. PERRY:  LET ME PULL IT UP.  ONE SECOND.  SO

18   PAGES 3, 4 AND 5, PARAGRAPHS 7 THROUGH 9.  WE WOULD JUST

19   NOTE THAT THERE WERE A FEW TIMES WHERE THE DEFENDANT SAID HE

20   WAS NOT DISPUTING A FACT.

21             THE COURT:  THAT HE WAS NOT?

22             MS. PERRY:  THAT HE WAS NOT DISPUTING A PARTICULAR

23   FACT.

24             BUT WE JUST WANTED TO NOTE FOR THE RECORD THAT

25   THIS IS NOT A NO-CONTEST PLEA AND THAT IN THE STATEMENT OF

1    FACTS HE'S AGREEING THAT THESE FACTS ARE TRUE AND ACCURATE.

2    AND SO WE JUST WANTED TO CLARIFY THE NATURE OF THIS PLEA.

3              THE COURT:  I THINK WHAT THEY'RE ASKING FOR, WHEN

4    YOU SAY YOU DO NOT DISPUTE, IT MEANS THAT YOU'RE ACCEPTING

5    THAT THIS IS TRUE OR CORRECT.

6              THE DEFENDANT:  I ACCEPT THAT.  YES.

7              THE COURT:  OKAY.  ANYTHING FROM THE DEFENSE THAT

8    WE NEED TO GO OVER?

9              MS. FORREST:  NO, YOUR HONOR.

10             THE COURT:  I HAVE A FEW LAST QUESTIONS.

11             GETTING BACK TO MY QUESTIONS, I WANT TO MAKE SURE

12   YOU UNDERSTAND THAT PAROLE HAS BEEN ABOLISHED, ASSUMING YOU

13   KNOW WHAT THAT IS, PROBABLY FROM MOVIES, IN WHICH YOU WOULD

14   BE GIVEN A SENTENCE AND THEN YOU COULD BE ALLOWED TO SPEND

15   PART OF THAT SENTENCE, JAIL SENTENCE, ACTUALLY IN THE

16   COMMUNITY.

17             THAT'S NO LONGER THE CASE.  THAT'S DIFFERENT THAN

18   SUPERVISED RELEASE.  WHATEVER SENTENCE YOU GET FOR JAIL TIME

19   IS THE PERIOD OF TIME YOU'LL ACTUALLY SERVE.

20             NOW, THE BUREAU OF PRISONS DOES HAVE GOOD-TIME

21   CREDITS, WHICH IS THEIR SYSTEM.  THE COURT HAS NOTHING TO DO

22   WITH IT.  AND THEY CAN REDUCE POSSIBLY FOR WHAT THEY CALL

23   GOOD-TIME CREDITS UP TO 54 DAYS A YEAR.  BUT THAT'S THEIR

24   SYSTEM.

25             FROM MY PERSPECTIVE, IT'LL BE WHATEVER THE

1     SENTENCE IS.  YOU WILL GET CREDIT FOR TIME THAT YOU'VE BEEN

2     HELD PENDING A SENTENCE, BUT IT IS NOT REDUCED BASED ON YOUR

3     SPENDING TIME IN THE COMMUNITY ON PAROLE.

4            DO YOU UNDERSTAND AND AGREE?

5            THE DEFENDANT:  YES, I DO.

6            THE COURT:  AND ALSO, BECAUSE YOU'RE PLEADING TO

7     FELONY OFFENSES, IF I ACCEPT YOUR PLEA AND YOU'RE FOUND

8     GUILTY, THAT FINDING MAY DEPRIVE YOU OF VALUABLE CIVIL

9     RIGHTS.  THEY INCLUDE THE RIGHT TO VOTE, THE RIGHT TO HOLD

10    PUBLIC OFFICE, THE RIGHT TO SERVE ON A JURY AND THE RIGHT TO

11    POSSESS ANY KIND OF FIREARM, WHICH IS A FEDERAL STATUTE.

12    YOU COULD LIVE IN A PLACE WHERE THEY LET YOU GET A GUN, BUT

13    BY FEDERAL STATUTE YOU'RE VIEWED AS A CONVICTED FELON WHERE

14    YOUR MAXIMUM SENTENCE IS MORE THAN A YEAR, AND THEREFORE YOU

15    CANNOT POSSESS A GUN OR AMMUNITION.

16           NOW, I HAVE TO SAY TO YOU THAT IT DEPENDS ON WHERE

17    YOU LIVE AS TO HOW LONG IT LASTS.  SOME HAVE -- SOME PLACES,

18    JURISDICTIONS, HAVE INDICATED IT DOES NOT AFFECT YOUR

19    VOTING, FOR INSTANCE.  OTHER PLACES, IT'S A LIFETIME

20    PRECLUSION.  SO IT VARIES.  YOU SHOULD JUST BE AWARE THAT

21    THESE PARTICULAR VALUABLE CIVIL RIGHTS ARE AFFECTED BY BEING

22    CONVICTED OF A FELONY.  AND AS I SAID, IT DEPENDS ON WHERE

23    YOU ULTIMATELY LIVE AS TO WHAT IT IS.  AND THAT'S IN FLUX TO

24    A GREAT DEAL ANYWAY AT THIS POINT.

25           DO YOU UNDERSTAND THAT?

1           THE DEFENDANT:  YES, I DO.

2           THE COURT:  LET ME ASK A FEW QUESTIONS ABOUT

3    VOLUNTARINESS.

4           HAS ANYONE, INCLUDING YOUR ATTORNEY, LAW

5    ENFORCEMENT, THE PROSECUTOR, ANYONE ELSE YOU'VE COME IN

6    CONTACT WITH SINCE YOUR ARREST, PROMISED OR SUGGESTED TO YOU

7    THAT JUST BY PLEADING GUILTY YOU'RE GUARANTEED A LIGHTER

8    SENTENCE?  I'M NOT TALKING ABOUT ACCEPTANCE OF

9    RESPONSIBILITY IN THE CALCULATIONS, BUT OTHERWISE.

10           THE DEFENDANT:  NO, YOUR HONOR.

11           THE COURT:  HAS ANYONE FORCED, THREATENED OR

12    COERCED YOU IN ANY WAY INTO ENTERING INTO THIS PLEA OF

13    GUILTY?

14           THE DEFENDANT:  NO.

15           THE COURT:  DO YOU UNDERSTAND THAT THE AGREEMENT

16    REACHED IN THIS CASE RESULTED FROM NEGOTIATIONS BETWEEN YOUR

17    ATTORNEY AND THE GOVERNMENT'S ATTORNEY?

18           THE DEFENDANT:  YES, I DO.

19           THE COURT:  HAS ANYONE MADE ANY PROMISES TO YOU IN

20    CONNECTION WITH YOUR GUILTY PLEA OTHER THAN THOSE IN THE

21    PLEA LETTER OR THAT WE'VE TALKED ABOUT HERE IN OPEN COURT?

22           THE DEFENDANT:  NO.

23           THE COURT:  HAS ANYONE MADE ANY PROMISES TO YOU AS

24    TO WHAT SENTENCE I'LL IMPOSE IN THIS CASE IF I ACCEPT YOUR

25    GUILTY PLEA?

```
1              THE DEFENDANT:  NO.
2              THE COURT:  DO YOU UNDERSTAND THAT AT THIS TIME, I
3    DON'T KNOW WHAT SENTENCE I'LL IMPOSE IN YOUR CASE SINCE I
4    HAVEN'T HEARD FROM THE PROBATION OFFICE, THE LAWYERS OR
5    YOURSELF?
6              THE DEFENDANT:  YES.  THAT'S CORRECT.
7              THE COURT:  ARE YOU ENTERING THIS PLEA OF GUILTY
8    VOLUNTARILY AND OF YOUR OWN FREE WILL?
9              THE DEFENDANT:  YES, I AM.
10             THE COURT:  ARE YOU ENTERING THIS PLEA OF GUILTY
11   BECAUSE YOU ARE GUILTY?
12             THE DEFENDANT:  YES, I AM.
13             THE COURT:  IS THERE ANYTHING YOU DON'T UNDERSTAND
14   ABOUT THE PROCEEDING OR THE PLEA?  ANYTHING YOU WANT TO ASK
15   ME OR COUNSEL?
16             THE DEFENDANT:  NO, YOUR HONOR.
17             THE COURT:  HOW DO YOU, BRIAN JEFFREY RAYMOND,
18   PLEAD TO COUNT 1, SEXUAL ABUSE; COUNT 2, SEXUAL ABUSE; COUNT
19   3, TRANSPORTATION OF OBSCENE MATERIAL:  GUILTY OR NOT
20   GUILTY?
21             THE DEFENDANT:  GUILTY.
22             THE COURT:  AND YOU'VE AGREED TO THE CRIMINAL
23   FORFEITURE.  IS THAT CORRECT?
24             THE DEFENDANT:  THAT'S CORRECT.
25             THE COURT:  I'M SATISFIED THE DEFENDANT IS FULLY
```

1    COMPETENT, CAPABLE OF MAKING A DECISION TODAY, UNDERSTANDS

2    THE NATURE AND CONSEQUENCES OF WHAT HE'S DOING.  HE'S ACTING

3    VOLUNTARILY AND OF HIS OWN FREE WILL AND THERE'S AN ADEQUATE

4    FACTUAL BASIS FOR HIS PLEA.

5            THEREFORE, THE PLEA IS ACCEPTED AND THE COURT

6    FINDS BRIAN JEFFREY RAYMOND GUILTY OF COUNT 1, SEXUAL ABUSE;

7    COUNT 2, SEXUAL ABUSE; AND COUNT 3, TRANSPORTATION OF

8    OBSCENE MATERIAL.

9            AT THIS POINT, DO WE HAVE WAIVERS, DOROTHY?  DO

10   YOU HAVE WRITTEN WAIVERS THAT HE'S SIGNED?  YOU MAY HAVE

11   GIVEN THEM TO ME.  I THINK I HAVE THEM.

12           MS. PERRY:  WE ALSO HAVE HARD COPIES AS WELL, IF

13   NEEDED.

14           THE COURT:  I THINK I HAVE THEM.  I HAVE THE

15   WAIVER OF THE TRIAL AND INDICTMENT.  I HAVE BOTH.  I CAN

16   SIGN THESE.

17           MS. PERRY:  YOUR HONOR, WE WOULD JUST NOTE WHEN WE

18   SUBMITTED THIS, IT SAYS HE WAIVED IN OPEN COURT ON JULY 8,

19   2021, THE PREVIOUS DATE.

20           THE COURT:  OKAY.

21           MS. PERRY:  I DON'T KNOW IF WE SHOULD --

22           THE COURT:  DO YOU HAVE A NEW ONE THAT HAS THE

23   CORRECT DATE?  IF YOU'VE GOT IT, I'LL SIGN THOSE.  IF NOT,

24   I'LL JUST CHANGE IT AND INITIAL IT.

25           MS. PERRY:  ONE MOMENT, YOUR HONOR.

```
 1              THE COURT:  SURE.  NO PROBLEM.

 2              THE COURTROOM DEPUTY:  DO YOU WANT ME TO PRINT A

 3    NEW WAIVER?

 4              THE COURT:  WE CAN DO THAT.

 5              MS. PERRY:  YOUR HONOR, IT ONLY APPLIES TO THE

 6    WAIVER OF INDICTMENT.  AND WE HAVE A BLANK ONE HERE THAT YOU

 7    CAN SIGN.

 8              THE COURT:  CAN YOU PRINT THEM QUICKLY, DOROTHY?

 9              MS. PERRY:  YOUR HONOR, MAY I TAKE THIS OVER TO

10    DEFENSE COUNSEL FOR SIGNING?

11              THE COURT:  YOU CAN HAND THEM TO EACH OTHER.  I'LL

12    JUST PUT THE DATE IN.  HE NEEDS TO RE-SIGN THEM.

13              WHAT IS THE PRESENTENCE REPORT DATE?  WHAT IS THE

14    70 DAYS?

15              THE COURTROOM DEPUTY:  OCTOBER 3RD.

16              THE COURT:  HANG ON ONE SECOND.

17              MS. PERRY:  YOUR HONOR?

18              THE COURT:  JUST A SECOND.  LET ME GET MY SYSTEM

19    UP HERE.

20              WHAT I'M GOING TO DO IS SET A DATE FOR THE

21    PRESENTENCE REPORT, WHICH IS WHEN I GET IT.  I WILL THEN SET

22    DATES FOR THE GOVERNMENT MEMORANDUM IN AID OF SENTENCING,

23    THE DEFENSE MEMORANDUM IN AID OF SENTENCING.  AND THEN IF WE

24    COULD PICK A DATE TODAY TO DO AN EVIDENTIARY HEARING, I CAN

25    SET UP A TENTATIVE ONE.  YOU CAN GO BACK AND CHECK TO MAKE
```

1    SURE WHOEVER NEEDS TO TESTIFY IS AVAILABLE AND YOU CAN GET

2    BACK TO ME.  DOES THAT WORK?

3              MS. PERRY:  YES, YOUR HONOR.

4              WE DID WANT TO GIVE YOU SOME INFORMATION THAT --

5    BACKING UP, WE ANTICIPATE POTENTIAL CIPA PROCEEDINGS.

6              THE COURT:  POTENTIAL WHAT?

7              MS. PERRY:  CIPA, CLASSIFIED INFORMATION

8    PROCEDURES ACT, PROCEDURES FOR DOCUMENTS HELD BY THE

9    DEFENDANT'S EMPLOYER THAT BOTH PARTIES WISH TO USE AT

10   SENTENCING.

11             SO GIVEN THAT THAT CAN TAKE SOMETIMES SEVERAL

12   MONTHS, WE WERE THINKING A DATE IN MID-JANUARY WOULD BE

13   REASONABLE.

14             THE COURT:  FOR THE SENTENCING?

15             MS. PERRY:  FOR THE SENTENCING HEARING.

16             MS. FORREST:  YOUR HONOR, WE'VE DISCUSSED THIS A

17   BIT WITH GOVERNMENT COUNSEL.  WE DO NOT ANTICIPATE GOING

18   THROUGH CIPA PROCEEDINGS OURSELVES TO GET DOCUMENTS THAT WE

19   WOULD WANT TO USE.

20             MR. RAYMOND WOULD LIKE TO PROCEED TO SENTENCING AS

21   SOON AS POSSIBLE.  AND ESPECIALLY SINCE HE SIGNED THE PLEA

22   AGREEMENT TWO MONTHS AGO, THE GOVERNMENT'S ALREADY HAD TWO

23   MONTHS TO START PREPARING WHATEVER THEY NEED TO PREPARE FOR

24   SENTENCING.  MY UNDERSTANDING IS THAT THEY HAVEN'T BEGUN ANY

25   CIPA PROCEEDINGS YET, AND SO WE DON'T THINK THIS NEEDS TO

1    STRETCH OUT TO JANUARY.

2         MR. RAYMOND WOULD LIKE TO GET SOME CLOSURE, WOULD

3    LIKE TO GET TO THE BUREAU OF PRISONS, WHERE HE CAN TAKE

4    ADVANTAGE OF PROGRAMMING.  AND SO WE THINK THAT JANUARY IS

5    JUST AN UNREASONABLE AMOUNT OF TIME TO WAIT.

6         THE COURT:  WHY DON'T I SUGGEST THIS:  LET'S PICK

7    THE DATES FOR THE PRESENTENCE REPORT.  DO YOU NEED THIS

8    MATERIAL FOR YOUR GOVERNMENT'S MEMORANDUM IN AID OF

9    SENTENCING?

10        MS. PERRY:  WE DO, YOUR HONOR.

11        AND JUST TO CLARIFY THE RECORD, THERE ARE PIECES

12   OF INFORMATION THAT DEFENSE COUNSEL HAS SAID THEY WOULD LIKE

13   TO USE AT SENTENCING, SO WE HAVE ACTUALLY BEEN ADVOCATING ON

14   THEIR BEHALF WITH THE EMPLOYER TO GIVE THEM ACCESS TO THE

15   UNDERLYING DOCUMENTS TO POTENTIALLY AVOID CIPA.

16        THAT HASN'T HAPPENED.  IT DOES NOT LOOK LIKE IT'S

17   GOING TO HAPPEN.  BUT WE HAVE BEEN WORKING DILIGENTLY OVER

18   THE PAST FEW WEEKS TO TRY TO COME TO RESOLUTION ON THIS

19   ISSUE.

20        THE COURT:  CAN I ASK A QUESTION?  WHAT WOULD THE

21   EMPLOYER DOCUMENTATION HAVE TO DO WITH THIS CASE?  IF YOU

22   CAN TELL ME WITHOUT GETTING INTO WHAT YOU CAN'T OBVIOUSLY

23   PUT ON THE RECORD.  BUT I MUST ADMIT, I'M PUZZLED BY WHAT

24   INFORMATION YOU WOULD NEED.

25        MS. PERRY:  ON THE GOVERNMENT'S SIDE, I THINK

1    THERE IS SOME SUBSTANTIVE INFORMATION CONTAINED IN SOME OF

2    THOSE REPORTS THAT GO -- WOULD LEND -- THEY'RE RELEVANT TO

3    SOME OF THE CONTESTED ISSUES AT SENTENCING.

4              THE COURT:  GIVE ME AN EXAMPLE OF A CONTESTED

5    ISSUE IT WOULD BE RELEVANT TOWARDS.

6              MS. PERRY:  WHETHER THE DEFENDANT DRUGGED ANY OF

7    HIS VICTIMS.

8              MS. FORREST:  YOUR HONOR, COULD I ADDRESS THAT?

9              THE COURT:  GO AHEAD.  YOU CAN RESPOND.

10             MS. FORREST:  YES, YOUR HONOR.

11             WE DON'T SEE HOW ANY INFORMATION IN MR. RAYMOND'S

12   EMPLOYMENT FILE WOULD PROVIDE EVIDENCE AS TO WHETHER HE

13   DRUGGED ANY OF THESE WOMEN.  HIS EMPLOYMENT RECORD JUST

14   DOESN'T BEAR ON THE OFFENSE CONDUCT.  WE HAVE INITIALLY

15   SPOKEN WITH THE GOVERNMENT ABOUT WHETHER THERE WAS

16   INFORMATION IN HIS EMPLOYMENT FILE THAT WE PERHAPS MAY WANT

17   TO RELY ON FOR THE 3553(A) FACTORS FOR HIS HISTORY AND

18   CHARACTERISTICS AND MITIGATING ARGUMENTS.

19             I'VE DISCUSSED THIS EXTENSIVELY WITH MR. RAYMOND.

20   AND HIS POSITION IS THAT HE WOULD PREFER TO MOVE FORWARD

21   WITH SENTENCING EVEN IF IT MEANS HE DOES NOT GET ACCESS TO

22   THOSE DOCUMENTS, BECAUSE HE HAS INFORMATION IN HIS OWN

23   MEMORY ABOUT MANY THINGS IN HIS EMPLOYMENT HISTORY THAT WE

24   CAN PRESENT TO THE COURT.  AND HE DOES NOT WANT TO DELAY THE

25   PROCEEDINGS IN ORDER TO ACCESS THAT MATERIAL FOR MITIGATION

1   AND 3553(A) PURPOSES.  BUT WE DON'T THINK ANYTHING IN THE

2   EMPLOYMENT FILE IS GOING TO PROVIDE ANY EVIDENTIARY BASIS ON

3   THE CONTESTED SENTENCING ENHANCEMENTS.

4         THE COURT:  SO WHERE ARE WE WITH WHAT -- I MEAN,

5   WHAT I HAD HOPED TO BE ABLE TO DO IS AT LEAST GET THE MEMOS

6   TOGETHER, GET THOSE OUT AND THEN CHOOSE ANOTHER TENTATIVE

7   DATE OR HAVE YOU FIGURE OUT WHAT IS A MORE EXACT DATE THAN

8   JANUARY AS TO WHEN WE COULD DO THE SENTENCING.

9         BUT YOU'RE INDICATING TO ME THAT YOU CAN'T DO THE

10  MEMO WITHOUT THIS MATERIAL.  IS THAT CORRECT?  OR CAN WE

11  SPLIT IT IN TERMS OF -- IF YOU CAN'T, YOU CAN'T.  I MEAN,

12  I'M NOT PUSHING IT.

13        MS. PERRY:  YOUR HONOR, I KNOW THERE ARE MATERIALS

14  IN THEIR POSSESSION THAT WE WOULD LIKE TO BE ABLE TO SPEAK

15  ABOUT IN OUR MEMO.

16        THE COURT:  CAN I ASK IT THIS WAY:  HAVE YOU SEEN

17  THE MATERIALS?

18        MS. PERRY:  YES, YOUR HONOR.

19        THE COURT:  FROM YOUR PERSPECTIVE, YOU'VE LOOKED

20  AT THE MATERIALS AND YOU THINK THAT THEY HAVE MERIT FOR THE

21  SENTENCING.  IS THAT CORRECT?

22        MS. PERRY:  THAT'S CORRECT.  AND THERE ARE ALSO

23  MATERIALS, I THINK, KNOWING WHAT MS. FORREST HAS SHARED

24  ABOUT CERTAIN ASPECTS OF MITIGATION THAT ARE RELEVANT AND

25  HELPFUL TO THE DEFENSE AS WELL.

1          THE COURT:  WELL, WHY DON'T YOU TELL ME WHEN YOU

2     THINK -- THE JANUARY DATE YOU'RE TALKING ABOUT FOR

3     SENTENCING, NOT THE GOVERNMENT'S MEMORANDUM.  IS THAT

4     CORRECT?  OR ARE YOU TALKING ABOUT -- WHEN WOULD THE

5     GOVERNMENT'S MEMORANDUM BE?

6          MS. PERRY:  YOUR HONOR, WE COULD LIKELY DO THE

7     GOVERNMENT'S MEMORANDUM HOPEFULLY IN LATE NOVEMBER.  I WOULD

8     HOPE THAT THE CIPA PROCEEDINGS WOULD BE CONCLUDED BY THEN.

9          I THINK THE OTHER REASON THAT WE'VE ASKED FOR A

10    DATE SO FAR OUT IS BECAUSE, AS WE'VE MENTIONED BEFORE, WHEN

11    A DATE CHANGES AT THE LAST MINUTE, IT CAUSES A SUBSTANTIAL

12    AMOUNT OF STRESS TO THE VICTIMS IN THIS CASE.  AND SO WE

13    DIDN'T WANT A SITUATION WHERE WE SET AN EARLIER DATE AND THE

14    CIPA ISSUES WEREN'T RESOLVED AND WE KEPT HAVING TO PUSH IT

15    BACK.

16          I THINK ALTERNATIVELY WE COULD SET A STATUS DATE

17    PERHAPS IN A MONTH AND WE CAN UPDATE YOU ON WHERE THINGS

18    STAND ON THE CIPA ISSUES AND CHOOSE A SENTENCING DATE AFTER

19    THAT.

20          THE COURT:  I DON'T HAVE A PROBLEM DOING THE

21    STATUS IN AUGUST -- I HAVE A THREE-WEEK TRIAL IN

22    SEPTEMBER -- BUT A STATUS FOR YOU TO COME BACK AND BE MORE

23    SPECIFIC.  BUT I WILL ORDER THE PRESENTENCE REPORT SO THAT

24    GETS MOVING.

25          WHEN DATE DID YOU SAY, DOROTHY, WAS THE MAGIC

```
 1    DATE?
 2              MS. RUSSO:  JUDGE, I'M SORRY.  THIS IS APRIL
 3    RUSSO.
 4              WE DID MENTION TO PROBATION THAT THERE WAS GOING
 5    TO BE A PLEA HEARING IN THIS CASE TODAY.  PROBATION IS NOT
 6    CLEARED.  SO THERE'S SOME DOCUMENTS THAT HAVE BEEN AVAILABLE
 7    FOR DEFENSE COUNSEL TO REVIEW IN THE SCIF THAT CANNOT BE
 8    PROVIDED TO PROBATION.  SO WE NEED TO --
 9              THE COURT:  NOBODY IN PROBATION IS CLEARED?
10              MS. RUSSO:  I JUST HAD A VERY PRELIMINARY
11    CONVERSATION WITH THEM TODAY.
12              THE COURT:  WHO DID YOU TALK TO?
13              MS. RUSSO:  TO KELLI WILLETT.  AND SHE JUST
14    INDICATED THAT THIS IS THE KIND OF CASE SHE'S GOING TO NEED
15    EXTRA TIME ON, GIVEN --
16              THE COURT:  I WAS GOING TO GIVE THEM EXTRA TIME.
17    THEY'RE BACKED UP FOR LOTS OF REASONS, LEAVING ASIDE COVID.
18    THERE ARE A WHOLE BUNCH OF REASONS WHY THEY'RE BACKED UP.
19    AND WE'RE ALSO DOING FAR MORE PRE-PLEA CALCULATIONS THAN WE
20    HAVE DONE IN THE PAST, PARTICULARLY ON SOME OF THE JANUARY
21    6TH CASES, WHICH ARE COMING IN.  SO I KNOW THEY'RE BACKED
22    UP.  I WAS GOING TO GIVE THEM MORE TIME.  IT'S BETTER TO GET
23    THE REPORT AND GIVE THEM EXTRA TIME AND GET THAT IN, BECAUSE
24    THEN IF THEY NEED ADDITIONAL TIME IT AFFECTS EVERYBODY
25    ELSE'S DEADLINES.  SO I WOULD GIVE THEM ADDITIONAL TIME.
```

```
1            I WILL CONTACT THEM TO SEE WHETHER THEY HAVE

2    SOMEBODY THAT'S ACTUALLY CLEARED.  I CAN'T BELIEVE THEY

3    DON'T, BECAUSE I'VE HAD CASES WHERE WE HAVE HAD THE WHOLE

4    CASE INVOLVE CLASSIFIED MATERIALS, AND SOMEBODY'S DONE THE

5    REPORT.  SO I WILL DOUBLE-CHECK WITH THAT.

6            BUT I WILL GIVE THEM ADDITIONAL TIME ANYWAY.

7            MS. RUSSO:  AND, YOUR HONOR, NEXT WEEK, WE ARE

8    GOING TO HAVE ANOTHER MEETING THAT MAY HELP US RESOLVE SOME

9    OF THESE ISSUES WITH DEFENSE COUNSEL AS WELL AS DETERMINING

10   WHAT KIND OF MATERIALS WE CAN PROVIDE TO PROBATION IN THE

11   MORE IMMEDIATE SENSE VERSUS WHAT MATERIALS WE HAVE TO HOLD

12   BACK.  AND SO I DO THINK WITHIN A FEW WEEKS WE SHOULD HAVE A

13   BETTER IDEA IN TERMS OF OUR TIMELINE FROM THE GOVERNMENT'S

14   PERSPECTIVE.

15           THE COURT:  MY SUGGESTION IS THAT WE SET THE

16   PRESENTENCE REPORT -- I'LL DO OCTOBER 22ND.  IF THEY GET IT

17   DONE EARLIER, THEY'LL GET IT IN.  THEY DON'T HOLD IT UP.  I

18   WILL NOT SET OTHER DATES.  I'LL SET A STATUS HEARING LATER

19   IN AUGUST, WHERE YOU CAN TELL ME WHERE YOU ARE WITH DATES SO

20   THAT I CAN SET DATES THAT ACTUALLY WORK FOR EVERYBODY, WHERE

21   YOU GIVE ME A BETTER IDEA OF WHEN -- AND I'LL FIND OUT FROM

22   PROBATION AS TO WHETHER THEY HAVE PEOPLE THAT ARE CLEARED

23   FOR CLASSIFIED MATERIAL.

24           WHAT LEVEL IS IT?

25           MS. PERRY:  YOUR HONOR, THE ITEMS WE WOULD BE
```

 1    USING ARE AT THE SECRET LEVEL, YOUR HONOR.

 2              THE COURT:  I'LL DOUBLE-CHECK ON THAT, BUT AT

 3    LEAST THEY'LL GET MOVING ON THE PRESENTENCE REPORT.

 4              LET ME SET A STATUS HEARING IN AUGUST.  AND AT

 5    THAT POINT, HOPEFULLY YOU'LL HAVE FIGURED OUT HOW LONG

 6    THINGS ARE GOING TO TAKE OR NOT TAKE.  TALK TO DEFENSE

 7    COUNSEL AND WE'LL WORK OUT OTHER DATES.

 8              I WOULD TRY AND SET A DATE.  FOR SENTENCINGS,

 9    PARTICULARLY IF THERE ARE GOING TO BE WITNESSES, I STICK TO

10    THEM EVEN IF I'M IN TRIAL.  HOPEFULLY, AS WE PROGRESS WE

11    WILL NOT HAVE ALL OF THESE COVID RESTRICTIONS FOR THE TRIAL,

12    WHICH MAKE THEM MORE DIFFICULT ON TOP OF ANY OTHER MATTERS

13    THAT TAKE PLACE DURING THE TRIALS THEMSELVES.  BUT

14    ORDINARILY I CAN CARVE OUT A DATE, AND MOST JURIES ARE HAPPY

15    TO HAVE A DAY WHERE THEY DON'T COME IN.

16              SO WHEN DO YOU THINK IN AUGUST -- BY WHEN WILL YOU

17    KNOW, ROUGHLY, HAVE A BETTER IDEA OF WHAT'S GOING ON?

18              MS. PERRY:  YOUR HONOR, THE WEEK OF THE 23RD.  I

19    WILL BE IN A TRIAL IN NEBRASKA THE WEEK OF THE 16TH, AND I'M

20    WORRIED IF WE DO IT IN AUGUST WE WILL NOT HAVE CLEAR

21    ANSWERS.

22              THE COURT:  TELL ME WHEN YOU THINK YOU WILL HAVE

23    CLEAR ANSWERS.

24              MS. PERRY:  I THINK THE WEEK OF THE 23RD.  I THINK

25    THAT WOULD BE APPROPRIATE.

```
 1                THE COURT:  HOW ABOUT IF WE DID IT THE 25TH IN THE

 2     AFTERNOON?  I HAVE SOMETHING AT 2:00.  SAY WE DID IT AT

 3     3:00.  I WOULD SEE THIS AS A SCHEDULING STATUS HEARING TO

 4     SCHEDULE FURTHER PROCEEDINGS.  WE SHOULD KNOW AT THAT POINT

 5     WHERE WE ARE WITH PROBATION AND WHO THEY HAVE AND TO PICK

 6     THE MEMORANDUM IN AID OF SENTENCING.  SO SUPPOSE WE HAD IT

 7     ON AUGUST 25TH AT, SAY, 3:00 P.M.  IF ONE OF THESE THINGS

 8     FALLS OUT IN BETWEEN HERE, I'LL MOVE IT UP.

 9                BUT, DEFENSE COUNSEL, ARE YOU AVAILABLE?

10                MS. FORREST:  YES, YOUR HONOR.

11                THE COURTROOM DEPUTY:  WILL THIS BE AN IN-PERSON

12     HEARING?

13                THE COURT:  DO YOU WANT TO DO -- YOU CAN BRING HIM

14     IN OR WE COULD DO ZOOM AND THEN THEY DON'T HAVE TO KEEP

15     BRINGING HIM BACK AND FORTH.

16                MS. PERRY:  YOUR HONOR, VIRTUAL IS FINE WITH THE

17     GOVERNMENT.

18                I WOULD NOTE THAT MS. HICKMAN HAS A CONFLICT THE

19     AFTERNOON OF THE 25TH.

20                THE COURT:  DO WE NEED EVERYBODY?

21                MS. PERRY:  ONE OF US SHOULD BE ABLE TO COVER IT,

22     IF THAT'S THE ONLY DAY THAT WEEK.

23                THE COURT:  IT SHOULD BE STRICTLY A SCHEDULING

24     SORT OF ISSUE IN TERMS OF COMING UP WITH SOMETHING.  IF IT

25     GETS MORE COMPLICATED, LET ME KNOW AND I'LL MOVE IT AROUND.
```

1           MS. PERRY:  THANK YOU, YOUR HONOR.

2           THE COURT:  SO, DEFENSE COUNSEL, DO YOU WANT TO DO

3    THIS BY ZOOM?  WE CAN DO IT BY ZOOM AND HE CAN STAY WHEREVER

4    HE IS AND NOT BE BROUGHT BACK AND FORTH.

5           MS. FORREST:  YES.  IF I CAN HAVE A SECOND TO ASK

6    HIM.

7           THE COURT:  IS HE AT THE JAIL OR WHERE IS HE?

8           HE'S AT CTF.  HE WOULD PREFER TO DO IT BY ZOOM

9    RATHER THAN COMING IN IN PERSON.

10          THE COURT:  DOES IT LOOK LIKE IT'S OPEN?

11          THE COURTROOM DEPUTY:  YES.  WE SHOULD BE ABLE TO

12   DO IT.

13          THE COURT:  8-25 AT 3:00 P.M.  IT'S STRICTLY A

14   STATUS HEARING TO SET A FURTHER SCHEDULE.

15          WE'LL DO IT BY ZOOM, DOROTHY.

16          ANYTHING FURTHER FROM THE GOVERNMENT?

17          MS. PERRY:  NO, YOUR HONOR.  THANK YOU.

18          THE COURT:  DEFENSE COUNSEL?

19          MS. FORREST:  NO, YOUR HONOR.  THANK YOU.

20          THE COURT:  THE PARTIES ARE EXCUSED.  TAKE CARE.

21   TAKE CARE OF YOURSELVES.

22          THE COURTROOM DEPUTY:  DO YOU HAVE THE SIGNED PLEA

23   AGREEMENT AND THE SIGNED STATEMENT OF REASONS?

24          MS. PERRY:  YES, I DO.

25          THE COURTROOM DEPUTY:  JUDGE, FOR THE PSI, DID YOU

1    SAY OCTOBER 22ND?

2              THE COURT:  YES.  OCTOBER 22ND FOR THE PSI.

3              EVERYBODY'S EXCUSED.

4              (PROCEEDINGS CONCLUDED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
## CERTIFICATE

2

3                    I, LISA EDWARDS, RDR, CRR, DO HEREBY

4     CERTIFY THAT THE FOREGOING CONSTITUTES A TRUE AND ACCURATE

5     TRANSCRIPT OF MY STENOGRAPHIC NOTES, AND IS A FULL, TRUE,

6     AND COMPLETE TRANSCRIPT OF THE PROCEEDINGS PRODUCED TO THE

7     BEST OF MY ABILITY.

8                         PLEASE NOTE:  THIS HEARING WAS CONDUCTED

9     DURING THE COVID-19 PANDEMIC AND IS THEREFORE SUBJECT TO THE

10    TECHNOLOGICAL LIMITATIONS OF REPORTING REMOTELY.

11

12                      DATED THIS 19TH DAY OF OCTOBER, 2021.

13

14              /S/ LISA EDWARDS, RDR, CRR
                OFFICIAL COURT REPORTER
15              UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF COLUMBIA
16              333 CONSTITUTION AVENUE, NW, ROOM 6706
                WASHINGTON, DC 20001
17              (202) 354-3269

18

19

20

21

22

23

24

25