# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:21-CR-380-CKK** |
| | : | |
| **BRIAN JEFFREY RAYMOND,** | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S MOTION FOR A HEARING ON ATTORNEY CONFLICT

The United States of America, by and through the undersigned attorneys, respectfully files this motion requesting a hearing to address an attorney conflict arising from the filing of Defendant Brian Jeffrey Raymond's motion to withdraw his guilty plea.

In his motion to withdraw, the Defendant makes a number of accusations, all of which the government intends to respond. But relevant to this motion, the Defendant attaches declarations which state, in relevant part, that though his attorneys had varying degrees of knowledge regarding the circumstances surrounding the search of the Defendant's phone, none of the attorneys discussed with the Defendant the option of filing a motion to suppress. *See generally* Dkt. Nos. 119-10, 119-11, and 119-12. The Defendant claims that, had he known about the alleged suppression issue, he would not have pled guilty. His motion to withdraw then charges his former legal team with being ineffective when advising on whether to enter a guilty plea and waive his constitutional rights as detailed in the plea agreement. *See* Dkt. No. 119 at 43-48.

If such ineffectiveness is to be assessed, there is a clear conflict because Attorney Marston represented the Defendant at the time of the plea hearing *and* represents him still in the instant motion to withdraw. Attorney Marston's representation is now directly at issue. And notably, to the extent that Attorney Marston continues representing and advising the Defendant regarding the ineffective assistance claim, those communications may not be privileged. In sum, maintaining a

client relationship where an attorney is both advocate for, and the subject of, the motion is an actual conflict that must be addressed.

Based upon the D.C. Rules of Professional Conduct,[1] and upon review of the applicable case law, the government therefore believes the Defendant must (1) be advised of a conflict of interest involving any continued representation by Attorney John Marston, and, if the Court deems the conflict is waivable, (2) indicate his informed consent to Attorney Marston's representation, notwithstanding any conflict of interest, on the record.

The government recognizes how unusual it is to have three conflict-related proceedings in a single case but nonetheless has a duty to raise such issues with the Court in the interest of protecting the integrity of the proceedings and the Defendant's right to conflict-free counsel. *See generally Von Moltke v. Gillies*, 332 U.S. 708, 725 (1948) ("The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client."). Furthermore, because the government believes this is an "actual conflict," *United States v. Gantt,* 140 F.3d 249, 254 (D.C. Cir. 1998), it must be resolved before proceeding on the pending defense motion to withdraw. Allowing the conflict to go unaddressed at this stage threatens additional ineffective assistance of counsel claims in the future. For these reasons, the government requests a hearing to address this issue.

The government has conferred with counsel for the Defendant. Defense Counsel does not believe that an actual conflict exists; however, Counsel does not oppose a motion for re-

---

[1] The undersigned attorneys are barred in Washington, D.C., Maryland, Virginia, and California. Rule 8.5(b)(1) for each of these jurisdictions of licensure provides, "for conduct in connection with a matter pending before a tribunal, the rules to be applied shall be the rules of the jurisdiction in which the tribunal sits unless the tribunal has adopted other rules." This court has adopted D.C. Rules of Professional Conduct in connection with its proceedings. D.D.C. LCR 57.26(a). Accordingly, the government relies upon the D.C. Rules in the instant motion.

appointment of conflicts counsel/holding a conflicts hearing. To the extent that the government

seeks an extension of filing deadlines, however, Counsel opposes.

I.      **PROCEDURAL HISTORY**

   **A.  The Defendant's Legal Counsel at Time of Guilty Plea**

   When the Defendant pled guilty in this case, he was represented by four experienced

defense attorneys: Courtney R. Forrest, Emily A. Voshell, and Jonathan S. Jeffress from the firm

KaiserDillon PLLC and John P. Marston from the firm Foley Hoag LLP.

   The Defendant retained KaiserDillon shortly after his arrest in this case in October of 2020.

Attorney Marston joined the Defendant's defense team approximately five months later, in or

around February 2021.[2]

   On July 23, 2021, the Defendant pled guilty to two counts of Sexual Abuse, in violation of

18 U.S.C. § 2242(2), and one count of Transportation of Obscene Material, in violation of 18

U.S.C. § 1462. *See* Dkt. No. 69 at 1. Attorney Forrest represented the Defendant at the change of

plea hearing. Attorney Marston appeared via telephone.

   In December 2021, Attorneys Courtney R. Forrest, Emily A. Voshell, and Jonathan S.

Jeffress withdrew from the case. *See* Dkt. No. 95.

   Attorney Marston remained on the case and currently represents the Defendant. Attorney

Marston is now joined by Attorneys Denise E. Giraudo and A. Joseph Jay, III, of Sheppard Mullin

Richter & Hampton LLP. *See* Dkt. Nos. 83-84.

---

[2] Attorneys Voshell and Jeffress entered their appearances in October 2020. *See* Dkt. Nos. 7, 8. Attorney Forrest entered her appearance on June 8, 2021. *See* Dkt. No. 64. Attorney Marston entered his appearance on July 6, 2021. *See* Dkt. No. 66.

### B.  Motion to Withdraw, Ineffective Assistance of Counsel

On April 29, 2022, the Defendant filed a motion, through counsel, to withdraw his guilty plea on the "basis that it was tainted by ineffective assistance of counsel related to the failure of counsel to investigate and advise on 4th and 5th Amendments violations and the legal options associated with such violations." Dkt. No. 119 at 33. The motion attaches declarations from former counsel Courtney R. Forrest and Jonathan S. Jeffress. *See* Dkt. Nos. 119-10, 119-11. The motion also attaches a declaration from current counsel, John P. Marston, regarding the scope of his representation at the time that the Defendant pled guilty. *See* Dkt. Nos. 119-12. Although not explicitly referenced in his declaration, Attorney Marston actively participated in plea negotiation meetings and phone calls with the government.

## II.    A CONFLICT EXISTS AND MUST BE ADDRESSED ON THE RECORD

By alleging ineffective assistance of counsel, the Defendant calls into question Attorney Marston's conduct. Absent some contractual limitation on Attorney Marston's representation of which the government is not aware, *see* D.C. Rule of Professional Conduct 1.2(c) ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."), Attorney Marston's conversations with the Defendant appear just as relevant as those of the KasierDillon attorneys. Yet Attorney Marston remains on this case as part of the legal team bringing the claim against himself. By doing so, Attorney Marston's continued representation affects not only the pending motion to withdraw but also any subsequent direct or collateral attacks. The government is therefore obligated to take appropriate steps to protect the integrity of criminal proceedings, including by raising and addressing conflicts of interest that may affect the Defendant's substantive legal rights under the Sixth Amendment. *See, e.g., United States v. Harris*, 846 F. Supp. 121, 132 (D.D.C. 1994) (noting "the government's duty to bring such [conflict of interest] issues to the court's attention and, if necessary, move for

disqualification of counsel when a conflict of interest becomes apparent to the government")
(citing cases).

The D.C. Circuit does not appear to have directly addressed whether it creates a conflict of
interest for an attorney to argue his own ineffectiveness; however at least one case suggests that it
does. *See Johnson v. Wilson*, 960 F.3d 648, 654 (D.C. Cir. 2020) (citing *Cuyler v. Sullivan*, 446
U.S. 335 (1980), and noting that an attorney's failure to argue his own ineffectiveness would be a
conflict analyzed under *Cuyler* rather than *Strickland*).[3]  However, as discussed below (at III.), a
number of other courts, including other federal courts of appeal, have found such a scenario to
give rise to a conflict of interest.

Moreover, Attorney Marston's continued representation of the Defendant implicates
several Rules of Professional Conduct, including Rule 1.6 (Confidentiality of Information), Rule

---

[3] In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for assessing
ineffective-assistance claims.   First, the defendant must show that his attorney's errors were so "serious that counsel
was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."   *Strickland*, 466 U.S. at 687.
To meet this standard, defendant must establish that, in light of the circumstances at the time of the representation,
"counsel's representation fell below an objective standard of reasonableness," or "prevailing norms." *Id*. at 688, 690.
Second, even if counsel provided constitutionally deficient representation, a defendant must affirmatively prove
prejudice that is "so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Strickland*,
466 U.S. at 687.   Thus, "[a]s a general matter, a defendant alleging a Sixth Amendment violation must demonstrate
'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Strickland*, 466 U.S. at 694).

*Cuyler*, in comparison, "requires the defendant to show '(1) that his lawyer acted under an actual conflict of interest'
and (2) that the conflict caused 'an actual lapse in representation.'" *United States v. Tucker*, 12 F.4th 804, 818 (D.C.
Cir. 2021) (citing *United States v. McGill*, 815 F.3d 846, 943 (D.C. Cir. 2016) (cleaned up)). In other words, *Cuyler*
relaxes *Strickland*'s prejudice requirement. Conflict-of-interest claims are "a 'specific genre' of ineffective assistance
of counsel claim." *United States v. Wright*, 745 F.3d 1231, 1233 (D.C. Cir. 2014) (quoting *United States v. Bruce*, 89
F.3d 886, 893 (D.C. Cir. 1996)). And where a defendant "asserts a conflict of interest claim on appeal," he "typically
need not demonstrate the second prong of the *Strickland* test — that the lawyer's deficient performance affected the
outcome of the case." *Id.* Instead, the defendant "generally must demonstrate only that an actual conflict of interest
adversely affected his lawyer's performance." *Id.* Thus, here, were the Defendant to later make a claim of ineffective
assistance of counsel based upon Attorney Marston's conflict, and the Court concluded that Attorney Marston had an
"actual conflict," prejudice would be presumed.

1.7 (Conflict of Interest: Generally), Rule 3.7 (Lawyer as Witness), and Rule 8 (Maintaining the Integrity of the Profession). Each is discussed more fully below.

### A. Rule 8.4(d)

Rule 8.4(d) states that a lawyer cannot "engage in conduct that seriously interferes with the administration of justice." A defendant's right to conflict-free counsel is one of many principles intended to ensure the fair administration of justice in his case. *Wood v. Georgia,* 450 U.S. 261, 271 (1981). Here, the pending motion to withdraw has created a conflict for Attorney Marston. Were Attorney Marston to continue his representation of the Defendant without providing an opportunity for the Court to determine whether the conflict is waivable and for the Defendant to consider waiving the conflict, the Defendant may make a future claim regarding the integrity of the proceedings against him or the effectiveness of his counsel, particularly when the current motion to withdraw alleges general ineffectiveness. To ensure the fair administration of justice and to protect the integrity of the proceedings against the Defendant, the government believes that the Defendant must be informed of the conflict, and the conflict of interest must then be addressed by counsel and the Court.

### B. Rule 3.7(a)(1)

Rule 3.7(a)(1) states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: The testimony relates to an uncontested issue." *See also* Comment 1 ("Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client"); *Sasser v. Hobbs*, 735 F.3d 833, 852-53 (8th Cir. 2013) (noting that, when a "defendant's trial counsel 'falls on his own sword' by moving for a new trial based on his own ineffectiveness[,]" it is "especially troubling as a matter of professional ethics, potentially requiring trial counsel to choose between accurately asserting he was effective or inaccurately asserting that he was not. The first option would violate

the lawyer's duty of zealous representation to his client and the second his duty of candor to the court."). The Government recognizes that Rule 3.7 applies to lawyers as witnesses while also serving as an advocate at trial. While the Government has not identified a case in which the Rule was found to apply to other types of proceedings, such as an evidentiary hearing regarding ineffective assistance of counsel, at least one ethics opinion suggests that there may be situations where the spirit of the Rule would weigh in favor of an attorney/witness declining representation, even if the Rule itself did not technically apply. *See* D.C. Bar Legal Ethics Committee, Ethics Op. 228 (May 19, 1992) ("While in some instances it may be best for a lawyer-witness to decline representation of a client in a pre-trial motion requiring argument of his/her own testimony, D.C. Rule 3.7(a), by its terms, extends only to prohibit advocacy at a trial. We decline to extend the D.C. rule beyond its terms.").

Here, Attorney Marston acts both as an advocate for the Defendant's motion to withdraw his plea and as the subject of the alleged deficient representation. In such a proceeding, a lawyer's judgment in representing a defendant could be affected by his own interest in providing credible testimony. Specifically, Attorney Marston indicates that he is willing to testify as a witness in a hearing regarding his representation. Dkt No. 119-12 at 1.[4] Such testimony will undoubtedly include the fact that, before advising the Defendant regarding the plea agreement and his constitutional rights, Attorney Marston did not review "materials related to the actual manner in which the government seized" the Defendant's phone, the subject of the alleged suppression issue discussed at length in the motion to withdraw. Dkt. No. 119-12 at 3. To the extent that Attorney Marston's testimony (whether on direct or cross examination) undermines the Defendant's claim, the legal team of which Attorney Marston is a part would have to ask the Court to either discredit

---

[4] The government will further investigate all the representations in the declarations, including what each counsel reviewed, considered, and dismissed.

his client's claim or discredit Attorney Marston's testimony. Accordingly, the reasoning underlying the purpose of Rule 3.7 arguably applies to any evidentiary hearing relating to the Defendant's motion to withdraw his plea. The roles are at odds with one another and create a conflict that must be addressed and waived (if possible) on the record.

### C. Rule 1.7(b)(4) and (c)(2)

Rule 1.7(b)(4) states that "[e]xcept as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if . . . [t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by . . . the lawyer's own financial, business, property, or personal interests. Comment 11 provides that "[t]he lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." To the extent that the pending motion to withdraw (or subsequent litigation and hearings regarding the motion to withdraw) calls into serious question Attorney Marston's advice relating to the underlying plea at issue, then Attorney Marston has a conflict of interest in representing the Defendant.

Rule 1.7, Comment 30 further advises that "[t]he lawyer's authority to solicit and to act upon the client's consent to a conflict is limited further by the requirement that the lawyer reasonably believe that he or she will be able to provide competent and diligent representation to each affected client. Generally, it is doubtful that a lawyer could hold such a belief . . . where the lawyer's individual interests make it likely that the lawyer will be adversely situated to the client with respect to the subject-matter of the legal representation." Thus, even if the Defendant were willing to consent to Attorney Marston's continued representation, it is unclear that Attorney

Marston can reasonably[5] believe that he will be able to provide the competent and diligent representation, as required by the Rule 1.7(c)(2), when the Defendant has called his conduct in the case into question.

### D. Rule 1.6

It is well-settled that a defendant waives his attorney-client privilege by filing a motion to vacate a conviction based on ineffective assistance of counsel. *See*, *e.g.*, *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege."); *Byers v. Burleson*, 100 F.R.D. 436, 440 (D.D.C. 1983) (finding that the plaintiff waived the attorney-client privilege in his legal malpractice case against his former lawyer because the information the defendant attorney sought in discovery was necessary to resolve the precise issue the plaintiff interjected into the case); *United States v. Wiggins*, 184 F. Supp. 673, 677-678 (D.D.C. 1960) (finding that when a client assails his attorney's conduct, the privilege as to confidential communications is waived).[6]

---

[5] Rule 1.0(j) instructs that "Reasonable or reasonably when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer."

[6] Cases from outside the District of Columbia are to the same effect. *See also United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) ("when a *habeas* petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim"), *cert. denied*, 130 S.Ct. 1548 (2010); *In Re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) ("The implied waiver in *habeas* proceedings [is] the result of a petitioner's assertion of his own counsel's ineffectiveness."), cert. denied, 547 U.S. 1092 (2006); *Bittaker v. Woodford*, 331 F.3d 715, 716-717 (9th Cir. 2003) ("where a *habeas* petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer"), *cert. denied*, 540 U.S. 1013 (2003); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, [the petitioner] put at issue-and thereby waived-any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys' strategic choices."), cert. denied, 535 U.S. 926 (2002); *Bloomer v. United States*, 162 F.3d 187, 194 (2d Cir. 1998) (when there is a claim of ineffective assistance of counsel, the allegedly "ineffective attorney should be afforded an opportunity to be heard and present evidence in the form of live testimony, affidavits, or briefs"); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir.) ("A defendant may not use the [attorney-client] privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. . . Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness require examination of protected communications."), *cert. denied*, 502 U.S. 813 (1991); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) (finding that when the client calls into public question the competence of his attorney, the attorney-client privilege is waived), cert. denied, 419 U.S. 1125 (1975); *Laughner v. United States*, 373 F.2d 326, 327 & n. 1 (5th Cir. 1967) (client waives attorney-client privilege by attacking attorney's performance of his duties).

Although some cases note that waiver is appropriate because it would be unconscionable to preclude an attorney from defending himself against allegations of ineffectiveness, *see Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974); *Wiggins*, supra, 184 F. Supp. at 677-678, others make clear that waiver occurs whenever the client has put privileged matters at issue and not just in those cases in which counsel seeks to defend herself against such allegations. *See*, *e.g.*, *Byers v. Burleson*, *supra*, 100 F.R.D. at 440 (privilege waived because information was necessary to resolve issue plaintiff raised); *Laughner v. United States*, 373 F.2d 326, 327 & n. 1 (5th Cir. 1967) (defendant cannot preclude government's inquiry into one area of evidence likely to contradict his claims in support of motion for new trial).

Here, the Defendant's has put Attorney Marston's representation directly in issue. Therefore, the Defendant has waived the attorney-client privilege, as well as the non-disclosure provisions of Rule 1.6 with respect to Attorney Marston's representation and as it relates to the claims of ineffective assistance of counsel. Yet Attorney Marston continues to represent the Defendant on this very central issue to the motion to withdraw. To the extent that Attorney Marston continues advising the Defendant regarding the ineffective assistance claim, those communications may not be privileged.

## III.   WAIVER MAY NOT CURE THE CONFLICT OF INTEREST

The Sixth Amendment has been interpreted to include a "right to representation that is free from conflicts of interest." *Wood*, 450 U.S. at 271. Other Circuits agree that an attorney arguing his own ineffectiveness creates a conflict of interest that may violate a defendant's Sixth Amendment right to counsel. *See*, *e.g.*, *Maples v. Thomas*, 565 U.S. 266, 285 n.8 (2012) (noting that "a significant conflict of interest arose for the firm" after it missed a deadline and "the firm's interest in avoiding damage to its own reputation was at odds with Maples' strongest argument-- *i.e.*, that his attorneys had abandoned him"); *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682,

689 (11th Cir. 2017) ("This implication would have given rise to a conflict of interest whereby counsel would be tasked with asserting their own constitutional deficiency"); *Gray v. Pearson*, 526 F. App'x 331, 334 (4th Cir. 2013) (finding "clear conflict of interest exists in requiring [defendant's] counsel to identify and investigate potential errors that they themselves may have made," notably where the Virginia State Bar Ethics Counsel advised that "they are ethically barred from investigating their own ineffectiveness."); *Manning v. Foster*, 224 F.3d 1129, 1134 (9th Cir. 2000) (noting a "clear conflict between [defendant's] interest in presenting and prevailing in his ineffective assistance claim and [the attorney's] interest in protecting himself from the damage such an outcome would do to his professional reputation and from exposure to potential malpractice liability or bar discipline."); *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996) ("There was an actual, irreconcilable conflict" where the "allegedly incompetent trial attorney was compelled to produce new evidence and examine witnesses to prove his services to the defendant were ineffective, he was burdened with a strong disincentive to engage in vigorous argument and examination, or to communicate candidly with his client. The conflict was not only actual, but likely to affect counsel's performance."); *Holmes v. Norris*, 32 F.3d 1240, 1241 (8th Cir. 1994) ("One could hardly expect that lawyer to argue his own ineffectiveness with any degree of conviction or persuasiveness. To make such an argument places a lawyer in the sharpest sort of conflict of interest, a conflict between his client and himself.").

There is some authority for the proposition that this type of conflict can be waived by a defendant. *See, e.g.*, *State v. Lentz*, 639 N.E.2d 784, 786 (Ohio 1994) (noting the "inherent conflict of interest" presented when an attorney argues his colleague's ineffectiveness, but that "if an actual conflict does exist," the court can "procure a waiver"); *Moore v. United States*, 950 F.2d 656, 660 (10th Cir. 1991) ("An ineffectiveness-due-to-conflict claim is waived if defendant consciously chose to proceed with trial counsel, despite a known conflict to which the defendant could have

objected but chose to disregard.") (quotation marks omitted) (citing cases); *but see* Lawrence Kornreich & Alexander Platt, "The Temptation of *Martinez v. Ryan*: Legal Ethics for the Habeas Bar," American University Criminal Law Brief 8, no. 1 (2012): 1-8, *available at* https://digitalcommons.wcl.american.edu/cgi/viewcontent.cgi?article=1088&context=clb (asserting that such a conflict cannot be waived).

However, because of the prejudice the conflict causes to the government, irrespective of any prejudice to the defendant, it may not be waivable. *See, e.g.*, *United States v. Locascio*, 6 F.3d 924, 934 (2d Cir. 1993) ("When an attorney is an unsworn witness, however, the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired. Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced."); *Rosen v. NLRB*, 735 F.2d 574-75 (D.C. Cir. 1984) ("[P]art of the underlying rationale for the rule, namely that a lawyer's serving in a dual role of witness and advocate is unseemly, is directed at the protection of the public interest in continued respect for the legal profession rather than any waivable private interest."); *United States v. Kerik*, 531 F. Supp. 2d 610, 620 (N.D.N.Y. 2008) ("As the Second Circuit stated in *Locascio*, a waiver is insufficient in curing a conflict posed when a defendant's advocate is also a witness because the defendant is not the party prejudiced by the defense attorney's continued involvement as an advocate, the Government is."). .").

Finally, even if the conflict and ethical impacts are waivable, the trial court may refuse to accept the waiver. *See Wheat v. United States*, 486 U.S. 153, 163 (1988) ("the district court must be allowed substantial latitude in refusing waivers of conflicts of interest"). Indeed, refusal of waiver is sometimes appropriate not only where an actual conflict exists but where "by a showing of a serious potential for conflict." *United States v. Childress*, 58 F.3d 693, 734 (D.C. Cir. 1995) (citing *Wheat*, 486 U.S. at 154, regarding a defendant's right to select and be represented by his or

her preferred attorney and noting that the "Supreme Court has made it clear, however, that the right to counsel of choice is qualified in several important respects."). When determining whether to deny a defendant his counsel of choice, courts consider whether the conflict has already arisen and, if not, how speculative or attenuated the potential conflict may be. *See, e.g., United States v. Carlyle*, 964 F. Supp. 8, 13–14 (D.D.C. 1997) (finding "government's predictions for potential conflicts down the road" speculative and "too attenuated at this stage to overcome the presumption in favor of [the defendant's] right to counsel of choice and of his knowing waiver of his right to conflict-free counsel" where potential conflicts of interest arose from defense counsel's representation of defendant in drug conspiracy case while also representing codefendant's family member in another).

Here, there is an actual conflict. Attorney Marston has filed a motion to withdraw citing the ineffectiveness of a legal team of which he was a part. But even if there is not an actual conflict, there is a serious potential for conflict where the success of the Defendant's motion may pit Attorney Marston's credibility as an advocate for the Defendant against Attorney Marston's credibility as a witness. The government defers to the Court regarding whether this conflict may be waived, but at the very least, the Defendant must enter his knowing waiver before the parties further litigate the motion to withdraw and before the government seeks the discovery to which it is entitled regarding the ineffective assistance claim.

## CONCLUSION

The government believes an actual conflict exists. To move forward with the Defendant's motion to withdraw his plea without addressing this conflict is untenable, as it violates the Defendant's Sixth Amendment right to conflict-free counsel and threatens the integrity of the proceedings. The adequacy of Attorney Marston's representation is, in part, the subject of the Defendant's ineffective assistance claim, and his remaining on the case without addressing the

conflict has potential implications beyond the pending motion to withdraw and may lead to additional claims of ineffective assistance in the future.

Advising the Defendant of the conflict now, well in advance of sentencing, will give the Defendant time to make an informed decision as to whether to waive the conflict, assuming a waiver is permissible and subsequently accepted by the Court. The government requests a hearing to address Attorney Marston's conflict on the record. The government further requests that the May 20, 2022, deadline for its response to the defendant's motion to withdraw his plea be vacated and rescheduled once the conflict issue is resolved. The government will file the request for an extension in a separate motion, noting the Defendant's opposition.


KENNETH A. POLITE, JR.                          MATTHEW M. GRAVES
Assistant Attorney General                       United States Attorney

By:    _____/s/_____        By:    _____/s/_____
Jamie B. Perry                                        Angela N. Buckner
MD Bar No: 1012160031                       DC Bar No. 1022880
Danielle L. Hickman                              Assistant United States Attorney
CA Bar No: 193766                                601 D Street, N.W.
Trial Attorneys                                       Washington, D.C. 20530
U.S. Dept. of Justice, Criminal Division    (202) 252-2656
Human Rights and Special Prosecutions   Angela.Buckner@usdoj.gov
1301 New York Avenue, Northwest
Washington, D.C. 20530
(202) 307-3262
Jamie.Perry@usdoj.gov
Danielle.Hickman@usdoj.gov