**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-00380-CKK |
| | : | |
| BRIAN JEFFERY RAYMOND, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO DISQUALIFY
TRIAL ATTORNEY JAMIE PERRY**

Defendant Brian Jeffery Raymond ("Mr. Raymond"), by and through his undersigned counsel, respectfully submits this Motion to Disqualify Trial Attorney Jamie Perry ("Ms. Perry") (the "Motion") because Ms. Perry, one of the prosecutors for the government, has an irreconcilable conflict of interest and personal stake in the outcome these proceedings.   In support of the Motion, Mr. Raymond states as follows:

**I. INTRODUCTION.**

Ms. Perry has a personal stake in the outcome of these proceedings because she personally directed federal law enforcement agents to re-execute an already executed search warrant (twice) in an attempt to gain and maintain access to Mr. Raymond's cellular phone.  In addition, Ms. Perry directed the agents to reengage Mr. Raymond in pursuit of access to his cell phone even though she knew Mr. Raymond had invoked his right to silence and declined to provide his PIN code. These directions violated Mr. Raymond's Fourth and Fifth Amendment rights and led to the discovery of much, if not all, of the evidence in this case.

.

1

Ms. Perry's actions in directing agents to illegally re-execute a search and seizure warrant and to illegally obtain Mr. Raymond's PIN code after he invoked his right to silence immediately created a conflict of interest. She has an unmitigated personal stake in this case, and she is a vital and necessary witness in future proceedings. Due to the seriousness of Ms. Perry's direct involvement in the search and seizure of her own case, she no longer serves as a disinterested prosecutor as required by the Supreme Court. Furthermore, Ms. Perry's failure to fully and adequately disclose the issues related to the seizure, her blatant disregard of constitutional requirements as captured on body camera, and her more recent refusal to discuss these issues with the defense raise significant questions concerning her ability to continue in this case. For these reasons, and such others as may be raised at a hearing on these issues, Ms. Perry must be disqualified from this case.

## II.  FACTUAL BACKGROUND.

### A.  Ms. Perry's Direct Involvement in the Illegal Seizure.

The facts surrounding the illegal seizure of Mr. Raymond's phone and the illegal requests for Mr. Raymond's PIN code and password are set forth in detail at pages 5-15 of Mr. Raymond's Motion to Withdraw Guilty Plea (ECF No. 119). For purposes of this Motion, this section focuses on Ms. Perry's personal involvement in those illegal actions, which creates a clear conflict of interest.

During the initial execution of the warrant, Mr. Raymond unequivocally declined to provide his phone's PIN code to the agents:

> MR. NELSON: I understand. Let us get you the contacts you need.
> We need your PIN numbers for these phones so we can access them.
> Okay?
>
> Mr. RAYMOND: I, I have to consult a lawyer, honestly. I can't –
> it's just something I have to do.

> MS. GAJKOWSKI: Okay.
>
> MR. RAYMOND: You know, I don't know what my rights are in this situation.
>
> MS. GAJKOWSKI: (Inaudible.)
>
> MR. NELSON: You're right, but we are seizing the phones. What we need to do, though is unlock them and at least put them on airplane mode. Okay?
>
> MR. RAYMOND: I can't do that until I talk with my lawyer. I just don't understand what's going on here right now.
>
> MS. GAJKOWSKI: So --, so what we are going to do, because I, I just want to be clear, so you're not willing to voluntarily give us your PIN. Correct?
>
> MR. RAYMOND: No, not until I consult with a lawyer.
>
> MS. GAJKOWSKI: Okay, understood.
>
> MR. NELSON: Yeah. Okay.

Motion to Withdraw Guilty Plea, Ex. E  at 189-90.  The agents gave Mr. Raymond a property receipt for his phones, and announced that they had concluded the execution of their search and seizure warrant.  Motion to Withdraw Guilty Plea, Ex. E  at 220.

Not long after seizing Mr. Raymond's phones, the agents told Ms. Perry that Mr. Raymond had invoked his right to silence, and that the agents had failed to gain access to the phone.  Agent Gajkowski memorialized this conversation:

> **Following the seizure** of the devices and the conclusion of the interview with RAYMOND, which ended at approximately 1226 hrs, SAs…met at a rally point…for a debrief….
>
> Following the debrief, the agents departed and SA Gajkowski contacted a trial attorney with the Department of Justice (DOJ) Office of Human Rights and Special Prosecutions Office.  SA Gajkowski relayed that the phones had been seized and that RAYMOND **declined to provide a passcode**, which he identified as the means for unlocking both devices.  **DOJ advised** that the warrant authorized the agents to compel RAYMOND's fingerprint

> and/or facial recognition. **DOJ requested that the agents reengage** RAYMOND to determine whether the devices could be unlocked through such means.

Motion to Withdraw Guilty Plea, Ex. D (emphases added).  Ms. Perry admitted to the defense at a meeting on March 28, 2022, that she was the "trial attorney" the agents contacted that day.  Instead of considering the significant constitutional issues presented in this situation or deferring to an uninvolved or supervisory prosecutor, it appears Ms. Perry assumed the key role in directing an illegal seizure in real time.

The agents followed Ms. Perry's direction and reengaged Mr. Raymond at his hotel in an attempt to re-execute the warrant.  When Mr. Raymond came down to the lobby, the agents again showed Mr. Raymond the warrant, and explained that they wanted to use his biometrics to open the phones.  They handed Mr. Raymond the phones and asked him to unlock them.  But they did not stop there.  Gajkowski again asked for passcodes because she wanted to change the codes so she could access the phone freely in the future.  Gajkowksi said, "So, it's up to you, if you want to enter the password, you don't have to."  Mr. Raymond said, "I don't understand, am I compelled to?"  Agent Gajkowski replied, "You are not compelled to give us the code, only the thumbprint. I want to be clear on that."  Mr. Raymond then said," I'd rather, just for privacy – I'd rather not." Finally, Gajkowksi said, "Ok, understood."

Although Mr. Raymond opened both phones for the agents, the agents did not keep the phones open, and they locked again. In fact, about nine minutes and thirty seconds into the Herndon Officer's first body camera video, Gajkowski writes her contact information down for the Officer, when the body camera appears to capture the phone's screen going black.  Gajkowski expresses dismay that the phone is locked again.  At around eleven minutes and forty seconds into the body camera clip, as the agents are contemplating going up to Mr. Raymond's room to compel his biometrics again, agent Nelson says to agent Gajkowski, "You need to call Jamie [Perry] and

tell her what the situation is."  Agent Gajkowski replies, "Yeah."  Gajkowski then calls Ms. Perry

for at least the second time that day, starting the conversation with, "Jamie, hi…"  The Herndon

Officer walks away momentarily to go to Mr. Raymond's hotel room, but then the agents decide

to call Mr. Raymond instead.  The Herndon Officer walks back to the lobby, and again we can

hear Gajkowski's conversation with Ms. Perry.  Gajkowski explains to Ms. Perry that she cannot

change the passcode to the phone to allow herself permanent access, even though Mr. Raymond

opened the phone with his biometrics.  At around thirteen minutes and forty-five seconds into the

clip, Gajkowski explains to Ms. Perry that Mr. Raymond has been very clear that he will not give

them PIN codes/passwords.  **In other words, Gajkowski explained to Ms. Perry that the

biometrics were insufficient, and they needed the PIN code/Apple password for the phone.

And she also explained to Ms. Perry that Mr. Raymond had clearly invoked his Fifth

Amendment right and refused to provide PIN codes/passwords.**

At around fourteen minutes and fifteen seconds into the video, Gajkowski tells Ms. Perry

that they are going to have Mr. Raymond come down again and unlock the phones again.  This

will be the third attempt to execute the seizure warrant (and the second unlawful, unauthorized

attempt to re-execute the already-executed warrant).   Nelson and Gajkowski, themselves

apparently exasperated, then ask Ms. Perry, "is it possible for us to come at a later date."

Gajkowski apparently repeats to Nelson the advice that Ms. Perry gives, which is, "no, once you

have returned a warrant – you can't."[1]  At around sixteen minutes and ten seconds into the video,

Gajkowski directly asks Ms. Perry whether they should make a third attempt to execute the warrant

and compel Mr. Raymond to open the phones.  Gajkowski asks, "Do you want us to try to get the

---

[1]       As noted in the Argument section below, this was a misstatement of law by Ms. Perry.

face one more time and keep it on if we can?" Ms. Perry clearly answers in the affirmative, and the agents proceed to call Mr. Raymond to the hotel lobby again. The agents summoned Mr. Raymond to the hotel lobby again and indicated that they had lost access to his phones. They asked Mr. Raymond to open the phones, now executing the warrant for the third time, and they indicated that they very much needed his PIN code and Apple password to change the PIN number and establish permanent access to his phone. Mr. Raymond's will ultimately was overborn and he typed in his PIN code/password, allowing the agents permanent access. It is undisputed that the material recovered from Mr. Raymond's cellular phones – in direct violation of his constitutional rights at Ms. Perry's direction – led to most, if not all of the evidence against him in this criminal case. Without those PIN numbers and passcodes, the government would have nothing but two aluminum bricks in evidence.

In sum, Ms. Perry violated Mr. Raymond's constitutional rights by: (1) directing the agents to conduct repeated illegal seizures on an already-executed warrant; and (2) directing the agents to reengage Mr. Raymond in blatant disregard of the fact that Mr. Raymond invoked his right to silence when asked for his PIN numbers and passcodes.[2]

**B. Ms. Perry's Failure to Disclose Her Illegal Conduct.**

The illegal seizure of Mr. Raymond's phone occurred on June 6, 2020, approximately four months prior to Mr. Raymond's arrest in this case. Ms. Perry did not produce an initial set of materials related to the cell phone seizure until January 27, 2021. *See* Letter re: United States v. Brian Jeffrey Raymond, dated January 27, 2021, signed by Jamie Perry and April Russo, attached as Exhibit A.

---

[2]      For purposes of this motion only, Mr. Raymond seeks the disqualification and recusal of Ms. Perry. Mr. Raymond reserves the right to later seek Danielle Hickman's disqualification and recusal if, and when, further evidence is developed.

In this letter, Ms. Perry said nothing about the illegal seizure of Mr. Raymond's phone. Indeed, Ms. Perry characterized the recordings and transcripts related to the cell phone seizure as "interview" materials, and she lumped them in with other interview materials, disguising them from the defense: "Raymond Interviews May 31, June 2, June 6 (*audio recordings have been classified by the employer in their unredacted form – redacted transcripts have been provided as well as other related reports and body cam footage videos – reports of the June 2 and June 6 interviews are currently under classification review)."  Even the most basic distinction of the June 6 materials as warrant execution recordings/materials may have called them to the defense's attention.  But Ms. Perry failed to make that distinction, and she further failed to note for the defense the critical constitutional issues arising from Ms. Perry's and the agents' actions.

## III. LEGAL STANDARDS.

### A. Repeated Cell Phone Seizures on a Single Warrant Violate the Fourth Amendment.

The Fourth Amendment "guarantees . . . the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." U.S. CONST. Amend. IV; *see also, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971).  In general, a search warrant only authorizes a single search. *See United States v. Keszthelyi*, 308 F.3d 557, 569 (6th Cir. 2002) (citing *United States v. Gagnon*, 635 F.2d 766, 769 (10th Cir. 1980)).  "Once the execution of a warrant is complete . . . the authority conferred by the warrant terminates." *Id.* at 571.

While "under certain circumstances, police may temporarily suspend the initial execution of a search warrant and continue the search at another time" (*id.* at 569), the subsequent search must be a "reasonable continuation" of the original search. *Id.* at 568.  A search warrant does not provide law enforcement officials with unlimited access to the premises identified therein.  *Id.*  If

a warrant authorized law enforcement to make multiple searches during the life of the warrant, it could become "a means of tyrannical oppression in the hands of an unscrupulous officer." *Id.* (quoting *McDonald v. State*, 259 S.W.2d 524, 524-25 (Tenn. 1953)).   A subsequent search or seizure under an already-executed warrant is not a reasonable continuation if it is 1) a new and separate search; or, 2) the decision to continue was unreasonable "under the totality of the circumstances*." Id.* at 569.   Where an agent simply fails to seize certain material, going back to continue the search/seizure later is not reasonable.   *Id.* at 570-72 (holding that a subsequent search was unreasonable because "nothing impaired the ability of the agents to execute fully the warrant at the time of their initial entry").   *See also U.S. v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993) (finding reasonable continuation where officers suspended a Friday evening search of a vehicle until Monday, because they needed a mechanic's assistance to open the car's hood).

Even more importantly, under persuasive case law in this District, a specific rule of reasonableness applies in the case of compelled biometrics to open a cell phone.   *See In re: Seizure of* [Redacted], 317 F. Supp. 3d 523, 533 (D. D.C. 2018).   As Magistrate Judge Harvey explained:

> when attempting to unlock a telephone, computer or other electronic device during the execution of a search warrant that authorizes a search of the device, the government may compel the use of an individual's biometric features, if (1) the procedure is carried out **with dispatch and in the immediate vicinity of the premises to be searched**, and if, at time of the compulsion, the government has (2) reasonable suspicion that the suspect has committed a criminal act that is the subject matter of the warrant, and (3) reasonable suspicion that the individual's biometric features will unlock the device.

*Id.* at 532-33 (emphasis added).   Magistrate Judge Harvey further warned:  "Law enforcement is not absolved of its responsibility to act reasonably in executing a warrant merely because the government has received court authorization to compel the use of an individual's biometric

8

features." *Id.* n. 7.   Thus, compelling a suspect to use his biometrics to open a phone, in a separate location from the seizure, hours after the phone was originally seized, and multiple times, is unreasonable and thus unlawful.

**B. Repeated Requests for PIN Codes and Passwords After Express Invocation of Right to Silence Violate the Fifth Amendment.**

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V.   The incrimination privilege is intended to protect the accused from disclosing facts "relating him to the offense or from having to share his thoughts and beliefs with the government." *Doe v. U.S.,* 487 U.S. 201, 213 (1988).   The incrimination privilege "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951).   "To qualify for the Fifth Amendment privilege [against self-incrimination], a communication must be: (1) testimonial, (2) incriminating, and (3) compelled." *Hiibel v. Judicial Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 189 (2004).

1. <u>Entry of Passwords and Passcodes is Testimonial.</u>

"[To] be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe,* 487 U.S. at 210.   Courts have held that the disclosure of a password is testimonial for purposes of the Fifth Amendment privilege against self-incrimination. *See e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1341 (11th Cir. 2012) (holding that compelled entry of a decryption password is testimonial); *Matter of Search of [Redacted] Washington, District of Columbia*, 317 F. Supp. 3d 523, 538-39 (D.D.C. 2018) (collecting authorities in which compelled communication of passcodes has been deemed testimonial); *U.S. v. Hubbell*, 530 U.S. 27, 43 (2000) (suggesting that providing a combination to a strongbox is testimonial by requiring the individual in possession of the combination to "make extensive use of the contents of his own mind"); *In re Boucher*, No.

9

2:06-mj-91, 2007 WL 4246473, at *4 (D. Vt. Nov. 29, 2007) (holding that entry of a computer password is "pure testimonial production" because the password "[exists] only in a suspect's mind") *rev'd on other grounds*, 2009 WL 424718 (D. Vt. Feb. 19, 2009).

### 2. Entry of a Password is Incriminating.

The self-incrimination privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486. Therefore, a password leading to incriminating evidence is protected in the same manner as the evidence.

### 3. The Government Cannot Rely Upon Involuntary Statements.

When determining whether a statement is compelled for purposes of the self-incrimination privilege, "the constitutional inquiry is . . . whether the confession was free and voluntary; that is, (it) must not be extracted by any sort of threats or violence nor obtained by any implied promises, however slight, nor by the exertion of any improper influence." *Malloy v. Hogan*, 378 U.S. 1, 7 (1964) (internal quotation mark omitted) (quoting *Bram v. U.S.*, 168 U.S. 532, 542-43 (1897)). "In determining whether a defendant's statements were voluntary, a court must assess whether, under the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused." *U.S. v. Hsin-Yung*, 97 F. Supp. 2d 24, 34 (D.D.C. 2000).

### C. A Prosecutor Who Causes, Directs, or Participates in Fourth and Fifth Amendment Violations During the Investigative Phase of a Case May Be Subject to Liability or Other Personal Jeopardy.

### 1. *Bivens* Claim.

"A plaintiff may bring a suit for damages against federal officials in their individual capacities for constitutional violations." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Berman v. Crook*, 293 F. Supp. 3d 48, 54 (D.D.C. 2018). To

state a prima facie claim for damages under *Bivens* for constitutional violations, a plaintiff must demonstrate that: (1) the defendant violated plaintiff's constitutional rights; (2) the right was clearly established; (3) the defendant was a federal actor acting under color of federal law; and (4) the defendant was personally involved in the alleged violation. *Id.* at 54-55.

        2. <u>Prosecutorial Immunity.</u>

"Governmental officials receive either absolute or qualified immunity from suits for damages to shield them from undue interference with their duties and from potentially disabling threats of liability." *McSurely v. McLellan*, 697 F.2d 309, 318 (D.C. Cir. 1982) (internal quotation mark omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

"A prosecutor receives absolute immunity only when he acts as an advocate, that is, in his role as a participant in the judicial phase of the criminal process." *Id.* at 319.  Prosecutors are not entitled to absolute immunity when they engage in investigative functions. *Dellums v. Powell*, 660 F.2d 802, 805 (D.C. Cir. 1981).  Participation in the execution of a search and seizure warrant is investigative, and may receive only qualified immunity. *McSurely*, 697 F.2d at 320.

A public official is entitled to qualified immunity if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow*, 457 U.S. at 818).  "Clearly established for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bernstein v. Roberts*, 405 F.Supp.2d 34, 37 (D.D.C. 2005) (internal quotation marks omitted) (quoting *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999)).  "Qualified immunity can be denied if in the light of pre-existing law the unlawfulness [was] apparent." *Id.* at 39 (internal quotation mark omitted) (quoting *Wilson*, 526 U.S. at 614-15).

3. <u>Other Personal Jeopardy.</u>

A federal prosecutor who causes, directs, or participates in Fourth and Fifth Amendment Violations, or who fails to fully and properly disclose such matters to the defense, may be subject to ethical review by state bar authorities or the Department of Justice Office of Professional Responsibility.  For a Maryland-barred attorney, such situation may implicate Maryland Rules of Professional Conduct 3.8 (Special Responsibilities of the Prosecutor), 4.4 (Respect for the Rights of Third Persons, which provides that "an attorney shall not use means…or use methods of obtaining evidence that violate the legal rights of such a [third] person"), or 8.4 (Misconduct).

**D. A Prosecutor Who Causes, Directs, or Participates in Fourth and Fifth Amendment Violations During the Investigative Phase of a Case May Be a Necessary Witness.**

As noted above, law enforcement's actions/decisions in executing a search and seizure warrant are subject to judicial review, including in a hearing on a motion to suppress evidence.  At such hearings, law enforcement personnel who participated in and directed the search and seizure are routinely required to testify as fact witnesses. *See e.g. U.S. v. Watson*, 307 F.Supp. 173 (D.D.C. 1969)(suppressing evidence seized through an invalid warrant on the basis of the responding detective's testimony at suppression hearing); *U.S. v. Lindsey*, 596 F. Supp.2d 55, 62 (D.D.C. 2009) (suppressing evidence on the grounds that the investigating FBI agent who obtained the warrant and testified at the suppression hearing "should have known that the search was illegal").

**E. A Prosecutor Who Has Personal Liability at Stake, or Who May Be a Necessary Witness, Has a Conflict of Interest and is Subject to Disqualification.**

Under 28 U.S.C. § 528, a federal prosecutor is disqualified from participating in a prosecution in which she has a personal interest.  "Prosecution by someone with conflicting loyalties calls into question the objectivity of those charged with bringing a defendant to judgment." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987). A scheme injecting

a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980).  Once a conflict of interest has been established, "the prosecutor [becomes] subject to influences that undermine confidence that a prosecution can be conducted in a disinterested fashion." *Young,* 481 U.S. at 811. A prosecutor with a personal interest lacks "fairminded judgment with respect to (1) whether to decline to prosecute, (2) whether to reduce the charge . . .  or (3) whether to recommend a suspended sentence or other clemency."  *Ganger v. Peyton*, 379 F.2d 709, 713 (4th Cir. 1967).

1. <u>Civil Cause of Action Against Prosecutor.</u>

It is improper for a prosecutor to partake in a case in which a threat is posed to her "interests in [her] personal and professional reputation by a bona fide civil action alleging bad faith in the performance of official duties." *U.S. v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981).  "If the prosecutor's personal interest as the defendant in a civil case will be furthered by a successful criminal prosecution, the criminal defendant may be denied the impartial objective exercise of that discretion to which he is entitled." *Id.*

To disqualify a prosecutor due to a conflict of interest from a civil suit filed against her by a criminal defendant for actions taken in the prosecutor's official capacity, there must be "proof, by clear and convincing evidence, of a prima facie case of misconduct on the part of the [prosecutor]." *Id.* at 1276 n. 3.  "The clear-and-convincing standard generally requires the trier of fact . . . to reach a firm conviction of the truth on the evidence about which he or she is certain." *U.S. v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994).  "In the absence of such evidence a defendant cannot disqualify a prosecutor by the mere filing of a lawsuit." *U.S. v. Kember*, 685 F.2d 451, 458 (D.C. Cir. 1982).

2. <u>Prosecutor as Witness.</u>

Under Rule 3.7 of the ABA Model Rules of Professional Conduct, a lawyer is forbidden from serving as an advocate at a proceeding in which she will likely be a necessary witness due to potential conflicts of interest.[3] Model Rules of Prof'l Conduct R. 3.7 (2020).  However, a defendant is not entitled to call a prosecutor as a witness in a criminal matter "absent a showing of compelling need." *U.S. v. Weinberger*, Crim.A. No. 92-235, 1992 WL 294877, at \*5 (D.D.C. Sept. 29, 1992) (citing *U.S. v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990)).   "Unless the prosecutor has essential information that cannot be obtained by other means, he cannot be compelled to testify." *Id.* (citing *U.S. v. Perlmutter*, 637 F.Supp. 1134, 1138 (S.D.N.Y. 1986)).   However, "the defendant's obligation to resort to alternative means of adducing factual testimony is not absolute." *U.S. v. Prantil*, 764 F.2d 548, 551-52 (9th Cir. 1985).   When assessing the materiality of a prosecutor's testimony, "the court must honor the defendant's constitutional rights under the confrontation and compulsory process clauses of the Sixth Amendment."  *Id.* at 552.

---

[3] The Seventh Circuit has stated the following regarding the policy interests advanced by the prohibition on prosecutors serving as advocate and witness in the same proceeding:

> First, the rule eliminates the risk that a testifying prosecutor will not be a fully objective witness given his position as an advocate for the government. Second there is fear that the prestige or prominence of a government prosecutor's office will artificially enhance his credibility as a witness. Third, the performance of dual roles by a prosecutor might create confusion on the part of the trier of fact as to whether the prosecutor is speaking in the capacity of an advocate or of a witness, thus raising the possibility of the trier according testimonial credit to the prosecutor's closing argument. Fourth, the rule reflects a broader concern for public confidence in the administration of justice, and implements the maxim that justice must satisfy the appearance of justice.

*U.S. v. Johnston*, 690 F.2d 638, 643 (7th Cir. 1982) (internal quotation marks omitted).

## IV. ARGUMENT.

### A.   Ms. Perry Should be Disqualified as Counsel Because She Has Personal Interests and Liability at Stake.

Ms. Perry should be disqualified from prosecuting this case given her direct role in the illegal search and seizure of Mr. Raymond's phone.  In Ms. Perry's case, her direct actions, disregard for the Constitution as recorded on video, and failure to disclose such issues, is concerning and raises a number of ethical and legal questions and concerns regarding the entire proceeding against Mr. Raymond since June 6, 2020.  Based on the facts of this case, Ms. Perry is far from a disinterested prosecutor, as required by the Supreme Court, and she may even face civil liability.  Ms. Perry's personal stake is undeniable, and she should therefore be disqualified.

#### 1.   Ms. Perry Violated Mr. Raymond's Constitutional Rights.

*First,* Ms. Perry violated Mr. Raymond's Fourth Amendment right to be free from unreasonable searches and seizures.  She twice ordered the agents to re-execute the search and seizure warrant after they had stated, on the record, that the execution of the warrant had concluded.  Importantly, the authority conferred by a warrant terminates when the execution of the warrant is completed. *Keszthelyi*, 308 F.3d at 571.  Ms. Perry even acknowledged that the execution of warrants is subject to certain limitations when speaking with the agents.  Following the second execution of the warrant, Gajkowski, at Nelson's urging, asked Ms. Perry whether they could reengage Mr. Raymond at a later date.  Shortly thereafter, Gajkowski relayed Ms. Perry's advice to Nelson regarding reengagement at a later date: "no, once you have returned a warrant – you can't [re-execute it at a later date]."  This statement betrays Ms. Perry's fundamental misunderstanding of the Fourth Amendment; the warrant did not (and legally could not) allow repeated engagements over the life of the warrant.

It is astounding that Ms. Perry – a Department of Justice attorney – appears to have advised agents that a search warrant was valid for potentially unlimited searches by law enforcement until it is "returned."   This advice was patently incorrect.   If it were true, the potential for law enforcement overreach in executing search and seizure warrants would be staggering.  Ms. Perry's unconstitutional views on unlimited searches and seizures, and her orders to the agents to proceed, highlight her personal stake in these proceedings.  It is clear from the transcript of the agents' first encounter with Mr. Raymond that day that the agents had legitimate legal concerns about continuing their efforts after Mr. Raymond invoked his right to silence.  But Ms. Perry held no such concerns about continued questioning and twice re-executing an already-executed warrant.

Further, as a legal matter, the second and third seizures of Mr. Raymond were in no way "reasonable continuation[s]" of the original execution. *Id.* at 568.  Mr. Raymond's request for counsel and refusal to provide his PIN code were not an "unexpected obstacle" for the agents, but rather clear invocations of his constitutional rights as clearly contemplated by the warrant which provided for biometric data use, but did not provide compulsion for PINs and passcodes. *Id.* at 570.  Therefore, the second and third seizures were unreasonable and illegal; they were separate searches and required separate warrants that the agents and Ms. Perry failed to obtain.  Ms. Perry's instructions to the agents to re-seize the phone multiple times was unconstitutional, and gives rise to an impermissible personal stake in this case.

*Second,* Ms. Perry and the agents violated Mr. Raymond's Fifth Amendment privilege against self-incrimination.  The agents repeatedly sought PIN codes and passcodes during their initial interview with Mr. Raymond, and Mr. Raymond repeatedly declined.  The agents informed Ms. Perry that Mr. Raymond invoked his right to silence both in their initial debrief phone call, and in the subsequent phone call with Ms. Perry at the hotel.  As stated in Gajkowski's report, "SA

Gajkowski relayed that the phones had been seized and that RAYMOND declined to provide a passcode."  Motion to Withdraw Guilty Plea, Ex. D  at 1.  But Ms. Perry had no respect for Mr. Raymond's Fifth Amendment rights, and she "requested that the agents reengage" Mr. Raymond. *Id.*

The agents followed Ms. Perry's lead, and went at Mr. Raymond again, this time at his hotel.  While talking with Mr. Raymond, the agents did not just seek Mr. Raymond's biometrics, but also his PIN codes and passwords.  *But again* Mr. Raymond expressly declined, this time expressly citing "privacy" concerns.  Unbelievably, the agents again contacted Ms. Perry, and informed her that Mr. Raymond had again invoked his right to silence.  The body camera captured agent Gajkowski telling Ms. Perry *again* that Mr. Raymond has been very clear that he will not give them PIN codes/passwords.  And again, Ms. Perry demonstrates no regard for the constitution, and approves of the agents taking yet another run at Mr. Raymond to get into his phones.

Gajkowski and Nelson continued making repeated requests for Mr. Raymond's PIN codes and passwords, and they made thinly veiled threats that they did "not want to keep bothering him" and that they would "continue to struggle with this over the weekend," suggesting that the agents, at Ms. Perry's direction, would continue to harass Mr. Raymond until his will to invoke his constitutional right was overcome by illegal pressure.  The agents, at Ms. Perry's direction, ultimately succeeded in overcoming Mr. Raymond's will with their relentless pursuit and refusal to leave.  With his will "overborn," *Hsin-Yung*, 97 F. Supp. at 34, by hours of questioning and the prospect of continued harassment, Mr. Raymond submitted and provided his passcode several hours after Gajkowski and Nelson acknowledged his request for a lawyer and right to silence.  The agents had not engaged in an illegal seizure when they left Mr. Raymond after the first encounter.

Then, the agents engaged in repeated constitutional violations.  In between their legal actions, and

their illegal actions, the agents sought and took advice from Ms. Perry.

Ms. Perry violated Mr. Raymond's rights.  The Fourth Amendment dictates that a single

that a single warrant provides authority for a single seizure and search.  Ms. Perry's direction of

the agents to re-execute the same warrant multiple times, and to draw out and re-seize Mr.

Raymond multiple times undoubtedly violated his constitutional rights.   In addition law

enforcement officials' continued questioning of a suspect following his "unequivocal invocation

of his right to counsel" and silence, which is a blatant violation of Mr. Raymond's clearly-

established Fifth Amendment right against self-incrimination. *Tobias v. Arteaga*, 996 F.3d 571,

580-81 (9th Cir. 2021).  Ms. Perry's direction to federal officers to continue pursuing access to

Mr. Raymond's phones after he had invoked his right to silence certainly meets this element.

2.  <u>Ms. Perry Faces Personal Liability for Her Actions.</u>

Ms. Perry is a trial attorney for the U.S. Department of Justice, a federal executive agency,

and she ordered federal agents to take multiple actions in violation of Mr. Raymond's

constitutional rights.  Ms. Perry was not only personally involved in the violations of Mr.

Raymond's constitutional rights, but in fact directed them, and then failed to fully and adequately

disclose them to the defense.  Gajkowski and Nelson concluded their initial meeting and the

execution of the search and seizure warrant after Mr. Raymond repeatedly and unequivocally

indicated that he would not provide them with his phone PIN code before speaking with a lawyer.

During two telephone calls with Gajkowski following the conclusion of the initial meeting, Ms.

Perry directed the federal agents to illegally reengage with Mr. Raymond to gain access to his

phones, and her disregard for the Fourth and Fifth Amendments was clearly captured in law

enforcement records and on video.  Her involvement was not mere participation; instead, she orchestrated the violation of Mr. Raymond's established constitutional rights.

Ms. Perry is not entitled to absolute immunity because her actions occurred during the investigative phase of the case (indeed, this was the very beginning of the investigation, and all of the government's subsequent actions flowed from it). *McSurely*, 697 F.2d at 320.  Nor is she entitled to qualified immunity because she violated Mr. Raymond's clearly established rights. *Id.* As such, Ms. Perry faces individual liability like any other citizen.  And this liability is all but certain given her direction of multiple constitutional violations.

Given Ms. Perry faces personal liability for directing an illegal search and seizure in this case, Ms. Perry should be disqualified as counsel in this matter due to her personal interest and stake in the outcome.  Ms. Perry is in a compromised position because her actions in defending the search and seizure, and even in resisting Mr. Raymond's motion to withdraw his guilty plea, may be tainted by her own personal desire to avoid liability.  In addition, Ms. Perry also faces potential ethics investigations and complaints due to her conduct both in guiding the illegal seizure as well as not fully disclosing those facts and issues to the defense.  Thus, Ms. Perry is not a disinterested prosecutor; rather her potential personal liability makes it impossible for her to be objective in this matter, and she should be disqualified.[4]

### E.   Ms. Perry Should be Disqualified Due to the Compelling Necessity of Her Witness Testimony.

Under the ABA Model Rules, Ms. Perry cannot serve as a prosecutor and witness in the same matter.  The defense will require Ms. Perry's testimony as she has "essential information that cannot be obtained by other means." *Weinberger*, 1992 WL 294877, at *5 (citing *Perlmutter*, 637

---

[4]   It is also conceivable that Ms. Perry would be investigated by the government for potential violations of 18 U.S.C.§ 241.

F.Supp. at 1138).  Specifically, Ms. Perry has information regarding the discussion with the agents and the rationale for re-executing the same search and seizure warrant multiple times in violation of Mr. Raymond's rights, why she did not call these issues to the defense's attention, and how she drew the conclusion that law enforcement can engage in limitless searches and seizures during the life of a warrant.

Given that Ms. Perry was the one who ordered the federal agents to reengage Mr. Raymond there is a "compelling need" for her to testify regarding her perceptions and motivations and to evaluate any potential claim by the government that the re-executions were somehow reasonable continuations of the search.  *Id.*  Ms. Perry is uniquely qualified to testify regarding certain aspects of the execution of the warrant including, but not limited to: i) the preparation of the warrant; ii) whether she was acting pursuant to another DOJ official's orders when ordering the agents to reengage Mr. Raymond; iii) whether the agents properly understood her orders by re-executing the same warrant; iv) the legal basis for her orders; and v) the details of the discussions she had with the agents, including any and all facts conveyed to her that are not memorialized in agent reports or captured on video.  These are clearly central issues related to the suppression of most, if not all, of the government's evidence, and certainly the most critical evidence the government has.

Ms. Perry cannot be expected to remain objective while serving in a dual role as prosecutor and witness on the most important pre-trial issue in this matter.  Therefore, she should be disqualified.

## V. CONFERENCE WITH GOVERNMENT.

On March 28, 2022, undersigned counsel met with Ms. Perry and the current prosecution team to, in part, raise concerns regarding the illegal nature of the seizures and the effect thereof on the plea agreement.  Thereafter, prior to filing the motion to withdraw Mr. Raymond's guilty plea,

undersigned counsel asked to speak with the supervisors of the prosecution team to raise these concerns given that Ms. Perry had expressed unwillingness to discuss them. The supervisors initially set a date for a teleconference *after* the motion to withdraw was to be filed. On the day of the filing, Mr. Raymond's counsel provided the supervisors with a courtesy copy of the motion and requested that (1) the government reconsider its opposition to the motion to withdraw; and (2) the government

> recuse Ms. Perry from handling the government's opposition. For a variety of reasons we can discuss next week, we think the government should remove her from this case. She caused and is a witness to the constitutional violations at issue in the critical search and seizure as noted in the Motion. In addition, she did nothing to bring those issues to the defense's attention. She has a personal stake in upholding the (in our view, unconstitutional) plea, as well as the illegal search, and we think her involvement in this case should cease.

Email from John Marston to Pragna Soni et al. dated April 29, 2022 attached hereto as Exhibit B.

The government responded a few days later and cancelled the scheduled teleconference, noting that the motion had made some "aggressive accusations about a department prosecutor," and that they "will need appropriate time to review these materials" before responding. E-mail from Pragna Soni to John Marston et al. dated May 3, 2022. Mr. Marston, on behalf of counsel, responded as follows:

> Thank you, Pragna. We are, of course, disappointed that you are cancelling the meeting, and sincerely hope you do not foreclose future discussions. We agree the legal issues raised are very important, and frankly, concerning. We do not view the facts surrounding the seizure and search as "aggressive accusations"; instead, we simply reported the facts as presented via bodycam and transcripts. We had sought to talk through these issues with the case prosecutors, and we asked them for a period of time to engage in discussions rather than litigation. But they would not engage with us on these issues, and instead insisted on moving forward with a sentencing date. We therefore had no choice but to file this motion and lay out the facts and issues, all of which are supported by documentary, video, and audio evidence.

We feel quite strongly that Ms. Ms. Perry should be recused from working on this motion, if not the entire case. That was just one of the topics we had hoped to discuss with you tomorrow. I am confident you know her to be an incredibly diligent, albeit aggressive, prosecutor. Her volume of work on this case is staggering, and I suspect that is simply how she handles all of her cases. Typically, these are admirable qualities in a prosecutor.

But the seizure and search issues presented in this case are also staggering, and the facts show Ms. Perry was the legal advisor who instructed the agents to reengage Mr. Raymond after they had already executed their seizure warrant, and after he had invoked. These are not aggressive accusations – they are a matter of record. Ms. Perry's position as a department prosecutor is a very high calling. But no department prosecutor is immune to mistakes, and at a minimum, we believe it is clear she made mistakes in her advice to agents at a critical stage of this case, and then she did not call those issues to the defense's attention (or, apparently, to your attention, given you indicated you need time to review these materials). We think this raises a conflict, and Ms. Perry may be a material witness at a future suppression hearing. Given you already have two other prosecutors on this case, the fair and sensible thing to do for all involved is to instruct Ms. Perry not to handle the response to this motion while you work on how to proceed from here.

Please let us know your position on Ms. Perry's involvement in this motion. We would much rather talk through these issues with you, but if you will not engage in a conversation, and if Ms. Perry remains a part of the government team on this motion, we may have to file a motion to recuse. Thank you for considering these important issues.

E-mail from John Marston to Pragna Soni dated May 3, 2022, attached as Exhibit C.

The government did not reply to this email. But tellingly, for the most part Ms. Angela Buckner, a District of Columbia Assistant United States Attorney, has taken the lead in correspondence and filings related to Mr. Raymond's Motion to Withdraw Guilty Plea. The Court should formalize what the government already knows is the right thing to do but for unknown reasons resists, and that is to disqualify and recuse Ms. Perry from this case.

On June 17, 2022, undersigned counsel sought the government's position as to this Motion, and the government has indicated that they will oppose the Motion.

## VI. CONCLUSION.

Decades ago, Justice Sutherland authored a Supreme Court opinion that concerned, among other things, the role of the United States in the criminal justice system.  Writing for the Court, Justice Sutherland observed that

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935).

It is respectfully suggested that prosecutor Perry has struck "foul" blows and failed to "refrain from improper methods" in this case.  By doing so, Ms. Perry has developed not just a personal interest in this case, but a personal stake.  She does not represent the government as a disinterested prosecutor, and she is not the representative of a sovereign who can "govern impartially," but instead she as a personal interest in fighting to protect her very real potential for liability and exposure arising from the illegal search and seizures of Mr. Raymond's cellular telephone.  Two re-executions of an already-served warrant.  Twenty-seven requests for PIN codes and passcodes after invocation after the first request to talk with counsel.  Zero discussion of these

issues with the defense, including when confronted with the facts almost two years later.  And all of this with Ms. Perry's guidance, direction, and direct involvement and approval.

For the foregoing reasons, Mr. Raymond requests that the Court grant this Motion and disqualify Ms. Perry as counsel of record in this matter.

Respectfully submitted this 17th day of June, 2022.


| _____/s/_____ | _____/s/_____ |
|---|---|

Denise E. Giraudo (D.C. 499348)        John Marston (D.C. 493012)
A. Joseph Jay III (D.C.  501646)        FOLEY HOAG LLP
SHEPPARD, MULLIN, RICHTER &           1717 K Street NW
  HAMPTON LLP                          Washington, D.C. 20006
2099 Pennsylvania Avenue, NW           (202) 223-1200
Washington, D.C. 20006                 jmarston@foleyhoag.com
(202) 747-1900
dgiraudo@sheppardmullin.com
jjay@sheppardmullin.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing motion upon government counsel by filing it with the Court's Electronic Case Filing ("ECF") System.

_____/s/_____

Denise E. Giraudo