IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 21-cr-00380 (CKK) |
| : | |
| BRIAN JEFFREY RAYMOND, : | |
| : | |
| Defendant. : | |

**DEFENDANT BRIAN RAYMOND'S MOTION FOR BOND
AND RELEASE FROM CUSTODY**

Defendant Brian Jeffery Raymond, by and through his undersigned attorneys, hereby respectfully submits this motion for bond and release from pretrial detention. The government opposes this motion. In support of this motion, Mr. Raymond states as follows:

**INTRODUCTION**

Despite the fact that Mr. Raymond had been incarcerated for over 27 months, the government returned the first indictment in this matter on January 19, 2023. The government only undertook this action as a ploy to avoid a preliminary hearing as requested by Mr. Raymond and scheduled by the Court. The indictment charges Mr. Raymond with (i) two counts of sexual abuse in violation of 18 U.S.C. §§ 2242(2) and 7(9), (ii) one count of aggravated sexual abuse in violation of U.S.C. §§ 2241(b) and 7(9), (iii) three counts of abusive sexual contact in violation of 18 U.S.C. §§ 2242(a)(1) and 7(9), (iv) four counts of abusive sexual contact in violation of 18 U.S.C. §§ 2242(a)(1) and 7(9), and (v) one count of coercion and enticement to travel in violation of 18 U.S.C. § 2242(a). Mr. Raymond has now been in pretrial custody more than 28 months.

As the Court knows, Mr. Raymond previously entered a guilty plea on July 23, 2021, ECF No. 69. On March 28, 2022, undersigned counsel alerted the government that Mr. Raymond believed that the multiple seizures of his phones were illegal. Thereafter, on April 29,

2022 Mr. Raymond moved to withdraw his guilty plea based on two issues: 1) prior counsel's ineffective assistance by failing to investigate, leverage, or litigate violations of Mr. Raymond's Fourth and Fifth Amendment rights in the repeated seizures of his person and cell phones; and 2) Mr. Raymond's actual innocence of the two most serious offenses to which he had pled guilty. ECF No. 119. Rather than allow the merits of the Motion be heard by the Court, the government engaged in various tactics (including raising conflicts issues where there were none) that delayed the Court's ruling on the Motion to Withdraw. On October 26, 2022, the Court granted Mr. Raymond's Motion to Withdraw, finding that prior counsel was ineffective, and also that the evidence, in terms of guilt or actual innocence on the two most serious charges, "[stood] in equipoise between the parties." ECF No. 158 at 33.

Mr. Raymond should now be released in this case. The weight of the evidence militates in favor of release. Based on the extensive discovery provided by the government, it is clear that the government lacks objective or clear evidence with regard to the most serious charges. ECF No. 158 at 33. Further, as the Court is well aware, the government's case with respect to lesser contact offenses largely hinges on evidence illegally obtained from Mr. Raymond's cell phones, all of which is subject to suppression. Mr. Raymond's history and characteristics, including during detention, also show he should be released. He has no criminal history, has been a model inmate, and did not flee while this investigation was pending. The record shows that Mr. Raymond will abide by a set of conditions on release. In addition, on strict conditions, the only conceivable dangers presented on the facts of this case are reasonably, if not fully, mitigated. Finally, Mr. Raymond should be released because the long delay in this case is attributable to the government and its handling of this matter from inception.

## LEGAL STANDARD

The criminal justice system in the United States favors liberty. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *U.S. v. Gloster*, 969 F.Supp. 92, 96 (D.D.C. 1997) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). "The default position of the law, therefore, is that a defendant should be released pending trial." *U.S. v. Taylor*, 289 F.Supp.3d 55, 62 (D.D.C. 2018). *See also United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting and citing *Salerno*); *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (citing and quoting S. Rep. No. 98-225, at 6 (1984), and stating that "pretrial detention is necessary for only a 'small but identifiable group of particularly dangerous defendants'").

While the Bail Reform Act "authorizes…carefully limited exceptions" to the presumption in favor of liberty, it does so only when the government shows that there is "*no* condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Munchel*, 991 F.3d at 1279 (quoting 18 U.S.C. § 3142(e) (emphasis added)). When assessing whether any conditions of release will reasonably assure the safety of any other person and the community as well as the defendant's presence, the court must consider four factors identified in 18 U.S.C. § 3142(g):

> 1) the nature and circumstances of the offense charged, . . .;
>
> 2) the weight of the evidence against the person;
>
> 3) the history and characteristics of the person . . .;
>
> 4) the nature and seriousness of the danger to any person or the community.

Where the government seeks pretrial detention, the government bears the burden of establishing dangerousness and flight risk under these factors. *See United States v. Klein*, 539 F. Supp. 3d 145,

151 (D.D.C. 2021); *United States v. Cardenas*, 784 F.2d 937 (9th Cir. 1986). The standard of proof the government must meet to establish dangerousness is "clear and convincing evidence," and the standard of proof the government must meet to establish risk of flight is "a preponderance of the evidence." *See* 18 U.S.C. § 3142(f) (stating that the facts that support a finding of dangerousness "shall be supported by clear and convincing evidence"); *United States v. Karni*, 298 F. Supp. 2d 129, 131 (D.D.C. 2004) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)).

In evaluating the "weight of the evidence" factor under section 3142(g)(2), the analysis does not focus on the evidence of danger to the community or the evidence of the risk of flight; "rather, it requires that the judicial officer consider the weight of the evidence *against the person*." *U.S. v. Taylor*, 289 F.Supp.3d 55, 66 (D.D.C. 2018) (emphasis in original). "[T]hat means the evidence of guilt – not dangerousness or risk of flight." *Id*. And when assessing the history and characteristics of Mr. Raymond, the Court is required to consider (1) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal state or local law. *Taylor*, 289 F.Supp.3d at 69 (citing 18 U.S.C. § 3142(g)(3)).

In evaluating a dangerousness argument by the government, the Court must ensure that the protections afforded by due process and the presumption of innocence are upheld. *Munchel*, 991 F.3d at 1280. The court does so by authorizing pretrial detention only when "the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a *concrete,*

*prospective threat to public safety.*" *Id*. (emphasis added).  Further, the district court must consider that concrete, prospective threat "in context." *Id*. at 1284. This means that the court must evaluate, among other things, whether the defendant will possess the "resources and capabilities" to carry out the threat identified by the government. *Id*.  As the court explained in *Muchel*, to meet its burden the government must show an "identified and articulable" threat, and that the proposed release conditions do not reasonably meet that threat.  *Id*.  Where the proposed conditions reasonably mitigate any "means of continuing [past criminal conduct] in the future," the defendant should be released. *Id.* at 1283.

Finally, Fifth Amendment due process considerations require release when a defendant has been detained without bail for an extended period of time, and his case has been delayed unnecessarily by the government's litigation strategies and other dilatory tactics. *See, e.g.*, *United States v. Wright*, 2022 U.S. Dist. LEXIS 222348 (S.D.Ga. 2022).  To evaluate whether prolonged pretrial detention violates due process, courts have frequently used the Second Circuit's "three-factor test, which looks to (1) the length of detention and non-speculative future detention, (2) the extent to which the government bears responsibility for the delay in starting trial, and (3) the strength of the evidence supporting the conclusion that no combination of conditions of release can ensure the safety of the community or return to court." *See United States v. Sharps*, 246 A.3d 1141, 1157 (D.D.C. 2021) (citing *United States v. Orena*, 986 F.2d 628, 630 (2d. Cir. 1993)).[1]

---

[1]   Although it appears this Second Circuit balancing test has not been formally adopted in the D.C. Circuit, it has been referenced and even applied in certain cases. *See, e.g.*, *Sharps*, 246 A.3d at 1157-58; *United States v. Caldwell*, 2022 U.S. Dist. LEXIS 10043 (D.D.C. 2022).

**ARGUMENT**

The government cannot meet its burdens under section 3142 in this case for at least four reasons. First, the evidence is, at best, weak. While the charges in this case are facially serious, on closer review the most serious charges are entirely unsupported by evidence. Indeed, the Court has already concluded that the evidence as between the government and defense stands in "equipoise" as to some of the most serious charges in this case. The evidence in this case is further weakened by the fact that the government's strongest proof – photographs and videos, which only apply to some of the contact offenses – is subject to suppression. Second, Mr. Raymond's personal history and characteristics, including his complete lack of criminal history and years-long dedicated government service, provide no basis for detention, but instead clearly show why he should be released. For example, there is no evidence in Mr. Raymond's history or otherwise to suggest Mr. Raymond will flee. Indeed, he did not do so when this investigation was pending for several months. Now, while on release with location and computer monitoring and no passport, Mr. Raymond would have no ability to flee. Third, under the conditions proposed by the defense, which directly address and eliminate any potential safety issues, the government cannot articulate a particularized danger to the community if Mr. Raymond is released. Finally, the prolonged period of pretrial detention, which will accumulate to more than three years by the time of trial which the Court today set for November 8, 2023, is unconstitutionally long, particularly when the delay in this case is attributable to the government's tactics, and the evidence against Mr. Raymond is weak.

**I.   The Government Lacks Objective Evidence of Mr. Raymond's Wrongdoing.**

As explained in the Court's Order granting Mr. Raymond's Motion to Withdraw his Guilty Plea, the "objective evidence" of Mr. Raymond engaging in sexual intercourse consists entirely of "admittedly unclear" testimony from alleged victims. ECF No. 158 at 33. Mr. Raymond has not

admitted to knowingly having sex with someone who "passed out, blacked out, or [was] otherwise incapable of appraising the nature of the conduct," nor does the evidence support that such conduct occurred.  *Id.*  Instead, the government's case against Mr. Raymond rests largely on photographs obtained from its patently illegal repeated seizures of his cell phones.  But, none of those photographs depict Mr. Raymond engaging in a sexual act, a prerequisite to the sexual abuse charges against Mr. Raymond.  *Id.*  As the Court noted in assessing Mr. Raymond's actual innocence, the Government does not dispute this characterization of the photographic and video evidence.  *Id*.

In addition to the lack of objective evidence, the Court has also recognized that the photographs and videos which comprise a large portion of the government's case are the product of "troubling" constitutional violations.  *Id.* at 25.  The government obtained these materials after federal agents initially concluded their execution of a warrant for Mr. Raymond's cell phones and subsequently executed multiple seizures on the same warrant.  *Id.*  These repeated seizures did not result from any "obstacles created by actions taken by the Defendant.  Instead, Defendant was summoned back because of the agents' failure to familiarize themselves with the terms of the warrant, their admitted technological ineptitude, and/or their failure to plan in advance on how the phones would be kept open."  *Id.*  Mr. Raymond also repeatedly indicated that he wished to consult with counsel during the course of these seizures.  *Id.* at 26.  The agents, after consulting a prosecutor, disregarded these requests until Mr. Raymond provided them with continued access to the phones.  Given that the agents' actions during the seizures of Mr. Raymond's cell phones demonstrate a total disregard for the Fourth and Fifth Amendments, the photographs and videos obtained through those actions will be the subject of a motion to suppress.

Looking at the evidence more closely in connection with the specific charges now pending in this case, it becomes clear that the government's case is based on hunches and speculation, and the most serious charges are entirely unsupported by evidence and law. *See, e.g.*, Defense Presentation, "Meeting with DOJ Supervisors and Prosecution Team," dated December 8, 2022, attached as Exhibit A (submitted separately with a Motion to Seal). The following chart summarizes some of the most glaring deficiencies in the government's case:

| Count | Alleged Victim | Charge | Issues |
|---|---|---|---|
| 1 | 1 | Sexual Abuse (engaged in a sexual act with a person incapable of appraising the nature of the conduct) | • AV1 tested positive for cocaine, meth, and a bronchiodilator she was not supposed to mix with alcohol.<br>• Government's own agent found numerous discrepancies in AV1's story as compared to other evidence. Agent put these into two charts which the government did not disclose until *after* Mr. Raymond pled guilty.<br>• Mr. Raymond passed a polygraph showing he did not use force or intimidation to have sex with AV1, nor did he drug her, nor was he aware she was incapable of consent.<br>• *See* Exhibit A, slides 5-11. |
| 2 | 9 | Aggravated Sexual Abuse (engaged in a sexual act after administering a drug or intoxicant) | • Absolutely no evidence that Mr. Raymond administered intoxicants to any of the alleged victims in this case – no tests, no pills or substances recovered.<br>• Mr. Raymond passed a polygraph showing he *did not* administer a drug or intoxicant to AV9.<br>• She admitted she "drank a lot."<br>• She does not remember when sex occurred, or if she gave consent. Cannot sustain a sex abuse charge on these facts. *U.S. v. Peters*, 277 F.3d 963 (7th Cir. 2002).<br>• The Court concluded the evidence with respect to AV9 stands in "equipoise."<br>• *See* Exhibit A, slides 50-54; 57-60. |
| 3 | 9 | Sexual Abuse (engaged in a sexual act with a person incapable of appraising the nature of the conduct) | • See above. This charge is entirely unsupported by fact or law. |

SMRH:4869-6445-0124.1

-8-

| | | | |
|---|---|---|---|
| 4 | 9 | Abusive Sexual Contact (engaged in sexual contact after administering a drug or intoxicant) | • See above.<br>• Absolutely no evidence that Mr. Raymond administered intoxicants.<br>• The only proof of contact comes from evidence subject to suppression. |
| 5 | 9 | Abusive Sexual Contact (engaged in sexual contact with a person incapable of appraising the nature of the conduct) | • See above.<br>• The only proof of contact comes from evidence subject to suppression. |
| 6 | 5 | Abusive Sexual Contact (engaged in sexual contact after administering a drug or intoxicant) | • Absolutely no evidence that Mr. Raymond administered intoxicants.<br>• The only proof of contact comes from evidence subject to suppression. |
| 7 | 5 | Abusive Sexual Contact (engaged in sexual contact with person incapable of appraising the nature of the conduct) | • The only proof of contact comes from evidence subject to suppression. |
| 8 | 7 | Abusive Sexual Contact (engaged in sexual contact after administering a drug or intoxicant) | • Absolutely no evidence that Mr. Raymond administered intoxicants.<br>• The photographic evidence does not clearly establish sexual contact as defined under the law.<br>• The only proof of contact comes from evidence subject to suppression.<br>• *See* Exhibit A, slides 38-49. |
| 9 | 7[2] | Abusive Sexual Contact (engaged in sexual contact with a person incapable of appraising the nature of the conduct) | • The photographic evidence does not clearly establish sexual contact as defined under the law.<br>• The only proof of contact comes from evidence subject to suppression.<br>• *See* Exhibit A, slides 38-49. |
| 10 | 6 | Abusive Sexual Contact (engaged in sexual contact with a person incapable of appraising the nature of the conduct) | • The government has *no* evidence of sexual contact as defined under the law. The photo/video evidence shows incidental self-contact by AV6. *See* 18 U.S.C. §§ 2244, 2246; *United States v. Shafer*, 573 F.3d 267 (6th Cir. 2009).<br>• The only proof of contact comes from evidence subject to suppression. |

---

[2]  Tellingly, the government did not indict Mr. Raymond on Sexual Abuse with regard to alleged victim number 7, even though that charge was part of the now-withdrawn plea. This is in line with the Court's conclusion that the evidence for and against Sexual Abuse with regard to alleged victim number 7 stands in "equipoise." On a close review of the facts, the evidence does not, in fact, support that charge. *See* Exhibit A, slides 38-49.

| 11 | 4 | Coercion and Enticement to Travel | <ul><li>This charge is entirely unsupported by fact and law.</li><li>According to AV4's own statement, she "offered to go back [to Virginia from DC] to her apartment."</li><li>The two drove separately, and she showed him to the apartment and gave him a tour.</li><li>No sex occurred.</li><li>*See* Exhibit A, slides 31-37.</li></ul> |
|---|---|---|---|

Given the insubstantial objective evidence (and the likelihood that any such evidence may be suppressed), this factor weighs heavily in favor of granting Mr. Raymond pretrial release. In addition, given the strength of Mr. Raymond's defenses, and the likelihood of suppression in this case, the evidence and charges against Mr. Raymond also do not support a finding that he is a risk of flight. Because liberty should be the norm, and detention the carefully tailored exception, on these facts Mr. Raymond should be released. *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999).

## II. Mr. Raymond's Personal History and Characteristics Favor Release.

Mr. Raymond is an American citizen who had been successfully in the employ of the federal government for more than twenty years prior to his arrest. There is no evidence that Mr. Raymond would or even could flee the United States if granted pretrial release. Perhaps more importantly, evidence exists to the contrary. Mr. Raymond was aware of the investigation against him for more than four months prior to his arrest and did not attempt to flee to avoid prosecution. After the illegal seizures of his phones, Mr. Raymond remained in the United States and made no efforts to flee or conceal his location. Further, while Mr. Raymond had previously been stationed overseas as a government employee, he has no ability to travel abroad now given his governmental ties are nonexistent and his passport was seized. Mr. Raymond also has no criminal history, and was not, therefore, on probation, parole, or other release at the time he was arrested in this matter.

Finally, during his time of detention he has a spotless record in the D.C. Jail. He has been active in bettering himself, including through involvement in the Lead Up! Program. He has also provided assistance, as detailed further in Exhibit B (submitted separately with a Motion to Seal).

Mr. Raymond's history and characteristics show that he has a strong tendency to comply with rules and requirements, and indeed, he will do so now on release.

### III. Mr. Raymond's Release Does Not Pose A Danger to The Community.

The facts of the case, and Mr. Raymond's personal history, do not show by "clear and convincing evidence" that Mr. Raymond is a danger to the community. In fact, they show the opposite. The Court must evaluate the "nature and seriousness of the danger" posed by Mr. Raymond's release. 18 U.S.C. § 3142(g)(4). In doing so, the Court must evaluate whether the government has shown a "concrete, prospective threat to public safety," that is, an "identified and articulable threat" that is not reasonably met by the proposed conditions of release. *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). In this case, the only possible threat presented by the evidence (rather than the government's false version of events from its press releases) is a threat to go on dates with women, drink excessively together, and take photographs of the date in a passed-out state. This threat will be entirely mitigated by strict conditions of home incarceration, with location monitoring, and digital monitoring of any/all electronic devices present. While on home incarceration, Mr. Raymond will not be able to go on dates, because he will not be able to leave the house. While confined and under monitoring, he will not be able to arrange to have dates come to him. While confined and under monitoring, he will have no access to alcohol. The only conceivable "identified and articulable" threat in this case will be more than reasonably mitigated by Mr. Raymond's proposed conditions of release. Therefore, the "nature and seriousness of the danger" presented in this case weighs in favor of release.

**IV.   Mr. Raymond's Unconstitutionally Prolonged Pretrial Detention Warrants Release.**

The long passage of time in this case, which is currently expanding and ongoing despite Mr. Raymond's desire to proceed forthwith to trial, is entirely attributable to government tactics and ineffective assistance of counsel. A brief review of the various reasons for delay in this case shows that Mr. Raymond's continued detention would be unconstitutional:

- Mr. Raymond was arrested in October 2020. He has been detained since that date. He signed a guilty plea in May 2021. Due to government delay, he did not enter his plea before the Court until July 23, 2021.

- During the arrest-to-plea phase (October 2020 to July 2021), Mr. Raymond's prior counsel did not uncover, leverage, or litigate what the Court has now called a "viable" challenge to the seizures of his cell phones. ECF No. 158. The Court has found that this was infective assistance of counsel. *Id.* Prior counsel was removed for separate conflict reasons in or around November 2021, at a time when the ineffective assistance was not yet known.

- From Mr. Raymond's arrest up to March 2022, the government sat in silence concerning the illegal seizure issues, and did not raise these issues to defense counsel's attention even one time. When current counsel discovered these issues in March 2022 and asked the lead prosecutor whether she had discussed these issues with prior counsel, the lead prosecutor stated, "I don't recall." But she clearly had not. That entire period of wasted time, and the inappropriateness of the guilty plea, should be attributed to the government and its hide-the-ball tactics.

- When current defense counsel finally raised the issues related to the cell phone seizures, the government fought against what was the only fair and right thing – allowing Mr. Raymond to withdraw his guilty plea. Mr. Raymond then moved to withdraw the plea in April 2022.

- The government then caused delay by filing an unfounded "conflict" motion on May 16, 2022, four days before the government's Opposition to the Motion to Withdraw Guilty Plea was due (this was also not the first conflict motion filed by the government in this case). The government simultaneously filed a request to extend its deadline to file the Opposition to the Motion to Withdraw. With

      regard to the alleged "conflict," the Court found simply that "there is no conflict." ECF No. 136, p. 4.

- Through these tactics, the government delayed its Opposition by more than two months. The Opposition was full of false facts and arguments, for which the government later apologized, at least in part. ECF No. 153.

- Finally, until recently, the government staffed this case with a prosecutor who was, at a minimum, a necessary defense witness in connection with the illegal seizures of Mr. Raymond's phones. ECF No. 142. The defense sought and obtained this prosecutor's recusal in the midst of the pending Motion to Withdraw Guilty Plea. After the Court granted the Motion to Withdraw, this prosecutor announced her intent to re-enter this case. ECF No. 161. One day before the defense was set to file *another* motion to remove this prosecutor, her colleagues filed a notice withdrawing her appearance, and stated in a footnote that she had "accepted another position in the Department." ECF No. 171. In light of this prosecutor's presence in this entire case, and the conduct of the government throughout, the prolonged delay in this case should be attributed to the government.

The defense suggests the Court should consider three factors in evaluating whether Mr. Raymond's prolonged detention has become unconstitutional, such that he should be released now. *See United States v. Sharps*, 246 A.3d 1141, 1157 (D.D.C. 2021) (citing *United States v. Orena*, 986 F.2d 628, 630 (2d. Cir. 1993)). First, the length of pretrial detention in this case is unusually long. When this case finally proceeds to trial, it will be more than three years since Mr. Raymond was arrested and detained. This is an undoubtedly longer-than-normal period of pretrial detention. Second, the cause of the delay is not attributable to Mr. Raymond or the nature or complexity of the case. While the Court today found that this case is "complex" for speedy trial purposes, the true sources of the delay are not complexity, but rather the government's patently illegal seizures, the government's silence as to the seizure issues, the government's tactics pressuring Mr. Raymond into an unconstitutional plea with vague threats and scant evidence, and the government's futile attempts to maintain the constitutionally defective plea. The delays in this

case should be entirely attributed to the government and its manner of handling this case from pre-arrest up to now. Finally, the Court should consider the weight of the evidence. As detailed above and in Exhibit A, the evidence is weak. Some of the government's charges are entirely unsupported by fact or law, and others are established only by evidence that is subject to suppression given the government's improper, repeated seizures of Mr. Raymond and his phones. For these reasons, Mr. Raymond should be released from his unconstitutionally prolonged pretrial detention.

## PROPOSED CONDITIONS

Mr. Raymond is willing to abide by conditions of release, as deemed necessary by the Court, to ensure the safety of the community and his continued attendance at all future proceedings in this matter. Mr. Raymond proposes stringent conditions, including the following conditions modeled in part after those outlined in *U.S. v. Hanson*, 613 F.Supp.2d 85 (D.D.C. 2009), and based on known release options in the Southern District of California, where Mr. Raymond proposes to reside while this matter remains pending:[3]

- Mr. Raymond will be released to home incarceration at his parents' residence in Southern California, and remain within the residence twenty-four (24) hours a day, seven (7) days a week except for medical and psychiatric/psychological appointments, about which Mr. Raymond must inform his PSA Officer, and for such other reasons as the Court may approve;

---

[3] On February 15, 2023, defense counsel conferred with the Pretrial Services Agency ("PSA") in the District of Columbia concerning Mr. Raymond's potential release to his parents' residence in Southern California. PSA provided defense counsel with a sample release order in the Southern District of California, and informed defense counsel about various options available in that district.

- Mr. Raymond will be subject to global position system ("GPS") location monitoring. Mr. Raymond will keep the GPS equipment properly charged and maintain it in accordance with the directions given. Mr. Raymond will wear a GPS bracelet at all times to enable appropriate monitoring and will not tamper with or remove the bracelet for any reason without authorization;

- Mr. Raymond agrees to have PSA install computer monitoring software on all computers or other devices in the residence, and will pay for such monitoring throughout the duration of his release (while such computer monitoring is not available from PSA in the District of Columbia, PSA has informed defense counsel it is available in the Southern District of California). Even despite this monitoring, Mr. Raymond agrees not to access any computers, cell phones, or other electronic devices for purposes other than communicating with counsel.

- PSA shall arrange for its electronic monitoring vendor to directly notify it of any infraction of possible infraction, whenever it may occur, seven days a week, 24 hours a day;

- If PSA is alerted or notified, a representative of PSA shall immediately alert law enforcement and Chambers of Judge Kollar-Kotelly; and

- Mr. Raymond will forgo obtaining any new passport while this matter remains pending (he has already surrendered his existing passport).

Mr. Raymond further agrees to abide by any and all other conditions for release set by the Court or the PSA. Attached to this motion are: Exhibit C (AO 199A Setting Conditions of Release), and Exhibit D (Southern District of California Addendum to Order and Conditions of Pretrial Release).

## **CONCLUSION**

WHEREFORE, Mr. Raymond asks that this motion be granted, that he be released on bond, and that the Court order his release from D.C. Jail.

Respectfully submitted this 16th day of February, 2023.

| /s/ | /s/ |
|---|---|
| A. Joseph Jay III (D.C. 501646) | John Marston (D.C. 493012) |
| Denise Giraudo (D.C. 499348) | FOLEY HOAG LLP |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | 1717 K Street NW |
| 2099 Pennsylvania Avenue, NW | Washington, D.C. 20006 |
| Washington, D.C. 20006 | (202) 223-1200 |
| (202) 747-1900 | jmarston@foleyhoag.com |
| jjay@sheppardmullin.com | |
| dgiraudo@sheppardmullin.com | |