UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

BRIAN JEFFREY RAYMOND,

Defendant

Criminal Action No. 21-380 (CKK)

MEMORANDUM OPINION
(April 21, 2023)

Defendant Brian Jeffrey Raymond ("Defendant" or "Raymond") is charged by indictment with various sex offenses in Mexico and the United States. On October 16, 2020, Magistrate Judge Linda Lopez of the United States District Court for the Southern District of California held a detention hearing and concluded that pretrial detention was warranted. Detention Order, ECF No. 14, *United States v. Raymond*, Case No. 3:20-mj-04452-LL (S.D. Cal. Oct. 19, 2020) ("Detention Order"). Pending before the Court is Defendant's [179] Motion for Bond and Release From Custody, in which he asks the Court to revoke the magistrate judge's detention order and place him on pretrial release with conditions. Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's Motion.

## I. BACKGROUND

The Court has previously described a number of the Government's allegations and this case's procedural background in two prior opinions. *United States v. Raymond*, --- F. Supp. 3d --

---

[1] The Court's consideration has focused on:
- The Detention Order;
- Defendant's Motion for Bond and Release from Custody, ECF No. 179 ("Motion" or "Mot.");
- The Government's Opposition to Motion for Bond and Release from Custody, ECF No. 187 ("Opp."), and the exhibits appended thereto; and
- Defendant's Reply to the Government's Opposition, ECF No. 191 ("Repl.").

1

-, 2022 WL 14809915 (D.D.C. Oct. 26, 2022) ("*Raymond I*"); *United States v. Raymond*, --- F. Supp. 3d ---, 2023 WL 2043147 (D.D.C. Feb. 16, 2023) ("*Raymond II*"). The Court restates only those facts necessary for the resolution of the pending motion and refers the reader to those prior opinions for further background. Additionally, the facts discussed here are based upon the record presently before the Court, including the parties' pleadings and associated exhibits and the photographic and video evidence presented by the Government. In an exercise of its discretion, the Court considers those exhibits and additional recitation of the Government's key factual allegations in the record. *See United States v. Sheffield*, 799 F. Supp. 2d 18, 29 (D.D.C. 2011) ("The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." (cleaned up)). The facts stated here do not represent the Court's findings of fact on the merits of the case, which are the province of the jury.

### A. Procedural Background

An investigation of Mr. Raymond was triggered after police responded, on May 31, 2020, to reports of a naked woman ("AV-1") screaming on the balcony of Defendant's residence – a United States government-leased property in Mexico City, Mexico. When Mr. Raymond was interviewed in Mexico City by authorities, he indicated that he had met AV-1 online, and the two had gone to his apartment, had drinks, and engaged in consensual intercourse. *See* Sealed Affidavit in support of an Application for a Search Warrant by Special Agent Mikel Gajkowski ("Gajkowski Affidavit"), Sealed Ex. A, ECF No. 119-1, at 4-5.[2] A June 2, 2020 interview with AV-1 indicated that she had met with Mr. Raymond outdoors, and he brought wine in a backpack. After going to his apartment, where they drank more wine and ate light snacks, she could not

---

[2] Agent Gajkowski is with the Diplomatic Security Service, Office of Special Investigations.

remember anything—including intercourse or standing and screaming on his balcony—until she awoke in an ambulance. Sealed Ex. A, ECF No. 119-1, at 5-6. When the Federal Bureau of Investigation ("FBI") ran an analysis on AV-1's urine sample in connection with the incident, they found cocaine, methamphetamine, and theophylline (a bronchial dilator asthma medication) in her system but did not find any evidence of so-called date rape substances. *See* FBI Lab Report dated November 10, 2020, Ex. B, ECF No. 119-2. During her follow-up interview, AV-1 denied ever having used any illegal drugs and suggested that maybe Mr. Raymond had put the drugs in her drinks. *See* Sealed Memorandum of Interview of AV-1, Sealed Ex. C, ECF No. 119-3.

Based on the incident with AV-1, on June 2, 2020, Special Agents Mikel Gajkowski and Ted Nelson conducted a voluntary, non-custodial interview of Mr. Raymond, and during that interview, Defendant showed the Agents his two cell phones but declined to voluntarily surrender them. *Raymond I*, 2022 WL 14809915 at *3. Law enforcement then secured a search warrant for Defendant's devices, which was initially executed on June 6, 2020. *Id.* at *3. Although Defendant ultimately handed his devices to law enforcement, he refused to unlock the devices. *Id.* at *3-4. Flummoxed, law enforcement briefly left and then returned to Defendant's then-hotel, and directed him again to unlock the phones. *Id.* at *4. He agreed. *Id.* at *5. Law enforcement returned for a third time because they were "having trouble keeping the phones open." *Id.*

Based in part on the inculpatory material on the phones (videos of Defendant sexually assaulting unconscious women), the Government filed a one-count Complaint charging Defendant with enticing or coercing another "to travel in interstate or foreign commerce . . . to engage in . . . any sexual activity for which any person can be charged with a criminal offense," in violation of 18 U.S.C. § 2422(a). *See* ECF No. 1 (Oct. 8, 2020). On December 31, 2020, the Government filed a superseding complaint, charging Defendant with sexual abuse in violation 18 U.S.C. § 2242(2) and

abusive sexual contact in violation of 18 U.S.C. § 2244(a)(2).  In accordance with a plea agreement, the Government then filed a superseding Information, alleging two counts of sexual abuse in violation of 18 U.S.C. § 2242(2) and one count of transportation of obscene material (the photos and videos of unconscious women) in violation of 18 U.S.C. § 1462.  ECF No. 59 at 1-4 (May 28, 2021).  On July 23, 2021, Defendant entered, and the Court accepted, a plea of "guilty" as to the charges in the superseding Information.  *See* Minute Entry (July 23, 2021); Statement of Offense, ECF No. 68; Plea Agreement, ECF No. 69.

  The Court then set a briefing schedule in advance of sentencing, ordering the Government, among other things, to file certain CIPA motions for the purpose of providing relevant material to defense counsel for sentencing.  Order, ECF No. 75 (Sept. 7, 2021).  Thereafter, the Government identified an alleged defense-counsel ethics conflict, which necessitated the appointment of conflicts counsel and briefing by the parties.  The Court held a status hearing, which ended with the withdrawal of defense counsel from KaiserDillon and the subsequent appearance of counsel from Sheppard Mullin.  *See* Order, ECF No. 85.

  On April 12, 2022, Defendant filed his [116] Notice of Intent to Withdraw Plea and Request for a Briefing Schedule.  In connection with Defendant's [119] Motion to Withdraw Guilty Plea, Defendant identified an alleged conflict of interest with regard to Government counsel, and he later filed his [135] Motion to Disqualify [Government] Counsel.  After the parties briefed that issue, Defendant's Motion to Disqualify Counsel was granted in part and denied in part by this Court, with the effect that Government counsel Jamie Perry was directed to recuse herself from proceedings relating to Defendant's motion to withdraw his guilty plea.  *See* July 19, 2022 Memorandum Opinion and Order, ECF No. 142.

  Thereafter, the Court granted Defendant's motion to withdraw his guilty plea.  The Court

4

concluded that his then-counsel were constitutionally ineffective for failing to file a motion to suppress that evidence gathered from Defendant's devices. *Raymond I*, 2022 WL 14809915 at *10. However, importantly for present purposes, the Court did not hold that the searches were, in fact, unconstitutional. *Id.* Rather, the Court held merely that the Court might have held the evidence suppressible after the benefit of full briefing. *Id.*

After Defendant's withdrawal of his plea, a grand jury returned the first indictment, comprising eleven counts similar to those charged in the prior charging instruments. That indictment alleged: two counts of sexual abuse in violation of 18 U.S.C. §§ 2242(2), 7(9); one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(b), 7(9); seven counts of abusive sexual contact, in violation of 18 U.S.C. §§ 2244(a)(2) and 7(9); and one count of coercion and enticement to travel to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2442(a). Based on the allegations in that indictment and the substantial litigation this case has incurred and will incur in the future, the Court tolled all Speedy Trial time until trial, set for November 8, 2023. *Raymond II*, 2023 WL 2043147 at *4. As noted above, the operative Superseding Indictment doubled the counts pending against Defendant. Also pending is Defendant's [190] Motion to Suppress, which is not yet ripe. A hearing on that motion has been set for May 31, 2023.

### B. Factual Allegations

With each new charging document, the criminal allegations against Defendant have necessarily grown over time. Insofar as the gravamen of the pending Motion is a challenge to the 2020 decision to require Defendant detained pending trial, the Court shall begin with the facts recited in that decision. The Court will then discuss the factual allegations as they currently stand.

The 2020 decisions recounts that:

> the United States [has] proffered evidence of yet to be charged offenses that involve at least twenty-three victims including a victim who alleges sexual assault in [Mexico City]. . . . The United States began its investigation of Defendant in May of 2020 when a female reported that Defendant sexually assaulted her at a U.S. Embassy[-]rented apartment in Mexico City. . . . Further investigation into Defendant yielded the discovery of numerous videos and photographs in which Defendant appears to be filming unconscious [and nude] females. The interview of the victim in the charged offense revealed that she had no idea that defendant had filmed her or that he had pulled her bra down[,] exposing her breasts.

Detention Order at 2, ECF No. 14, *United States v. Raymond*, No. 3:20-mj-0442-LL (Oct. 19, 2020). The evidence presented to the Court thus far largely builds on these findings.

The video and photographic exhibits provided to the Court establish for the purposes of detention that Defendant has violently enacted a fetish for unconscious women by drugging and sexually assaulting scores of women over the course of several years. In addition to these exhibits, discussed further below, the Government relies on Defendant's internet search history and interviews with witnesses and victims (termed hereinafter "Alleged Victim" or "AV"). The Government claims that Defendant researched interactions between Ambien and alcohol, and sent an inquiry to an online pharmacy to obtain chloral hydrate, a cousin of Rohpynol (commonly called a "roofie"). *See* Opp. at 2. The Government also alleges that, as to AV-1, a subsequent physical examination "revealed a vaginal injury consistent with friction, an anal laceration compatible with the introduction of a hard, blunt object, generalized redness throughout her perianal area, bruises on her forearm, elbow, and knees, and laceration on the inside of her cheek." *Id.* at 4. Defendant stresses that at least one toxicology report definitively ruled out the presence of "date rape" drugs in AV-1's system, and that the Government has no scientific evidence (i.e., non-circumstantial evidence) that Defendant ever administered a "date rape" drug before abusing his alleged victims. *See id.* at 4 n.3; Repl. at 3.

Rather than scientific evidence, the Government has provided video and/or photographic

6

evidence of eight victims reflecting a sexually aroused Defendant assaulting them while passed out.  For example, while AV-6 was nude and unconscious, Defendant filmed himself lifting and dropping her limbs, manipulating her eyelids, and stroking her breasts and genitals with her own hand.  Gov.'s Ex. C-1. When AV-6 face flinched, Defendant jumped back, revealing his erect penis.  *Id.*  These activities are the same as or similar to those reflected in the remaining video and/or photographic evidence provided by the Government.  They are also consistent with the Government's proffer as to the seventeen other alleged victims arising from the conduct alleged in the Superseding Indictment.  Defendant does not appear to contest the authenticity or veracity of these exhibits.  Repl. at 6.  Rather, he argues that they should be suppressed.  *Id.* at 2.

## II.   LEGAL STANDARD

"In times of war or insurrection, when society's interest is at its peak, the Government may detain individuals whom the government believes to be dangerous."  *Munchel*, 991 F.3d at 1285 (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 748 (1987)).  Nevertheless, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *Salerno*, 481 U.S. at 755.

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense."  18 U.S.C. § 3145(b).  Although the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has not ruled on the matter, every circuit to consider the issue has found that a magistrate judge's detention order is subject to *de novo* review.  *See United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits).  The district court is "free to use in its analysis any evidence or reasons relied on by the magistrate

judge, but it may also hear additional evidence and rely on its own reasons." *Sheffield, 799 F. Supp. 2d at 20* (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)).

The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including a crime of violence or a felony that involves the use of a dangerous weapon, § 3142(f)(1), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot

8

be sufficiently mitigated by release conditions. *Id.* at 1280; *see also United States v. Salerno*, 481 U.S. at 751 (requiring the government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III.    DISCUSSION

The Court must determine on *de novo* review whether any "condition or combination of conditions will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). With respect to the danger Defendant presents to the community, the Court must "identify an articulable threat posed by [him]," based upon a "factbound inquiry" including the "context" of the charged offenses. *Sabol*, 535 F. Supp. 3d at 69 (citing *Munchel*, 991 F.3d at 1283) (cleaned up). In determining whether Defendant is a danger to the community, the Court considers the 18 U.S.C. § 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 34 (D.D.C. 2005) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based

on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or flight in advance of trial. Accordingly, the Court orders that Defendant remain detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

### A. Nature and Circumstances of the Offense Charged

Turning to the § 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including "whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). Counts One through Seventeen are crimes of violence. *See* 18 U.S.C. § 3156(a)(4). Moreover, the nature and circumstances of the offense charged are grave. Just one count of aggravated sexual abuse may necessitate pretrial detention. *See, e.g.*, *United States v. Lidinilah*, Crim. A. No. 20-0033 (RAM), 2020 WL 6542005, at *4 (D.P.R. Nov. 6, 2020) (involving allegations that defendant "followed [victim] into her room [aboard a ship], kissed her, grabbed her breasts[,] and inserted his finger into her vagina"). Although sexual assault is rarely prosecuted under federal law, pretrial detention is regularly imposed across a swath of state jurisdictions given the severity of the charge.[3] The allegations here are substantially more criminally culpable than, for example, those in *Lidinilah*. Defendant is accused of drugging, assaulting, and sexually abusing scores of women. When considered as a whole, the record depicts a sexual predator with the means and motive to seek out unsuspecting women on dating applications, drug them, abuse

---

[3] *C.f., e.g.*, *United States v. Edwards*, 420 A.2d 1321, 1343 (D.C. 1981) (en banc) (holding constitutional District of Columbia pretrial detention statute as to defendant accused of sodomy and rape); *Patterson v. State*, No. 325, 2022 WL 3078562 at *1 (Md. Ct. App. Sept. 6, 2022) (denying appeal of pretrial detention for multiple rape counts); *Commonwealth v. Thomas*, 855 S.E.2d 879, 882-83 (Va. Ct. App. 2021) (statutory presumption against bail applied to defendant accused of rape); *People ex rel. Kaufmann v. Brann*, 129 N.Y.S. 707, 709 (N.Y. Sup. Ct. 2020) (pretrial detention initially warranted for defendant accused of "violent, prolonged, and degrading sexual assault); *In re O'Connor*, 87 Cal. App. 5th 90, 106 (Cal. App. 2022) ("providing [minors] with alcohol and encouraging sexual assaults and reckless conduct by the intoxicated minors" warranted pretrial detention).

them, and leave them without the memory or wherewithal to report his deviant schemes to law enforcement. Additionally, in view of "the substantial term of imprisonment" to which Defendant is exposed for his offenses, this factor also weighs in favor of his continued pretrial detention, on the basis that no condition or combination of conditions will reasonably assure Defendant appearance as required. *See United States v. Chansley*, 525 F. Supp. 3d 151, 170 (D.D.C. 2021) (RCL).

### B. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. The images provided by the Government depict Defendant abusing six distinct women in line with his fetish. As noted above, Defendant filmed himself abusing AV-6 in a state of sexual arousal. Defendant did the same with AV-7, capturing himself forcing her eyes open and closing her nostrils while AV-7 snored during deep slumber. Gov. Ex. B-1. Defendant again captured his erect penis while kneeling above AV-7's nude body. Gov. Ex. B-2. Defendant similarly assaulted AV-5, grabbing her breast and playing with her mouth and tongue as she struggled to breath. Gov. Ex. D-1. Defendant continued his fetish for manipulating his victim's eyelids with AV-23, Gov. Ex. E-1, and AV-4, Gov. Ex. G-1. This list is not exhaustive of the exhibits provided to the Court, and does not begin to cover the Government's allegations as to all twenty-three purported victims. The Government also proffers (and, beyond noting that the Government proceed by proffer, Defendant does not contest) that Defendant conducted many internet queries reflecting his intent to and motive for sexually assaulting his alleged victims, including "Ambien and alcohol and pass out," "Ambien and alcohol and side effects," and "searches for videos of passed out, sleeping, and drunk women." Opp. at 20.

11

In the face of the substantial evidence of criminal wrongdoing, Defendant spends much of his motion contesting individual charges as to individual victims. Because strong evidence as to any charge that is a crime of violence would militate towards pretrial detention, and in the interest of brevity, the Court shall address just two. Count Three charges Defendant with sexually abusing AV-9 in violation of 18 U.S.C. §§ 2242(2) and 7(9). To prevail on this count, the Government will have to show beyond a reasonable doubt that Defendant knowingly engaged in a sexual act another person where that person was physically incapable of declining participation in the act. 18 U.S.C. § 2242(2)(B). Defendant filmed himself forcing AV-9's eyelids open and caressing her breast and buttocks while AV-9 was sleeping. Gov. Ex. A-1. Like other videos, Defendant's erect penis is depicted. *Id.* This evidence more than sufficient to support a conviction. *See, e.g.*, *United States v. Schoenborn*, 793 F.3d 964, 966-67 (8th Cir. 2015).

Count Six charges Defendant with abusive sexual contact with AV-7 in violation of 18 U.S.C. §§ 2244(a)(1) and 7(9). To prevail on this count, the Government will have to show beyond a reasonable doubt that Defendant knowingly engaged in sexual contact with AV-7, using force and a drug or intoxicant. 18 U.S.C. § 2241(b)(2). As to this count, Defendant filmed himself forcing AV-7 eyes open and closing her nostrils while AV-7 snored during deep slumber. Gov. Ex. B-1. Defendant also took a photograph of himself kneeling over a nude, sleeping AV-7, in which Defendant's erect penis can again be seen. When considered in concert with the sheer number of women abused and Defendant's internet searches for intoxicants for such a purpose, the nature of these videos provide strong circumstantial evidence to conclude that AV-7 was drugged or provided some sort of intoxicant without her knowledge or permission. *Cf. United States v. Horn*, 185 F. Supp. 2d 530, 533 (D. Md. 2002) (results of field sobriety test admissible as

circumstantial evidence showing defendant was intoxicated).[4]  This evidence is more than sufficient to support a conviction.  *Cf. United States v. Lauck*, 905 F.2d 15, 16 (2d Cir. 1990) (conviction for abusive sexual contact by force supported by sufficient evidence based on victim's testimony that defendant "held [her] 'up against [a] wall' for [t]hree or four minutes") (brackets altered)); *Sera v. Norris*, 400 F.3d 538, 544 (8th Cir. 2005) ("when drugs are used to incapacitate a date-rape victim, there is often no direct evidence of the rape," in which case "circumstantial evidence" may often "support a finding of rape").  More broadly, because Defendant filmed himself committing these offenses, the weight of the evidence is strong as to at least Counts Three and Six.  *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022).

As to Defendant's argument that the Government's case is weak because some evidence consists exclusively of witness statements, that ignores the other electronic evidence corroborative of those witness statements.  *Cf. United States v. Vargas-Reyes*, 220 F. Supp. 3d 221, 227 (D.P.R. 2016) (weight of evidence on child pornography charges strong where alleged victim, defendant's sixteen year-old stepdaughter, testified that she saw the defendant take photos of her with his cell phone, corroborated by metadata on the cell phone).  It also ignores the strong circumstantial evidence of his *modus operandi* consistent across scores of victims.  In other words, that the Government's evidence would, in Defendant's telling, total "merely" more than a dozen victims each testifying to a similar course of conduct substantiated by Defendant's self-professed sexual fetish is nevertheless strong evidence of the charged offenses.  As such, it is both the quality and quantity of the evidence presented to the Court thus far that warrant pretrial detention.

---

[4]  To be clear, the Court makes no determination about the admission of certain evidence or the use of "other crimes" evidence at trial.  Because the Court is not limited to admissible evidence when deciding whether to order a defendant detained pending trial, *see United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988), the Court relies on this evidence in the record for present purposes only.

Before continuing, the Court must pause to address Defendant's argument that he must be released from pretrial detention because some of the evidence presented to the Court may be subject to suppression. Defendant cites no authority for such a proposition, and the Court is unaware of any. True, some courts have held that evidence that *has been* suppressed should not factor into the weight of the evidence for pretrial detention. *See, e.g.*, *United States v. Taylor*, 289 F. Supp. 3d 55, 67 (D.D.C. 2018) (RDM). Yet Defendant's [190] Motion to Suppress remains pending. Even were the Court to grant that motion—the merits of which are, at present time, uncertain—the suppressed evidence would still go to the nature and severity of the offenses charged. *See, e.g.*, *United States v. Turner*, Case No. 5:21-cr-494, 2022 WL 1192466, at *4 (W.D. Tex. Apr. 21, 2022) (Lamberth, J., sitting by designation). Although suppression, if ordered, "could provide grounds to reopen a detention proceeding[,] . . . that issue is not before the Court." *Id.* Accordingly, the weight of the evidence militates in favor of pretrial detention.

### C. History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider Defendant "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, [the defendant] was on probation, on parole, or on other release."

The community at issue here would be San Diego, California, where Defendant proposes living on home detention with his parents. Due to his lengthy government service abroad, Defendant has few ties to that community, and also evidently has few ties to his family. The Government proffers, and Defendant does not contest, that in October 2020, Defendant's father

14

"indicated that he does not really know or have a relationship with his son. The defendant's mother agreed, indicating that the defendant does not maintain regular contact with his family." Opp. at 26. For ties to his family, Defendant relies on the report of the Pretrial Services Officer's conversation with Defendant's parents, ECF No. 189. After recommending that Defendant be detained pending trial due in part to "the defendant's background," the Pretrial Services Officer noted only that she "spoke with [] [D]efendant's parents and confirmed they are willing to allow [] [D]efendnat to reside with them." *Id.* at 2 (sealed). The number of women abused and the nature of Defendant's prior government service are also "history and characteristics" that support pretrial detention. Therefore, this factor weighs against releasing Defendant and placing him on home detention.

### D. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," as it requires the Court to engage in an "open-ended assessment of the 'seriousness' of the risk to public safety." *Cua*, 2021 WL 918255, at *5 (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018)). "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Whitton*, 534 F. Supp. 3d at 46 (quoting *Cua*, 2021 WL 918255, at *5).

As the D.C. Circuit recently explained in *Munchel*, the threat that an individual poses to the community must "be considered in context" and "whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the

defendant." 991 F.3d at 1283. The sheer number of alleged victims in this case, and the duration of the alleged criminal conduct, establish that Defendant poses a particular threat to the community. Defendant's "capabilities" are substantial for the reasons stated above and in light of the nature of Defendant's prior government service. Because the Court concludes that Defendant poses a clear, articulable threat to women if released, the Court does not reach whether Defendant also poses a flight risk. Altogether, this final factor also weighs in favor of pretrial detention.

### E. Due Process

Lastly, Defendant argues that the duration of his pretrial detention violates the Due Process Clause of the Fifth Amendment. Mot. at 13 (citing *United States v. Sharps*, 246 A.3d 1141, 1153 (D.C. 2021) (holding emergency tolling provision in state pretrial-detention law not violative of substantiative due process)). As the Supreme Court has explained, so long as pretrial detention is not punitive, and instead serves regulatory purposes, it does not violate a criminal defendant's substantive due process right to be free of punitive detention before conviction. *See Salerno*, 481 U.S. at 746-47. Moreover, the duration of pretrial detention itself does not violate substantive due process. *See United States v. Ali*, 534 F. App'x 1, 2 (D.C. Cir. 2013). Rather, a court must also consider "the complexity of the case[] and whether the strategy of one side or the other has added needlessly to that complexity." *United States v. Accetturo*, 783 F.3d 382, 388 (3d Cir. 1986). In other words, only where detention is lengthy must "the evidence justifying detention" be particularly strong. *See United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012).

For the reasons discussed above, the weight of the evidence as it currently stands is particularly strong. Defendant filmed himself abusing passed out women, and there is particularly convincing circumstantial evidence that Defendant himself drugged his victims so that he could sexually assault them. Although the duration of detention until trial here,

approximately three years, weighs in Defendant's favor, it is not *per se* unconstitutional. *See, e.g.*, *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993) (thirty to thirty-one month delay not necessarily unconstitutional); *see also United States v. Oury*, 452 F. Supp. 3d 1364, 1370-71 (S.D. Ga. 2020) (collecting cases). For the reasons stated *Raymond II*, there is insufficient reason to believe that the Government has impermissibly attempted to delay trial (particularly given Defendant's earlier guilty plea), and the nature of the charges and the evidence in this case renders this case particularly complex. 2023 WL 2043147, at *3; *see also United States v. Nordean*, Crim. A. No. 21-175 (TJK), 2022 WL 2292062, at *3 (D.D.C. June 24, 2022). Although the delay here is regrettable, it is necessary. More importantly, it is constitutional. The Court reiterates that it has entered a [177] Pretrial Scheduling Order and that this case is proceeding apace to trial.

## IV.     CONCLUSION

On the whole, the record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendant were released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **DENIES** Defendant's [179] Motion. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** April 21, 2023

                                          /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge