UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-00380-CKK |
| | : | |
| BRIAN JEFFREY RAYMOND | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION TO QUASH SUBPOENAS OF DOJ ATTORNEYS FOR THE HEARING ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The United States of America, by and through undersigned counsel, hereby respectfully files this motion to quash the subpoenas for the appearance and testimony of Department of Justice ("DOJ") attorneys Jamie Perry and Pragna Soni at a hearing on the defendant's Motion to Suppress Evidence and preclude the production of documents related to their testimony. As grounds for this motion, the United States relies on the following points and authorities, and any such other points and authorities as may be cited at a hearing on the motion.

The defendant has moved to suppress on constitutional grounds the cellular phones recovered from him on June 6, 2020. *See* ECF No. 190. The purpose of a hearing on a motion to suppress physical evidence is to elicit facts and circumstances surrounding the seizure of the evidence to determine whether the law enforcement agents on scene acted lawfully. Here, the Court can listen to and view the entire seizure in video and audio recordings. In addition, the government intends to call the lead agent, Department of State ("DS") Special Agent ("SA") Mikel Gajkowski, to testify at the hearing. This evidence is entirely sufficient to inform this Court's ruling on the constitutional questions raised by the defendant's motion.

Still, the defendant seeks to call two Department of Justice prosecutors at the hearing, notwithstanding that the matters about which the prosecutors are expected to testify are either

1

irrelevant to the issue of suppression or can be elicited through other witnesses. These prosecutors were not present for the seizure. They did not interact with the defendant. They did not touch the physical devices nor take part in the process of extracting them. Their roles were limited to being on standby to provide legal guidance to the law enforcement agents – a standard arrangement in nearly every federal search warrant execution. The defendant's attempt to call these attorneys is nothing more than an inappropriate litigation tactic aimed at generating impeachment material on irrelevant matters, vilifying the former prosecutors and law enforcement team, and confusing the issues before this Court. As further outlined below, the proposed testimony of these prosecutors is unnecessary, irrelevant, and improper, and this Court should quash the subpoenas calling for their testimony.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The defendant was charged in a criminal complaint on October 8, 2020, and arrested on October 9, 2020, in San Diego, California. On July 23, 2021, the defendant pled guilty to two counts of Sexual Abuse, in violation of 18 U.S.C. § 2242(2), and one count of Transportation of Obscene Material, in violation of 18 U.S.C. § 1462. *See* ECF No. 69 and July 23, 2021, Minute Entry.

On April 29, 2022, the defendant filed a motion to withdraw his plea, alleging ineffective assistance of the legal team representing him at the time of the plea. *See* ECF No. 119. The motion to withdraw his plea was based, at least in part, on the defendant's challenge of evidenced obtained pursuant to the search warrant executed on June 6, 2020.

On June 17, 2022, the defendant filed a motion to disqualify Department of Justice Trial Attorney and former case prosecutor Jamie Perry, claiming that Ms. Perry had "an irreconcilable conflict of interest and personal stake in the outcome of these proceedings" because she advised

agents on the execution of the June 6, 2020 search warrant. ECF No. 135 at 1. According to the defendant, this routine government attorney responsibility, termed in the defendant's motion as her "direct involvement," warranted disqualification from the entire case because she had essential information that could not be obtained by other means. ECF No. 135 at 2, 19. Specifically, the defendant claimed the essential information included not only conversations with DS Special Agent Gajkowski but also *conversations between government attorneys* to which SA Gajkowski was not a party.

The Court declined to recuse Ms. Perry from the case, but determined that there were certain topics, such as conversations between Ms. Perry and her supervisor, Pragna Soni, surrounding the June 6, 2020 warrant execution, about which only Ms. Perry could testify. Therefore, the Court determined Ms. Perry had "essential information that other witnesses do not necessarily have" and directed Ms. Perry "to recuse herself from the proceedings relating to the Defendant's motion to withdraw his plea." ECF No. 142 at 4-5.

On October 26, 2022, this Court granted the defendant's motion to withdraw his plea. ECF No. 158.

On January 19, 2023, a grand jury returned an eleven-count indictment in this case. *See* ECF No. 168. On February 23, 2023, a grand jury returned a twenty-five-count superseding indictment. *See* ECF No. 184. A trial date has been set for November 8, 2023.

On March 10, 2023, the defendant filed a motion to suppress evidence, challenging the June 6, 2020 seizure and search of two cell phones pursuant to a warrant. ECF No. 190. The government filed its opposition on March 24, 2023, and the defendant filed his reply on April 14, 2023. *See* ECF Nos. 198, 204.

An evidentiary hearing on the defendant's motion is scheduled for May 31, 2023. On

March 27, 2023, the defendant submitted a *Touhy* request and subpoenas for DOJ attorneys Jamie Perry and Pragna Soni. *See* Exhibit A.[1] On April 5, 2023, the government notified counsel for the defendant that the *Touhy* request satisfied the applicable procedural requirements, but the government would file a motion to quash the subpoenas.

*The Defendant's Touhy Request*

The defendant's demand under the Department of Justice *Touhy* regulations lists what testimony it seeks from Ms. Perry and Ms. Soni. The topics generally fall into four categories: 1) the prosecutors' own training and experience as it relates to executing search warrants; 2) the prosecutors' personal opinions and conclusions about the legality of the search; 3) conversations between the two prosecutors about the search for which no law enforcement agent nor the defendant were present; and 4) conversations the prosecutors had with agents involved in the warrant execution. A chart outlining these categories is below, with each quoted reason coming directly from the defendant's *Touhy* demand:

| **Category 1:** **The Prosecutor's Own Training and Experience as it Relates to Search Warrants** |
|---|
| "The training Ms. Perry or Ms. Soni had received, if any, related to the execution of search warrants, particularly cell phone search warrants." |
| "The experience Ms. Perry or Ms. Soni have, if any, in executing search warrants, particularly cell phone search warrants." |

| **Category 2:** **The Prosecutors' Personal Opinions and Conclusions about the Legality of the Search** |
|---|
| "Whether and how Ms. Perry or Ms. Soni concluded that the reengagement of Mr. Raymond was lawful." |

---

[1] *See also Touhy v. Ragen*, 340 U.S. 462, 468 (1951); 28 C.F.R. §§ 16.21 et seq.

4

| **Category 3:** <br> **Conversations Between the Two Prosecutors About the Search** <br> **Outside the Presence of the Defendant and Law Enforcement** |
|---|
| "What Ms. Perry told Ms. Soni after the initial seizure and prior to the decision to re-engage Mr. Raymond on the [alleged] already-executed warrant." |
| "Whether Ms. Soni knew that the warrant had been fully executed at the time she approved of, or gave, the direction to have the agents re-engage, including whether she knew that the agents had issued property receipts to Mr. Raymond." |
| "What Ms. Perry told Ms. Soni about the June 6, 2020 warrant services, either on that date or thereafter." |
| "What advice Ms. Soni gave to Ms. Perry regarding the lawfulness of the second and third executions of the warrant." |

| **Category 4:** <br> **Conversations the Prosecutors had with Agents Involved in the Warrant Execution** |
|---|
| "The pre-warrant service advice Ms. Perry provided to the agents, and any instructions or directions she gave the agents regarding how to handle the warrant service." |
| "What the agents told Ms. Perry after the initial seizure and prior to the decision to re-engage Mr. Raymond on the [alleged] already-executed warrant." |
| "Whether Ms. Perry knew that the warrant had been fully executed at the time she directed the agents to re-engage, including whether the agents had informed her that they had issued property receipts to Mr. Raymond. " |
| "Whether the agents asked Ms. Perry to delay the search warrant until a technician could be present, or for any other reason, and whether and how Ms. Perry responded to that question." |

*Potential Witnesses at the Evidentiary Hearing*

On June 6, 2020, SA Gajkowski and former Department of State ("DS") Special Agent Ted Nelson seized the defendant's phones. Nearby were DS Special Agents Viktor Karabin and Dave Jones. The defendant, through counsel, has requested, and the government has confirmed, that DS Special Agent Gajkowski and former DS Special Agent Ted Nelson will be present at the May 31, 2023 evidentiary hearing. To the government's knowledge, the defendant has not requested assistance with securing the testimony of DS Special Agents Karabin and Jones.

5

After the agents' initial encounter with the defendant, SA Gajkowski contacted Ms. Perry.[2] In addition to speaking with SA Gajkowski, Ms. Perry spoke separately with her supervisor, Ms. Pragna Soni.

Eventually, the agents reengaged the defendant at his hotel.[3] While at the hotel, SA Gajkowski called Ms. Perry again. Agent Gajkowski's side of her conversations with Ms. Perry are captured on BWC.

In addition to contacting Ms. Perry, both SA Gajkowski and former SA Nelson also sought Department of State Computer Investigations and Forensics Division ("CIF") assistance. Individuals contacted at CIF included SA Stitzer, SA Christin, and Ms. Stedman. None of these individuals was physically present on June 6, 2020. The defendant has indicated that he may seek testimony at the evidentiary hearing from all three. The availability of those witnesses is being coordinated between the defense and the Department of State.

Agent Gajkowski sought assistance from two other DS employees on June 6, 2020, DS Special Agents Ken Jones and Micah Bridges.[4] To the government's knowledge, the defendant has not requested assistance with securing the testimony of these individuals.[5]

---

[2] On June 5, 2020, the day before the warrant was executed, Ms. Perry emailed SA Gajkowski with advice concerning compelled biometrics and cell phone PIN codes. That email was disclosed to counsel for the defendant and has been attached to public filings. *See*, *e.g.*, ECF No. 139-1.

[3] At the hotel, SA Gajkowski, SA Nelson, SA Karabin, and SA Jones were joined by a local police officer. The local police officer was wearing body worn camera ("BWC"). To the government's knowledge, this officer is no longer employed by the Herndon police department. The parties have preliminarily agreed to the authenticity of his video.

[4] Parts of SA Gajkowski's conversation with SA Ken Jones are captured in the BWC.

[5] Though the government has made efforts to ensure the witnesses' availability for the hearing, the government does not concede that testimony from any of the above-mentioned witnesses, apart from SA Gajkowski, is relevant or necessary for the suppression hearing.

# ARGUMENT

Testimony from former case prosecutor Jamie Perry and her supervisor, Pragna Soni, is unnecessary, irrelevant, and improper, and therefore the subpoenas should be quashed. First, the testimony sought is unnecessary. This is especially true here, where the entire seizure is either audio or video recorded and any information provided by Ms. Perry to SA Gajkowski – assuming *arguendo* that such information is relevant, which it is not – can be elicited through SA Gajkowski. Second, the testimony sought is irrelevant. Nothing about the DOJ attorneys' training aids the Court in its legal analysis, nor do internal deliberations and advice between Ms. Perry and Ms. Soni inform the Court's legal assessment of the agents' actions. Third, eliciting testimony for the sole purpose of impeaching a witness on collateral matters or criticizing the government's investigation is improper and distracts from the legal issues the Court must decide. For the reasons discussed below, this Court should preclude the defendant from calling either prosecutor as a witness.

### I. There is No Compelling Need for the Proposed Testimony Because It Can be Elicited Through Another Source

In instances where defendants have sought to call prosecutors as witnesses at trial, courts have found that the defendant must demonstrate (1) a compelling need for the testimony of the prosecutor, and (2) that he has exhausted all other sources of the information he seeks from the prosecutor's testimony.[6] *See United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997), *citing United States v. Schwartzbaum,* 527 F.2d 249, 253 (2d Cir. 1975); *United States v. Torres*, 503 F.2d 1120, 1124 (2d Cir. 1974). "Requests for such testimony are disfavored," *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991). As one district court explained in denying such a

---

[6] The ability to elicit hearsay testimony at a suppression hearing further cuts against any "compelling need" the defendant might claim.

request: "The law does not liberally permit a defendant to call a prosecutor as a witness. On the contrary, a defendant must demonstrate a compelling and legitimate need to do so. Where witnesses other than the prosecutor can testify to the same matters or conversations, no compelling need exists." *United States v. Wallach*, 788 F. Supp. 739, 743-44 (S.D.N.Y. 1992) (internal citations omitted).

In this case, the defendant cannot satisfy, at either step, the stringent standard for calling a government prosecutor to testify. This is particularly true here, where the subject matter of the prosecutors' potential testimony involves (1) matters which are wholly irrelevant to the issue of suppression; and/ or (2) conversations with an agent who will testify at the hearing. As to the first, the defendant cannot show that any prospective testimony from Ms. Perry or her supervisor, Ms. Soni, would be favorable, let alone "vital to his case." *Watson*, 952 F.2d at 986. They neither interacted with the defendant, nor were they present for the search. Furthermore, the reasonableness of their legal advice is not relevant, let alone material, to the issue of suppression. Instead, the Court's legal analysis revolves around the actual seizure of evidence and the agents' actions. Whether the agents took certain actions as a result of conversation(s) with Ms. Perry is relevant. Whether the agents believed they could or should rely on Ms. Perry's advice is relevant. Whether Ms. Perry's advice was reasonable or correct is not relevant.

Second, the defendant cannot show that he is unable to "present the same or similar facts from another source," *id.*, or that he has "exhausted" "all other sources of possible testimony", *United States v. West*, 680 F.2d 652, 654 (9th Cir. 1982). To state the obvious, SA Gajkowski can testify about her conversations with Ms. Perry. Additionally, counsel for the defendant has indicated that, in addition to Ms. Perry and Ms. Soni, it may call at least five other DS and former DS employees (Agents Gajkowski, Nelson, Christin, Stitzer, and evidence technician Stedman).

The idea that the defense would call seven witnesses (including two DOJ attorneys), most of whom were not actually present to witness the seizure, at a hearing where hearsay is permitted is absurd and strongly supports the government's argument that, far from having a compelling and legitimate purpose in calling these witnesses, the defendant merely seeks to create chaos and hope for contradictions.[7] *See United States v. Gasperini*, 2017 U.S. Dist. LEXIS 113415, *7 (E.D.N.Y. July 19, 2017) (defendant failed to make out the "compelling and legitimate reason" needed to justify calling the AUSA at trial where defendant's only apparent basis for seeking to compel the AUSA to testify was his claim that the Government engaged in discovery misconduct, an argument that the court found to be irrelevant). But perhaps most notably, the Court has audio and/or video recordings of the entire seizure. Furthermore, the video recordings capture not only parts of SA Gajkowski's conversation with Ms. Perry while the agents were at the defendant's hotel, but also capture the agents' internal deliberations between encounters with the defendant. There is absolutely no compelling need to allow the defendant to engage in a thinly veiled attempt to malign Justice Department prosecutors and confuse the legal issues before the Court.

## II.     The Subpoenas Should be Quashed Because the Proposed Testimony is Not Relevant to the Issue of Suppression

An enforceable subpoena must seek testimony that is relevant. *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).[8] Here, the testimony sought is not relevant and should not be admitted

---

[7] Nor does the defendant have the right to confront witnesses during a pretrial suppression hearing. *See, e.g. United States v. Lattimore*, 525 F. Supp. 3d 142, 149 (D.D.C. 2021) ("[I]n light of the Supreme Court's indication that the Confrontation Clause is a trial right, this Court, like the other federal courts to recently consider the issue, concludes that the Confrontation Clause does not attach prior to trial."); *United States v. Robinson,* 664 F3d. Appx. 215, 218 (3d Cir. 2016) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (Confrontation Clause bars admission of testimonial statements who did not appear at trial unless he was unavailable to testify)); *United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("This Court on other occasions has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); *Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."); *Ebert v. Gaetz*, 610 F.3d 404, 414 (7th Cir. 2010) (rejecting the notion of confrontation rights at a suppression hearing)).

[8] As to relevance, under Federal Rule of Evidence 401, evidence is relevant "(a) if it has any tendency to make a fact

9

in a hearing on the defendant's motion to suppress. As stated above, the defendant seeks testimony that falls into four categories. The testimony sought in Categories 1, 2, and 3 is only probative of the training and experience of the prosecutors, their opinions on the law, or their credibility – none of which bear on suppression or whether the agents acted lawfully. While the Court will undoubtedly consider the training and experience of the agents in its assessment of their credibility and actions, the DOJ prosecutors neither interacted with the defendant, nor were they present for the search. Therefore, only the *agents' actions* on June 6, 2020 should be the focus of the Court's legal analysis on this suppression issue, and nearly all of the agents' actions are captured by the audio and video recordings. For the same reasons, any conversations these prosecutors had outside of the presence of the defendant and law enforcement are also undeniably irrelevant.

To the extent that the defendant seeks clarity on *why* the agents took any of the actions at issue – whether they sought legal advice, what that advice was, and what the agents understood about the applicable legal standards – the defendant can elicit testimony from those agents. Indeed, the only relevant inquiry to this end is whether the agents relied on any legal advice when taking those actions, which is a question properly posed to the agents themselves and not to DOJ prosecutors who, again, were not present for the search and did not interact with the defendant. Only the agents can testify as to what they did and why, not Ms. Perry or Ms. Soni. Thus, Ms. Perry's and Ms. Soni's testimony is not relevant, and their subpoenas should be quashed.

**III.   Eliciting Testimony from Ms. Perry or Ms. Soni is Improper**

**A. Subpoenaing Witnesses to Impeach on Collateral Matters is Improper**

As to Category 4 testimony, to the extent that it is relevant (and the government does not concede that it is), such testimony is nonetheless improper if elicited for the sole purpose of

---

more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

illustrating that there is a difference in recollection between the agents and Ms. Perry about the day's conversations. In the context of trial testimony, the D.C. Circuit has recognized that "[t]he defense may not call a witness who has not testified merely to attempt to discredit him in the course of eliciting adverse testimony." *Beasley v. United States*, 218 F.2d 366, 368 (D.C. Cir. 1954). While the defense may impeach a government witness "by contradiction," that is, by offering evidence which contradicts the witness's testimony on a material issue, *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006), there are limitations. For example, the law is well settled that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral or irrelevant matter elicited on cross-examination. *United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988); *United States v. Mulinelli-Navas*, 111 F.3d 983, 988 (1st Cir. 1997); *United States v. Ford*, 21 F.3d 759, 764 (7th Cir. 1994); *United States v. Beauchamp*, 986 F.2d 1, 3 (1st Cir. 1993).

An issue is collateral if it is not relevant for any purpose other than the simple contradiction of a witness's in-court testimony. *United States v. Payne*, 102 F.3d 289, 294 (7th Cir. 1996); *Beauchamp*, 986 F.2d at 4. Here, any difference in recollection between the agents and Ms. Perry about the day's conversations is collateral to the issue of suppression. This is true because, ultimately, it does not matter if individuals involved in the seizure recall the events identically three years later. The purpose of this evidentiary hearing is to elicit facts relevant to the legal issues the Court must decide. To that end, all that matters is what actually happened, and that is plain from the video and audio recordings provided to the Court. Therefore, while this case is in a different posture than the cases cited, that is, set for an evidentiary hearing rather than trial, the underlying principle remains: seeking testimony for no other reason than to contradict a

government witness on collateral matters is improper.[9] *Beauchamp*, 986 F.2d at 4 (no abuse of discretion in refusing to allow defendant to present testimony impeaching the credibility of a government witness who testified that he lived at a certain address; the proposed testimony was properly excluded not only because it was collateral but because it was "inconclusive," "said little about [the witness'] personal involvement in the crime," and the "marginal relevance" of the proposed testimony was outweighed by "time and effort" required to present the testimony); *Mulinelli-Navas*, 111 F.3d at 988 (upholding a district court's ruling refusing to allow the defense to call a witness where the only purpose of the testimony was to contradict a statement of another witness and the testimony "was relevant only to [the witness'] credibility on a matter immaterial to [defendant]'s guilt."). This Court should not allow it.

### B. Subpoenas May Not Be Used to Conduct a Fishing Expedition

The testimony the defendant seeks is also improper because it represents the defendant's continued attempts to embark on a fishing expedition for material with which to impeach the law enforcement agents or to impugn the general credibility of the government's investigation.[10] For confirmation, this Court need look no further than previous filings in this case where, in addition to accusing the government of hiding discovery that the government had in fact explicitly disclosed on multiple occasions, the defendant (1) accused a DOJ attorney of intentionally violating his constitutional rights, and (2) threatened a civil suit. *See generally* ECF No. 135; *see also* ECF No.

---

[9] During the hearing, the Court will undoubtedly consider the credibility of any testifying witnesses. But here, the defendant does not have an actual basis to believe that Ms. Perry or Ms. Soni's testimony will differ from the testimony of SA Gajkowski. The government takes seriously not only its discovery obligations pursuant to *Brady*, *Giglio*, and their progeny, but also its duty of candor to the Court. An email between Ms. Perry and SA Gajkowski has been disclosed. Additionally, differing recollections among agents and technicians about specific conversations have been disclosed. None of these disclosures indicate that by calling several different witnesses, counsel for the defendant will expose inconsistencies material to the Court's decision.

[10] A subpoena may not be used to conduct a general fishing expedition. *United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005).

179 at 12. More to the point, in his motion to disqualify Ms. Perry, the defendant indicated that Ms. Perry's testimony was needed because,

> "Ms. Perry has information regarding the discussion with the agents and the rationale for re-executing the same search and seizure warrant multiple times in violation of Mr. Raymond's rights, why she did not call these issues to the defense's attention, and how she drew the conclusion that law enforcement can engage in limitless searches and seizures during the life of a warrant.
>
> "Given that Ms. Perry was the one who ordered the federal agents to reengage Mr. Raymond there is a "compelling need" for her to testify regarding her perceptions and motivations and to evaluate any potential claim by the government that the re-executions were somehow reasonable continuations of the search. [] Ms. Perry is uniquely qualified to testify regarding certain aspects of the execution of the warrant including, but not limited to: i) the preparation of the warrant; ii) whether she was acting pursuant to another DOJ official's orders when ordering the agents to reengage Mr. Raymond; iii) whether the agents properly understood her orders by re-executing the same warrant; iv) the legal basis for her orders; and v) the details of the discussions she had with the agents, including any and all facts conveyed to her that are not memorialized in agent reports or captured on video. These are clearly central issues related to the suppression of most, if not all, of the government's evidence, and certainly the most critical evidence the government has."

Defendant Motion to Disqualify Trial Attorney Jamie Perry, ECF No. 135 at 20.[11]

This passage exposes the actual intent in seeking Ms. Perry's and Ms. Soni's testimony: not to aid the Court in its legal analysis of whether the search violated the defendant's constitutional rights, but to distract with baseless allegations against the attorneys and irrelevant information. The defendant seeks this testimony for improper purposes, and the subpoenas should be quashed.

### C.  The Testimony Sought is Privileged

The testimony the defendant seeks is protected by privileges covered by Federal Rule of Evidence 502(a). Specifically, testimony in Categories 1, 2, and 3 and any related documents or recorded communications are protected by the deliberative process and work product privileges.

---

[11] "Whether the agents properly understood [Ms. Perry's] orders" and the "details of the discussions she has with agents" can be elicited through other witnesses (to the extent that either fact is relevant). Those questions aside, not a single remaining reason listed above is relevant to the now fully briefed suppression issue.

"The deliberative process privilege . . . protects the decision-making process of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fishbowl." *Mapother v. Department of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (internal citations omitted). For the privilege to apply, the information must be "pre-decisional" and "deliberative" *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998). Information is "pre-decisional" if it precedes, in temporal sequence, the decision to which it relates. *Id*. Communications are "deliberative" if they are "part of the agency give-and-take by which the decision itself is made." *Id.* (internal citations omitted). Here, two DOJ attorneys – Ms. Perry and Ms. Soni – communicated with one another in relation advising law enforcement agents during the execution of the search warrant. These communications are privileged and should be excluded.[12]

Attorneys within the Department of Justice must be able to confer openly with one another on cases and legal issues that arise. In fact, seeking assistance or a second opinion from another lawyer, having decisions scrutinized by supervisors, and talking through various processes are imperative to the Department's ability to properly investigate and prosecute cases and "serve[s] the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 737 (D.C.

---

[12] Separately, any written or recorded materials by the lawyers should be excluded as attorney work product. "[T]he work-product doctrine shields materials prepared in anticipation of litigation for trial or for that other party's representative." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26 (b)(3)). The work product doctrine shields "both deliberative materials such as mental impressions, conclusions, and opinions, and legal theories and factual materials prepared in anticipation of litigation." *Williams & Connolly LLP v. U.S. Sec. & Exch. Comm'n*, 729 F.Supp.2d 202 (D.D.C. 2010) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997)). Here, any attorney emails or communications regarding the on-going investigation into the defendant's conduct, including those related to the search warrant execution are protected work product. *See Block v. United States DOJ*, 2022 U.S. Dist. LEXIS 40895, *10 (D.D.C. March 8, 2022) (attorney emails regarding ongoing litigation protected); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 78 (2d Cir. 2010) (holding that emails regarding a PowerPoint presentation prepared by in-house counsel properly are withheld as work product); *BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC,* 2022 U.S. Dist. LEXIS 154791, *17 (D. Conn. August 29, 2022) ("Email discussions as to the substance of an attorney's work product, such as the attorney's mental impressions regarding legal strategy or the strength of the claims at issue, is confidential information to which adversaries are not entitled.") Accordingly, any attempt to elicit testimony about, or obtain copies of, written or recorded materials by the government attorneys should be precluded.

Cir. 1997). Particularly where – as here – the communications sought are irrelevant to the issue of suppression, and the actions of the agents are apparent from the recordings of the seizure, the defendant cannot allege a sufficient showing of need. *Id*. ("Each time [the deliberative process privilege] is asserted the district court must undertake a fresh balancing of the competing interests," taking into account factors such as "the relevance of the evidence," "the availability of other evidence," "the seriousness of the litigation," "the role of the government," and the "possibility of future timidity by government employees.") (quoting *In re Subpoena Served Upon the Comptroller of the Currency,* 967 F.2d 630, 634 (D.C. Cir. 1992)).

Should the Court find that there was a limited waiver of privilege related to communications between Ms. Perry and SA Gajkowski when the government attached an email between the two to its filing at ECF No. 139-1, it should narrowly limit testimony to the scope of that waiver.[13] Here, the scope is dictated by the email itself: conversations between Ms. Perry and SA Gajkowski immediately prior to and in the process of the execution of the Warrant, specifically regarding the methods the agent may and may not use to compel Mr. Raymond to unlock his phones. As the subject matter scope of the waiver is narrow, the Court should not permit questioning on all conversations or information that the defendant may seek to elicit or discover at the suppression hearing. *See* Fed. R. Evid. 502(a)(2) (the disclosed and undisclosed materials must "concern the same subject matter."); *US Airline Pilots Ass'n* v. *Pension Benefit Guar. Corp.* 274 F.R.D. 28, 33 (D.D.C. 2011) (refusing to allow questioning, pursuant to Rule 502(a), where the proposed issue was related to the disclosed document's subject matter, but "cannot be said to be 'the same'"). Any attempt to elicit testimony beyond that narrow scope is improper and should not be permitted.

---

[13] The government would still object to the testimony on relevance and other grounds as outlined in this filing.

## CONCLUSION

For the foregoing reasons, the Court should preclude the defendant from calling Ms. Perry and Ms. Soni as witnesses for the defense at the hearing on the motion to suppress physical evidence. Ms. Soni's testimony is plainly irrelevant, improper, and unnecessary. The same is true for Ms. Perry. If, however, the Court finds that Ms. Perry may have information pertinent to the suppression issues briefed by the parties that cannot be elicited through other witnesses, the government respectfully requests that the Court hold its ruling in abeyance until it hears from those other witnesses.[14] Furthermore, if this Court determines that defendant should be allowed to elicit testimony from Ms. Perry, that testimony should be narrowly limited to facts relevant to the actual legal issues raised in the defendant's motion to suppress.

Respectfully Submitted,

| | |
|---|---|
| MATTHEW M. GRAVES<br>UNITED STATES ATTORNEY<br>District of Columbia | KENNETH A. POLITE, JR.<br>ASSISTANT ATTORNEY GENERAL<br>U.S. Department of Justice<br>Criminal Division |
| /s/<br>Meredith E. Mayer-Dempsey<br>NY Bar No. 5213202<br>Assistant United States Attorney<br>United States Attorney's Office<br>for the District of Columbia<br>601 D Street, Northwest<br>Washington, D.C. 20530<br>(202) 252-7259<br>Meredith.Mayer-Dempsey@usdoj.gov | /s/<br>Angela N. Buckner<br>DC Bar No. 1022880<br>Trial Attorney<br>U.S. Dept. of Justice, Criminal Division<br>Human Rights and Special Prosecutions<br>1301 New York Avenue, Northwest<br>Washington, D.C. 20530<br>(202) 616-0238<br>Angela.Buckner.2@usdoj.gov |

---

[14] Both DOJ attorneys will remain available regardless.