UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-00380-CKK |
| | : | |
| BRIAN JEFFREY RAYMOND | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL PRIVILEGED COMMUNICATIONS AND WORK PRODUCT**

The United States of America, by and through undersigned counsel, hereby respectfully files this opposition to defendant Brian J. Raymond's motion to compel discovery, filed through counsel, ECF No. 211. The defendant moves this Court to compel "all documents, including all communications and work product, relating to the warrant executed on June 6, 2020." ECF No. 211 at 1. In support, the defendant argues, *inter alia*, that the government waived any claim of privilege to such material when it disclosed or referenced certain communications on the topic in prior filings.

As an initial matter, the defendant's claim that "the government has failed to produce any responsive documents" to his request for material related to the June 6, 2020 search warrant execution is inaccurate. The fact that the defendant supports his waiver arguments with materials disclosed by the government belies his accusation. As discussed herein, the government takes very seriously its discovery obligations and in no way seeks to withhold material to which the defendant is entitled. In fact, and as outlined below, the government has produced the following materials related to the June 6, 2020 search warrant execution: (a) two separate audio recordings of the defendant's noncustodial interviews on June 2, 2020, and June 6, 2020; (b) two separate body-worn camera videos ("BWC") from June 6, 2020, the date of the seizure; (c) emails between and

1

among the agents and employees of DSS's Computer Investigations and Forensics Division ("CIF"), discoverable as potential Jencks and/or *Giglio* material; (d) a list of agents either present and/or contacted on the date of the seizure; (e) an email between prior case prosecutor Jamie Perry and Department of State ("DS") Special Agent ("SA") Mikel Gajkowski; (f) discoverable internal documents, such as the operations plan for the date of the seizure; and (g) thousands of pages of related discovery, including search warrant affidavits.

To be clear, if there are specific, discoverable materials that the defendant believes he does not have or cannot locate from earlier productions, the government welcomes a discussion to facilitate such a request. However, in his submissions, through counsel, to this Court and in his communications with the government, the defendant has not specified such material apart from generic requests for material it either already has or which is privileged. As grounds for this opposition, the United States relies on the following points and authorities, and any such other points and authorities as may be cited at a hearing on the motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The defendant was charged in a criminal complaint on October 8, 2020, and arrested on October 9, 2020, in San Diego, California. On July 23, 2021, the defendant pled guilty to two counts of Sexual Abuse and one count of Transportation of Obscene Material. *See* ECF No. 69 and July 23, 2021, Minute Entry.

On April 29, 2022, the defendant filed a motion to withdraw his plea, alleging ineffective assistance of the legal team representing him at the time of the plea. *See* ECF No. 119. The motion to withdraw his plea was based, at least in part, on the defendant's challenge of evidenced obtained pursuant to a search warrant executed on June 6, 2020. On October 26, 2022, this Court granted the defendant's motion to withdraw his plea. ECF No. 158.

On January 19, 2023, a grand jury returned an eleven-count indictment. *See* ECF No. 168. On February 23, 2023, a grand jury returned a twenty-five-count superseding indictment. *See* ECF No. 184. A trial date has been set for November 8, 2023.

On March 10, 2023, the defendant filed a motion to suppress, challenging the June 6, 2020, seizure and search of two cell phones pursuant to a warrant. ECF No. 190. The government filed its opposition on March 24, 2023, and the defendant filed his reply on April 14, 2023. *See* ECF Nos. 198, 204. An evidentiary hearing on the defendant's motion is scheduled for May 31, 2023.

On March 27, 2023, the defendant submitted a *Touhy* request and subpoenas for DOJ attorneys Jamie Perry and Pragna Soni. *See* Exhibit A.[1] On April 5, 2023, the government notified counsel for the defendant that the *Touhy* request satisfied the applicable procedural requirements and that the government would be filing a motion to quash the subpoenas. On April 28, 2023, the government filed a motion to quash subpoenas of DOJ Attorneys Jamie Perry and Pragna Soni. ECF No. 210. On May 5, 2023, the defendant filed his opposition, and on May 10, 2023, the government filed a reply. ECF Nos 214, 215.

On May 3, 2023, the defendant filed the instant motion to compel discovery, requesting an order requiring the government to provide "all documents, including all communications and work product, relating to the warrant executed on June 6, 2020." ECF No. 211 at 1. The defendant claims that "the government has remained silent" in response to the defendant's discovery demands. ECF No. 211 at 5. Curiously, in support, the defendant attached only two discovery demand letters, dated July 18 and July 29, 2022, failing to mention the government's fulsome responses. ECF No. 212. A more complete and accurate history regarding discovery demands and the government's responses to those demands is included below.

---

[1] *See also Touhy v. Ragen*, 340 U.S. 462, 468 (1951); 28 C.F.R. §§ 16.21 et seq.

3

Initial Discovery

As indicated in the government's filing at ECF No. 139, discovery in this case has been voluminous. On January 27, 2021, the government produced 4,414 pages of Bates-stamped documents, comprised of FBI reports and copies of search warrants and accompanying affidavits, to include the search warrant for the defendant's two iPhones. On the same date, the government also produced additional materials, to include victim interview reports, materials relating to the defendant's June 2 and June 6, 2020, interviews, and the June 6, 2020 body-worn camera footage. The government highlighted those materials in its discovery letter. *See* Exhibit B, Government Letter, dated January 27, 2021.

On June 16, 2021, the government produced documents numbered 7,856-10,542. In its accompanying discovery letter, the government indicated that the production included a voice memo created by Agent Ted Nelson on June 6, 2020. The letter then went on to state, "Note: we have included the two body-worn camera videos from June 6 to ensure that the materials relevant to Agent Nelson's voice note are easily accessible." *See* Exhibit C, Government Letter, dated June 16, 2021. Finally, the government produced the BWC footage a third time, this time with Bates-numbers on June 30, 2021, noting in the accompanying letter, "You have already received some of these items informally, to include…phone seizure body-cam footage…" *See* Exhibit D, Government Letter, June 30, 2021.

Subsequent and ongoing discovery in this case has included witness statements, copies of the defendant's device extractions, and copies of the defendant's media platform accounts.

Defense Discovery Demands – 2022

The defendant submitted, through counsel, discovery demands in letters dated July 18, 2022, and July 29, 2022. *See* ECF No 212-1. In the July 18, 2022 letter, the defendant indicated,

4

through counsel, that the government waived any applicable privileges with respect to the seizure of the defendant's personal cell phone, including, but not limited to materials and communications in connection with the preparation of and planning for the cell phone seizure and search warrant executed on June 6, 2020 (the "Warrant"), the execution of the Warrant, and post-execution discussions or planning related to the issues raised by the manner in which the government executed the Warrant. Accordingly, the defendant demanded, pursuant to his interpretation of the subject-matter waiver doctrine, that the government produce any and all documents, including communications via email, text, and/or hard-copy, relating to the Warrant and/or its execution, including documents created after the execution of the Warrant, including any such documents created in connection with the motions recently brought by the defendant that concern the Warrant in any way.

In the July 29, 2022, letter, and pursuant to the same claim of waiver, the defendant demanded additional information, including attorneys' and law enforcement officers' notes and written communications (made both at time of the Warrant execution and during other procedural stages of the case), as well as the names of certain attorneys and law enforcement officers who had some direct or indirect involvement in the Warrant execution.

The government refuted the defendant's claims of waiver regarding privilege but did respond to certain requests and provided additional, non-privileged information. Relevant here, the government identified (a) Ms. Perry's supervisor; and (b) all employees of DSS's Computer Investigations and Forensics Division ("CIF") who met, spoke, or corresponded with any government agent or any prosecutor concerning the Warrant execution. *See* Exhibit E, Government Letter, dated August 15, 2022.

5

Defense Discovery Demands – 2023

On or about March 2, 2023, and at the defense team's request, the government met and conferred with defense regarding, among other things, what witnesses the government would make available for the suppression hearing. During that meeting, the government notified the defense team that the government would be providing additional disclosures regarding the execution of the Warrant.[2] That same day, the government disclosed a series of emails and documents, all of which were attached to the defendant's motion to suppress. *See* ECF No. 192, 192-2. The documents comprised of various communications between and among DS agents and CIF employees, disclosed as potential Jencks and/or *Giglio* material.

In a letter dated March 16, 2023, the defendant made various discovery demands. In the letter, the defense team complained that the government's March 2, 2023, disclosures delayed the filing of the defendant's motion to suppress physical evidence and "also required the expenditure of additional hours of research and writing that would otherwise not have been necessary." *See* Exhibit F, Discovery Demand, dated March 16, 2023. The government responded to the various discovery requests on April 5, 2023. *See* Exhibit G, Government Letter Regarding March 16 Discovery Demands, dated April 5, 2023. Notably, the government directed the defense team's attention to requested discovery that had previously been provided. For example, the defendant demanded to know when the iPhones had been forensically extracted.[3] The government directed the defense team to the forensic extractions previously disclosed in June 2021. The government

---

[2] The government disclosures resulted in the defendant filing an unopposed motion to extend the deadline upon which his motion to suppress was due and erroneously claiming in his motion to suppress that the March 2 disclosures revealed that information previously disclosed by the government was "false." *See* ECF Nos. 186, 192 at 5.

[3] In his motion to suppress, the defendant erroneously stated that, "[a]fter gaining access to Mr. Raymond's phones, the agents accessed his photographs and observed what appeared to be photos and videos of unconscious or sleeping women, some of which were explicit in nature. That same Saturday, after already being aware of what was on the phone due to the unconstitutional access, Gajkowski sent a preservation request to Apple for Mr. Raymond's iCloud account." *See* ECF No. 190 at 13.

also provided two PDF documents to assist the defense team in understanding the technical information. Additionally, the government also directed the defense team to previously disclosed documents indicating when initial analysis was completed. Regarding preservation letters, the defendant demanded correspondence concerning the basis of the preservation letters. The government provided Bates Numbers for responsive communications previously disclosed in 2021.

In a separate letter dated March 30, 2023, the defendant made various discovery demands related to the government's opposition to the defendant's motion to suppress. *See* Exhibit H, Discovery Demand, dated March 30, 2023. The government responded by providing Bates Numbers of previously disclosed material, illustrating that the defense team already had the bulk of the information it requested. *See* Exhibit I, Government Letter Regarding March 30 Discovery Demands, dated April 5, 2023. As the government did in the written response to the March 16, 2023, letter, the government indicated that broad demands for notes, memoranda, records, drafts of any letters, e-mails, or other documents, was overly broad and implicated two types of privilege covered by Rule 502(a): attorney-client privilege and work product. The government informed the defense team that, to the extent that such communications are Jencks Act material, the government would provide that information. The government also noted that certain potential Jencks Act communications had already been disclosed and directed the defense team to that discovery.

In an email dated April 13, 2023, the defense team suggested that the government withheld *Brady* information, specifically the operations plan attached to the government's March 2, 2023, discovery letter and attached as Exhibit B to the defendant's motion to suppress at ECF No. 190-2. The government responded by email, directing the defense team's attention to the fact that the

operations plan was provided in 2021. *See* Exhibit J, Email correspondence, dated April 13 – 14, 2023.

## ARGUMENT

In his most recent filing, and pointing to only two discovery letters from 2022, the defendant makes the bewildering claims that "the government has failed to produce any responsive documents[,]" and, in the face of the defendant's discovery requests, that the "government has remained silent." ECF No. 211 at 1, 5. As indicated by the procedural history above, the defendant grossly misrepresents the status of discovery in this case. Setting aside the vast amount of discovery provided in this case, including discovery relevant to the motion to suppress, the government acknowledges, as it has already done with the defense team, that written or recorded communications that constitute a "prior statement . . . that a prosecution witness made 'relat[ing] to the subject matter as to which the witness [will] testify" are discoverable. In fact, the government has already indicated that it will provide Jencks (as well as any other materials discoverable pursuant to Rule 16, *Brady*, and *Giglio*). *See* Exhibits E, G, and I. Thus, this response will address potential communications relating to the Warrant between attorneys and/or witnesses that do not qualify as Jencks, *Brady*, or *Giglio* material.

As further discussed below, the defendant's requests for all information, communications, and documents related to the Warrant, including (a) "the analysis of the issues by government counsel, its supervisory counsel, its appellate counsel, or as presented in such documents as case impression memoranda"; (b) attorney communications; and (c) "all work product relating to the warrant," *see* ECF No. 211 at 8, are protected by the attorney-client privilege, the deliberative process privilege, and/or the work product privilege, and therefore this Court should deny the defendant's motion to compel.

8

**I.       The Requested Materials Are Protected by Attorney-Client Privilege**

The attorney-client privilege "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 538 F. Supp. 3d 124, 135 (D.D.C. 2021). This Court has recognized that "when a government attorney is not legislating but rather providing legal advice, the attorney-client privilege does cover any confidential communications between the government client and attorney." *S.C. v. United States*, 2012 U.S. Dist. LEXIS 188558, *8 (D.D.C. August 10, 2012). To assert attorney-client privilege with respect to a document or communication, a party must demonstrate "(1) that there was a communication between an attorney and his or her client; (2) that the communication was made in confidence; (3) that it was made to an attorney by a client, and (4) that it was made for the purpose of seeking or obtaining legal advice." *United States v. Naegele*, 468 F. Supp. 2d 165, 169 (D.D.C. 2007). "[L]egal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id.* at *9 (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).

Importantly, courts in this Circuit have repeatedly recognized a governmental attorney-client privilege. *See, e.g.*, *New York Times Co. v. U.S. Dep't of Just.*, 282 F.Supp.3d 234, 237 (D.D.C. 2017) ("The attorney-client privilege fully applies to communications between government attorneys and the government officials and agencies to which they render legal service."); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir.1980) (a government agency can "be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege."). Furthermore, courts in this Circuit have found that attorney-client privilege applies to written communications "between two prosecutors regarding litigation strategy" which "convey the prosecutors' legal advice and judgment concerning the

handling of newly-obtained evidence." *United States v. Sutton*, 2022 U.S. Dist. LEXIS 144219, *9 (D.D.C. August 12, 2022) (concluding communications between two case prosecutors are protected by attorney-client privilege); *see also Reep v. U.S. Dep't of Justice*, 302 F. Supp. 3d 174, 185 (D.D.C. 2018) (finding that documents prepared by an AUSA were properly withheld under the attorney-client privilege because it contained legal advice of the AUSA); *Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 43 (D.D.C. 2019) (finding that documents were properly withheld under the attorney-client privilege because they "conveyed [the agency attorney's] position on 'legal concerns' regarding an agency position").

The relationship between prosecutors and agents, where the prosecutor is acting in an advisory capacity on legal matters, is akin to that of an attorney-client relationship. Indeed, attorney-client privilege has successfully been asserted for correspondence between DOJ attorneys and FBI agents coordinating on the investigation of a defendant. *See Welenc v. U.S. Dep't of Just.*, 2019 U.S. Dist. LEXIS 112205, *19 (D.D.C. July 8, 2019) (concluding that, since the FBI had "adequately demonstrated that the information it did not disclose is protected under the attorney-client [and other] privileges, or some combination of these privileges, it was properly withheld under Exemption 5 [of the Freedom of Information Act])." Accordingly, written communications where prosecutors gave law enforcement legal advice surrounding the warrant execution are protected by attorney-client privilege and should not be compelled. *See Id*.

Here, any written communications between government attorneys concerning the analysis of issues are clearly protected, and this Court should not compel their production. Similarly, except for the information outlined below in Section IV, legal advice provided to agents is protected.

**II.     The Requested Materials Are Protected by the Attorney Work Product Privilege**

Separately, "[t]he attorney work product doctrine protects from disclosure "written materials that lawyers prepare 'in anticipation of litigation,' ensuring that 'lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials. *Sutton*, 2022 U.S. Dist. LEXIS 144219, *5 (quoting *United States v. Williams Cos.*, 562 F.3d 387, 393 (D.C. Cir. 2009)). The work product doctrine shields "both deliberative materials such as mental impressions, conclusions, and opinions, and legal theories and factual materials prepared in anticipation of litigation." *Williams & Connolly LLP v. U.S. Sec. & Exch. Comm'n*, 729 F.Supp.2d 202, 211 (D.D.C. 2010) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997)). Notably, "the work product doctrine extends to 'material prepared by agents for the attorney as well as those prepared by the attorney [her]self'" because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Sutton*, 2022 U.S. Dist. LEXIS 144219, *5 (quoting *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

The need for these protections is clear. As the Supreme Court observed, "…it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing." *Id*. Thus, the work product doctrine "reflects the strong public policy underlying the orderly prosecution and defense of legal claims." *Nobles*, 422 U.S. at 236-37 (internal citations and quotations omitted). "Although the work product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more

11

vital" as "the interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.* at 238.

Material protected by this privilege can generally be divided into two categories: 1) fact work product, or the "objective facts and information collected by the attorney or her agents", *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43, 49 (D.D.C. 2019), and 2) opinion work protect, or the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," *United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010). Where fact work product "may be discoverable if the party seeking it demonstrates a substantial need for the materials and an undue hardship in acquiring the information any other way," opinion work product is "'virtually undiscoverable,' requiring the party seeking it to make 'a far stronger showing of necessity and unavailability by other means' that would otherwise be sufficient for discovery of 'fact' work product." *Sutton*, 2022 U.S. Dist. LEXIS 144219, *6 (quoting *United States v. Clemens*, 793 F. Supp. 2d 236, 244 (D.D.C. 2011) (internal citations and quotations omitted)). In sum, "to obtain discovery of opinion work product, a party must show 'extraordinary justification.'" *Id*. (quoting *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 10 (D.D.C. 2008).

Any documents or communications containing "analysis of the issues" and "all work product", as requested by the defense, are clearly protected by the work product privilege. The defense has made no showing justifying its need for this material, much less an "extraordinary" one requiring the disclosure of documents and communications containing attorney analysis of legal issues.

**III.     The Requested Materials Are Protected by the Deliberative Process Privilege**

"The deliberative process privilege . . . protects the decision-making process of government agencies and encourages the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fishbowl." *Mapother v. Department of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (internal citations omitted). For the privilege to apply, the information must be "pre-decisional" and "deliberative." *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998). Information is "pre-decisional" if it precedes, in temporal sequence, the decision to which it relates. *Id*. Communications are "deliberative" if they are "part of the agency give-and-take by which the decision itself is made." *Id.* (internal citations omitted).

Here, two DOJ attorneys – Ms. Perry and Ms. Soni – communicated with one another in relation to advising law enforcement agents during the execution of the search warrant. As noted in the Government's Motion to Quash Subpoenas of DOJ Attorneys, ECF No. 210, attorneys within the Department of Justice must be able to confer openly with one another on cases and legal issues that arise. In fact, seeking assistance or a second opinion from another lawyer, having decisions scrutinized by supervisors, and talking through various processes are imperative to the Department's ability to properly investigate and prosecute cases and "serve[s] the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

**IV.     Any Waiver is Considerably Narrower Than the Defendant Claims**

The defendant argues that the government's past references to legal advice the prosecutors gave agents concerning the Warrant execution constitutes a waiver of "any applicable privileges over such material." ECF No. 211 at 1. In support, the defendant points to (1) an email the government previously attached to a filing (attached here as Exhibit K, hereafter the "Biometrics Advice Email"), and (2) the government's factual summaries in prior filings regarding

13

"communications between and among a line prosecutor, a supervisory prosecutor, and agents." ECF No. 211 at 1, 9, 11-13. For purposes of this section, the government responds to the defendant's arguments at ECF No. 211 at 11-13 and further assumes the defense is referring to portions of the government's prior filings which indicated that, during the execution of the Warrant, Ms. Perry spoke with her supervisor and agents sought and received legal advice from case prosecutors. *See* Government's Opposition to Defendant's Motion to Withdraw Guilty Plea, ECF No. 147, at 31-41[4]; Government's Opposition to Defendant's Motion to Disqualify Trial Attorney Jamie Perry, ECF No. 139 at 2-4, 7-8 (same); Government's Opposition to Defendant's Motion to Suppress Evidence, ECF No. 198 at 2-14 (same).

The defendant's arguments contradict established caselaw. The government's prior filings which reference a specific legal conclusion by case prosecutors, as well as factual summaries in response to various defense motions, cannot serve as a basis to find that any attorney-client privilege has been waived.[5] Attorney-client privilege protects *communications*, not underlying

---

[4] For example, Page 36: "Agent Gajkowski explained that because she believed, based upon the defendant's statement, that the phones could only be unlocked with PIN, she did not attempt to unlock the phones using the biometrics as authorized in the warrant . . . Government counsel called Agent Gajkowski back and told her that because the agents were still in the immediate area and because little time (less than an hour, at that point) had elapsed, they should compel the defendant to open the phones using biometric procedures authorized by the warrant.."

Page 37: "Agent Gajkowski then called the same government attorney. She asked about returning at a later date, to which government counsel expressed concern as to the delay, and government counsel asked whether an agent could unlock the phones one last time, continuously touch the screens of the phones to ensure they did not relock. The agent indicated that they would try."

Page 41: "Recognizing that they could not compel him to reveal his PIN code, the agents ended the encounter at 12:26 p.m. Agent Gajkowski then called government counsel. Upon learning that the biometrics were not attempted, government counsel subsequently advised the agents to immediately reengage the defendant to unlock his phones using either Touch/Face ID. Given the physical and temporality proximity to the initial seizure, coupled with the fact that the warrant did not simply authorize a seizure, but rather authorized compelled biometrics, as well as subsequent search of the device(s), the agents, after additional consultation, decided to attempt to employ the biometric provisions as authorized by the warrant."

[5] The defendant's repeated inaccurate factual summaries have forced the government to correct the record with increasing detail. Now, the defendant uses those corrections to assert that applicable privileges have been waived.

facts. *See King v. E. F. Hutton & Co.*, 1987 U.S. Dist. LEXIS 13220, *4 (D.D.C. June 14, 1987) (rejecting argument that a party waived attorney-client privilege by using information learned from a client in an affidavit supporting a motion). Thus, the government's factual statements cannot serve to waive privilege about communications. Relatedly, a mere restatement of an attorney's conclusion on a legal issue does not constitute a waiver of the attorney-client privilege. *Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2016 U.S. Dist. LEXIS 180613, *9 (W.D. Tex. Dec. 30, 2016) (statement at issue was "at most a disclosure of a legal conclusion and not the disclosure of a confidential attorney-client communication") (citing *Zenith Electronics Corp. v. Exzec, Inc.*, 1997 U.S. Dist. LEXIS 24089, *4 (N.D. Ill. Dec. 24, 1997) (mere restatements of an attorney's conclusion do not disclose a particular attorney-client communication and therefore does not constitute a waiver); *Rates Technology, Inc. v. Elcotel, Inc.* 118 F.R.D. 133, 134-35 (M.D. Fla. 1987) (statements revealing the general, ultimate conclusion of an attorney that the client was not in violation of a patent does not constitute a waiver of the attorney-client privilege).[6]

Thus, the question for this Court is whether the single nine-line Biometrics Advice Email constitutes a waiver of any sort of privilege and the scope of the potential waiver. To that end, "[w]aiver of the privilege in an attorney-client communication does extend to all other communications relating to the same subject matter." *United States SEC v. Brown*, 2010 U.S. Dist. LEXIS 162854, *6 (D.D.C. Sept. 29, 2010). Further, "voluntary production of certain privileged documents implies a waiver of all communications on the same subject." *Chubb Integrated Sys. Ltd. V. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C. 1984). That said, the Court has

---

[6] Should this Court find that the Biometrics Advice Email from DOJ attorney Jamie Perry to SA Gajkowski is not privileged, the defendant loses any claim to additional communications under the subject matter waiver doctrine, as "the invocation of [the waiver] requires that the document on which the waiver was based was privileged in the first place; it is non sequitur to deduce a waiver from the production of a document that is not privileged." *Intervet, Inc. v. Merial Ltd.*, 252 F.R.D. 47, 51 (D.D.C. 2008).

discretion to determine the scope of subject matter waiver, which "must be determined in reference to the content of the disclosed document." *Brown*, 2010 U.S. Dist. LEXIS 162854, *6-7 (quoting *Minebea Co., Ltd. v. Pabst*, 228 F.R.D. 34, 36 (D.D.C. 2005) (concluding that the disclosure of otherwise privileged letters between counsel and client to third parties waived the attorney-client privilege, but only with respect to the specific patents discussed in the letters)).

Here, any waiver of attorney-client privilege caused by disclosure of the Biometrics Advice Email should be narrowly construed to communications containing legal advice on the subject matter in the Biometrics Advice Email – that is, whether law enforcement could compel testimonial information, such as a passcode, when executing the warrant to seize the defendant's cell phones. Any subject matter waiver "should not include advice asked for or given on different topics." *Brown*, 2010 U.S. Dist. LEXIS 162854, *7 (concluding subject matter waiver limited to communications containing legal advice on the subject matter areas covered in the written waiver and should not include advice asked for or given on different topics).

The defendant's request for any documents 1) relating to the Warrant; 2) the identification of all communications relating to the Warrant; and 3) all work product relating to the Warrant (ECF No. 211 at 8) far exceeds the scope of any subject matter waiver. *See Intervet, Inc. v. Merial, Ltd.*, 252 F.R.D. 47, 52 (D.D.C. 2008) (calling defendant's boundless definition of "subject matter" "grossly unfair"). The defendant's request is also inconsistent with the reasoning behind the subject matter waiver principle, which "…is invoked to permit a party to see what otherwise would be privileged matter so that it can comprehend the privileged matter that was selectively disclosed" to "prevent[ ] the producing party from making a disclosure of privileged matter while keeping hidden information that makes what has been disclosed comprehensible." *Id.*, (citing Edna Selan Epstein, *The Attorney Client Privilege and the Work Product Doctrine* 589 (2008)). To be sure,

the information sought by the defense here – to the extent it has not already been provided in discovery – would do nothing to aid the defense in comprehending the Biometrics Advice Email.

Finally, the government has conducted a review of written communications between DOJ attorneys and SA Gajkowski and found no further communications on the topic of whether law enforcement could compel testimonial information and, thus, there is nothing to compel.[7] Should the government during its Jencks review discover any communications related to the narrow topic of compelling testimonial information and/or biometrics, it will disclose those communications. Additionally, the government has not opposed the defendant's stated intent to question SA Gajkowski about the advice she received from Ms. Perry about compelling biometrics. Anything else falls outside the ambit of any subject matter waiver.

---

[7] To enable the Court to properly determine the scope of any waiver, the Government has provided for *in camera* review certain written communications containing legal advice from prior case prosecutors to law enforcement on other matters surrounding the execution of the June 6, 2020 search warrant. *See* Exhibit L, under seal.

## CONCLUSION

Aside from what is outlined above, it is the government's position that the privileges outlined above fully apply to the materials the defendant demands. For the foregoing reasons, the Court should deny the defendant's motion.[8]

Respectfully Submitted,

| | |
|---|---|
| MATTHEW M. GRAVES | KENNETH A. POLITE, JR. |
| UNITED STATES ATTORNEY | ASSISTANT ATTORNEY GENERAL |
| District of Columbia | U.S. Department of Justice |
| | Criminal Division |

| | |
|---|---|
| /s/ | /s/ |
| Meredith E. Mayer-Dempsey | Angela N. Buckner |
| NY Bar No. 5213202 | DC Bar No. 1022880 |
| Assistant United States Attorney | Trial Attorney |
| United States Attorney's Office | U.S. Dept. of Justice, Criminal Division |
| for the District of Columbia | Human Rights and Special Prosecutions |
| 601 D Street, Northwest | 1301 New York Avenue, Northwest |
| Washington, D.C. 20530 | Washington, D.C. 20530 |
| (202) 252-7259 | (202) 616-0238 |
| Meredith.Mayer-Dempsey@usdoj.gov | Angela.Buckner.2@usdoj.gov |

---

[8] In his motion to compel documents, the defendant previews his intent to treat all government agents and lawyers testifying for the defense as hostile witnesses, an apparent attempt, at least in part, to take advantage of the Jencks Act. ECF No. 211. The government assumes the defendant will properly raise this request separately. For now, the government notes its opposition.