**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:21-cr-00380-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIAN JEFFREY RAYMOND** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OR PARTICULARS**

The United States of America, by and through undersigned counsel, hereby respectfully files this memorandum in opposition to defendant Brian J. Raymond's Motion for a Bill of Particulars, filed through counsel. *See* ECF No. 242. As to the government's superseding indictment, ECF No. 184, the defendant asserts the allegations are inadequate to prepare his defense and avoid prejudicial surprise at trial. He therefore moves this Court to direct the government to (1) disclose the identity of the victim named in each count, as well as "all other unidentified" victims the government intends to call at trial; (2) identify the country referenced in Counts 13 and 14; (3) identify what intoxicant(s) or drug(s) the defendant used to incapacitate the victims, as alleged in Counts 2, 4, 6, 8, 10, and 13, as well as the method the defendant used to administer the intoxicant(s) or drugs(s); and (4) identify the manner of inducement alleged in Counts 15 through 17. *See* ECF No. 242 at 2-3.

The defendant's motion fails for several reasons. First, the victims are identified in the discovery materials by an anonymized identifier, and the identifiers have remained consistent throughout the investigation. Using the identifier, the defense team can not only distinguish the statements and images attributed to each victim, but also note the time, date, and place each victim was assaulted. Second, the government has already identified Country 6 for the defense, and that

information remains available. Third, the government will disclose to defense an expert opinion and corresponding report regarding whether, in the expert's opinion, the victims named in the indictment appeared to be under the influence of a drug, intoxicant, or other substance. Aside from expert notice, there are no discoverable materials indicating the type of intoxicant(s) or drug(s) the defendant used that have not been produced. Regardless, the government is not required to prove that the defendant used a specific drug or intoxicant. Finally, as to the manner of inducement, all discoverable information has been provided to defense, including witness statements and the defendant's communications with each victim.

The defendant has sufficient notice to be ready for trial, and his motion should be denied. As grounds for this opposition, the United States relies on the following points and authorities, and any such other points and authorities as may be cited at a hearing on this motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The defendant was charged in a criminal complaint on October 8, 2020, and arrested on October 9, 2020, in San Diego, California. On July 23, 2021, the defendant pled guilty to two counts of Sexual Abuse, in violation of 18 U.S.C. § 2242(2), and one count of Transportation of Obscene Material, in violation of 18 U.S.C. § 1462. *See* ECF No. 69 and July 23, 2021, Minute Entry.

On March 30, 2022, the defendant filed a motion to compel discovery, specifically "the names of the complainants and witnesses in this case, and to produce their last known addresses and/or locations." ECF No. 103. The government filed its opposition on April 14, 2022, ECF No. 117, and the defendant filed a reply on April 21, 2022, ECF No. 118. The Court denied the defendant's motion without prejudice, indicating that he could refile after the Court made a ruling on the defendant's motion to withdraw. *See* May 9, 2022, Minute Order.

On April 29, 2022, the defendant filed a motion to withdraw his plea, alleging ineffective assistance of the legal team representing him at the time of the plea. *See* ECF No. 119. On October 26, 2022, the Court granted the defendant's motion to withdraw his plea. ECF No. 158.

On January 19, 2023, a grand jury returned an eleven-count indictment. *See* ECF No. 168. On February 23, 2023, a grand jury returned a twenty-five-count superseding indictment. *See* ECF No. 184. The charges arise from allegations that the defendant drugged and sexually assaulted numerous women over the course of several years. The indictment accounts for fourteen separate victims. A detailed factual recitation of the facts underlying the charges is included in the government's opposition to the defendant's motion for bond and release from custody, ECF No. 187. A trial date has been set for November 8, 2023.

On April 18, 2023, the defendant renewed his motion to compel the victims' identities. ECF No. 206. The government filed its opposition on May 3, 2023, ECF No. 213, and the defendant filed a reply on May 10, 2023, ECF No. 216. The Court denied the defendant's motion without prejudice. *See* ECF 228.

On July 28, 2023, the defendant filed a motion for a bill of particulars. *See* ECF No. 242. In a July 28, 2023 Minute Order, the Court direct that the government file a response on August 11, 2023.

**DISCOVERY**

Discovery provided to the defense team in this case consists of hundreds of pages of law enforcement reports, including reports of interviews for both witnesses and victims,[1] the defendant's correspondence with a close friend, the defendant's correspondence with the victims

[1]Some of the victims were interviewed multiple times. Each interview summary has been disclosed, allowing the defendant to compare statements.

via mobile messages and/or emails, an email the defendant sent to himself referencing his interactions with several women by date and location, the forensic extractions from the defendant's devices, and copies of the defendant's media platform accounts. Bates numbering for documents in this case is well over 20,000. The defense team has access to full copies of twelve extractions and media accounts. Additionally, several sets of classified material were made available to the defense team.[2]

Regarding the identity of the victims specifically, the government provided voluminous discovery, including reports of victims' statements to law enforcement and the defendant's photographs and videos of victims. In documents, the victims' names were redacted and replaced with an anonymized identifier (*e.g.*, "AV-1"). This is true of both charged and uncharged victims. The same identifier was used for images. Images were provided to defense on multiple occasions and via multiple mediums, including USAfx uploads into individually labeled folders with the corresponding victim identifier. Additionally, the government has disclosed the date, time, and place that each victim was assaulted.[3] The government also disclosed the defendant's extensive correspondence with each victim. Depending on the victim, this includes communications via mobile applications such as Tinder, iMessage, and WhatsApp, as well as emails. These communications are dated and capture the victims' demeanor and exact words both before and after their dates with the defendant.

[2] Because of concerns arising from the defendant comingling classified and unclassified materials on his devices, copies of device extractions and media accounts were produced in classified discovery. Unclassified copies of responsive materials found on each device and platform were generated in late May, 2023. The defense team has not yet provided an external hard drive for those materials.

[3] Discovery also included charts summarizing this information, as well as a forensic report outlining the responsive findings located on each device and media platform.

Country 6 was identified several times in classified discovery between June and October, 2021. In fact, during the plea hearing on July 23, 2021, the defendant acknowledged, through counsel, that Country 6 was a location known to him. *See* ECF No. 68 at 6 n.2.

Regarding allegations in the superseding indictment that the defendant either rendered the victims unconscious and/or administered a drug, intoxicant, or other substance, the government has disclosed hundreds of photographs and videos taken by the defendant depicting women who lay unresponsive as the defendant manipulates their bodies. The government has also disclosed victim statements to investigators indicating that they passed out, did not remember parts of their date(s) with the defendant, fell, vomited during the date, and/or felt unwell the next day. In addition to the photographs and videos, analysis of the defendant's devices revealed internet searches indicating that he was either viewing or researching drug and alcohol interactions. All this information has been disclosed to the defense team. The government has retained an expert who will provide an opinion regarding whether, in the expert's opinion, the evidence in this case is consistent with the victims having been drugged. That report will be disclosed to defense. Aside from that report, all discoverable items have been provided to the defense team.

As to the method of inducement alleged in Counts 15 through 17, the government has disclosed the witnesses' statement to investigators, all messages in the government's possession between the defendant and the victims named in those counts, and photographs and videos indicating how each interaction with those victims ended. The government is not in possession of discoverable materials that it has not provided to the defense.

## ARGUMENT

An indictment need only include "a plain, concise, and definite written statement of the essential facts constituting the offense charged," but a court may, in its discretion, "direct the

government to file a bill of particulars" clarifying the allegations in the indictment. Fed. R. Crim. P. 7(c)(1), (f). A bill of particulars "ensure[s] that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). A bill of particulars is not required, however, if the indictment "is sufficiently specific, or if the requested information is available in some other form." *Id.*; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government had provided extensive discovery that "allows Defendants to adequately prepare for trial").

A bill of particulars "is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); *see also United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same). Rather, a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal quotation marks and citation omitted, emphasis in original). Therefore, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (internal quotation marks and citation omitted); *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (same); *see also United States v. Taylor*, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014) (bill of particulars "may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial").

Applying this principle, judges of this Court have consistently denied motions for a bill of particulars where, as here, the motion seeks details about the nature of the government's evidence. Thus, for example, in *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017), the Court denied a motion for a bill of particulars requesting information about the basis for fraud and tax charges against the defendant, including the precise representations allegedly made by the defendant and the amount of taxes allegedly owed. The Court explained that the requested information had already been provided to the defendant in discovery and elsewhere, and a "bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case." *Id.*

Similarly, in *Brodie*, the Court denied a motion for a bill of particulars requesting "the circumstances surrounding the alleged acts" of fraud committed by the defendants as well as "other evidentiary details." 326 F. Supp. 2d at 92. The Court reasoned that the charges set forth in the indictment were "detailed and alleged with particularity" and "the discovery provided by the government has been voluminous," and therefore there was "no reason for any further particularization of the overt acts." *Id.*

Finally, in *Sanford Ltd.*, the Court denied a motion for a bill of particulars regarding the "substance, time, place and date" of allegations regarding falsification of records and other charges against a corporate defendant. 841 F. Supp. 2d at 315. The Court explained that "the general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars." *Id.* at 317 (internal quotation marks and citation omitted). Accordingly, the Court denied the defendant's request for information about the identities of its employees alleged to have participated in the conspiracy and other details about the overt acts charged in the indictment. *Id.* at 317-18.

The same result is appropriate here for three reasons. First, the superseding indictment provides sufficient detail outlining the allegations against the defendant. *See United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (no bill of particulars required where the superseding indictment identified, among other things, the object of the charged conspiracy, the conspiracy's "time period," the applicable *mens rea*, and locations where conspirators acted). Along with providing a specific date for the alleged conduct, the superseding indictment language tracks closely that of the applicable statutes. Nothing in the superseding indictment's language is vague, unclear, or lacking in specificity, especially considering the defendant's recorded conduct. If the defendant believes the government's evidence is insufficient or that the statutes themselves are vague as applied to his conduct, then he should move for the appropriate relief.

Second, the government has made several large discovery productions in this case. More to the point, the defendant has all discoverable materials supporting the superseding indictment. The defendant has copies of his own photographs and videos, as well as copies of his internet searches, his email to an online pharmacy, and the messages that he sent to the victims in this case. The defendant has more than an adequate basis to understand the charges against him with sufficient precision to prepare for trial.

Finally, Rule 7(f) does not entitle the defendant to the granular information he seeks. The government need only provide a "definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), A bill of particulars is not a sword that enables the defendant to "force the government to reveal all its evidence before trial." *Taylor*, 17 F. Supp. 3d at 178. The indictment is sufficiently specific, and the defendant, through discovery, is already in possession of the additional information he requests. The defendant has sufficient information to, through his own investigation, identify his *own* statements and conduct.

Notwithstanding the above, the government responds below to each of the defendant's demands.

**1. The Identity of the Alleged Victims[4]**

As the government has previously argued, disclosure of the victims' names is neither required nor warranted. First, disclosure is not required by Rule 16, *Brady*, or *Giglio*. Rule 16 does not require the government to disclose the identity of its witnesses prior to trial. *See United States v. Bolden*, 514 F.2d 1301, 1312 (D.C. Cir. 1975). And while the government must disclose *Brady* and *Giglio* information, that obligation does not extend to the names or addresses of inculpatory witnesses. *United States v. Ford,* 2016 U.S. Dist. LEXIS 13158, at *4 (D.D.C. Feb. 4, 2016) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.")); *United States v. Pray*, 764 F. Supp. 2d 184, 189–90 (D.D.C. 2011) (finding that while exculpatory material must be given to defense with enough time to make use of it at trial, the actual names of victims were not exculpatory). Similarly, the Jencks Act does not require production of the government's witness list in advance of trial. *See United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988) ("[S]tatements made by government witnesses or prospective witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case."). As courts in this Circuit have recognized, that obligation "is not triggered until the witness has testified on direct examination at trial." *Id.*, citing *United States v. Sitzmann*, 74 F. Supp. 3d 128, 139 (D.D.C. 2014).

[4] The government incorporates by reference its arguments at ECF Nos. 117 and 213.

Second, the potential injury to the victims in this case clearly outweighs the defendant's need for the information. *See United States v. Ortiz-Garcia*, 553 F. Supp. 2d 119, 121 (D. P. R. 2008) ("In exercising its discretion, the court must weigh the government's reasons not to disclose the information (i.e., injury to the witnesses or witness intimidation) against the defendant['s] specific showing of particularized need for the names beyond the basic assertion that such a list would aid in trial preparation."). To start with, the violent nature of the defendant's crimes militates against disclosure. *United States v. Kevin*, 1999 U.S. Dist. LEXIS 5728, at *38 (S.D.N.Y. Apr. 7, 1999) (finding that defendants charged with crimes of violence were not entitled to the pretrial disclosure of the identities of victims). Further, disclosing the victims' names and locations would not only violate their right, pursuant to the Crime Victims' Rights Act ("CVRA"), to privacy and to be free from harassment and embarrassment, but disclosure may also jeopardize the cooperativeness of victims that are not subject to the Court's subpoena power. 18 U.S.C. §§ 3771(a)(1), (4), and (8); *see also United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007); *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016 (9th Cir. 2006) ("The [CVRA] was enacted to make crime victims full participants in the criminal justice system."). The fears of harassment and embarrassment articulated by the victims are warranted, and the government has previously raised and continues to have serious concerns about any disclosure of their names and locations. *See* ECF No. 213 at 11 (highlighting media attention).[5]

Third, the defendant has not demonstrated a compelling need for the information because he has adequate notice of the charges against him and the facts supporting them. The defendant sought out the women named in the indictment. He went on dates with them. He photographed

---

[5] The victims in this case have repeatedly reiterated that they do not want their identities disclosed, and that they do not want to speak with the defense team.

them. Indeed, the government recovered the bulk of evidence in this case from the defendant's own devices and media platforms. The defendant knows each victim. Courts have found disclosure of the government's witness list unnecessary where a defendant had previous personal or financial relations with government witnesses. *See, e.g.*, *United States v. Colson*, 662 F.2d 1389, 1391-92 (11th Cir. 1981) (district court within its discretion to deny defense request for a list of government witnesses where "government's major witnesses were persons with whom [defendant] had had significant personal or financial relations" and disclosure would not have materially aided his defense); *United States v. Hancock*, 441 F.2d 1285, 1287 (5th Cir. 1971) ("In any event the defendant's relationship with the prospective witnesses precludes a finding that he was prejudiced by the denial of his motion for discovery.")

Additionally, the defense has been provided with voluminous discovery, including reports of victims' statements to law enforcement and the defendant's photographs and videos of the victims. While their names were redacted and replaced with an anonymized identifier (*i.e.*, "AV-1"), the same identifier was used for the corresponding images. Moreover, the disclosed materials indicate the time, date, and place each victim was assaulted. This is true for both charged and uncharged victims. Aside from their statements to investigators and the photographs and videos that the defendant himself took, the government disclosed the defendant's correspondence with each victim. Depending on the victim, this includes communications via mobile applications such as Tinder, iMessage, and WhatsApp, as well as emails. These communications are dated and capture the victims' demeanor and exact words both before and after their dates with the defendant. The conversations provide adequate context to refresh the defendant's recollection. The defense has sufficient notice to be ready for trial.

Further, the desire to conduct an investigation aimed at discrediting a witness does not qualify as a "compelling need" for that witness's identity. Indeed, criminal defendants do not possess "a general right to pretrial discovery" of impeachment evidence "where the prosecution denies that any such material is exculpatory and material under *Brady*." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). And "[i]f impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence" and "the government may not be compelled to disclose Jencks Act material before trial." *Id.* Thus, while the defendant has a right to test the veracity of any testifying victim's statement at trial, "[t]he constitutional right to cross examine has never been held to encompass a right to pretrial disclosure of prosecution witnesses." *United States v. White*, 116 F.3d 903, 918 (D.C. Cir. 1997).

Finally, and contrary to the defendant's claims, the defendant has no right to confrontation before trial. *See, e.g., United States v. Lattimore*, 525 F. Supp. 3d 142, 149 (D.D.C. 2021) ("[I]n light of the Supreme Court's indication that the Confrontation Clause is a trial right, this Court, like the other federal courts to recently consider the issue, concludes that the Confrontation Clause does not attach prior to trial.").

**2. The Country in Which Acts Alleged in Counts 13 and 14 Occurred**

The defendant has access to this information and has acknowledged, via counsel, that he is aware of the location of Country 6. As indicated above, during the plea hearing on July 23, 2021, the defendant acknowledged that Country 6 was a location known to him. *See* ECF No. 68 at 6 n.2.

**3. Identification and the Method(s) of Administration of Drug(s) or Intoxicants**

The plain language of the statute does not require that the government name a specific intoxicant or drug. *See* 18 U.S.C. § 2241. In the context of charging, including in an indictment language not required by the statute charged is unnecessary. *United States v. Miller*, 471 U.S. 130, 136 (1985) ("A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'") (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927)); *United States v. Pumphrey*, 831 F.2d 307, 309 (D.C. Cir. 1987) ("our own and Supreme Court precedent has consistently held that excess allegations in an indictment that do not change the basic nature of the offense charged need not be proven and should be treated as mere surplusage").

Undersigned counsel are aware of no federal criminal caselaw requiring the government to specify the specific intoxicant used in a prosecution under 18 U.S.C. § 2241. However, comparable caselaw clearly establishes that such specification is mere surplusage and not required to substantiate the charge. For example, an indictment need not allege the specific weapon used to commit certain violent offenses. *United States v. Savoca*, 166 F. App'x 183, 188 (6th Cir. 2006) (where the statute outlawed "a bank robbery during which the defendant 'assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device,' [i]nclusion in the indictment of these offenses of the specific type of weapon used is thus mere surplusage."); *United States v. Brown*, 151 F. App'x 787, 792 (11th Cir. 2005) ("This Court has concluded that an indictment issued pursuant to 18 U.S.C. § 924(c)(1)(A) is correct if the generic term 'firearm' is used, and that detail about a firearm listed in the indictment is mere surplusage"); *United States v. Williams*, 334 F.3d 1228, 1231-32 (11th Cir. 2003) (stating that the fact that the gun in the § 924(c) count was an AK-47 rifle and not a handgun as charged in the indictment was not

reversible error because "the word 'handgun' in the indictment was mere surplusage") (internal citations omitted); *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994) ("Allegations in the indictment that are not necessary to establish a violation of a statute are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime.") (internal citation omitted); *United States v. Winkelman*, 180 F. App'x 397, 401 (3d Cir. 2006) (finding no reversible error where the prosecution moved to strike as surplusage the reference to a 12-gauge shotgun as the weapon the defendant was alleged to have used, carried and possessed during his cocaine distribution activities and the court's instructions to the jury did not reference any specific firearm). Similarly, here, the government need not allege a specific intoxicant or drug. The indictment contains the elements of the offense charged and fairly informs the defendant of the charges against which he must defend. It is sufficient that the government prove, at trial, that an intoxicant was used – not which intoxicant.

Nor is the lack of specificity in the indictment regarding which drug(s) and/or intoxicant(s) were used unfair surprise. In reality, the types of drugs often utilized in drug facilitated sex assault are unknown to the victim and may not appear in toxicology tests. Regardless, here, the government is only in possession of toxicology results for one charged victim. Given the defendant's manipulative, surreptitious conduct of rendering women unconscious, no victim was immediately aware that he had photographed or filmed them without their knowledge or consent. Consequently, most did not seek out medical care or a toxicology screening following their interactions with him. The defendant now seeks to benefit from his criminal conduct by using a bill of particulars to insinuate that because the government cannot allege the exact drug or intoxicant he used to facilitate his sexual assaults, the charges are legally insufficient. That is incorrect both as a matter of law and policy. The indictment is not defective, and at trial, the

defendant will not be surprised to learn that the government intends to present evidence of drugging.

To that end, the defendant is already in possession of the evidence that the government will use to establish drugging. The government has disclosed hundreds of photographs and videos taken by the defendant depicting women who lay unresponsive as the defendant manipulates and drops their limps, opens their eyelids, straddles their legs, and grabs parts of their bodies. As to AV-1, the government disclosed videos of AV-1 stumbling and witness statements describing AV-1's demeanor. The government has disclosed hundreds of pages of victim statements to investigators indicating that they passed out, did not remember parts of their date(s) with the defendant, fell down, vomited during the date, and/or felt unwell the next day. In addition to the photographs and videos, analysis of the defendant's devices revealed internet searches such as "passed out," "Ambien," "Ambien and alcohol side effects," "Zolpidem Tartrate tablets and 10mg," "Ambien," "dissolve," "Zolpidem and pharmacies," "Ambien and alcohol and pass out." Additional searches included, "tequila and visine latina raped on first date," "vodka & valium," and "Xanax and alcohol." In an email to an online pharmacy, the defendant stated, "Hello, do you have chloral hydrate for insomnia." All of this information, and more, has been disclosed to the defense team.

The government has retained an expert who will provide an opinion regarding whether the information above is indicative of drugging. That report will be disclosed to defense. Aside from that report, all discoverable items have been provided to the defense team.

**4. The Manner of Inducement**

The government provided a proffer of the facts supporting Count 15 in its opposition to the defendant's motion for bond and release from custody. In sum, the defendant met AV-15 on a mobile dating application and subsequently invited her out on a date. The defendant drove. After

the date, the defendant drove AV-15 home, and shortly thereafter, AV-15 passed out. The defendant proceeded to take photographs of AV-15 while she was nude and unconscious. *See* ECF No. 187 at 15-16. In addition to photographs, the government has disclosed law enforcement reports memorializing AV-15's statements to investigators and the defendant's communications with AV-15. All discoverable items have been provided to the defense team.

Similarly, the government proffered evidence supporting Count 16 of the indictment, specifically that the defendant met AV-4 via an online dating application. He subsequently invited her on a date that ended in AV-4 passing out and the defendant taking photograph's and recording videos of AV-4 without her permission. *See* ECF No. 187 at 16-18. In addition to photographs and videos, the government has disclosed law enforcement reports memorializing AV-4's statements to investigators and the defendant's communications with AV-4. All discoverable items have been provided to the defense team.

Finally, the defendant invited AV-17 to visit him in the D.C. area. And again, that date ended with the defendant taking photographs of AV-17 without her knowledge or permission as she lay partially nude. *See* ECF No. 187 at 18-19. In addition to photographs, the government has disclosed law enforcement reports memorializing AV-17's statements to investigators, the defendant's emails with AV-17, and the defendant's communications with AV-17. All discoverable items have been provided to the defense team.

As in the cases cited above, the defendant here already has access to the requested information through discovery and the government need not "connect every dot in its case." *Han*, 280 F. Supp. 3d at 149.

## CONCLUSION

For all these reasons, the defendant's motion for a bill of particulars should be denied.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
District of Columbia

/s/
Meredith E. Mayer-Dempsey
NY Bar No. 5213202
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street, Northwest
Washington, D.C. 20530
(202) 252-7259
Meredith.Mayer-Dempsey@usdoj.gov

NICOLE M. ARGENTIERI
ACTING ASSISTANT ATTORNEY GENERAL
U.S. Department of Justice
Criminal Division

/s/
Angela N. Buckner
DC Bar No. 1022880
Trial Attorney
U.S. Dept. of Justice, Criminal Division
Human Rights and Special Prosecutions
1301 New York Avenue, Northwest
Washington, D.C. 20530
(202) 616-0238
Angela.Buckner.2@usdoj.gov