# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 21-CR-00380 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIAN JEFFREY RAYMOND** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DEFENDANT'S POLYGRAPH TEST

The United States of America, through undersigned counsel, respectfully submits this motion to exclude evidence relating to the defendant's polygraph examination administered on June 9, 2020. For the reasons that follow, the Government respectfully requests that the Court preclude any questioning or argument related to the polygraph because it is A) hearsay prohibited by Federal Rule of Evidence 802; B) improper extrinsic evidence of a specific instance of truthfulness prohibited by Federal Rule of Evidence 608(b); C) insufficiently reliable to qualify as expert testimony pursuant to Federal Rule of Evidence 702[1]; D) prohibited expert opinion on defendant's mental state as prohibited by Federal Rule of Evidence 704(b); and E) unfairly prejudicial pursuant to Federal Rule of Evidence 403. Thus, this Court should preclude any questioning or argument related to polygraph evidence.

## I.    BACKGROUND

On May 31, 2020, Adult Victim 1 ("AV-1") accompanied the defendant to his U.S. Embassy-leased housing in Mexico City, Mexico, after having met at a local shopping center and

---

[1] Nor has the defendant noticed the polygrapher as an expert as required by Federal Rule of Criminal Procedure 16(1)(G) and this Court's Amended Pretrial Scheduling Order dated August 15, 2023, ECF No. 247.

consumed alcohol provided by the defendant. AV-1 will testify that shortly after consuming some wine and snacks at the defendant's apartment, she blacked out and has no memory of the hours that followed. AV-1 later woke up nude and rushed to the defendant's balcony, where she called for help. From there, an investigation into the defendant's conduct began. On January 19, 2023, a grand jury sitting in this District returned a 25-count Superseding Indictment, of which Count One charges the Defendant with sexual abuse by engaging in and attempting to engage in a sexual act with AV-1, who was at that time incapable of appraising the nature of the conduct and physically incapable of declining participation in, and communicating unwillingness to engage in, the sexual act. ECF No. 168 at 2.

Relevant to this filing, on or about June 1, 2020, the defendant traveled from Mexico City to Northern Virginia due to the events of May 31, 2020. On or about June 4, 2020, agents from the Diplomatic Security Service and the Federal Bureau of Investigation interviewed the defendant. Several days later, on June 9, 2020, Jonathan A. Ober of Virginia Polygraph, LLC conducted a polygraph examination of the defendant. A copy of Mr. Ober's brief, three-page report can be provided to the Court on request.

During the pre-test portion of the examination, the defendant made statements to Mr. Ober regarding the events of May 31, 2020, including that AV-1 initiated and willingly engaged in "foreplay" with the defendant on his couch, that she willingly moved to the bedroom to engage in sexual contact, and, after 10-15 minutes, AV-1 got up and left the bedroom. Ex. 1 at 1–2.

According to the report, Mr. Ober and the defendant then reviewed the definition of "force" or "intimidation," which included "[a]ny situation where a person involved in a sexual situation feels like they cannot say 'NO' to the other person or a situation where one party tells the other party to stop what they were doing and the second party does not stop," "physical or psychological

force or intimidation," and "[h]aving sex with a person who is debilitated because of alcohol and/or drug use or who has diminished mental capacity and cannot give their conscious, cognitive and willing consent." Ex. 1 at 2. The defendant then answered a series of pre-test questions during which he stated that AV-1 had never said "no" or "ma[d]e any physical attempt whatsoever to make him stop," that AV-1 was a "willing participant to the sexual contact with him," he "noticed [no] debilitation due to alcohol and/or drugs," and that he used no physical force or intimidation to coerce or make AV-1 have sex with him. *Id.* at 2–3. The defendant further stated that he "had not given [AV-1] any drugs or high potency alcohol without her knowledge."

Ultimately, Mr. Ober opined that the defendant was truthful when he answered the following two questions in the negative: "Did you use any type of force or intimidation to have sex with AV-1 on May 31?" and "Did you have sex with AV-1 after she indicated in any way that she did not want to?" *Id.*

The report provided little detail regarding the methodology used, noting only that a "standard computerized polygraph examination was created and administered" that "used relevant, irrelevant and comparison questions" and "[t]he charts were recorded without incident." *Id.* at 3. Neither the charts nor the full list of questions was disclosed in the report, nor was any additional detail provided as to what program or standards were used to administer the test. The report states that "[t]he examination was scored and evaluated using nationally standardized procedures utilizing chart data, numerical parameters and global data analysis" and "an objective, computerized scoring algorithm." *Id.* No further details were provided as to which parameters, software, algorithms, or procedures were used. Nor has the defendant provided any underlying data or notes or a video recording of polygraph examination. He has not noticed Mr. Ober as an expert pursuant to Federal Rule of Criminal Procedure 16(1)(G) or provided Mr. Ober's CV or

qualifications. Finally, the Government was not consulted in advance of the polygraph examination.

## II.    ANALYSIS

Evidence of the above-described polygraph examination, including Mr. Ober's opinion that the defendant's responses to the test questions were truthful, is prohibited by Rules 802, 608(b), 704(b), 403, and 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Accordingly, the Court should preclude questioning and argument regarding the defendant's polygraph examination or any statements in relation to it.

### A.    The Polygraph Evidence is Inadmissible Hearsay

Courts that have considered the admissibility of a defendant's polygraph examination, his offer to take a polygraph, and his statements made during a polygraph examination, have concluded that such evidence constitutes impermissible hearsay. *See, e.g.*, *United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999) (finding proper district court's exclusion of statements made by defendant during polygraph as inadmissible hearsay); *United States v. Kubini*, No. 11-14, 2015 WL 418220, at *4, 8 (W.D. Penn. Feb. 2, 2015) ("The entire purpose of the proffered testimony is to prove that [defendant] provided truthful responses to such questions. Hence, [the polygrapher's] proffered testimony regarding [defendant's] underlying responses is 'classic hearsay[.]'").

Rule 802 prohibits admission of hearsay, which is defined as "a statement" made by a declarant that "the declarant does not make while testifying at the current trial" that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c), 802. The Federal Rules of Evidence provide certain exceptions and exclusions to the hearsay rule, *e.g.*, a statement of a party opponent, *see* Fed. R. Evid. 801(d)(2), none of which apply to the

defendant's own self-serving statements offered by the defendant, such as those included in the polygraph examination and results. *See* Fed. R. Evid. 801(d), 803, and 804.

Moreover, courts have similarly found that polygraph tests generally are not sufficiently reliable to satisfy the residual hearsay exception found in Fed. R. Evid. 807. *See United States v. Ferri*, 778 F.2d 985 (3d Cir. 1985) (declining to admit polygraph evidence pursuant to Rule 807's predecessor Rule 804(b)(5) as insufficiently trustworthy); *see* Fed. R. Evid. 807 (permitting admission of otherwise hearsay evidence that "is supported by sufficient guarantees of trustworthiness" and "more probative on the point for which it is offered than any other evidence . . ."). Finally, such statements are not admissible as prior consistent statements pursuant to Rule 801(d)(1)(B) because they were made after "the attachment to the motive to fabricate." *United States v. Laurent*, 603 F. Supp. 3d 1247, 1258 n.6 (S.D. Fla. 2022) (citing *Tome v. United States*, 513 U.S. 150, 167 (1995)).

Accordingly, the defendant's own statements contained in the polygraph report, including his answers to the two polygraph test questions, *see* Ex. 1 at 2–3, are inadmissible hearsay and should be precluded.[2]

### B.      Polygraph Evidence is Prohibited Specific Instance of Truthfulness

Rule 608(a) permits evidence of a "reputation for having a character for truthfulness or untruthfulness," while Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for

---

[2] For the same reason, the defendant is precluded from admitting any of his own prior statements, including his prior statements to law enforcement, his own WhatsApp, text, dating application, or email statements. *See United States v. Greene*, 995 F.2d 793, 798 (8th Cir. 1993) ("Such statements, when offered ty the defendant, are hearsay, except in narrow circumstances not present here.").

truthfulness."[3] Fed. R. Evid. 608. A polygraph examination is a "specific instance of truthfulness" prohibited by Rule 608(b). *See United States v. Monroe*, No. 1:13–CR–76–RWS–CMS–2, 2015 WL 7176417, at *5 (N.D. Ga. Nov. 12, 2015) (holding that polygraph examination is not character opinion admissible under Rule 608(a) but rather inadmissible extrinsic evidence of truthfulness governed by Rule 608(b)) (citations omitted); *United States v. Arthur*, No. 10–20753, 2011 WL 3844090, at *3 (S.D. Fla. Aug. 29, 2011) (precluding testimony of polygrapher pursuant to Rule 608(b) because "the testimony seeks to introduce evidence of a specific instance of three prior out-of-court statements . . . and Dr. Palmatier's opinion that the defendant was truthful as to those three statements"); *United States v. Pitner*, 969 F. Supp. 1246, 1253 (W.D. Wash. 1997) (finding polygraph results inadmissible under Rule 608(b) as "measure of a specific instance of dishonesty" and not evidence of reputation for truthfulness admissible under Rule 608(a)). While such evidence may be admissible at the court's discretion on cross examination, it is not admissible on direct examination of either the defendant or the examiner, Mr. Ober. *See Arthur*, 2011 WL 3844090, at *3; Fed. R. Evid. 608(b).

Accordingly, even if the defendant could overcome the polygraph examination's obvious unreliability, *see infra*, the defendant's June 9, 2020, polygraph constitutes evidence of a specific instance of truthfulness that is inadmissible pursuant to Rule 608(b). Thus, the defendant should be precluded from offering any evidence of the polygraph exam, its conclusions, or the defendant's statements on which it is based.

---

[3] Rule 608(b) permits an exception in criminal cases for impeachment by evidence of a prior criminal conviction and, at the court's discretion, on cross-examination in certain circumstances. Fed. R. Evid. 608(b) and 609. Neither exception is relevant here.

### C.        Polygraph Evidence is Unreliable

Here, the polygraph examination and results should be excluded as unreliable. In fact, prior to *Daubert*, many circuits, including the D.C. Circuit, had *per se* rules excluding polygraph evidence as inherently unreliable. *See, e.g.*, *Brown v. Darcy*, 783 F.2d 1389, 1391 (9th Cir. 1986), *overruled by United States v. Cordoba,* 104 F.3d 225, 227–28 (9th Cir. 1997); *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), *overruled by Daubert*, 509 U.S. at 597–98. Notwithstanding *Daubert*, the Fourth Circuit has maintained its *per se* exclusionary rule. *See United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003), *cert. denied*, 540 U.S. 1090 (2003) (collecting cases and affirming the Fourth Circuit's *per se* rule excluding polygraph evidence absent *en banc* reversal of existing circuit precedent).

The U.S. Supreme Court has upheld such *per se* exclusionary rules as constitutional even after *Daubert*, observing "there is simply no consensus that polygraph evidence is reliable." *See United States v. Scheffer*, 523 U.S. 303, 309 (1998) (reversing Court of Appeals for the Armed Forces opinion holding *per se* exclusion of polygraph evidence unconstitutional). In so finding, the Supreme Court doubted the reliability of polygraph examinations, stating that "the degree of reliability of polygraph evidence may depend upon a variety of identifiable factors, [and thus] there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams." *Id.* at 312. Additionally, the Court found that polygraph evidence risks usurping the jury's exclusive role in assessing witness credibility. *Id.* at 313 ("By its very nature, polygraph evidence may diminish the jury's role in making credibility determinations.") (citation omitted) (emphasis in original); *see also Monroe*, 2015 WL 7176417, at *9 (noting that "a fundamental premise of our criminal trial system is that 'the *jury* is the lie detector" and collecting cases).

Other circuits have permitted district courts, in their discretion to admit polygraph evidence as expert testimony pursuant to Rule 702 and *Daubert*. See, e.g. *United States v. Henderson*, 409 F.3d 1293, 1301–02 (11th Cir. 2005) (restricting admission of polygraph evidence if stipulated or to impeach or corroborate testimony at trial, the latter purpose only if opposing party received notice and opportunity to conduct its own polygraph and otherwise admissible under Federal Rules of Evidence, including Rule 702); *Cordoba,* 104 F.3d at 227–28 (remanding for district court to consider admissibility of polygraph evidence pursuant to Rules 702 and 403).

However, even for those circuits whose precedent grants district courts discretion to admit polygraph evidence pursuant to Rule 702 and *Daubert*, "[o]pinions based on polygraph examinations are seldom, if ever, admissible into evidence." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010); *see also Cordoba*, 104 F.3d at 228 ("With this holding [that district courts have discretion to admit polygraph evidence pursuant to *Daubert*], we are not expressing new enthusiasm for admission of unstipulated polygraph evidence. The inherent problematic nature of such evidence remains."); *United States v. Matusiewicz*, 155 F. Supp. 3d 482 (D. Del. 2015), *aff'd sub. nom. United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) ("[N]otwithstanding a retreat from *per se* rules of exclusion and substantial judicial discussion of potential admissibility, courts almost invariably still exclude polygraphs.").

The D.C. Circuit has not explicitly considered the issue since *Daubert* and *Scheffer* but has observed that "[t]he reliability of [polygraph] evidence is not beyond doubt." *Almerfedi v. Obama*, 654 F.3d 1, 8 n. 1 (D.C. Cir. 2011). Not surprisingly, therefore, courts in this District have continued to exclude polygraph evidence as unreliable. *See, e.g.*, *United States v. Laureys*, 103 F. Supp. 3d 69, 73 (D.D.C. 2015), *rev'd on other grounds*, 866 F.3d 432 (D.C. Cir. 2017) (noting that "this Circuit has been skeptical of any value that may be derived from polygraph testing" and

declining to "find sufficient reliability in polygraphs to admit test results as evidence in criminal trials") (citations omitted); *Eastridge v. United States*, 372 F. Supp. 2d 26, 55 n.48 (D.D.C. 2005) (declining to credit polygraph evidence noting "[t]here was no evidence about this polygraph that could be deemed close to 'scientific' even if polygraphs were generally admissible") (citing *Proctor v. United States*, 728 A.2d 1246, 1249–51 (D.C. 1999) ("Our own case law has consistently reflected an aversion to lie detector evidence.")); *Graham v. Mukasey*, 608 F. Supp. 2d 50, 55 (D.D.C. 2009) (observing that polygraph results are usually inadmissible at trial) (collecting cases); *see also Rowland v. United States*, 840 A.2d 664, 674 (D.C. 2004) ("Thus it is settled in the District of Columbia that the results of a polygraph examination are not admissible to prove that a statement is true or false, or that a witness is veracious or deceitful") (emphasis added). According to this authority, this Court should not permit introduction of the June 9, 2020 polygraph evidence as it is inherently unreliable.

### D.    Polygraph Evidence is Inadmissible Expert Testimony

Here, the defendant did not provide notice to the government seeking to qualify Mr. Ober, the polygraph examiner, as an expert. But, even if he had, the June 9, 2020, examination fails to provide any indicia of reliability necessary to qualify as expert testimony pursuant to Rule 702 and *Daubert*. Mr. Ober's report lacks any details to establish that Mr. Ober's opinion of the defendant's veracity is based on reliable methodology, data, and specialized scientific, technical, or specialized knowledge. It provides only conclusory statements as to both process, controls, and conclusion. *Compare Daubert*, 509 U.S. at 593–94. Furthermore, the June 9, 2020, examination was undertaken unilaterally without notice to the government or opportunity for the government to observe. *Compare Henderson*, 409 F.3d at 1302. Additionally, the report lacks indicia of reliability such as the underlying data supporting Mr. Ober's conclusions or a recording of the examination

to corroborate any of the statements or conclusions contained in the report. *See Pitner*, 969 F. Supp. At 1252 (observing in excluding polygraph evidence that "reliance on polygraph results [are] problematic" due to potential influence of "a number of variables" and that the absence of a recording of the polygraph examination "further diminishe[s]" its reliability). Consequently, Mr. Ober cannot qualify as expert opinion under either Rule 702 or *Daubert*, even if he had been properly noticed pursuant to Federal Rule of Criminal Procedure 16(1)(G).

### E.      Polygraph is Prohibited Evidence of the Defendant's Mental State

Even if he could be qualified as an expert, Mr. Ober's opinion that the defendant was truthful goes to the heart of defendant's *mens rea* and the ultimate issue with respect to Count One, which charges the defendant with sexually abusing AV-1 when she was incapacitated. *See* 18 U.S.C. § 2242(2); Ex. 1 at 3. The questions at issue — "Did you use any type of force or intimidation to have sex with AV-1 on May 31?" and "Did you have sex with AV-1 after she indicated in any way that she did not want to?" — directly speak to the defendant's knowledge and intent in engaging in sexual contact with AV-1 as well as his anticipated defense of consent. This sort of opinion is prohibited by the Rules of Evidence.

Rule 704(b) prohibits an expert witness in a criminal case from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). "[S]everal courts have excluded polygraph examination results and expert testimony related thereto under Rule 704(b) in situations where the questions posed by the polygraph examiner to the accused ask if he had the requisite *mens rea* at the time of the offense." *Kubini*, 2015 WL 418220, at *10 (citations omitted); *see also United States v. Campos*, 217 F.3d 707, 710–12 (9th Cir. 2000) (explaining the history of Rule 704(b) and affirming the exclusion of polygraph evidence where the questions focused on

the defendant's knowledge because the proffered opinion would be testimony from which it necessarily follows that the defendant did or did not possess the requisite *mens rea*); *Monroe*, 2015 WL 7176417, at *4; *Arthur*, 2011 WL 3844090, at *3 (excluding polygraph evidence based on Rule 704 where the defendant was accused of being a "straw buyer" in a mortgage fraud case and was asked during her polygraph about whether she had any idea that something might be illegal with the mortgage paperwork). Accordingly, Rule 704(b) prohibits such testimony by Mr. Ober in this case.

### F.    Polygraph Evidence is Unfairly Prejudicial

Even if the June 9, 2020, polygraph evidence was otherwise admissible under the Federal Rules of Evidence, its limited "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury," and, therefore, inadmissible pursuant to Rule 403. Fed. R. Evid. 403. Given the general skepticism regarding the admissibility of polygraph evidence in general and the lack of any indicia of reliability of the June 9, 2020, polygraph examination in particular, its probative value is limited. *See Cordoba*, 104 F.3d at 1202 ("[T]he inherent unreliability of the particular examination performed in this case makes it inadmissible under Fed. R. Evid. 403."). Furthermore, as the Supreme Court acknowledged, the risk of confusing the jury or usurping the jury's role in assessing witness credibility is significant. *Scheffer*, 523 U.S. at 313–14 (finding appellate courts may "legitimately be concerned about the risk that juries will give excessive weight to the opinions of a polygrapher, clothed as they are in scientific expertise and at times offering, as in respondent's case, a conclusion about the ultimate issue in the trial"); *see also Daubert,* 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in

weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.").

Furthermore, the unilateral June 9, 2020, polygraph examination unfairly prejudices the government. Both the Fifth and Eleventh Circuits have recognized that polygraph examinations that were arranged by a single party without the notice to or participation of the opposing party are relevant factors weighing against admissibility of polygraph evidence under Rule 403. *United States v. Gilliard,* 133 F.3d 809, 816 (11th Cir.1998) ("Although a party is not required to give an adverse party advance notice of, and the opportunity to be present at, a polygraph examination, the absence of such notice and opportunity may be a factor in determining whether admission of the polygraph evidence would unduly prejudice the adverse party."); *United States v. Pettigrew*, 77 F.3d 1500, 1515 (5th Cir.1996) ("The polygraph examination was administered by an expert selected by the defense apparently without the participation of the government, and . . . [w]hile these factors may not always be conclusive, the absence of these or other similar safeguards certainly weighs most heavily against the admission of polygraph evidence."); *see also Kubini*, 2015 WL 418220, at *13 (in excluding polygraph evidence pursuant to Rule 403, noting "the probative value of the polygraph examination is also diminished because it was set up by defense counsel without any invitation to the Government to participate or requesting any input from the Government as to how the questions were framed").

Accordingly, this Court should join others in finding polygraph evidence to be precluded by Rule 403 as unfairly prejudicial. *See, e.g.*, *Waters*, 194 F.3d at 930 (finding no error in exclusion of polygraph evidence and denial of defendant's request for *Daubert* hearing based on district court's conclusion that such evidence was precluded by Rule 403 as "it would go to a collateral matter and cause confusion as to the weight of the evidence"); *Pitner*, 969 F. Supp. at 1252 (in

finding inadmissible under Rule 403, noting the "great potential for the examination results to cause undue prejudice, confusion, and delay" because "[w]hen scientific evidence is presented to jurors with representations that the results are, for example, 98% accurate, there is a substantial risk that the jurors will substitute the examination results for their own judgment.").

## III.    CONCLUSION

For the foregoing reasons, evidence of the June 9, 2020 polygraph, any statements made by the defendant in the course of the examination, and Mr. Ober's opinion of the defendant's truthfulness are inadmissible pursuant to Federal Rules of Evidence 802, 608, 702, 704(b), and 403. Accordingly, the Government respectfully requests that the Court preclude any questioning or argument relating to the defendant's polygraph.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
District of Columbia

*/s/ Meredith E. Mayer-Dempsey* _
Meredith E. Mayer-Dempsey
NY Bar No. 5213202
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street, Northwest
Washington, D.C. 20530
(202) 252-7259
Meredith.Mayer-Dempsey@usdoj.gov

NICOLE M. ARGENTIERI
ACTING ASSISTANT ATTORNEY
GENERAL
U.S. Department of Justice
Criminal Division

*/s/ Angela N. Buckner* _
Angela N. Buckner
DC Bar No. 1022880
Katharine A. Wagner
NY Bar No. 4798245
Trial Attorneys
U.S. Dept. of Justice, Criminal Division
Human Rights and Special Prosecutions
1301 New York Avenue, Northwest
Washington, D.C. 20530
(202) 616-0238
Angela.Buckner.2@usdoj.gov