**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | Criminal No. 1:21-cr-00380-CKK |
| BRIAN JEFFREY RAYMOND, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO CLARIFY
AND MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER
GRANTING THAT MOTION IN PART**

Defendant Brian Jeffrey Raymond, through undersigned counsel, and in response to the

Government's Motion to Clarify the Court's Order on Defendant's Motion to Exclude the

Testimony of Michael Levine (ECF No. 290) and this Court's October 10, 2023 Minute Order

Granting that Motion in Part, respectfully submits this joint Opposition and Motion for

Reconsideration.

**Relevant Background**

On October 5, 2023, this Court issued its Memorandum Opinion and Order granting in

part and denying in part Defendant's Motion to Exclude the Testimony of Dr. Michael Levine.

Therein, this Court ruled that it would "permit Dr. Levine to opine that certain victims were

under the influence of an intoxicant or dissociative agent, but will not permit Dr. Levine to opine

as to the identify of a particular intoxicant or dissociative agent" because by Dr. Levine's own

admission, the latter opinion was predicated on nothing more than "guesswork."  ECF No. 286 at

1-2, 10.

1

One day later, the Government filed a "Motion to Clarify" seeking to circumvent this Court's Order by offering "clarifications regarding certain aspects of Dr. Levine's testimony and report." ECF 290 at 1. Specifically, the Government claimed—in direct contradiction of Dr. Levine's expert report and his testimony at the *Daubert* hearing—that Dr. Levine sought to opine only that a specific "class" of substance ("GHB and its precursors") was the "most likely" cause of each AV's symptoms, rather than that GHB itself was the "most likely" substance used, and that Dr. Levine is comfortable opining that this "category" of substances was most likely used. *Id.* at 1-2. The Government further claimed that Dr. Levine should be permitted to use his knowledge of the "distinct and observable toxidromes" for various intoxicating agents to rule out other categories of specific agents, even though Dr. Levine expressly stated in his expert report that he could *not* conduct such a differential analysis. *Compare id.* at 2 *with* Levine Report at 35-36 (admitting that Dr. Levine "cannot definitively conclude which agent was used," stating that "[t]here are several possible drugs that could have been used to create such a scenario," and that "any of [GHB, Benzodiazepines, Ketamine, and Chloral hydrate] could be involved"). And the Government expressed its understanding that Dr. Levine could opine "on the symptoms experienced by each victim and whether their symptoms are consistent with a particular category of intoxicant or incapacitating agent"—the precise sort of guesswork that this Court previously ruled was *not* allowed. ECF 290 at 3.

Before Defendant could oppose the Government's Motion, on October 10, 2023 this Court issued an Amended Memorandum Opinion and Order (ECF No. 297) (the "Amended Decision") and corresponding Minute Order granting the Government's Motion in part. Most of the changes made by the Court's Amended Decision clarified that GHB is a sedative-hypnotic, rather than a dissociative agent—a distinction that this Court recognized to be "largely

immaterial." ECF 297 at 2.  But the Court also made substantive changes, adding to the end of its prior decision that "Dr. Levine may not testify as to his opinion that GHB was most likely incapacitating agent used, although he may explain why GHB, as a sedative-hypnotic, is one of several incapacitating agents that could have been used."  ECF 297 at 12.

In light of those changes, Defendant submits this Opposition so as to show why the Government's request for "clarification" was meritless and to seek reconsideration of the changes that this Court made in response to the Government's Motion.  *See, e.g.*, *Employment Law Group, P.C. v. San Diego Employment Law Group*, 2021 U.S. Dist. LEXIS 166549, at *3 (D.D.C. Sept. 2, 2021) ("When an issue is decided without the benefit of briefing by a party who wishes to be heard, reconsideration is both appropriate and just.").

## Argument

The Government's Motion amounts to a request for leave to allow Dr. Levine to testify regarding the following three topics:  (1)  "the characteristics of each [] category[y] of intoxicants or incapacitating agents" that may or may not have been given to the AVs, "examples of each (e.g., ketamine as a type of dissociative agent; GHB, specifically, as a type of sedative-hypnotic; and benzodiazepines such as Xanax as a type of sedative), and their effects on humans," ECF 290 at 3; (2) his opinions "as to the symptoms experienced by each victim and whether their symptoms are consistent with a particular category of intoxicant or incapacitating agent," ECF 290 at 3; and (3) his opinion that the "category" of "GHB and its progeny" was the most likely cause of the AVs' symptoms, even though "Dr. Levine cannot say which specific agent within that category was used," ECF 290 at 5-6.

None amounts to admissible expert testimony.

A.      **Any Probative Value Offered By Dr. Levine's Proposed Testimony Regarding Which Incapacitating Agents May or May Not Have Been Used Is Significantly Outweighed By A Risk Of Unfair Prejudice.**

The Government first seeks to have Dr. Levine describe to the jury different categories of intoxicating agents and "their effects on humans."  ECF 290 at 3.  Even though Dr. Levine cannot opine on the specific intoxicating agent that most likely caused the AVs' symptoms, the Government asserts that he can nonetheless tell the jury about possible categories of intoxicating agents that the AVs may or may not have ingested and how those possibilities affect humans.  *Id.*

The Government's proposal runs headlong into Rule 403.  As this Court already recognized, Dr. Levine, by his own admission, cannot "definitively conclude which agent was used" to cause the AVs symptoms.  ECF 297 at 10-11; Levine Report at 35-36.  Permitting Dr. Levine to nonetheless tell the jury about agents that *might* have been used thus offers little probative value to the jury.  That is correct in all cases, but rings particularly true here because as Defendant explained in his pending Motion to Dismiss, the Government bears the heavy burden of proving beyond a reasonable doubt the specific intoxicating agent it believes Defendant used. *Cf.* ECF 307.

Allowing the jury to hear a UCLA emergency room doctor's views on what *could* have caused the AVs' symptoms without any end conclusion as to what the actual cause was, by contrast, poses an extreme risk of unfair prejudice to the Defendant.  Given his credentials, there is a serious chance that the jury will simply accept Dr. Levine's speculation about possible explanations for the AVs' symptoms as gospel even though Dr. Levine himself admits he has no reliable way of identifying which of those possibilities is most likely.

Accordingly, this Court should reject the Government's request to allow Dr. Levine to describe possible intoxicating agents that could have caused the AVs' symptoms and amend its

Amended Decision to make clear that Dr. Levine cannot expand upon his opinion as to whether each AV's symptoms are consistent with alcohol intoxication alone by speculating as to other possible intoxicating agents that may or may not have been involved.

> **B.      Dr. Levine's Attempt To Offer Opinions As To Whether Each AV's Symptoms Are Consistent With A Particular Intoxicating Agent Is Nothing More Than Guesswork That Is At Odds With His Expert Report.**

The Government next attempts to take Dr. Levine's testimony a step further by having him not only describe possible intoxicating agents that *might* have caused the AV's symptoms, but to then attempt to whittle those possibilities down to a single cause by comparing the "toxidromes for these different" drugs with the symptoms experienced by the AVs.  ECF No. 290 at 5.

That is the precise type of analysis that Dr. Levine stated in his expert report that he cannot do in this case.  Even if there are some scenarios where Dr. Levine could use his knowledge of a drug's toxidrome to rule it out as a possible cause, Dr. Levine stated in his expert report that the symptoms he observed from the evidence he reviewed (photographs, videos, and yet-untested witness statements) allowed him to conclude only that "[t]here are several possible drugs that could have been used."  Levine Report 35.  Indeed, Dr. Levine admitted that he "cannot definitively conclude which agent was used"—an admission that this Court correctly observed amounts to nothing more than "guesswork" that "is not the province of an expert witness."  ECF 297 at 11.  Accordingly, because even Dr. Levine himself admits that he cannot use a differential analysis here to rule out possible intoxicating agents based upon their toxidromes and the AVs observed symptoms, the Government's request to have Dr. Levine do precisely that type of analysis is improper and should be rejected.

**C.     The Government's Attempt To Recharacterize Dr. Levine's Testimony Regarding GHB Does Not Make That Testimony Any Less Speculative.**

Finally, the Government claims that notwithstanding the plain text of Dr. Levine's expert report, he intends to opine only that the category of "GHB or its precursors" is the "most likely" cause of the AVs' symptoms, and not that GHB itself was the "most likely" cause.  ECF 290 at 5-6.

That supposed clarification does nothing to render Dr. Levine's proposed opinions regarding GHB any less speculative than they were previously.  As already detailed at length above, Dr. Levine stated repeatedly in his expert report that he could not opine with any degree of reliability that the AVs' symptoms were caused by GHB (whether the individual intoxicating agent or as a category) as opposed to other types of intoxicating agents like sedatives or dissociative agents.  Thus, this Court should reject Dr. Levine's attempt to opine that the category of "GHB or its precursors" is the "most likely" cause of the AVs symptoms for the same reasons that it rejected his attempt to opine that the specific agent GHB was the most likely cause of the AVs' symptoms.

## Conclusion

For the foregoing reasons, this Court should deny the Government's Motion and grant Defendant's Motion to Reconsider the changes this Court made in response to that Motion.

Dated: October 13, 2023                Respectfully submitted,

s/John Marston

John Peter Marston
**FOLEY HOAG LLP**
1717 K Street, NW
Washington, DC 20006
(202) 261-7321
Fax: (202) 785-6687
jmarston@foleyhoag.com

James M. Gross (admitted *pro hac vice*)
**FOLEY HOAG LLP**
1301 Ave. of the Americas, 25th Floor
New York, NY 10019
(212) 812-0422
jgross@foleyhoag.com

s/A. Joseph Jay III

A. Joseph Jay III (D.C. No. 501646)
Denise Giraudo (D.C. No. 499348)
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 747-1900
JJay@sheppardmullin.com;
DGiraudo@sheppardmullin.com

*Counsel for Brian Jeffrey Raymond*