REDACTED / CLEARED FOR PUBLIC RELEASE

Filed with the Classified Information Security Officer
CISO [signature]
Date 10/18/23

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 21-380 (CKK) |
| v. | ) | *Ex Parte, In Camera,* ~~SEALED~~ unsealed Judge C Kollar-Kotelly Nov. 14, 2023 |
| BRIAN JEFFREY RAYMOND | ) | |

# MEMORANDUM OPINION
(October 18, 2023)

Defendant Brian Jeffrey Raymond ("Defendant" or "Mr. Raymond") is charged by indictment with sexually assaulting scores of women over the course of several years while working [REDACTED] as an employee of the Central Intelligence Agency ("CIA"). Before the Court is the Government's Classified, *Ex Parte, In Camera,* Under Seal Motion and Memorandum of Law in Support of Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure ("Motion" or "Mot."). Broadly, the Government asks the Court to permit the Government to produce less-classified and unclassified summaries of certain documentary evidence. The Government also asks the Court to authorize the redaction of certain information in documentary evidence. With one minor exception, the Court agrees with the Government's proposed summaries and redactions. Accordingly, for the following reasons, and upon consideration of the briefing, the relevant authorities, and the entire record, the Court shall **GRANT IN PART AND DENY IN PART** the Motion.



REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

## I. BACKGROUND

The Court has previously described a number of the Government's allegations and this case's procedural background in several prior opinions. *E.g.*, *United States v. Raymond*, 640 F. Supp. 3d 9 (D.D.C. Oct. 26, 2022) ("*Raymond I*"); *United States v. Raymond*, --- F. Supp. 3d ---, 2023 WL 2043147 (D.D.C. Feb. 16, 2023) ("*Raymond II*"). The Court restates only those facts necessary for the resolution of the pending motion and refers the reader to those prior opinions for further background.

### A. General Procedural and Factual Background

An investigation of Mr. Raymond began after police responded, on May 31, 2020, to reports of a naked woman ("AV-1") screaming on the balcony of Defendant's resident in Mexico City, leased by the United States Government for Embassy employees [REDACTED] When Mr. Raymond was interviewed in Mexico City by Mexican and American authorities, he indicated that he had met AV-1 online, and that the two had gone to his apartment, had drinks, and engaged in consensual intercourse. *See Raymond I*, 640 F. Supp. 3d at 14. In the middle of the night, however, AV-1 awoke, ran to a window, and screamed for help, insisting that she had been raped. *See id.* A subsequent urinalysis conducted by the Federal Bureau of Investigation ("FBI") uncovered traces of cocaine, methamphetamine, and theophylline (a bronchial dilator asthma medication), but no trace of any evidence of so-called "date rape" substances. *Id.* In a subsequent interview, AV-1 denied ever having used any illegal drugs and accused Defendant of drugging one of her drinks. *Id.* Based on the incident with AV-1, on June 2, 2020, law enforcement executed a search warrant for Defendant's devices. *Id.* at 15. This warrant, and others, turned up a hoard of videos depicting



REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

Defendant sexually assaulting unconscious women. *Id.* at 18; *United States v. Raymond*, 2023 WL 3040453, at *3 (D.D.C. Apr. 21, 2023) ("*Raymond III*").

Based in part on the inculpatory material on the phones (videos of Defendant sexually assaulting unconscious women), the Government filed a one-count Complaint charging Defendant with enticing or coercing another "to travel in interstate or foreign commerce . . . to engage in . . . any sexual activity for which any person can be charged with a criminal offense," in violation of 18 U.S.C. § 2422(a). *See* ECF No. 1 (Oct. 8, 2020). On December 31, 2020, the Government filed a superseding complaint, charging Defendant with sexual abuse in violation of 18 U.S.C. § 2242(2) and abusive sexual contact in violation of 18 U.S.C. § 2244(a)(2). In accordance with a plea agreement, the Government then filed a superseding information, charging two counts of sexual abuse in violation of 18 U.S.C. § 2242(2) and one count of transportation of obscene material (the photos of videos of unconscious women) in violation of 18 U.S.C. § 1462. ECF No. 59 at 1-4 (May 28, 2021). On July 23, 2021, Defendant entered, and the Court accepted, a plea of "guilty" as to the charges in the superseding information. *See* Minute Entry (July 23, 2021); Statement of Office, ECF No. 68.

Despite the plea, this case did not proceed to sentencing. Rather, Defendant moved to withdraw his plea, based mainly on ineffective assistance of counsel. *Raymond I*, 640 F. Supp. 3d at 21. After substantial briefing, the Court granted the motion on those grounds. *Id.* at 34. The Government then sought, and a grand jury returned, the first indictment, comprising eleven counts similar to those charged in the prior charging instructions. *Raymond III*, 2023 WL 3040453, at *3. That indictment alleged: two counts of sexual abuse in violation of 18 U.S.C. §§ 2242(2), 7(9); one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 2244(a)(2) and 7(9); and one count of coercion and enticement to travel to engage in unlawful sexual



REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

activity, in violation of 18 U.S.C. § 2442(a). The operative superseding indictment more than doubled the counts pending against Defendant. ECF No. 184. It brings twenty-five counts and alleges fourteen distinct victims.

The parties then filed a battery of pretrial motions. The Court has since resolved some of them, most relevantly the Defendant's [242] Motion for Bill of Particulars. There, the court mandated that the Government identify each alleged victim by name. Still pending before the Court are: Defendant's [190] Motion to Suppress; Defendant's [254], [255], [257], [258], and [259] Motions in Limine; the Government's [259] Motion for 404(b) and 413 Evidence; and another CIPA motion [REDACTED] This memorandum opinion and accompanying order resolves this last outstanding Motion.

**B. Background Specific to Pending Motion**

The Government's prudential review uncovered a number of classified records that may qualify as *Brady*, *Giglio*, or Jencks material. Additionally, some material may be useful either (1) for the Government to impeach Defendant, should he take the stand, or (2) to demonstrate mitigating circumstances at sentencing, should a jury convict Defendant on one or more counts of the operative indictment. The material at issue here can be delineated as follows:





REDACTED / CLEARED FOR PUBLIC RELEASE



Across the various documents, the Government has deleted: [REDACTED] The Government's supporting declaration, [REDACTED] explains the harm that

REDACTED / CLEARED FOR PUBLIC RELEASE

could be caused by the release of this information, Ex. A, and the Court credits this declaration in its entirety. The Court also reviewed the raw documents on which the Government has based its proposed summaries.[1]

## II. LEGAL STANDARDS

In general, the Government must provide a defendant with all exculpatory "material" relevant to the guilt or punishment of the accused. *Brady v. Maryland*, 373 U.S. 83 (1963). Evidence is "material" where, if not disclosed, "there is a reasonable probability that . . . the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Material" evidence includes that which a defendant could use to impeach a government witness. *United States v. Giglio*, 405 U.S. 150 (1972). Additionally, by statute, the government must disclose pretrial statements made by a witness that is related to the subject matter of their testimony. 18 U.S.C. § 3500(b). Local Rule 5.1 further requires the government to disclose various categories of information, including *Brady* material, "regardless of whether the information would itself constitution admissible evidence" and "in a reasonably usable form unless that is impracticable." LCrR 5.1(a). That said, "[a]t any time the [C]ourt may, for good cause, deny, restrict, or defer discovery for inspection." Fed. R. Crim. P. 16(d)(1).

Where, however, such material has been classified, the Court looks to CIPA. *United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006) (RBW). CIPA "does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *United States v. Sedaghty*, 728 F.3d 885, 903 (9th Cir. 2013). Indeed, CIPA stands at equal stature with the Federal Rules of Criminal Procedure

---

[1] The raw documents are numbered numerically [redacted] and proposed substitutes are numbered alphanumerically [redacted]



REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

governing criminal discovery, and "contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information." *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989). In relevant part, CIPA permits

> [t]he court, upon a sufficient showing, [to] authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

CIPA § 4. To do so, the government must first move for *ex parte* review and, upon granting such relief, "the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of appeal." *Id.*

For a substitute summary of information, the Court has wide discretion to approve suitable substitutions. *See Sedaghaty*, 728 F.3d at 905. These unclassified substitutions "need not be of 'precise, concrete equivalence,' and the 'fact that insignificant tactical advantages could accrue to the defendant by use of the specified classified information should not preclude the court from ordering alternative disclosure." *Id.*

As for deletions, if the information to be deleted is irrelevant or unhelpful to the defense, the Court's inquiry is over. *Meija*, 448 F.3d at 455. If, however, the information is relevant, the Court must determine if the privilege claimed by the Government "is at least a colorable one." *Yunis*, 867 F.2d at 623. If so, then the Court must balance the Government's (and public's) interest in national security against the defendant's need for the information. *Meija*, 448 F.3d at 445 (citation omitted). Special attention must be paid to whether producing the classified material would implicate the sources and methods used to collect the material. *Yunis*, 867 F.2d at 623 (citing *CIA v. Sims*, 471 U.S. 159, 175 (1985)).



REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

Before continuing, it should be added that a defendant also has a right to file their own *ex parte* submission outlining their theory of the defense while the Court reviews the Government's classified, *ex parte* filing. *See Sedaghaty*, 728 F.3d at 906. Defendant [REDACTED] has made no such filing here.

## III. DISCUSSION

The Court need not devote substantial time to much of the Government's redactions, because the vast majority of them are clearly appropriate. [REDACTED] and similar information are all particularly sensitive. *See generally Mousovi v. Obama*, 916 F. Supp. 2d 67 (D.D.C. 2013) (redactions and substitutions in *habeas* context). These categories of information are also irrelevant to this criminal matter. For instance, they do not bear on the veracity of the evidence tying him to certain alleged sexual assaults. [REDACTED] bear on whether, for example, Defendant in fact assaulted an alleged victim. Perhaps more importantly, their release, even to cleared counsel, could undermine their efficacy in the future. This settles the vast majority of the instant Motion.

Just two categories of information bear more discussion. The Government proposes excising [REDACTED] Mot. at 40-41. The Government considers this information irrelevant to "the contested trial issues," as well as devoid of "exculpatory or impeachment information. *Id.* at 41. The Court agrees only in part. [REDACTED] do not make it more or less likely that Defendant sexually abused certain women, portions of his



REDACTED / CLEARED FOR PUBLIC RELEASE



REDACTED / CLEARED FOR PUBLIC RELEASE

Although relevant, this information is nevertheless not discoverable. These are inculpatory, not exculpatory, and include no impeachment material. The Government need not disclose inculpatory material not helpful to the defense. *Yunis*, 867 F.2d at 622. Evidently, the Government does not intend to use this information in its case-in-chief, unlike *See* Mot. at 31. As such, the Government's proposed summary of is appropriately redacted.

Second, it appears that the Government proposes redacting all mention of any particular country throughout the materials, replacing them with numeric monikers (e.g., "Country 1"). *See* Mot. at 31. In the abstract, such a redaction is appropriate, because does not make it more or less likely that Defendant perpetrated a particular assault in the United States or Mexico. "Country 6," is a different matter. Count Thirteen of the operative indictment charges Defendant with, in relevant part, drugging Victim 23 "in Country 6." To carry its burden on this count, therefore, the Government must prove beyond a reasonable doubt that the charged conduct did indeed occur in Country 6 rather than another country. Without revealing to the jury the fact that



REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

Country 6 [redacted] the Government runs the risk that it will inadvertently vary from the terms of the operative indictment, with the jury thinking that Country 6 is a stand-in for a country [redacted] *See United States v. Lorenzana-Cordon*, 940 F.3d 1, 5 (D.C. Cir. 2020). Without the benefit of adverse argument, the Court concludes that the pending Motion presents an appropriate opportunity for the Government to disclose to the defense a fact that it will inevitably have to present at trial—that Country 6 [redacted] Accordingly, the Court approves the remainder of the Government's proposed substitutes, with the exception that "Country 6" must be replaced with [redacted]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Motion. An appropriate order accompanies this Memorandum Opinion.

Dated: October 18, 2023

COLLEEN KOLLAR-KOTELLY
United States District Judge



REDACTED / CLEARED FOR PUBLIC RELEASE