**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 21 – 380  (CKK)** |
| | : | |
| **BRIAN  RAYMOND** | : | |
| | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**INTRODUCTION AND CONCISE SENTENCING ARGUMENT:**

Brian Raymond is a 48 year old man who is scheduled to be sentenced by this Court following his guilty pleas to four counts of the superseding indictment pending against him. Pursuant to a written plea agreement, he entered his guilty pleas to the following counts of the superseding indictment:  Count 1 – Sexual Abuse in violation of 18 U.S.C. 2242(2);  Count 6 – Abusive Sexual Contact in violation of 18 U.S.C. 2244(a)(2); Count 17 – Coercion and Enticement to Travel in violation of 18 U.S.C. 2422(a); and Count 19 – Transportation of Obscene Material in violation of 18 U.S.C. 1462(a).  In addition, as part of the plea agreement, he acknowledged and accepted responsibility for the nature and circumstances of the offense conduct.  He also acknowledged that a significant prison term is warranted for his misconduct, agreeing to a sentencing range of 24 to 30 years.  He recognizes that his conduct was reprehensible and shameful. Moreover, in resolving the case he wanted to make sure that the victims were not put through a trial in this case. [1]  He has shared with Probation, the Government, and the Court a statement he prepared, which includes an apology to the women, and he intends to apologize

---

[1]   When Mr. Raymond was encouraged to pursue his constitutional claims and reject a plea offer that had been extended, he expected that if the constitutional challenge was unsuccessful he would have additional opportunities to negotiate a plea agreement.  He was surprised it took as long as it did, and he was adamant about accepting the plea, even when his attorneys moved to withdraw.  He truly did not want to put the women through any further trauma, particularly the stress of a public trial.

directly to the women when he has the opportunity at sentencing.

During the pendency of the case and plea hearing, as in most criminal cases, the Court has heard a great deal about the criminal conduct, and counsel is mindful that the conduct was very disturbing, making this a very difficult sentencing.  However, as the Court is aware, there are other factors the Court must consider in determining a fair and just sentence in this case, including both the sentencing guidelines and the information about Mr. Raymond's background, history, achievements, and characteristics.  See, 18 U.S.C. 3553(a) and (b).   Counsel urges the Court to consider that the criminal conduct should not completely define Mr. Raymond, as he has had a long and distinguished career in service to his country, making sacrifices that greatly impacted his mental health and personal life, and appear to have contributed indirectly to the offense conduct. Through his work, he made many significant contributions in service to our country – helping countless people along the way.  Simply put, Mr. Raymond's accomplishments, outstanding service, the assistance he provided to many in need around the world, and his medical and mental health issues are also important factors the Court must consider in determining a fair and just sentence in this case.

Although this case significantly tarnishes his career achievements, his extraordinary sacrifices and contributions during his many years of service, as well as the trauma he experienced while he was trying to help protect our many citizens and allies living around the world, should not be forgotten or swept under the rug. Counsel wholeheartedly believes that his many years of sacrifice and service to our country, along with several other mitigating factors discussed in the PSR, tip the scale in favor of a sentence at the bottom of the agreed-upon range, which is already above the applicable guideline range in the case.  Thus, in this memorandum, as well as in a submission the Court will get separately, counsel will more fully address Mr. Raymond's background, history, and characteristics, and how this factor supports counsel's

2

sentencing recommendation on Mr. Raymond's behalf.

**FACTUAL AND PROCEDURAL BACKGROUND:**

For more than 20 years the Defendant had been a United States Government employee working both in the United States and abroad.  On or about May 31, 2020, while the Defendant was working abroad, he met AV-1 for a date, and ended up at the Defendant's apartment. After  a few drinks she became dizzy and confused, and thereafter was unconscious for a period of time.  When she awoke she was nude and she became very frightened. She went on the balcony and called for help.  Following that ordeal, she was interviewed by law enforcement, and made allegations of sexual assault.  As a result, of that incident, Mr. Raymond was interviewed and an exhaustive investigation was undertaken by law enforcement.  The investigation discovered on Mr. Raymond's phone photographs and videos of a number of women who appeared to be unconscious, and partially or completely nude.  Soon thereafter, Mr. Raymond resigned from his employment and returned to the United States.

Law enforcement sought to identify and interview the women in the photographs and videos.  They also recovered messages and chats which helped investigators begin to identify the women in the photographs and videos. As a result, the investigation was quite successful. Gradually, law enforcement was able to identify most of the women, which was a bit of a double-edged sword. Sadly, as part of the investigation, the women had to be interviewed and told of the photographs and videos of them, which was extremely traumatic.

On October 9, 2020, Mr. Raymond was arrested and charged by Complaint with Inducing a Person to Travel for the Purpose of engaging in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(a).  Mr. Raymond waived his identity hearing and was transferred to this Court.  Mr. Raymond was detained without bond, and has remained in custody since his October 9th arrest.

Mr. Raymond moved to continue the preliminary hearing numerous times in order to give his counsel time to review the discovery and engage in plea negotiations with the government. In or about July 2021, the parties reached a plea agreement. On July 23, 2021, the Court conducted a plea hearing, and the sentencing was scheduled.  However, thereafter, a conflict arose with the attorneys representing him at the time, and in November 2021, new counsel entered their appearance on Mr. Raymond's behalf.  New counsel had to then make arrangements to review the discovery, and the sentencing schedule and hearing were vacated.  Eventually, new counsel discovered a constitutional issue relating to the search and seizure of the defendant's phone and iCloud accounts.  Based on the research and review of the discovery, new counsel appeared to believed that Mr. Raymond should prevail on a motion to suppress the evidence obtained from his phone(s) and person.  Thus, Mr. Raymond accepted their advice and a motion to withdraw the prior guilty plea was filed on his behalf. The Court found that the constitutional issue had not been discussed with Mr. Raymond prior to the plea, and primarily for that reason, on October 26, 2022, the Court granted the motion to withdraw the guilty plea.  Thereafter, the government filed two superseding indictments – first on January 19, 2023 [ECF No. 168] and the second on February 23, 2023 [ECF No. 184].

On March 10, 2023, defense counsel filed Defendant's a motion to suppress evidence obtained as a result of illegal seizures of his person and cell phones. [ECF No. 190]  On March 24, 2023, the Government opposed the motion to suppress.  [ECF No. 198]  In June 2023, the Court conducted an evidentiary hearing on the defendant's motion to suppress.  On June 30, 2023, the parties filed their post-hearing briefs.  While the motion to suppress remained pending, the parties had to begin preparing for trial, which was scheduled in November 2023.  On September 22, 2023, the defense team filed a motion to continue the trial.  The Court denied the motion , and the parties continued with the pre-trial litigation.

Shortly before trial, there was another round of plea discussions, apparently at the urging of Mr. Raymond, who never wanted to put the women through a trial. [2]  Under unusual circumstances, the Court appointed undersigned counsel to stand with Mr. Raymond for the plea hearing and to represent him moving forward to sentencing.  On November 7, 2023, Mr. Raymond entered a guilty plea pursuant to the written plea agreement. [ECF No. 359]   The Government in its sentencing memorandum fully addresses the offense conduct, and counsel is therefore not repeating it herein.  Sentencing is scheduled to begin on September 18th, and will carry over to September 19th if necessary.

**PSR  SENTENCING GUIDELINES CALCULATIONS:**

According to the PSR, the Total Offense Level for Counts 1, 6, 17, and 19 is  a 38.  *See,* PSR ¶ 276 - 283.  Mr. Raymond has zero criminal history points and therefore is in Criminal History Category I. *See* PSR ¶¶ 286.  Thus the applicable guidelines range is 235 to 293 months. *See* PSR ¶ 391.  As the PSR also notes, the plea agreement was entered pursuant to Rule 11(C)(1)(c), with an agreed-upon range of 24 years to 30 years (or 288 months to 360 months). Defendant agrees with the total offense level calculation. Counsel would also note that the average sentence under the JSIN is 195 months, and the median sentence is 198 months.

Counsel would note that defendant disagreed with the offense level calculation in the PSR for Count 17, but the dispute does not affect the total offense level, or the applicable sentencing guidelines range of 235 to 293 months.  Defendant set forth his argument regarding

---

[2]  As noted in footnote 1 above, Mr. Raymond, who is unfamiliar with the tedious, time-consuming nature of litigation, always expected that his motion would be litigated and he would be able to promptly resume plea negotiations.  In fact, while the motion to suppress was pending, Mr. Raymond asked his attorneys on at least five occasions to extend counter-offers and seek to resolve the case, as Mr. Raymond did not want to pursue a trial. However, nothing happened until shortly, before trial. Negotiations were again undertaken, and a plea agreement was finally reached on his behalf.  On November 7, 2023, he appeared before Your Honor and pleaded guilty pursuant to the current plea agreement.

the calculation of the offense level, as well as additional objections to the inclusion of a number of factual allegations, in a separate sealed filing.

Probation recommended an upward variance to the middle of the agreed-upon range, and the government is requesting a variance to the top of the agreed-upon range.  Counsel submits that both recommendations are greater than necessary, and that consideration of the totality of the factors supports a more modest upward variance to 24 years – the bottom of the agreed-upon range.

**DEFENSE COUNSEL'S RECOMMENDED SENTENCE OF 24 YEARS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE OVERALL GOALS OF SENTENCING IN THIS CASE:**

Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.** (Emphasis added).

Since <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), courts must impose a sentence that is sufficient, but not greater than necessary, to satisfy the sentencing factors in the case, including the sentencing guidelines. Pursuant to 18 U.S.C. § 3553(a), the Court, in determining the particular sentence to be imposed, must consider, *inter alia* -

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range . . .

(5)  any pertinent policy statements;

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Of course, the Court must also treat the Guidelines "as one factor among several" that § 3553(a) requires the court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007); *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Once the Court calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52, quoting *Koon v. United States*, 518 U.S. 81, 113 (1996). Counsel respectfully submits that the factors under § 3553(a) mitigate in favor of a counsel's recommended 24 year sentence.

### a.    *Nature and Circumstances of the Offense.*

Obviously, the offense conduct in this case is inexcusable, and calls for a lengthy prison sentence. Nevertheless, without any intent to disrespect the victims in this case, and without any intent to minimize the hurt and trauma they have suffered, there are a few factors that make the offense conduct a bit less severe. First, the Defendant kept the photos and videos private, and did not disseminate them or put them out on the world wide web, which has happened in many cases.

Also, it appears that the Defendant took photographs and videos of many of the women, without engaging in sexual acts while they were impaired or unconscious. Second, the Defendant's dangerous and difficult government work for many years appears to have "contributed indirectly to the offense conduct".  [See, Separately Filed Sealed Exhibit 1]   Even one of the defendant's long-time female friends, who is also one of the victims, noticed the apparent change in personality in behavior after several years of his government work and travel. She sent very direct and explicit e-mails, imploring him to get help because she recognized that Defendant was becoming very stressed, detached, and cold due to his work environment.  Sadly for all concerned, he did not get help, and his conduct got worse over the years – particularly in the few years prior to his arrest.  He now recognizes his mistakes and the devastating effects they have had on others, albeit too late - although it is always better late than never.  He fully accepted responsibility for his conduct, is accepting his punishment, and trying to move forward in a positive way.

He is committed to doing everything he can do to rehabilitate himself and become a productive member of society.  His post-arrest adjustment reflects this goal through his actions, not just his words.  In addition to accepting responsibility, he has proactively sought to take advantage of the limited resources at the jail, participating in mental health counseling, education programs, and a variety of online courses.  He is working hard to ensure that such behavior never happens again. He is participating in weekly mental health counseling since 2021, specifically addressing his PTSD and substance abuse issues through Cognitive Processing Therapy, and other modalities. The treatment has been instrumental for garnering self-awareness, and developing the necessary tools to appropriately manage his mental health.

Initially,, he did not have any programming opportunities due to COVID and lengthy time in protective custody.  He was also moved a number of times due to the charges. Eventually he was able to participate in the LEAD Up program, which afforded him a number of educational

opportunities such as Georgetown's Street Law and the University of Maryland's Petey Greene programs.  He also pursued education focused on PTSD and substance abuse. Online programming has been a priority.  He has completed over 100 certificate programs totaling hundreds of hours from EDOVO and Cypherworx.  Those courses encompassed substance abuse, PTSD, anger management, behavioral modification, and many other rehabilitative programs. Finally, he was one of 20 inmates selected to participate in Criminian New Life D.C.'s inaugural 28 module course, "The Way To Happiness".  That course focused on reducing recidivism, fostering mindfulness, and promoting community. [3] In short, while he knows he cannot undo the consequences of his actions, his rehabilitation has been a priority, and will continue to be in the BOP.

Obviously this was extremely serious criminal conduct involving a significant number of women. That is why the Court is considering a range of 24 to 30 years, which is a very lengthy sentence for anyone, let alone someone who is confronting the criminal justice system for the first time.  Notwithstanding the seriousness of the offense conduct, Mr. Raymond's post-offense efforts (discussed above), along with the other mitigating factors, tend to offset that factor to some degree. Thus, counsel submits that the recommended 24 year sentence is sufficient, but not greater than necessary under the totality of the circumstances.

### b. *Defendant's Background, History, and Circumstances*

In determining the sentence to impose within the applicable guidelines range, this Court has considerable discretion in the information it can consider "concerning the background, character and conduct" of the defendant. *Pepper v. United States*, 562 U.S. 476, 489 (2011) (citing 18 U.S.C. § 3661).  In this case, Mr. Raymond's history and characteristics are very positive, and strongly support a sentence at the bottom of the agreed-upon sentencing range.  He is a 48 year

---

[3] An official transcript of all EDOVO courses, and a number of the certificates from some of the more relevant courses are attached as Exhibit 1A and 1B.

old man who is before a court for the first time in his life, except for one speeding ticket.  He was born and raised in Southern California in a home with an intact family. He learned the meaning of hard work as he watched both parents "work constantly".  He was an active participant - playing sports, participating in cub scouts, playing a musical instrument.  He lettered in Tennis for his four years of high school and participated in school clubs.  After graduating high school, he attended Marquette University, where he majored in Political Science and History.  He was a walk-on for the tennis team, was active in student government, was a resident advisor in one of the dormitories, and was on the Dean's List every semester.  During the first two summers of college, he accepted intern positions on Capitol Hill and then with the White House.  During the summer between his Junior and Senior years, he was accepted into a prestigious Cooperative Education Program ("Coop Program") that allowed him to work, continue to earn credits, and ultimately led him to obtain the Government employment he maintained for more than 20 years.  While in the Coop Program, he earned the necessary credits to graduate from Marquette, and in 1999 he graduated Magna Cum Laude.

At that time, he accepted a full-time position with the Government, and began his work in the District of Columbia area.  In or about 2004 he met his first wife while studying at Middlebury College, and they married a year later, and she joined him overseas.  They divorced about a year later, but reconciled and remained together for another couple years.  Between 1999 and 2020, Mr. Raymond had a very successful career in government service, and received considerable recognition and numerous awards for his work accomplishments.  Over the years he repeatedly sought assignments that took him abroad for long periods of time to some of the most dangerous locations in the world.  He worked extremely hard, for long hours, often under extraordinarily challenging circumstances.  He received performance awards almost everywhere he worked as he poured himself into his work at the expense of everything and everyone else.  He was an invaluable

government worker, but it took its toll on him, and sent him down a dark path. [4]  It is clear that the years of stress, difficult circumstances, and increased use of alcohol contributed to him becoming emotionally detached and desensitized to normal relationships.

Dr. Boyd's forensic evaluation is helpful in understanding that. She found that Mr. Raymond meets the criteria for Post Traumatic Stress Disorder (PTSD), and that his work "appears to have contributed indirectly" to the offense conduct. [*See*, Separately filed Sealed Exhibit 1 at p. 19]. [5]  Specifically, she noted that from her understanding of his work "it appears that Mr. Raymond's occupation facilitated (a) objectification of other people; (b) developing emotional callousness toward others so he could meet his work demands as well as his sexually deviant interest in incapacitated women; (c) lack of honest communication in his family relationships and friendships; and (d) habitual secrecy and concealment. Thus, it does appear that his work contributed to some degree to the offense conduct due to the exposure to traumatic stressor events, social isolation, and maladaptive coping strategies.  [ *See*, Sealed Exhibit 1at p. 20]. Dr. Boyd noted that e-mails with some of the women are also indicative that "Mr. Raymond appears to have begun to view other people, particularly women, in highly objectified terms with significant emotional distance from their worth, experiences, and suffering as fellow human beings." *Id*. at p. 19.

Also, the forensic evaluation determined that Mr. Raymond's  Static-99R score placed him in the Average / Low Risk category for recidivism, which was relatively low, but we now know

---

[4]  Rather than addressing his work issues here, counsel is preparing a separate submission which will be provided to the Court.

[5]  Dr. Boyd also noted that the Defendant reported that he sought treatment after a traumatic event, but quickly learned that the "stigma" of seeking help would likely derail his career, and therefore he chose to forego treatment, notwithstanding the advice from friends who cared. *Id*.

that his score will decrease because under the plea agreement he will not be released from prison before he is 60 years old.  The age factor results in an extra -2 points. The decrease in his total score means he tests in the "Below Average / Low Risk" category, rather than Average Risk category, making his actuarial risk for recidivism extremely low - below 4.4%.  [See, Separately Filed Sealed Exhibits 1 – 3]

As noted above, Mr. Raymond's post-arrest adjustment has been very positive factor which counsel urges the Court to consider. Mr. Raymond takes his situation very seriously, and he recognizes the need for significant change in his life.  He recognizes that he needs substance abuse treatment, mental health treatment, and sex offender treatment, and he has proactively sought a wide range of programs. [See, Exhibit 1 – Certificates]   Dr. Boyd noted at the time of her interview that he appeared to be "making some progress in his insight", and since then he has made even more progress.  He seems to understand that it will be a long journey back to being the person he was years ago - before he became emotionally detached and began treating people, and particularly women, as objects.  He is taking one step at a time and seems fully committed to getting there successfully. His commitment to the mental health treatment, therapy programs, and online courses is a good sign for his journey.  [*See*, Exhibit 1, supra ]  Another sign of the progress is that Mr. Raymond agrees with Dr. Boyd's  recommendation that he participate in sex offender treatment.  In fact, he is focused on requesting a designation to a BOP facility that has a Sex Offense Management Program (SOMP), so he is committed to following Dr. Boyd's advice and continuing his progress in prison.

Some might criticize him because the plea was two weeks before trial.  But counsel wholeheartedly believes that it was not really Mr. Raymond's fault. He had no prior experience with the criminal justice system.  He put his faith in his attorneys, and ventured down the paths that were recommended – first to plead guilty and then to withdraw his plea and pursue the

motion to suppress the cell phone evidence.  He really had no idea that the litigation would be so time-consuming, and that it would take the parties close to trial to re-negotiate a plea, and he sought to resolve the case for months prior to the present plea. Quite frankly, he really expected that win or lose his attorneys would have had an opportunity to negotiate an appropriate plea agreement much earlier.  He was surprised it did not go that way.  Moreover, the delay was simply not the result of a lack of remorse, or a lack of concern for other interested parties.  He has always been thoughtful and remorseful since undersigned counsel has been involved in the case. [6] Regardless, as the Court likely recalls he was committed to resolving the case and sparing everyone the ordeal of trial, and he deserves some credit for that decision.

Finally, counsel would note that Mr. Raymond has significant medical concerns.  He had a heart valve repair in 2018, and suffers from various cardiac ailments. He has had significant symptoms during the pendency of the case, and the jail has been slow to get the consultations, testing, and medication, he seems to need.  That has improved a bit over the past year, but if history tells us anything, the Bureau of Prisons is not likely to be any better than the Department of Corrections, and that is a scary and stressful prospect for someone with Mr. Raymond's condition as he prepares to serve a sentence of at least 24 years.

In sum, Mr. Raymond has accomplished a lot in his life, and has contributed greatly to the successes of our government and our country wherever he has served. For many years he poured himself into his work and did exemplary work for his country.  While he was working tirelessly at his government job, he ignored his own need for help, and over time he began to isolate himself, detach himself from human feelings, and become emotionally numb. Sadly, that led

---

[6]    It is worth noting that he is paying a price for going down the path recommended to him, as he is now not entitled to any reduction for acceptance of responsibility – even though he pleaded guilty, spared the women a difficult public trial, and spared the government and the Court some resources. The 2 level reduction would have made his guidelines range 188 to 235 months.

him down a dark path that has hurt many women.  He understands that these are difficult times for the women.  He is ashamed, and he truly wishes there was something he could do to blunt the pain.  Counsel would also note that these are also very difficult times for him, however, the difference is that he knows he brought it on himself.  He is now working diligently to address his rehabilitative needs. He is committed to putting this conduct behind him; serving an appropriate sentence, and returning home as a whole person who is ready to contribute and atone for his misconduct, especially as it relates to the women he has hurt in his life.

   *c.*  **ADDITIONAL MITIGATING FACTORS WHICH SUPPORT COUNSEL'S RECOMMENDED 24 YEAR SENTENCE:**

Defendant's extraordinary government service, and the PTSD he suffers as a result, are factors that have justified downward variances in a number of cases.  Defendant has already agreed to a sentence above the applicable guideline range.  Thus, he is not seeking a downward variance. Rather, he is seeking a more modest upward variance than Probation and the Government have recommended.  The factors discussed below also support a finding that a 24 year prison sentence, followed by supervised release for life, will provide just punishment, adequate deterrence, and will provide Mr. Raymond with necessary correctional and rehabilitative treatment in the most effective manner. .  § 3553(a)(2)(A)-(D).  Consideration of the applicable factors in this case strongly supports a sentence at the very bottom of the agreed-upon sentencing range.  A discussion of the relevant mitigating evidence and information to be weighed by the Court follows.

   **1.  Military / Public Service Factor:**

As discussed more fully above, Mr. Raymond has provided exceptional service to his country under the most difficult and challenging circumstances.  Dr. Boyd found that he suffers from PTSD, and also that his work was a contributing factor to the offense conduct.  Those findings should be considered as significant mitigating factors.  A number of courts have granted

14

variances or departures based upon similar issues.  *See, e.g., United States v. Stewart*, 2023 WL 6629579 (10th Cir. 2023) (court relied on combination of factors, including lack of prior criminal history, military service, and resulting PTSD in granting significant variance where defendant convicted of attempted aggravated sexual abuse; court imposed 72-month sentence where guidelines range was 151-188 months); *United States v. Jurado-Nazario*, 979 F.3d 60, 62 (1st Cir. 2020) (court granted 24-month variance from bottom of guidelines range, citing defendant's military service, where defendant pleaded guilty to production of child pornography and two counts of transportation of a minor with intent to engage in sexual activity involving four different minors); *United States v. Johnson*, 464 F.Supp.3d 22, 32 n.4 (D.D.C. 2020) (court granted two-level downward departure based upon defendant's extensive military service during which he was diagnosed with PTSD and substance abuse disorder where defendant was convicted after trial of various firearms and weapons offenses; and the court subsequently granted motion for compassionate release).

Other courts have granted downward departures or variances where a defendant has provided important public service.  *See, e.g., United States v. Hebron*, 684 F.3d 554, 560 (5th Cir. 2012) (court granted downward departure based upon defendant's extensive career in public service, including as mayor of town in Louisiana); *United States v. Fumo*, 655 F.3d 288, 300 (3d Cir. 2011) (court granted downward departure sentence of 55 months from 121-155 guidelines range in recognition of defendant's long record of dedicated public service); *United States v. Sachtleben*, Case No. 1:13-cr-00200 (S.D. Ind. 8/27/20) (court granted 28-month variance below guidelines range, citing defendant's FBI career as specialist in terrorism cases and was first responder to Oklahoma City and World Trade Center bombings, including 9/11 terrorist attacks).

Mr. Raymond's service is probably best described as quasi-military.  His lengthy record of sacrifices, contributions, and achievements during his service to the country should be a factor that

is considered, and clearly supports his request for a 24 year sentence.

### 2. Conditions of Confinement

Mr. Raymond is impacted by four factors that have significantly impacted his conditions of confinement compared to others.  First, he was incarcerated during the COVID-19 pandemic.  The increased restrictions and policies during the pandemic made the conditions more punitive than for defendants prior to the pandemic.  Some courts have taken  pre-sentence conditions of confinement into consideration as grounds for granting downward departures.  *See, e.g., United States v. Otunyo*, 63 F.4th 948, 954 (D.C. Cir. 2023) (district court granted six-month departure to account for confinement conditions due to Covid-19); *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2000) ("pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures"); *United States v. Ojedokun*, Crim. No. PWG-19-228 (D. Md. 3/21) (psychological impact of pre-sentence confinement during Covid-19 supported 13-month variance from bottom of guidelines range). See, e.g., *United States v. Michael Cowan*, 18-cr-208 (ABJ) (suggesting that harsh conditions and limited opportunities is similar to the factors that warrant departures or variances for detained immigrants facing deportation); *United States v. Chris Carroll*, 20-cr-16 (JEB) (suggesting that it would be appropriate to give significant credit for a period of incarceration during the pandemic).  Thus, counsel submits that this court should consider the conditions of confinement as a factor supporting defendant's sentencing request.

In addition, Mr. Raymond is a sex-offender in a highly publicized case, which has caused him to be the subject of assaults, death threats, lengthy periods in protective custody and in isolation.  He has not taken a step outside in more than two years.  Undoubtedly there will be a considerable amount of publicity following the sentencing.  He is also a government employee, which brings with it another set of haters.  Thus, over the past nearly four years he has been subject to much more onerous conditions than almost all of the other inmates, and the prospect that it will

16

get any better in the BOP is very slim.  Given these circumstances, he is particularly susceptible to abuse in prison and, as such, is likely to continue to have to spend much of his lengthy sentence in solitary confinement or otherwise isolated from other inmates.  His safety will always be in jeopardy, and he will always be exposed to serious risks to his safety and well-being.

The seriousness of the defendant's offense will likely result in an unsafe and challenging environment in prison. Sexual assault offenders are often at risk of violence at the hands of other inmates, since they are a "disfavored" group within prison populations. *See* Alice Ristroph, <u>Sexual Punishments</u>, 15 Colum. J. Gender & L. 139, 159–60 (2006).  The court should consider these factors as further support for a sentence at the bottom of the agreed-upon range.  *See. e.g., Koon v. United States*, 518 U.S. 81, 111-12 (1996) (district court did not abuse discretion in considering defendants' susceptibility to abuse in prison as grounds for downward departure given the notoriety of the case and defendants' status as police officers); *United States v. Graham*, 83 F.3d 1466, 1481 (D.C. Cir. 1996) (extreme vulnerability to assaults in prison may be grounds for downward departure); *United States v. Slager*, 2018 WL 445497, at *23-*24 (D.S.C. 2018) (court granted two-level downward departure to former city police officer in recognition of his susceptibility to abuse in prison in light of the extensive media coverage of his case); *United States v. Adams*, 2017 WL 3503674, at *5-*6 (E.D.N.Y. 2017) (court granted variance to 180 months from 324-405 guidelines range due to likelihood that as a convicted sex offender, defendant would be abused in prison and placed in solitary confinement for substantial periods of time to protect him from other inmates).   Indeed, courts have recognized that the sex offender label alone "severely stigmatizes" an incarcerated defendant and exposes him to adverse consequences from the inmate subculture. *Renchenski v. Williams*, 622 F.3d 315, 326-27 (3d Cir. 2010).

Finally, as a consequence of his convicted sex offender status and susceptibility to abuse by other inmates, Mr. Raymond's prison programming and educational opportunities while

incarcerated will be limited.  These limitations will undoubtedly adversely affect his mental health and will prevent him from obtaining the necessary treatment for reintegration into the community when he has served his period of imprisonment.

### 3. Avoiding Unwarranted Sentencing Disparities

Imposition of a sentence at the bottom of the agreed-upon range is commensurate with sentences handed down in other cases involving serious sexual abuse conduct.  *See, e.g., United States v. Perez*, 2022 WL 1421408 (2d Cir. 2022) (below-guidelines sentence of 25 years imposed where defendant, a former BOP officer, convicted of numerous counts of sexual abuse and abusive sexual contact of inmates); *United States v. Hadden*, Case 20-CR-468 (S.D.N.Y. 2023) (20-year sentence imposed on former gynecologist who had sexually abused dozens of women, including minors, over a period of many years); *United States v. Adams*, 2017 WL 3503674 (E.D.N.Y. 2017) (15-year below-guidelines sentence imposed on defendant who pleaded guilty to various charges involving an underage sex trafficking and prostitution ring).  It is to be noted that Mr. Raymond pleaded guilty, unlike the defendants in *Perez* and *Hadden*, both of whom went to trial thereby requiring their sexual assault victims to undergo the trauma of testifying in open court, As such, imposition of a sentence of 24 years in prison will avoid unwarranted sentence disparities.

### 4.   Need to Provide Mr. Raymond with Correctional and Rehabilitative Treatment in the Most Effective Manner Under 18 U.S.C. § 3553(2)(D)

Another factor supporting counsel's recommended sentence is the need to provide Mr. Raymond with correctional and rehabilitative services in the most effective manner.  It seems clear from Dr. Boyd's report that he needs sex offender treatment and substance abuse treatment. The length of the sentence is a critical factor in determining eligibility for lower security designations – which are more likely to be safer, and afford Mr. Raymond access to the

programming and sex offender treatment programs he needs.  Mr. Raymond's projected

classification score is 10, which will make him eligible for the low security facilities and much

more programming.  However, under BOP policies and guidelines, a defendant must have less

than 20 years remaining in order to be considered for a low security facility.  He has been in

custody for nearly 4 years.  Nevertheless, a 30 year sentence, and possibly even a 27 year

sentence, will result in the Mr. Raymond having more than 20 years left on his sentence, and

therefore he will be ineligible for a low security designation, and thus unlikely to have as much

opportunity for rehabilitation and programming.  The higher security facilities will be far more

dangerous, and will likely require him to be held in protective custody, which will preclude him

from rehabilitation and treatment opportunities.  Thus, the Court should balance the need for

punishment, with Mr. Raymond's need for PTSD, substance abuse, and sex offender treatment,

particularly since his 20 plus years of extraordinary service to this country contributed to those

needs.  Due to budget shortfalls, overcrowding, staffing shortages, and lack of treatment

resources, programming opportunities and/or rehabilitative treatment have been woefully

inadequate in the BOP.  The only hope for any treatment is if he gets a designation to a low

security facility, and that can not happen if the Court imposes a 30 year sentence as requested by

the government.  Thus, consistent with 18 U.S.C. 3553(a)(2)(D), a 24 month sentence better

serves the sentencing goals in the case.

**RESTITUTION:**

Mr. Raymond agreed to pay $10,000 per victim in restitution to the victims identified at

the time of sentencing.  In addition, the agreement requires him to pay a $5,000 special

assessment for counts One, Six, and Seventeen unless he is found to be indigent at the time of

sentencing.  Counsel would note that Mr. Raymond now has court appointed counsel.  His

resources are largely depleted.  Nevertheless, he wants to honor his commitment to pay the 26

identified victims in a timely manner, and is making arrangements to have the money sent to the Court to pay the restitution prior to sentencing.  The Civil Forfeiture Section of the United States Attorney's Office is preparing the paperwork so the payment can be made to the Clerk's Office, and the parties are hopeful that can be accomplished before sentencing.

Indigency generally means that a person is unable to afford counsel for his case.  Payment of the restitution will further deplete Mr. Raymond's resources and "ability to pay for counsel". The Court can consider Defendant's resources available at the time of sentencing, as well as his future earning capacity. See, e.g., United States v. Rosario, 7 F.4th 65 (2d Cir 2021); United States v. Otradovec, 72 F.4th 794 (7th Cir. 2023).   Thus, it appears that Mr. Raymond qualifies as indigent at this time and counsel requests that the $15,000 special assessment be waived.


**CONCLUSION  / DEFENSE COUNSEL'S RECOMMENDATION:**

Mr. Raymond is a hard-working individual with a long and accomplished career serving this country.  Sadly, the trauma and continued stressors from his work appeared to change him. He developed a profound sense of alienation from people, began binge drinking, and seeking out women for sexual encounters.  He functioned well at work, but that was really the only place. He became emotionally detached and cold in his personal relationships, and engaged in reprehensible conduct that has him before the Court.  According to Dr. Boyd, however, his behaviors do not appear to be permanent characterological features, and the risk assessment testing strongly suggests that he will not be a risk to re-offend.  He is ashamed beyond words, and is finally working hard to get help and correct his behavior.  He is focused on his need for treatment and programming and hopes he can get to a BOP facility where that will be offered. He has gone the extra mile to make arrangements to get the restitution paid before sentencing so it can be available to the victims as soon as possible.

The question for the Court now is what prison sentence will be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence under the totality of the circumstances in this case. Is 30 years necessary, when the result will be to ensure that Mr. Raymond goes to a higher security BOP facility which will be far more dangerous and far less treatment oriented ?  Counsel submits that the answer is NO. For all the reasons discussed in this memorandum, a sentence of 24 years is sufficient, which is already above the guidelines, best serves the interests of justice, provides just punishment and adequate deterrence because it also takes into account the particularly harsh conditions of confinement he has endured and will continue to endure, and the need for him to have access to treatment – including sex offense and substance abuse programming.

Wherefore, undersigned counsel respectfully urges the Court to find that the defense recommendation better balances all of the sentencing factors in this case.

**BOP CLASSIFICATION AND DESIGNATION REQUESTS:**

Defendant requests that the Court recommend that he be designated to a facility that has a non-residential Sex Offender Management Program (SOMP) and/or Sex Offender Treatment Program (SOTP). The non-residential programs are offered at far more "SOMP" locations, affording him a better chance at receiving treatment sooner, and would also give him a better chance of participating in needed mental health treatment and substance abuse programs, including RDAP.  Mr. Raymond will provide his requests for BOP locations at the sentencing hearing.

**RDAP RECOMMENDATION:**

In addition, Defendant has a documented substance abuse history, and requests that the Court include a recommendation for a residential substance abuse treatment (RDAP) program.

Respectfully submitted,

/s/ *Howard B. Katzoff*
Howard B. Katzoff
717 D Street, N.W., Suite 310
Washington, D.C.  20004
katzoffh@aol.com
(202) 783-6414
Counsel for Brian Raymond

## CERTIFICATE OF SERVICE

I hereby certify that this  10th  day of   September  , 2024,  a copy of Defendant's Sentencing Memorandum was filed and via the Electronic Court Filing System (ECF), causing a copy to be served on government counsel, and by electronic mail to Senior United States Probation Officer Crystal Lustig, 333 Constitution Avenue, N.W. Washington, D.C.  20001.

/s/  *Howard B. Katzoff*
Howard B. Katzoff