```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,    ) CRIMINAL ACTION NO.:
                                  ) 21-0380-CKK
 4            Plaintiff,          )
          vs.                     )
 5                                )
     BRIAN JEFFREY RAYMOND,       )
 6                                ) Washington, D.C.
              Defendant.          ) November 6th, 2023
 7   _____) 1:05 p.m.

 8

 9                     Transcript of Plea Hearing
               Before the Honorable Colleen Kollar-Kotelly
10                   United States District Judge

11

12   APPEARANCES:

13   For the Government:  Angela N. Buckner, Esquire
                          Meredith E. Mayer-Dempsey, Esquire
14                        Katharine A. Wagner, Esquire
                          U.S. Attorney's Office
15                        555 4th Street, NW
                          Washington, DC 20530
16

17   For the Defendant:  Howard Bernard Katzoff, Esquire
                          Law Offices of Howard Katzoff
18                        717 D Street, NW
                          Suite 310
19                        Washington, DC 20004

20   Reported by:         Christine T. Asif, RPR, FCRR
                          Official Court Reporter
21                        United States District Court
                          for the District of Columbia
22                        333 Contitution Avenue, NW
                          Washington, D.C., 20001
23                        (202) 354-3247

24
     Proceedings recorded by machine shorthand; transcript produced
25   by computer-aided transcription
```

```
1                    P R O C E E D I N G S
2              THE CLERK:  Criminal case 21-380, the United States
3    versus Brian Jeffrey Raymond.
4              Counsel, would you please identify yourself for the
5    record starting with the government.
6              MS. BUCKNER:  Good afternoon, Your Honor.  Angela
7    Buckner on behalf of the United States.  I'm joined by my
8    colleagues Trial Attorney Kate Wagner and AUSA Meredith
9    Mayer-Dempsey.
10             THE COURT:  Good afternoon.
11             MR. KATZOFF:  Good afternoon, Your Honor.  Howard
12   Katzoff on behalf of Brian Raymond.  Brian Raymond is
13   present.
14             THE COURT:  All right.  Good afternoon.  Good
15   afternoon, Mr. Raymond.
16             MR. KATZOFF:  May we remain seated during the --
17             THE COURT:  Yes.  What I was going to say is,
18   Mr. Raymond, I'm going to have you stand to be sworn in.
19   After that you can remain seated with your counsel next to
20   you, so you can look at the documents, and also you can
21   consult with him if you wish. Okay.
22             So if you can stand at this point and we're going to
23   swear you in.
24             THE CLERK:  Raise your right hand please.
25             (Defendant sworn.)
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  You can take your mask off, because

3     otherwise it's hard to get a good record.

4          All right.  Hopefully he's got the pleadings either

5     on the computer in front of him, because I will be referring

6     to it and I want to make sure he's able to look at them.  So

7     do you have that?

8          MR. KATZOFF:  Your Honor, he has the hard copy of

9     the plea agreement, the hard copy of the statement of offense

10    before him.

11         THE COURT:  All right.  And is there a signed one

12    that actually identifies those in the statement of offense.

13         MR. KATZOFF:  The signed copies have been provided

14    to the Court.  There's one signed copy.  And so the Court --

15    I'm happy to show him during the proceeding any signatures.

16         THE COURT:  We'll be using -- there should be one

17    that has the actual names and we'll file that under seal.  I

18    wanted to make sure that we don't have a dispute at some later

19    point as to who the individuals are.

20         MR. KATZOFF:  I have that available and handy, but I

21    don't have that out at this time, Your Honor.

22         THE COURT:  Okay.  So is there one that you just

23    provided.

24         MS. BUCKNER:  Yes.

25         THE COURT:  Okay.  So he does need to at some point

1   sign that.

2           MS. BUCKNER:  Your Honor, everything's been signed

3   and handed over to the clerk.

4           THE COURT:  So you have the one.

5           THE CLERK:  Those are copies, I just --

6           THE COURT:  Okay.  So it's in here.  All right.

7   That's fine.  As long as I've got it.

8           All right.  So let me go through basically what's

9   going to happen.  I'm going to be asking you some questions,

10  I'll set out what is the -- what you were charged with in the

11  indictment.  And then the very basic agreement that you have

12  with the plea.  We will then -- I'll ask you some background

13  questions.  I'm going to go over your constitutional rights

14  that you're giving up by pleading guilty.  The government will

15  read into the record the statement of offense.

16          They need to tie to the particular counts those

17  victims that are with the elements of the offense for just

18  those, even though the offense is others included.  But in

19  terms of tying the evidence specifically to the elements,

20  because I need to find at the end that they have evidence

21  beyond a reasonable doubt that meets the elements of the

22  offense as to the charges that you're actually pleading guilty

23  to.  I'll then go over with you to make sure that you're

24  admitting conduct, again, as to the elements of the offenses

25  that you're pleading guilty to.  So that I can make that

1    ultimate finding as well.

2            I'll then go over the plea letter, I'm not going to

3    go through everything in the plea letter.  I'll go through

4    those parts that are required under the rules and those that I

5    think occasionally create problems, just to make sure that you

6    understand it.  At the end, you and your counsel, or the

7    government, can request that I go over certain portions if I

8    have not.  I definitely will go over statutory penalties as

9    well as the advisory sentencing guidelines.  And go through

10   other portions in terms of the plea agreement itself.  And

11   then there's some final questions that get to the

12   voluntariness of your plea.

13           At the end I need to make a finding that you've

14   entered this plea knowingly and voluntarily.  I want to make

15   sure that we put on the record everything you think is part of

16   the agreement, you can't come back you know two months and say

17   I thought this or that was part of the agreement.  I also

18   wanted to make sure that this is actually what you want to do

19   in terms of making sure that that's -- that's your firm

20   decision you can consult with your lawyer any time, that's not

21   a problem.  All you need to do is under the microphone there's

22   a button, just push down so nobody can hear you, and you can

23   talk to him.  That's not a problem at all.

24           All right.  I want to make sure you understand that

25   I've placed you under oath and if you don't answer my

1    questions truthfully you could be prosecuted for perjury or

2    making a false statement.  Do you understand that?

3            THE DEFENDANT:  Yes, I do.

4            THE COURT:  All right.  So the original charges that

5    are in the indictment or Count 1 is -- I'm not going to

6    indicate all of these statutory individuals.  I will tie the

7    ones you're pleading guilty to with AV-1 which are the

8    anonymized identification.

9            Count 1 is sexual abuse in violation of the federal

10   statute and that relates to AV-1.  Count 2 is aggravated

11   sexual abuse.  Count 3 is sexual abuse.  Count 4 is abusive

12   sexual contact.  Count 5 is abusive sexual contact.  Count 6

13   is abusive sexual contact involving AV-7.  Count 7 is abusive

14   sexual contact.  Count 8 is abusive sexual contact.  Count 9

15   is abusive sexual contact.  Count 10 is abusive sexual

16   contact.  Count 11 is abusive sexual contact.  Count 12 is

17   abusive sexual contact.  Count 13 is abusive sexual contact.

18   Count 14 is abusive sexual contact.  Count 15 is coercion and

19   enticement to travel to commit a sexual and barred by law in

20   violation of a certain federal statute.  Count 16 is coercion,

21   enticement to travel to commit a sexual act barred by law.

22   Count 17 is coercion entitlement to travel to commit a sexual

23   act barred by law, and that relates to AV-17.

24           Count 18 is transportation of obscene material.

25   Count 19 is transportation of obscene material.  Count 20 is

1    transportation of obscene material.  And I'll just do 21, 22,

2    23, 24, 25, are all transportation of obscene material.  All

3    of these are in violation of federal statutes.

4            You're pleading guilty to Count 1, sexual abuse

5    relating to AV-1.  Count 6, abusive sexual contact relating to

6    AV-7.  Count 17, which is coercion and enticement to travel to

7    commit a sexual act barred by law, which relates to AV-17.

8    Count 19 is transportation of obscene material.

9            Now, this is a Rule 11(c)(1)(C) plea.  So what that

10   means is you and the government have agreed to a particular

11   sentencing range in this case.  And that's a range of 24 to 30

12   years.  24 to 30 years.  Supervised release would be for life.

13   If I agree that -- with that agreement in terms of the

14   sentence, then I -- to sentence you within that range, then

15   that will be what your sentence is, somewhere within that

16   range.

17           If the Court disagrees, then both the government and

18   you can withdraw the plea.  If -- you could also decide not to

19   withdraw your plea, in which case you would be sentenced

20   without the specific agreement as to what the range would be.

21   If the government withdraws, then no one's bound by the

22   obligations.  So that sort of puts it in a very summary form.

23           The -- you're agreeing to remain being held pending

24   sentencing.  The plea letter sets out various agreements

25   relating to allocution, which is recommendations for

1    sentencing.  Which is in addition to the agreement of what the

2    sentencing range would be that's being proposed to the Court

3    for acceptance.  So is that your understanding of what the

4    basic agreement is?

5              THE DEFENDANT:  It is, Your Honor.

6              THE COURT:  All right.  Is there -- and would you

7    agree with that, Mr. Katzoff?

8              MR. KATZOFF:  Yes, Your Honor.

9              THE COURT:  Okay.  Let me ask some background

10   questions.  Let me start with your age, how old are you, sir?

11             THE DEFENDANT:  47.

12             THE COURT:  Okay.  And what's your date of birth?

13             THE DEFENDANT:  5/8/76.

14             THE COURT:  All right.  And how far have you gone in

15   school, what's the highest level of education?

16             THE DEFENDANT:  Masters degree.

17             THE COURT:  All right.  What did you study?  What's

18   your degree in?

19             THE DEFENDANT:  International policy.

20             THE COURT:  Okay.  I think you can move that whole

21   microphone so you don't have to keep leaning forward all the

22   time.  There you go.

23             Okay.  Where were you born?

24             THE DEFENDANT:  San Diego, California.

25             THE COURT:  All right.  Have you taken any kind of

1    medication within the last 48 hours?

2              THE DEFENDANT:  No, I have not.

3              THE COURT:  What was the process that you went

4    through with Mr. Katzoff, ultimately, in terms of going

5    through the materials?  Did you read it yourself?  Did he read

6    it to you?  Just give me some sense of how you went through

7    your review of it.

8              THE DEFENDANT:  I first read the materials myself

9    and then we jointly went through the materials virtually

10   line-by-line to ensure my understanding and awareness of the

11   conditions.

12             THE COURT:  All right.  Have you ever received any

13   treatment for any type of mental illness or emotional

14   disturbance.

15             THE DEFENDANT:  I've received counseling before.

16             THE COURT:  Okay.  This question really goes more to

17   the issue of competency.  Mr. Katzoff, are there any concerns

18   at all?

19             MR. KATZOFF:  From my dealings with Mr. Raymond,

20   none, Your Honor.

21             THE COURT:  Okay.  Have you been on any kind of

22   psychotropic medications or anything or just the counseling?

23             THE DEFENDANT:  I have been prescribed

24   antidepressants, those types of medications.

25             THE COURT:  Are you on them at the present time?

1          THE DEFENDANT:  Not in the last 48 hours.

2          THE COURT:  Do you take them regularly?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  Was there a reason for not taking

5     them the last 48 hours?

6          THE DEFENDANT:  I was unable to receive them this

7     morning, and yesterday I think there was a mix up with the

8     delivery, but generally they're reliable.

9          THE COURT:  Okay.  Does it make a difference that

10    you did not receive it today, and probably in terms of

11    bringing you in early, but I want to make sure that there's

12    not an issue if you don't get your medicine?

13         THE DEFENDANT:  None.

14         THE COURT:  All right.  So is your mind clear and

15    are you ready to go forward?

16         THE DEFENDANT:  I am.

17         THE COURT:  All right.  Have you received a copy of

18    the last indictment that would set out all of the charges in

19    front of you?

20         THE DEFENDANT:  I have it here in front of me.

21         THE COURT:  Okay.  And have you had an opportunity

22    to discuss -- I asked this earlier when we were doing it, sort

23    of a not under oath inquiry of your prior counsel, Mr. Marston

24    and Mr. Jay, in terms of what discussions they would have had

25    with you.  Have you fully discussed the charges and the case

1    in general with counsel, both with the prior counsel and to

2    some extent with Mr. Katzoff?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  Okay.  And did you have discussions

5    about the pros and cons of pleading guilty and going to trial?

6              THE DEFENDANT:  I did.

7              THE COURT:  And have they discussed with you along

8    the way what the evidence would be from the government and

9    whatever defenses you would have mounted if you had gone -- if

10   you went forward to trial?

11             THE DEFENDANT:  Yes, they did.

12             THE COURT:  Okay.  And all right.  Are you

13   completely satisfied with the services of your attorney at

14   this point, Mr. Katzoff?

15             THE DEFENDANT:  Regarding Mr. Katzoff, yes, I am.

16             THE COURT:  All right.  Have you had enough time to

17   talk with counsel, discuss the case, the plea offer and

18   whether or not you should accept the plea offer or whether you

19   should go to trial.  I want to make sure you had enough time

20   to discuss and consider this carefully.  There's no reason to

21   rush in this case?

22             THE DEFENDANT:  I have.

23             THE COURT:  All right.  Is there anything you don't

24   understand about what the evidence is that's against you that

25   would be presented at trial and any of the defenses you would

1    have brought out?

2              THE DEFENDANT:  No.

3              THE COURT:  Okay.  And anything about the pros and

4    cons of pleading guilty or going to trial.  And we've had a

5    trial date and would have another one if you decided you

6    wanted to take that tack?

7              THE DEFENDANT:  No, I'm aware of the pros and

8    cons.

9              THE COURT:  All right.  So have you had enough time

10    to discuss the case, the plea offer, and whether or not you

11    should accept it?

12              THE DEFENDANT:  I have.

13              THE COURT:  All right.  Let me go through your basic

14    constitutional rights.  We're going to be asking you whether

15    you understand them.  And then at the end I'm going to ask if

16    you're willing to give them up.

17              You have a right to plead not guilty and have a jury

18    trial in this case.  And we did have a trial set actually for

19    this coming Wednesday.  We would -- if we had gone forward to

20    trial what we would do, since Mr. Marston and Mr. Jay will not

21    be representing you if you went forward to trial, you would be

22    getting other counsel to represent you for it.

23              But what would happen with the jury is that we --

24    citizens from the District of Columbia would be -- would come

25    to the courtroom, they would be asked questions that we had

1    worked on together, in terms of the defense and the government

2    and the Court.  They would be asked questions by me, by the

3    government counsel and defense counsel on your behalf, in

4    order to determine and choose a jury that would be fair and

5    impartial to both sides.  Ultimately, there would be 12

6    citizens who would be chosen.  And they would determine your

7    guilt or innocence based on the evidence presented in the

8    courtroom.  They would also apply the jury instructions that

9    the Court would provide them.  And the verdict would have to

10   be a unanimous one.

11            Do you understand your right to a jury trial?

12            THE DEFENDANT:  Yes, I do.

13            THE COURT:  Do you understand if you went forward to

14   trial, you would have a right to be represented by a lawyer at

15   the trial and if you could not afford one, one could be

16   appointed for you?

17            THE DEFENDANT:  I do.

18            THE COURT:  Do you understand that at a trial you

19   would have the right, through your attorney, to confront and

20   cross-examine any witnesses against you?

21            THE DEFENDANT:  Yes, I do.

22            THE COURT:  Do you understand that you would have

23   the right to present your own witnesses and have a right to

24   subpoena them, in other words, to require them to come and

25   testify in your defense?

1          THE DEFENDANT:  I do.

2          THE COURT:  Do you understand that if there were a

3     trial, you would have the right to testify, present evidence

4     on your own behalf, if that's what you wanted to do.  But you

5     would not have to testify or present any evidence if you chose

6     not to, and that's because you can't be forced to incriminate

7     yourself, that is to present evidence of your own guilt.  And

8     the Court would instruct the jury that they could not hold

9     that against you or infer any guilt from your decision to

10    assert your constitutional right.  Do you understand that?

11         THE DEFENDANT:  Yes I understand.

12         THE COURT:  Do you understand that unless and until

13    I accept your guilty plea you're presumed by the law to be

14    innocent, because it's the government's burden to prove your

15    guilt beyond a reasonable doubt; and until it does, you cannot

16    be convicted at trial?

17         THE DEFENDANT:  I do.

18         THE COURT:  Do you understand if you went forward to

19    trial and were convicted, you would have a right to appeal

20    your conviction to the Court of Appeals, and have a lawyer

21    help you prepare your appeal?

22         THE DEFENDANT:  Yes, I understand.

23         THE COURT:  Do you understand that by pleading

24    guilty, you're giving up your rights to appeal on narrow

25    grounds.  And I'm going to go over that shortly.  But do you

1    understand that by pleading guilty you are giving up your

2    right to appeal any kind of trial findings or errors the Court

3    might have made, as well as just generally the case; do you

4    understand that?

5            THE DEFENDANT:  I do understand.

6            THE COURT:  Now, you also have a right to challenge

7    the jurisdiction of the Court.  And are you willing to give up

8    that right?

9            THE DEFENDANT:  I am.

10           THE COURT:  And this would be the right to challenge

11   the jurisdiction of the Court to have accepted the guilty

12   plea.  In other words a guilty plea can't be accepted by a

13   court if the offense was committed outside the Court's

14   jurisdictional boundaries.  Do you understand that?

15           THE DEFENDANT:  I do.

16           THE COURT:  All right.  What I would ask is that if

17   you would get your plea letter out for a second.  And if you

18   would look at page 10.

19           All right.  So I want to make sure you understand

20   that if you plead guilty in this case and I accept your guilty

21   plea, you'll give up the rights I've just explained to you

22   because we're not going to have any trial and the appeal would

23   be very narrow; do you understand that?

24           THE DEFENDANT:  I understand.

25           THE COURT:  Do you want to plead guilty in this

1    case, give up your rights to a trial and your right to appeal

2    as it's set out in the plea agreement?

3            THE DEFENDANT:  I do.

4            THE COURT:  All right.  So let me, if we'll look at

5    the appeal rights on page 10, Section D, do you have that in

6    front of you?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  Okay.  So let me just go over this to

9    make sure, since it's somewhat complicated.  You're agreeing

10   to waive, which means give up, insofar as such waiver is

11   permitted under law, the right to appeal the conviction in

12   this case on any basis, including but not limited to claims

13   that the statute to which you're pleading guilty is

14   unconstitutional, and/or the admitted conduct doesn't fall

15   within the scope of the statute.

16           Now, if the statute's unconstitutional and/or your

17   conduct is not viewed as unlawful under the statute, you can't

18   be convicted.  At this point the statute is viewed as

19   constitutional and your conduct is viewed as unlawful under

20   the statute.  But insofar as such waiver is permitted by law

21   means that although you can't appeal it, at a later point if a

22   higher court comes down and rules that the statute's

23   unconstitutional, and/or your conduct is not unlawful under

24   the statute, then you can take an appeal.  It's considered a

25   collateral appeal as opposed to a direct appeal.  But you

1      would be able to take an appeal.  Do you understand that?

2                    THE DEFENDANT:  Yes, I do.

3                    THE COURT:  And do you also agree to waive the right

4      to appeal the sentence in this case, which would include but

5      not limited to any term of imprisonment, fine, forfeiture,

6      order of restitution, any term or condition of supervised

7      release, or the authority of the Court to set conditions of

8      release in the manner in which the sentence was determined.

9                    Now, there are exceptions to the extent the Court --

10     I sentence you above the statutory maximum, that would

11     actually be an unlawful sentence, or above the guideline

12     range, determined by the Court.  Now, I -- it could be above

13     the guideline range and still be a lawful sentence.  But do

14     you understand that portion in terms of what you're giving up

15     and what the exceptions are?

16                   THE DEFENDANT:  Yes, I do.

17                   THE COURT:  And also not withstanding the above

18     agreement to waive the right to appeal the conviction and

19     sentence, you retain the right to appeal on the basis of

20     ineffective assistance of counsel, but not to raise on appeal

21     other issues regarding the conviction or sentence.  Do you

22     understand and agree?

23                   THE DEFENDANT:  I understand.

24                   THE COURT:  And you agreeing to it?

25                   THE DEFENDANT:  Yes, I agree.

1          THE COURT:  All right.  At this point the government

2     is going to state the evidence they would have presented if

3     the case had gone to trial.  So what I'm going to ask you to

4     do is to have the statement of offense in front of you.

5     They've included facts that go beyond the counts that you're

6     pleading guilty to, but they will go through all of it.  They

7     will then choose the counts that are at issue with your plea

8     and indicate the evidence that meets the elements of the

9     offenses that you're pleading guilty to.

10         I'll then ask you if you agree with it and we'll go

11    through it as well, in terms of whether you're agreeing to all

12    of the statement of offense, but also specifically to the

13    counts that you're pleading guilty to and that those -- in

14    order for the Court to find that you have agreed to the

15    elements of the offenses that you're actually pleading guilty

16    to.  Do you understand?

17         THE DEFENDANT:  I understand.

18         THE COURT:  Okay.  If at any point as I go through

19    this, I describe it differently than what you have discussed

20    with your counsel, do not hesitate to ask for a clarification.

21    I may explain things in the plea letter particularly or

22    otherwise that may be different than what you've discussed.  I

23    don't want you to just give me answers you think I want to

24    hear.  I want to make sure you actually understand what it is

25    that you're agreeing to, all right?

1          THE DEFENDANT:  Okay.

2          THE COURT:  So let's start with the statement of

3     offense.  Counsel.

4          MS. BUCKNER:  Yes, Your Honor.  And I -- the Court

5     might be headed in this direction after the statement of

6     offense, but the government just wanted to inquire to the

7     Court, you did ask Mr. Raymond if he was satisfied with the

8     services of his current stand-by counsel but not as regarding

9     the advice of the counsel that advised him on the plea.  And

10    so the government would request to the Court that Mr. Raymond

11    be asked regarding whether he satisfied with counsel who

12    advised him on the plea and whether he needs more time to

13    confer.

14         THE COURT:  The advice on the plea is Mr. Katzoff.

15    The issue of Mr. Marston and Mr. Jay relates to whether they,

16    you know, the discussions that they had in preparation for the

17    trial.  The actual discussion, I mean, although Mr. Marston

18    and Mr. Jay provided him some information, my understanding is

19    that Mr. Katzoff is the one who has gone through carefully the

20    advice about, at least in terms of what it is that he's

21    pleading guilty to, if that's what you're asking.

22         MS. BUCKNER:  I think also whether to enter into the

23    plea, since like at this point it's on the record that he was

24    advised by counsel regarding whether to enter into the plea.

25    That's a separate question for Mr. Raymond regarding --

1          THE COURT:  No, I -- the point, it seems to me in

2   terms of what advice they gave him as to whether or not he

3   should enter the plea, they left it as they indicated to --

4   for him to make his own choice.  As I understand it, they did

5   discuss the pros and cons of the plea versus the trial.

6          Am I correct Mr. Raymond, that Mr. Marston and

7   Mr. Jay discussed with you the pros and cons of pleading

8   versus going to the trial; is that correct?

9          THE DEFENDANT:  That's correct.

10          THE COURT:  Okay.  And that their advice about

11   whether you should accept the plea, they left to you; is that

12   correct?

13          THE DEFENDANT:  That's correct.

14          THE COURT:  Mr. Katzoff, but I take it that you had

15   some discussions with him relating to this; is that correct?

16          MR. KATZOFF:  That's correct Your Honor.

17          THE COURT:  Do you want to elaborate just a little

18   bit without getting into attorney-client --

19          MR. KATZOFF:  Well, it's hard to get into it without

20   getting into it, but I discussed with Mr. Raymond fully his

21   knowledge of the terms of the plea, the statement of offense

22   that is being -- was already signed at the time that I

23   undertook representation, discussed his desire to go to trial

24   versus his desire to plead guilty, his understanding of the

25   risk benefits, and was satisfied that it was his intent after

1    being -- fully discussing these issues with prior counsel that

2    it is his decision to plead guilty.

3            THE COURT:  In terms of Mr. Marston and Mr. Jay and

4    other things, I take it that they did discuss with you -- I

5    believe, you had indicated but let me ask again -- they did

6    discuss with you the strategies along the way, so you would

7    know what evidence they had in terms of a trial, is that

8    correct, and what defenses you might have?

9            THE DEFENDANT:  I was given the suggested strategy

10   for trial, that's correct.

11           THE COURT:  Okay.  Did you want something else, did

12   I miss something?

13           MS. MAYER-DEMPSEY:  Yes, Your Honor, just to

14   clarify.  Clearly, there's some issues with Mr. Raymond and

15   his prior counsel that we are not privy too.  But the

16   government would like to know whether Mr. Raymond is

17   comfortable proceeding today or whether he needs additional

18   time to consider the plea with other counsel.  Just not

19   knowing what the issue is, we would just want that to be clear

20   for the record.

21           THE COURT:  Okay.  Let me -- I thought I had asked

22   that, but let me ask that again.  I appointed additional

23   counsel at this time to go over the plea, but as I indicated

24   if you need more time or if you want other counsel who would

25   look more into the trial issues that you've already discussed

1    with Mr. Marston, but if you want someone to do that I have no

2    problem.   There's no rush on this.   I want to make sure that

3    you know what you're doing and that you have a full

4    understanding of what it mean goes forward to trial and a full

5    understanding of what it means to plead.

6            So is there any issue for you -- and there's nothing

7    wrong with this.   If you want to have someone spend more time,

8    either Mr. Katzoff or somebody else, going over the trial

9    material, et cetera, and discussing that, so you have a better

10   understanding, if that's necessary, of what you're -- what you

11   would be facing with the trial versus the plea, I can do that.

12           So the question is, it's a question for you, and I

13   want you to be honest about this, this is an important

14   decision on your part.

15           MR. KATZOFF:   Your Honor, it's I guess a difficult

16   issue in that there were certain time constraints with regard

17   to acceptance of the plea.   And I know from my conversations

18   that Mr. Raymond, his intent is and has been since he signed

19   the plea agreement and the statement of offense to accept it.

20   And he didn't create the situation whereby his attorneys

21   withdrew, but it would take a very long time for anybody else

22   to learn all of the facts --

23           THE COURT:   Which is why I'm asking him at this

24   point.

25           MR. KATZOFF:   The decision and my conversations were

geared towards confirming that he had a full understanding of those issues, full understanding of the nature of the decision that he had to make and that he was comfortable proceeding at this time with his decision to plead guilty.  That's where we are.

THE COURT:  So let me ask Mr. Raymond, and as I said I want you to be honest, there is no rush.  If you need more time, I don't want to -- I'd rather give you the additional time than have an issue at a later point.  I want to make sure that you have all of the information you need.  The trial is not going to go forward even if you didn't plead guilty on Wednesday.  So, I mean, this is the plea offer the government has offered.  And they're not making a different one, as I understand.  So there's no negotiation.  But if you need additional time to consider, you know, whether you want to plead and to discuss it.  If you want to talk more with Mr. Katzoff, or you want someone else, or you want to have some opportunity to have Mr. Katzoff become more intimately involved with all of the trial evidence, we can do that.  I want to make sure that you are comfortable going forward today.

THE DEFENDANT:  I appreciate that, and I am comfortable going forward today.

THE COURT:  All right.  So you don't have a need to have someone spend more time going over the trial strategies,

1    et cetera, to discuss that in addition to whatever Mr. Marston

2    and Mr. Jay discussed with you?

3                MR. KATZOFF:  No, I do not.

4                THE COURT:  All right.  I think -- I think that part

5    of this has been satisfied.  So let's proceed.

6                MS. BUCKNER:  The parties in this case, the United

7    States of America and the defendant, Brian Jeffrey Raymond,

8    stipulate and agree that the following facts are true and

9    accurate.  These facts do not constitute all of the facts

10   known to the parties concerning the charged offenses.  They

11   are being submitted to demonstrate that --

12               THE COURT:  Hold on just a second -- you're going

13   very fast if she's going to take this down, but if she has a

14   copy it will make it easier.  You can start with Paragraph 1.

15               MS. BUCKNER:  Special maritime and territorial jury

16   diction.

17               THE COURT:  Yes.

18               MS. BUCKNER:  At all dates and times included in

19   this statement of offense the defendant was a United States

20   Government employee.

21               From on or about August 21st, 2018, until on or

22   about June 1st, 2020, the defendant worked at the United

23   States Embassy in Mexico City, Mexico.  During that time, the

24   defendant resided in an apartment in Mexico City assigned to

25   him by the United States Government.  The defendant's

1    residence in Mexico City was leased by the United States

2    government for use by embassy personnel assigned to

3    diplomatic, consular, military, and United States missions in

4    Mexico City.  This residence falls within the special maritime

5    and territorial jurisdiction of the United States pursuant to

6    18, U.S.C., Section 7(9).

7            Drug intoxicant or other substance.  The defendant

8    knowingly administered a drug, intoxicant, or other substance,

9    herein after drug, to every victim named in this statement of

10   offense.  The defendant administered the drug in order to

11   render the adult victim or AV, unconscious, substantially

12   impaired, and/or incapable of appraising the nature of the

13   defendant's conduct and physically incapable of declining

14   participation in and/or communicating an unwillingness to

15   engage in the defendant's conduct.  The defendant knew that

16   administering the drug would have side effects, including

17   extreme exhaustion and vomiting.  The defendant personally

18   witnessed these side effects after he administered the drug to

19   the adult victims.

20           Sexual abuse and abusive sexual contact.  The

21   defendant held himself out to AV-1, AV-5, AV-6, AV-7, AV-9,

22   and AV-26 as a high-level embassy employee in whom the

23   government had reposed special trust.  For each of these

24   victims the defendant spoke in their native language, Spanish.

25           Sexual assault of AV-1.  The defendant met AV-1,

whose true identify is known to the defendant, on the dating
application Tinder and on May 31st, 2020, the two went on a
date.  The date began at an outdoor shopping mall, where the
defendant served AV-1 wine from a bottle he brought with him.
Later, the defendant led a drugged AV-1 to his embassy-leased
housing in Mexico City, Mexico, where he served her wine as
well as some meat, cheese, and chocolates.  Soon after, AV-1
lost consciousness.  When AV-1 regained consciousness, she was
nude, and the defendant was on top of her sexually assaulting
her.

        As a result of the defendant's actions, AV-1
suffered a vaginal injury consistent with friction, an anal
laceration compatible with the introduction of a hard, blunt
object, generalized redness throughout her perianal area,
bruises on her forearm, elbow, and knees, and a laceration on
the inside of her cheek.

        On or about May 31st, 2020, the defendant knowingly
rendered AV-1 unconscious by administering a drug, intoxicant,
or other similar substance to AV-1, without her knowledge or
permission.  The defendant substantially impaired the ability
of AV-1 to appraise and control the conduct.  Once she was
impaired and/or unconscious, the defendant engaged in a sexual
act with AV-1, that is the defendant's penis came in contact
with AV-1's vulva.  The defendant sexually assaulted AV-1 and
his actions constitute a violation of 18, U.S.C., Sections

1    2242(2) and 7(9).

2              Sexual assault and recording of AV-9.  The defendant

3    met AV-9, whose true identity is known to the defendant, on

4    the dating application Bumble and on March 25th, 2020, the two

5    went on a date.  They met for afternoon drinks before resuming

6    their date later that evening, with AV-9 returning to her home

7    in the interim.  The defendant messaged a close friend,

8    witness-1, whose true identity is known to the defendant,

9    about AV-9, stating, "She just asked me to send an Uber to

10   pick her up tonight, but that is a personal no for me unless

11   I'm definitely getting sex."  The defendant then said, "I

12   suppose since it's only 4 bucks and I might have a chance to

13   fuck her, I will do it."

14             When AV-9 arrived at the defendant's embassy-leased

15   housing in Mexico City, Mexico, the defendant served AV-9

16   meat, cheeses, strawberries and wine.  The defendant also

17   served AV-9 tequila.  Soon after AV-9 lost consciousness.

18   When AV-9 regained consciousness she was nude and in the

19   defendant's bed.  The next day the defendant texted witness-1,

20   "Success last night.  At least I salvaged my Wednesday."

21             Without her knowledge and while AV-9 was unconscious

22   and incapable of consenting the defendant took 20 photographs

23   and 15 videos depicting AV- 9, all created March 25th and

24   26th, 2020 in his embassy leased apartment over the course of

25   an hour.  The photographs and videos show AV-9 fully

1    unconscious and fully nude lying in the defendant's bed.  Some

2    of the photographs show the defendant's hand opening AV-9's

3    eyelid.  And some depict close-ups the defendant took of

4    AV-9's breasts and genitals.  The defendant also posed AV-9's

5    body in different ways throughout the photo set.

6            A video shows the defendant's hand on the outside of

7    AV-9's buttocks.  Another video shows the defendant's hand

8    touching AV 9's breast and buttocks.  And yet another video

9    shows the defendant's hand forcefully grabbing AV 9's breasts.

10   His hand then moves down to her pubic region out of the frame.

11   In one video, the defendant is nude and lying next to an

12   unconscious AV-9, cuddling with her body and manipulating her

13   limbs while his erect penis is exposed.

14           The defendant knowingly rendered AV-9 unconscious by

15   administering a drug, intoxicate, or similar substance to AV-9

16   without her knowledge or permission.  The defendant

17   substantially impaired the ability of AV-9 to appraise and

18   control the conduct.  Once she was impaired and/or unconscious

19   the defendant engaged in sexual acts and sexual contact with

20   AV-9.  That is the defendant's penis came in contact with

21   AV-9's vulva and the defendant intentionally touched AV-9's

22   breast and buttocks.  The defendant took all these actions

23   with the intent to abuse, humiliate, harass, degrade, and

24   arouse and gratify his own sexual desire.

25           Sexual assault and recording of AV-7.  The defendant

met AV-7 whose true identity is known to the defendant, on the dating application Bumble. And on May 30th, 2020, the two went on a date. The defendant and AV-7 met at his embassy-leased apartment in Mexico City, Mexico. When AV-7 arrived, the defendant served her meat, cheese, and strawberries, as well as tequila and an alcohol beverage containing gin. AV-7 felt sick and vomited in the defendant's bathroom. Soon after, AV-7 lost consciousness. When AV-7 regained consciousness, she was nude in the defendant's bed.

The next day on May 31st, 2020, the defendant texted witness-1, "So last night was a success. She was decent enough looks-wise. About what I was expecting. And at 26 was still fuckable. But after 30 who knows. But she was cool and we had a nice time, so it worked out. TBD if I will see her again."

Without her knowledge and while AV-7 was unconscious and incapable of consenting, the defendant took 77 photographs and four videos depicting AV-7, all created on May 30th and 31st, 2020, over the course of approximately two hours and 30 minutes. The photographs and videos show AV-7 fully nude, unconscious, and lying in the defendant's bed. They depict the defendant's hand opening her eyelid and playing with her mouth. In one video, AV-7 flinches when the defendant's fingers are in her mouth. And he quickly pulls his hand back. The defendant took several close up photographs of AV-7's

1    breasts and genitals.  Notably, there is a photo in which AV-7

2    is on her back with her legs tightly closed.  While nude and

3    exposing his erect penis the defendant straddles AV-7's body

4    placing each knee on either side of AV-7's legs and causing

5    his inner thighs to touch her body.  The defendant also poses

6    AV-7's body in several positions.

7            Between on or about May 30, 2020, and on or about

8    May 31st, 2020, the defendant knowingly rendered AV-7

9    unconscious by administering a drug, intoxicant, or similar

10   substance to AV-7 without her knowledge or permission.  The

11   defendant substantially impaired the ability of AV-7 to

12   appraise and control the conduct.  Once she was impaired

13   and/or unconscious the defendant engaged in sexual acts and

14   sexual contact with AV-7.  That is, the defendant's penis came

15   in contact with AV-7's vulva and the defendant intentionally

16   caused his inner thighs to touch AV-7.  The defendant took all

17   these actions with the intent to abuse, humiliate, harass,

18   degrade, and arouse and gratify his own sexual desire. The

19   defendant sexually assaulted AV-7 and his actions constitute a

20   violation of 18, U.S.C., Sections 2244(a)(1) and 7(9)

21           Sexual assault and recordings of AV-6.  The

22   defendant met AV-6 whose true identity is known to the

23   defendant on the dating application Tinder.  And on June 23rd,

24   2019, the two went on a date.  The defendant and AV-6 met at

25   his embassy-leased apartment in Mexico City, Mexico.  When

1  AV-6 arrived the defendant served her various alcoholic

2  beverages to taste.  Soon after AV-6 lost consciousness.

3  Similarly, the two met at the defendant's embassy-leased

4  housing on December 21st, 2019.  When AV-6 arrived the

5  defendant served her various alcoholic beverages to taste.

6  Soon after AV-6 lost consciousness.

7          Without her knowledge and while AV-6 was unconscious

8  and incapable of consenting, the defendant took 29 photographs

9  and six videos on June 23rd, 2019, and 35 photographs on

10  December 21st, 2019.  In both sets of photographs and videos,

11  AV-6 is fully nude, unconscious and lying on the defendant's

12  bed.  In both sets the defendant opens AV-6's eyelids.  And in

13  both sets the defendant took close-ups -- close-up photographs

14  of the AV-6's breasts and genitals.  In the videos from June

15  23, 2019, the defendant lifts AV-6's arm and dropping it onto

16  the bed several times.

17          In one video AV-6's face flinches and the defendant

18  jumps back, dropping the recording device in the process and

19  causing the video to very briefly record his face, torso, and

20  erect penis.  In another video the defendant's recording

21  captures his own erect penis.  In one of the videos the

22  recording starts with AV-6's hand placed on her own breast.

23  In the video the defendant moves AV-6's hand from her breast

24  to her genitals.  He then moves her hand from her genitals and

25  drops it onto the bed next to her.

1          The defendant knowingly rendered AV-6 unconscious by

2     administering a drug, intoxicant or other similar substance to

3     AV-6 without her knowledge or permission.  The defendant

4     substantially impaired the ability of AV-6 to appraise and

5     control the conduct.  Once she was impaired and/or

6     unconscious, the defendant engaged in sexual acts and sexual

7     contact with AV-6, that is the defendant's penis came in

8     contact with AV-6's vulva.  And the defendant intentionally

9     caused AV-6 to touch her own breast and genitalia.  When the

10    defendant took these actions -- the defendant took these

11    actions with the intent to abuse, humiliate, harass, degrade,

12    and arouse and gratify his own sexual desire.

13          Sexual assault and recording of AV-5.  The

14    defendant met AV-5 whose true identity is known to the

15    defendant on the dating application Tinder.  And on May 17th,

16    2019, the two went on a date.  The defendant and AV-5 met at

17    his embassy-leased apartment in Mexico City, Mexico.  When

18    AV-5 arrived the defendant served her meat, cheese,

19    strawberries and chocolate as well as Mezcal and wine.  Soon

20    after AV-5 lost consciousness.  When AV-5 regained

21    consciousness she was lying in the defendant's bed.  AV-5 sat

22    up and vomited.  Without her knowledge and while AV-5 was

23    unconscious and incapable of consenting, the defendant took 25

24    photographs and ten videos, all created on May 17th, 2019.

25          In the photographs and videos AV-5 is completely

nude, unconscious, and lying in the defendant's bed.  In some
of the videos the defendant opens AV-5's eyelids and plays
with her mouth and tongue.  In one photograph the defendant
touches AV-5's inner thigh.  In a video the defendant grabs
AV-5's breasts.  An unconscious AV-5 struggles to breathe in
the videos.  The defendant knowingly rendered AV-5 unconscious
by administering a drug, intoxicant, or other similar
substance to AV-5 without her knowledge or permission.  The
defendant substantially impaired the ability of AV-5 to
appraise and control the conduct.

          Once she was impaired and/or unconscious, the
defendant engaged in sexual contact with AV-5, that is the
defendant intentionally touched AV-5's breast and buttocks.
The defendant took these actions with the intent to abuse,
humiliate, harass, degrade and arouse and gratify his own
sexual desire.

          Sexual assault and recording of AV-26.  The
defendant met AV-26, whose true identity is known to the
defendant, on the dating application Tinder.  And on February
8th, 2019, the two went on a date.  The defendant and AV-26
met at his embassy-leased apartment in Mexico City, Mexico.
When AV-26 arrived the defendant served her cheese,
strawberries, and cookies, as well as wine.

          Av-26 felt sick and vomited in the defendant's
bathroom.  The defendant continued serving AV-26 alcohol.

1    AV-26 vomited a second time.  Soon after AV-26 lost

2    consciousness.  When AV-26 regained consciousness, she was in

3    the defendant's bedroom.  The defendant led AV-26 by the arm

4    to his bathroom.  AV-26's legs gave out and she fell.  The

5    defendant held her hair while she vomited again.  AV-26 lost

6    consciousness again.  When she regained consciousness, she was

7    on the defendant's bed and the defendant was touching her

8    breasts.

9           The defendant knowingly rendered AV-26 unconscious

10   by administering a drug, intoxicant, or other similar

11   substance to AV-26 without her knowledge or permission.  The

12   defendant substantially impaired the ability of AV-26 to

13   appraise and control the conduct.  Once she was impaired

14   and/or unconscious the defendant engaged in sexual contact

15   with AV-26, that is the defendant intentionally touched

16   AV-26's breasts.  The defendant took all these actions with

17   the intent to abuse, humiliate, harass, degrade, and arouse

18   and gratify his own sexual desire.

19          Sexual assault and recording of AV-23.  The

20   defendant invited AV-23, whose true identity is known to the

21   defendant, to his embassy-leased housing on December 8th,

22   2013, and served her several alcoholic beverages.  The

23   embassy-leased housing was located in a foreign country known

24   to the defendant.  Shortly after, AV-23 lost consciousness.

25          Without her knowledge and while AV-23 was

unconscious and incapable of consenting, the defendant took 40
photographs, all created on December 8th, 2013.  In the
photographs AV-23 is fully nude.  In one photograph, the
defendant is holding AV-23's arm.  In another he is holding
AV-23's eyelid open.  Throughout the series of photographs,
AV-23 is positioned by the defendant, including being turned
over, having her legs spread open, having her body manipulated
such that her hand is placed on her own breast.

          The defendant knowingly rendered AV-23 unconscious
by administering a drug, intoxicant or similar substance to
AV-23 without her knowledge or permission.  The defendant
substantially impaired the ability of AV-23 to appraise or
control the conduct.  Once she was impaired and/or
unconscious, the defendant engaged in sexual contact with
AV-23.  That is the defendant intentionally caused AV-23 to
touch her own breast.  The defendant took all these actions
with the intent to abuse, humiliate, harass, degrade, and
arouse and gratify his own sexual desire.

          Assault and recording of AV-15.  The defendant met
AV-15, whose true identity is known to the defendant, on the
dating application Bumble.  And on April 9th, 2017, the two
went on a date.  The defendant picked AV-15 up from Maryland
for the date.  The defendant then drove AV-15 through
Washington D.C. to Scott's Run Nature Preserve in Virginia.
There, the two drank wine and the -- that the defendant

36

brought with him.  After the date, the defendant drove AV-15

back through Washington D.C. and to AV-15's apartment in

Maryland.  Shortly after, AV-15 lost consciousness.  The

defendant left before AV-15 regained consciousness.

Without her knowledge and while AV-15 was

unconscious and incapable of consenting the defendant took

four photographs of AV-15 all created on April 9th, 2017.  The

photographs depict AV-15 unconscious, fully nude, and laying

on her stomach in bed.  As a result of moving and posing

AV-15, the defendant inflicted several injuries on AV-15's

body including a prominent painful bruise on her buttocks.

The defendant knowingly rendered AV-15 unconscious

by administering a drug, intoxicant or similar substance to

AV-15 without her knowledge or permission.  The defendant

substantially impaired the ability of AV-15 to appraise and

control the conduct.  Once she was impaired and/or unconscious

the defendant engaged in sexual contact with AV-15, that is

the defendant intentionally touched AV-15's buttocks.  The

defendant took all these actions with the intent to abuse,

humiliate, harass, degrade, and arouse and gratify his own

sexual desire.

Assault and recording of AV-4.  The defendant met

AV-4 whose true identity is known to the defendant on the

dating application Tinder.  And on May 14th, 2017, the two

went on a date.  The defendant invited AV-4 to meet him at a

1    park in Washington, D.C.  After the date at the park, the two

2    remained in D.C. and walked to a wine bar, where they ordered

3    a glass or two of wine and continued to converse.  While at

4    the bar, the defendant told AV-4 that he wanted to continue

5    the date, but indicated that his apartment was unavailable.

6    AV-4 then offered her apartment in Virginia as an alternative.

7         Once at her apartment in Virginia, AV-4 opened a

8    bottle of red wine and poured them both a glass.  After

9    showing the defendant around, they walked on to her balcony

10   with their glasses, leaving the bottle of wine inside.  At

11   some point the defendant went to the restroom and returned to

12   the balcony with the open bottle of wine, where he refilled

13   both of their glasses.  Shortly thereafter AV-4 lost

14   consciousness.  AV-4 regained consciousness in her bed, fully

15   closed, with the defendant lying next to her.

16        Without her knowledge, and while AV-4 was

17   unconscious and incapable of consenting, the defendant took

18   two videos and eight photographs, all created on May 14th,

19   2017.  In the videos and photographs AV-4 is lying down on her

20   back on a bed.  Her eyes are closed and she appears

21   unconscious.  In several photographs the defendant pulled up

22   AV-4's shirt and pulled down her bra, pulled so that both

23   breasts were visible.  In one photograph AV-4's bra is on, but

24   her shirt is pulled up.  And in one photograph the defendant

25   uses his thumb to hold her eyelid open.  In one video, the

1    defendant pulls down AV-4's shorts to reveal her upper pubic

2    region.  Large red marks can be seen on both of her knees in

3    several photographs.

4         The defendant knowingly rendered AV-4 unconscious by

5    administering a drug, intoxicant, or similar substance to AV-4

6    without her knowledge or permission.  The defendant

7    substantially impaired the ability of AV-4 to appraise and

8    control the conduct.  Once she was impaired and/or

9    unconscious, the defendant engaged in sexual contact with AV-4

10   while AV-4 was unconscious, that is, the defendant

11   intentionally touched AV-4's breasts.  The defendant took all

12   these actions with the intent to abuse, humiliate, harass,

13   degrade, and arouse and gratify his own sexual desire.

14        Assault, coercion and enticement, and recording of

15   AV-17.  The defendant invited AV-17, whose true identity is

16   known to the defendant, to travel from Chicago to the D.C.

17   area to visit him in November of 2015.  The defendant gave

18   AV-17 detailed instructions on where to go in Washington D.C.,

19   including places to tour and where to eat lunch, as well as

20   how to leave D.C. on the metrorail to get to his apartment in

21   Tysons corner, Virginia.

22        That evening the two had a drink at the defendant's

23   apartment and then went to dinner and to happy hour in

24   Virginia.  When the two returned to the defendant's apartment,

25   AV-17 lost consciousness.  When AV-17 regained consciousness

1     she was in the defendant's bed wearing only her under wear.

2          Without her knowledge and while AV-17 was

3     unconscious and incapable of consenting, the defendant took

4     six photographs of AV-17, all created on November 6th, 2015.

5     The photographs depict AV-17 nude with her breasts exposed and

6     wearing underwear she is depicted both on the floor and on the

7     bed in images.  In a photograph, the defendant can be seen

8     holding AV-17's eyelid open.  In another, the front of AV-17's

9     underwear is pulled down exposing her pubic area.  As a result

10    of moving and posing AV-17, the defendant inflicted several

11    injuries on AV-17's body, including deep scratches on her

12    back.

13          The defendant knowingly rendered AV-17 unconscious

14    by administering a drug, intoxicant or other similar substance

15    to AV-17 without her knowledge or permission.  The defendant

16    substantially impaired the ability of AV-17 to appraise or

17    control the conduct.  Once she was impaired and/or

18    unconscious, the defendant engaged in sexual contact with

19    AV-17, that is, the defendant intentionally touched AV-17's

20    genitals.  The defendant took all these actions with the

21    intent to abuse, humiliate, harass, degrade, and arouse and

22    gratify his own sexual desire.  Furthermore, the defendant has

23    taken similar actions against AV-17 on more than one

24    additional occasion.

25          Between on or about November 2, 2015, and on or

about November 7, 2015, the defendant knowingly persuaded, induced, and enticed AV-17 to travel in interstate commerce to engage in sexual conduct for which he could be charged with a criminal offense; to wit:  Virginia code 18.2-67.3.  The defendant's actions constitute a violation of 18, U.S.C., Section 2422(a).

Production and transportation of obscene material. The defendant knowingly rendered the victims named in this statement of offense unconscious by administering a drug, intoxicant, or other similar substance without the victims' knowledge or permission.  The defendant then photographed and recorded the victims using cameras and mobile phones.  When he took these photographs and videos he did so without the victims' knowledge and while the victims were unconscious and incapable of consenting.

The photographs and videos depict unconscious women in various stages of undress as the defendant moves them, poses them, manipulates their limbs, opens their eyelids, places his fingers in their mouth, and/or grabs or touches or causes the women to grab or touch their inner thigh, buttocks, breasts, or genitalia.  The defendant took all these actions with the intent to abuse, humiliate, harass, degrade, and arouse and gratify his own sexual desire.  For each victim named in this statement of offense, the production of the photographs and videos meets the definition of obscene matter.

1          Afterwards, the defendant moved these same

2     photographs and videos to other devices and storage spaces for

3     safekeeping, to include a blue ASUS laptop, purple ASUS

4     laptop, MacBook Air, a Kingston SD card, and an iCloud

5     account.

6          The defendant brought into the United States and

7     into any place subject to the jurisdiction thereof, laptops

8     and a storage card containing the obscene matter.  As to the

9     MacBook Air, 511 explicit images were recovered depicting

10    AV-2, AV-3, AV-4, AV-5, AV-6, AV-12, AV-13, AV-14, AV-15,

11    AV-16, AV-17, AV-18, AV-19, AV-25, and AV-28, whose true

12    identifies are known to the defendant.  From the purple ASUS

13    laptop, 34 explicit images were recovered depicting AV-20 and

14    AV-22, whose true identities are known to the defendant.  From

15    the blue ASUS laptop nine explicit images were recovered

16    depicting AV-20 and AV-21, whose true identities are known to

17    the defendant.  From a Kingston SD card, 68 explicit images

18    were recovered depicting AV-9, AV-23, and AV-24, whose true

19    identities are known to the defendant.

20          The defendant knowingly used an interactive computer

21    service, i.e. the internet, as well as Apple server located in

22    the United States, to transport obscene matter from his mobile

23    devices and/or laptops to his cloud storage account.  As to

24    the defendant's iCloud account, 400 explicit images were

25    recovered depicting AV-2, AV-3, AV-4, AV-5, AV-6, AV-7, AV-8,

AV-9, AV-10, AV-11, AV-12, AV-13, AV-14, AV-15, AV-16, AV-17,

AV-18, and AV-19, whose true identities are known to the

defendant.

Each victim for which photographs and videos were

taken on the defendant's laptops, mobile devices, and cloud

storage, represents a separate scheme by the defendant to

produce and transport obscene matter.

Some examples of the defendant's efforts to produce

obscene matter are as follows:  Assault and recording of AV-8

the defendant met AV-8, whose true identity is known to the

defendant, on the dating application Tinder.  And in March and

April of 2020, the two went on several dates.  AV-8 came to

the defendant's embassy-leased apartment in Mexico City,

Mexico for the first time on March 27th, 2020.  When AV-8

arrived, the defendant served her ham and cheese as well as

alcoholic beverages.  Soon after AV-8 lost consciousness.

Without her knowledge and while AV-8 was unconscious

and incapable of consenting, the defendant took 13 photographs

and one video depicting AV-8, all created on March 27th, 2020.

The photographs and videos show AV-8 fully nude, unconscious,

and lying on the defendant's bed.  They show close ups of

AV-8's breasts and genitals.  In the video, the defendant is

manipulating AV-8's arm.

Between on or about March 27th, 2020 and on or about

June 1st, 2020, the defendant intentionally transported the

1    photographs and videos from his mobile phone to his iCloud

2    using the internet and Apple server located in the United

3    States.

4              Between on or about March 27th, 2020, and on or

5    about June 1st, 2020, in Mexico City, Mexico, and elsewhere,

6    the defendant brought into the United States and into any

7    place subject to the jurisdiction thereof, and knowingly used

8    a common carrier and interactive computer service for carriage

9    in interstate and foreign commerce obscene matter depicting

10   AV-8.  The defendant's actions constitute a violation of 18,

11   U.S.C., Section 1462(a).

12             Assault and recording of AV-2.  The defendant met

13   AV-2 whose true identity is known to the defendant on the

14   dating application Bumble.  And on February 2, 2018, the two

15   went on a date.  The defendant and AV-2 met at AV-2's

16   apartment in California.  The defendant brought with him wine

17   and tequila, which he served to AV-2.  Soon after AV-2 lost

18   consciousness.  When she regained consciousness AV-2 was nude

19   and lying next to the defendant.  AV-2 told the defendant that

20   she did not like what happened and that it could not happen

21   again.  AV-2 and the defendant eventually stopped

22   communicating.

23             In September 2018, the defendant reached back out to

24   AV-2, indicating that he missed speaking with her and

25   suggesting that she visit him in Mexico.  In November 2018,

1    AV-2 traveled to Mexico for work and while in Mexico City she

2    met the defendant for a date.  The defendant met AV-2 at her

3    Mexico City hotel and brought a flask of alcohol from which

4    he served AV-2 drinks.  The two went to dinner shortly

5    thereafter.  AV-2 lost consciousness.  AV-2 awoke the next

6    morning wearing her bra and underwear, the defendant was not

7    there.

8           Without her knowledge, and while AV-2 was

9    unconscious and incapable of consenting the defendant took 33

10   photographs and one video on February 2nd, 2018.  The

11   photographs and video show AV-2 unconscious and in various

12   stages of undress.  They show the defendant's hand moving her

13   bra and her pants to expose her breasts and genitals, as well

14   as his hand opening her eyelid.  The final photos show AV-2

15   fully nude.

16          Additionally, without her knowledge and while AV-2

17   was unconscious and incapable of consenting, the defendant

18   took 44 photographs and seven videos in AV-2's hotel room in

19   Mexico City on November 23rd and 24th, 2018.  AV-2 is

20   unconscious and lying on the hotel bed and her bra is pushed

21   up to expose her breasts.  In some photographs her underwear

22   are removed to expose her genitals.  In the course of the

23   photographs and videos the defendant posed AV-2 in several

24   different positions on the bed.  In some, the defendant lifts

25   AV-2's eyelid and manipulates her arms.

1          Assault and recording of AV-12.  The defendant met

2     AV-12, whose true identity is known to the defendant, on the

3     dating application Bumble.  And on September 15th, 2018, the

4     two went on a date.  The defendant and AV-12 met at his

5     embassy-leased apartment in Mexico City, Mexico.  When AV-12

6     arrived the defendant served her meat and cookies as well as

7     alcoholic beverages.  Soon after AV-12 lost consciousness.

8          Without her knowledge and while AV-12 was

9     unconscious and incapable of consenting, the defendant took 10

10    photographs depicting AV-12 all created on September 15th,

11    2018.  The photographs and videos show AV-12 partially nude,

12    unconscious, and lying on the defendant's bed.  The defendant

13    took close ups of AV-12's breasts.

14         Assault and recording of AV-3.  The defendant met

15    AV-3, whose true identity is known to the defendant, on the

16    dating application Tinder.  And on December 1st, 2017, the two

17    went on a date.  The defendant invited AV-3 to his hotel.  The

18    hotel was located in a foreign country known to the defendant.

19    The defendant served AV-3 alcoholic beverages.  Soon after,

20    AV-3 lost consciousness.

21         Without her knowledge, and while AV-3 was

22    consciousness and incapable of consenting, the defendant took

23    16 photographs and three videos depicting AV-3, all created on

24    December 1st, 2017.  The photographs and videos show AV-3

25    partially nude, unconscious and lying on the defendant's bed.

The defendant uses his thumb to hold AV-3's eyelid open.  At
times he poses AV-3 on her stomach, at other times he poses
her on her back.  The defendant photographed AV-3's exposed
breasts, buttocks, and genitals.  In one photograph, the
defendant's penis is exposed and ejaculate is visible.

        Assault and recording of AV-22.  The defendant and
AV-22, whose true identity is known to the defendant, traveled
together and stayed in the same hotel room.  The hotel was
located in a foreign country known to the defendant.  During
this trip, on April 21st, 2006, the defendant served AV-22
alcoholic beverages.  Soon after AV-22 lost consciousness.

        Without her knowledge, and while AV-22 was
unconscious and incapable of consenting, the defendant took
seven photographs depicting AV-22, all created on April 21st,
2006.  The photographs and videos show AV-22 completely nude,
unconscious, and lying on a bed.  The defendant took several
close-ups of AV-22, which focus on her breast and genitals.
As a result of moving and posing AV-22, the defendant
inflicted several injuries on AV-22's body, resulting in
bruising.

        AV-22 subsequently reached out to the defendant,
stating, weird question for you, did I fall or hit my head on
Saturday?  I can't believe I can't remember anything at all.
That last shot did me in.  The last thing I remember was
laying down waiting to hear trance, lol.  But today my head

1    was really sore and the right side of my body feels like I got

2    bruised slash pulled something.  So I was wondering if I fell

3    on something.  The defendant replied.  I feel awful about the

4    bruise.  Yes, you did trip over a chair next to the bed.  It

5    is in a really bad spot.  Too close to the bed if you ask me.

6    Especially in the dark.  It did not look too serious when it

7    happened and said it was nothing.  I hope you are feeling

8    better.

9          Obstruction.  Upon learning that he was under

10   investigation, in or around June 2020, the defendant attempted

11   to delete explicit photographs and videos depicting victims

12   from his iCloud account.

13         THE COURT:  All right.  What I would do is focus

14   strictly on the ones that he's actually pleading guilty to, in

15   terms of the elements.  In terms of tying whatever the --

16   going through what you view as the -- in summary form, you've

17   sort of done it to some degree with the elements of the

18   offenses for each of the counts.  So if you want to do it in

19   that way, that's fine.

20         MS. BUCKNER:  Yes, Your Honor.  How would you like

21   me to proceed?

22         THE COURT:  If you would go through, it's Count 1 in

23   terms of the elements and what he actually did that meets the

24   elements, which to some degree you did in the elements and

25   offenses where you've indicated what the evidence actually

1    is.

2            MS. BUCKNER:  So Your Honor, as to Count 1, which is

3    sexual abuse of AV-1, we have the elements -- I believe the

4    government has the agreed upon elements before it that the

5    defendant has also signed.  Element 1 is knowingly engaged in

6    a sexual act with AV-1.  Here, as indicated on page 3 of the

7    statement of offense, and paragraph 6 the government has

8    indicated the defendant has agreed that his penis came in

9    contact with AV-1's vulva.

10           As to element 2, that AV-1 was either incapable of

11   appraising the nature of the conduct or was physically

12   incapable of declining participation in, or communicating

13   unwillingness to engage. The government has proffered both in

14   paragraphs -- in paragraph 6 that the defendant knowingly

15   rendered AV-1 unconscious by administering a drug or

16   intoxicant.  The defendant also agrees that he substantially

17   impaired the ability of AV-1 to appraise and control the

18   conduct.  And that once she was impaired or consciousness he

19   engaged in the sexual act.

20           As to element 3, special maritime or territorial

21   jurisdiction of the United States.  Here the government has

22   alleged in paragraph 4, that he led AV-1 to his embassy-leased

23   housing in Mexico City, Mexico.  As alleged in paragraph 1,

24   this falls within the special maritime and territorial

25   jurisdiction of the United States.

1          THE COURT:  All right.  Just go through each one of

2    these.  I'm then going to be asking him questions.  Count 6.

3          MS. BUCKNER:  So moving to Count 6, Your Honor, with

4    the first element being that the defendant knowingly engaged

5    in or caused sexual contact with or by AV-7.

6          Here, the government alleged and the defendant has

7    agreed in paragraph 14 that his penis came in contact with

8    AV-7's vulva and that the defendant intentionally caused his

9    inner thighs to touch AV-7.  As to the second element that the

10   defendant did so by rendering AV-7 unconscious or

11   administering AV-7, without the knowledge or permission of

12   AV-7, a drug, intoxicant, or other similar substance.  The

13   government has alleged in paragraph 14 on page 5, and the

14   defendant has agreed that he knowingly rendered AV-7

15   unconscious by administering a drug, intoxicant, or similar

16   substance.  And that he did, in fact, substantially impair the

17   ability of AV-7 to appraise or control the conduct.  And once

18   she was unconscious or substantially impaired, he engaged in

19   sexual contact.

20         As to jurisdiction, the government alleged in

21   paragraph 11, on page 4, that they met in his embassy-leased

22   apartment in Mexico City, Mexico, and the government has

23   alleged and the defendant has agreed in paragraph 1 that that

24   falls under the special maritime and territorial jurisdiction

25   of the United States.

 1          As to Count 17, regarding coercion and enticement of

 2   AV-17, the first element is that the defendant knowingly

 3   persuaded, induced, or enticed AV-17.  Here the government has

 4   alleged that the defendant invited AV-17 from Chicago to the

 5   D.C. area, and then provided instructions on how to travel

 6   from the D.C. area to his housing in Tyson's Corner, Virginia.

 7   And that's in paragraph 32 on page 11 of the statement of

 8   offense.  And the defendant has agreed to that.

 9          As to travel.  Element two, travel in interstate or

10   foreign commerce, that is established again by paragraph 32,

11   wherein AV-17 traveled from Chicago to Washington D.C. and

12   from Washington D.C. to Virginia.

13          As to element 3 that the purpose of the travel was

14   for the defendant to engage in any sexual activity for which

15   he could be charged with a criminal offense.  Here, the

16   government has alleged and the defendant has agreed that that

17   offense is listed in paragraph 35 on page 12.  And that is

18   aggravated sexual battery in violation of Virginia Code 18.2,

19   67.3.

20          As to Count 19, transportation of obscene material.

21   The government has alleged that the defendant administered a

22   drug, intoxicant, or similar substance without AV-9's

23   knowledge or permission.  And that after rendering her

24   unconscious, took several -- excuse me, AV-8, in Count 19.

25   And after rendering AV-8 consciousness he engaged in -- he

took sexually explicit photographs and videos of AV-8.  The defendant agrees that is obscene matter.  And that those particular facts are proffered in paragraphs 36 and 37 on page 13.

As to the transportation of that obscene matter, looking at the elements, one, any place subject to the jurisdiction of the United States, the government proffered in paragraph 1 regarding special maritime and territorial jurisdiction, and again in paragraph 42 that these photos were taken in his embassy-leased apartment in Mexico City.  After they were taken they were transported to his iCloud using the internet and connecting to Apple servers located in the United States.

Finally, the defendant took these actions knowingly; and therefore, knew and has agreed that he knew the content, character, and nature of the matter that he created regarding AV-8.

THE COURT:  All right.  In terms of the -- from the government's perspective, in terms of the counts that Count 1, 6, 17, and 19, I'll find that they have evidence that meets the elements as they have described them for each one of them, without going through these elements all over again.

So let me -- what I'm going to do Mr. Raymond is there's certain paragraphs that I'll focus on.  I'm going to focus on the ones that relate to the particular counts that

you're pleading guilty to.  The rest I will simply ask as to

whether there's anything in there that you disagree with.

       But let me just start generally, is there anything

in here that you disagree with or are you in agreement with

everything that's written here?

       THE DEFENDANT:  I'm in agreement.

       THE COURT:  All right.  So let's start in terms of

the maritime and territorial jurisdiction.  Is it accurate in

terms of what it describes in paragraph 1 of the dates of

where you were working, where you were residing, your -- in

terms of it being provided by -- the residence by the embassy.

And my understanding is that you've had a discussion with Mr.

Katzoff about the venue issue in terms of the jurisdiction of

the Court.  And one of the issues would be whether you would

waive raising any issue about venue.  So have you had that

discussion with Mr. Katzoff?

       THE DEFENDANT:  I have.

       THE COURT:  Okay.  And are you willing -- factually

is it correct that during this period of time you worked at

the embassy in Mexico, and you were provided residence by the

U.S. Government?

       THE DEFENDANT:  That's correct.

       THE COURT:  Okay.  And that at this point you're not

disagreeing with paragraph No. 1, because any issue that you

might raise you've decided to waive; would that be accurate?

53

1           THE DEFENDANT:  That's accurate.

2           THE COURT:  Okay.  Paragraph 2 is important because

3    it shows up in each one of these, and that is whether you

4    knowingly administered either a drug, an intoxicant or some

5    sort of other substance to each of the victims that are set

6    out here, which resulted in their basically passing out and

7    not being in a position to appraise the nature of your conduct

8    or to decline participation or communicating in any way.

9    Would you agree with everything that is stated in paragraph 2?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And would you agree that in terms of

12   each of the AVs, that you did give them in some form, I'll

13   call it a substance, such that they would be rendered

14   unconscious?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  So then let's -- and I take

17   it you're not disagreeing with 3 as to what you held yourself

18   out as?

19          THE DEFENDANT:  No, I'm not.

20          THE COURT:  Okay.  You need to keep your voice up.

21   Excuse me a moment.

22          (Pause in the proceedings.)

23          THE COURT:  Count 2, page 4.  It indicates how you

24   met and how you got together.  And the fact that you did drug

25   her with whatever substance.  And would you -- and when she

1   regained unconsciousness, the -- it's described what you were

2   doing, would you agree with all of that?

3            THE DEFENDANT:  Yes, I agree.

4            THE COURT:  All right.  And then paragraph 5 talks

5   about some injuries that she suffered as a result of your

6   sexual actions with her, would you agree with that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  All right.  And then paragraph 6 is

9   whether you agree that you rendered her unconscious by giving

10  her some sort of substance, drug, or intoxicant without her

11  knowledge and permission, so that it impaired her ability to

12  make any decisions about engaging in any sexual act with you,

13  would you agree with that?

14           THE DEFENDANT:  That's correct.

15           THE COURT:  All right.  So in all of these would you

16  agree some substance or intoxicant was given to them, the

17  victims became unconsciousness, you committed certain sexual

18  acts on each of the victims and then took photos or videos of

19  them would you agree generally that's the pattern of each of

20  these?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  In terms of Count 6, which

23  relates to AV-7, you met her on a dating application, this is

24  paragraph 11, and that was in Mexico, and the -- you evidently

25  gave her some intoxicant or whatever, and then she lost

1    consciousness; is that correct in terms of paragraph 11?  Do

2    you agree with that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And then did you agree with your text

5    that you sent out on paragraph 12?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Paragraph 13 talks about your having

8    taken 77 photos and four videos depicting her during this two

9    hours and 30 minutes where she's unconscious and you're either

10   manipulating her body or doing certain actions sexually with

11   her; is that correct?

12             THE DEFENDANT:  That's correct.

13             THE COURT:  All right.  So in paragraph 14, would

14   you agree that in terms of the specific while she was

15   unconscious, the specific actions that you took?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Okay.  And so you're agreeing that you

18   sexually assaulted her; is that correct?

19             THE DEFENDANT:  That's correct.

20             THE COURT:  All right.  Paragraph -- excuse me,

21   count -- so we've done the first two counts, count 17 is

22   assault, coercion, and enticement, and recording.  And this

23   was someone that you knew and you persuaded her to come from

24   Chicago to the D.C. area to visit you.  And you gave her

25   instructions on exactly where to go; is that correct?

1              THE DEFENDANT:  That's correct.

2              THE COURT:  And then in paragraph 33 you gave her

3      some sort of substance or intoxicant such that she lost

4      consciousness; is that correct?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And this is AV-17.  And while she's

7      consciousness and not able to consent you took six photographs

8      of her and in terms of posing her in various places, in terms

9      of her partially being nude and taking certain sexual actions

10     with her; is that correct?

11             THE DEFENDANT:  Yes.

12             THE COURT:  So between November 2nd and the 7th you

13     persuaded, induced, or enticed her to travel from Chicago to

14     engage in sexual conduct with you in Virginia, is that

15     correct?

16             THE DEFENDANT:  That's correct.

17             THE COURT:  All right.  Count 19 talks about

18     production and transportation of obscene material.  And again,

19     I think it's -- you've rendered these victims with either a

20     drug, intoxicant, some sort of substance, such that without

21     their knowledge or permission, and they become unconscious and

22     you either pose them or take -- usually you undress them in

23     some form and you take photographs of them, either you're

24     sexually acting actions with them or your different posings

25     that you take, and you took photographs and videos without

1     their knowledge while they're unconscious and incapable of

2     consenting; is that accurate?

3                 THE DEFENDANT:  Yes, that's accurate.

4                 THE COURT:  And these -- and all of these the

5     unconscious women are in various stages of undress when you

6     pose them, manipulate them, or take these sexual actions; is

7     that correct?

8                 THE DEFENDANT:  That's correct.

9                 THE COURT:  All right.  And would you agree that the

10    production of these photographs or videos would meet the

11    definition of obscene matter in the context that they're

12    unconscious, that they're various states of undress and what

13    you're doing to their bodies, would you agree with that?

14                THE DEFENDANT:  Yes, I agree.

15                THE COURT:  And did you then move these photographs

16    and videos to other devices to storage spaces for safekeeping,

17    and paragraph 38 indicates various ones; is that correct?

18                THE DEFENDANT:  That's correct.

19                THE COURT:  And then you brought them into the

20    United States.  And the -- they list in paragraph 39 all of

21    the photographs and/or videos of the various victims, would

22    you agree with that?

23                THE DEFENDANT:  Yes.

24                THE COURT:  And then did you, on paragraph 40, use

25    interactive computer services as well as apple service located

1    in the United States, so you initially put them on an iCloud

2    wherever it is that you were situated, which would have been

3    generally out of the country, although not in all instances,

4    and then they would be moved to various Apple servers located

5    in the United States; is that correct?

6              THE DEFENDANT:  That's correct.

7              THE COURT:  And each of the victims of the

8    photographs or videos are on your laptops, mobile devices,

9    cloud storage, was a separate circumstance relating to very

10   specific victims in terms of transporting this obscene

11   material related  to them; is that correct?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Okay.  And then it sets out various

14   different recordings and assaults on five victims where you've

15   taken -- you've given them the intoxicants and, for instance,

16   let me just get this, the intoxicants and AV-8, for instance,

17   she's unconscious, incapable of consenting, and you take 13

18   photographs and one video.  And all of these they're in

19   various stages of undress, manipulated their body and/or their

20   sexual acts are committed on them; is that correct?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.  And then AV-2 is another one

23   and 33 photographs and one video.  And again this person was

24   given an intoxicant or substance that renders them

25   unconscious.  They're in various stages of undress and sexual

59

1    acts are committed on them, would you agree with that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  And then there was an additional set of

4    photographs and videos that was paragraph 48, would you agree

5    with that?

6                THE DEFENDANT:  Yes, I agree.

7                THE COURT:  In terms of AV-12, this is another one

8    that you had given an intoxicant to, who became unconscious,

9    and you took while unconscious, ten photographs and/or videos

10   again showing them partially nude, unconscious, and you're

11   taking various sexual acts with them, would you agree with

12   that?  That's paragraph 49 and 50.

13               THE DEFENDANT:  Yes.

14               THE COURT:  All right.  Moving to 51, this is

15   another AV-3, which you take 16 photographs and three videos.

16   And this is somebody who, again, was given an intoxicant, is

17   then unconscious, not consenting, various stages of undress,

18   and you take certain actions with her, certain manipulations,

19   would you agree with that?

20               THE DEFENDANT:  Yes, I agree.

21               THE COURT:  And the last one is AV-22, seven

22   photographs, again, now this was overseas some place.  And

23   again, given an intoxicant, become unconscious, photographs

24   are taken.  She's in various stages of undress.  She's -- body

25   is manipulated and/or certain sexual acts are committed by you

1    on her.  Would you agree with all of that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  And did you -- would you agree with

4    paragraph 56 that upon learning you were under investigation

5    in June of 2020, you attempted to delete these explicit photos

6    and videos depicting the victims from your iCloud account?

7                THE DEFENDANT:  That's correct.

8                THE COURT:  So I'll find in terms of the elements of

9    the offense relating to AV-1, you engaged knowingly in a

10   sexual act with her, and the -- she was unable to -- incapable

11   of appraising the condition, based on the fact that she had

12   been provided an intoxicant or other substance to render her

13   totally unconscious.  And this occurred in the special

14   maritime territorial jurisdiction of the United States in an

15   apartment in Mexico City assigned by the U.S. Government as

16   part of U.S. embassy personnel, which was the sexual abuse.

17                The abusive sexual conduct, which is AV-7, there's

18   evidence that the defendant knowingly engaged in or caused

19   sexual contact with AV-7.  And it describes what the specific

20   contact was.  And the intention on his part for doing it in

21   terms of gratifying his own sexual desires.  Did this by

22   rendering AV-7 unconscious by administering some drug or

23   intoxicant, such that she was substantially impaired and

24   unable to control the conduct that he was taking of her own.

25   Again, this occurred in special maritime or territorial

1    jurisdiction in Mexico City, but on property of the U.S.

2    Government.

3         Count 17 is coercion and enticement to travel,

4    AV-17, evidence that persuaded or induced AV-17 to travel from

5    Chicago to the D.C. area for the purpose of engaging in sexual

6    activity, at least from his part.  The committed aggravated

7    sexual battery against her in violation of the Virginia code.

8    And that there was evidence that while she was unconscious he

9    sexually abused her.  And it was done and it was able to be

10   done because she was physically helpless being unconscious.

11   And that he knew or should have known that she was physically

12   helpless, which the facts support.  It meets the sexual abuse

13   standard as well as the definition of intimate parts.  So I'll

14   find that there's elements for Count 17.

15        And Count 19 is transportation of obscene material.

16   The material in terms of the photographs, videos from Mexico

17   that go to the iCloud that are then passed on to the Apple

18   server in the United States.  Defendant brought in the United

19   States or to the place subject to the jurisdiction obscene

20   matter, which we've already indicated such as AV-8 and knowing

21   at the time that what he was transferring in terms of the

22   content, the nature of the matter, and the character.  So I'll

23   find that he's admitted conduct that meets the elements of the

24   offense that he's pleading guilty to.

25        In terms of the other individuals, which I will not

```
1    go through at this point, you're not pleading guilty to, but

2    are listed, I take it that you, as I understand it that you

3    gave in some form, usually I assume in terms of whatever the

4    alcohol drink was, some intoxicant or some substance which

5    would render them unconscious; is that correct?

6              THE DEFENDANT:  That's correct.

7              THE COURT:  And then when they're unconscious, then

8    you either fully undress them or partially undress them; is

9    that correct?

10             THE DEFENDANT:  In some instances, yes.

11             THE COURT:  What instances were they not -- would

12   they not have had something with their clothing?

13             THE DEFENDANT:  Some of them the photos were taken

14   while they were undressed, some of them the clothes were

15   removed by myself and some of them were not.

16             THE COURT:  Okay.  But I take it that they were

17   unconscious; is that correct?

18             THE DEFENDANT:  That's correct.

19             THE COURT:  Okay.  And then once they were

20   unconscious, you performed certain sexual acts or manipulated

21   so that they would perform sexual acts on their own body,

22   would you agree with that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And then photos or videos were taken of

25   those actions?
```

1          THE DEFENDANT:  Correct.

2          THE COURT:  All right.  Is there any particular

3     defense that the Court needs to discuss that he would be

4     waiving?

5          MR. KATZOFF:  I don't believe so, Your Honor.

6          THE COURT:  Okay.  So I'll find that the defendant

7     has admitted conduct that meets the elements of the offenses

8     that he's pleading guilty to, both the government's proffer

9     and his admissions are beyond a reasonable doubt as to those

10    elements of the offenses.

11         So we have a written letter, which is what I'm going

12    to move to next.  You've indicated to me that you read it over

13    very carefully; is that correct?

14         THE DEFENDANT:  That's correct.

15         THE COURT:  Do you have any questions about it at

16    this point?

17         THE DEFENDANT:  No, I don't.

18         THE COURT:  All right.  What I'm going to do is I

19    eventually will get to the letter itself, but let me start

20    with the statutory penalties.  The statutory penalties

21    Congress has set maximum sentences for different crimes.  And

22    the Court cannot sentence you above those, that would be an

23    unlawful sentence.  And I'll get into what they are.

24         The -- in terms of the statutory penalties as well

25    for each of the counts there's a special assessment of $100.

1    And there is also based on the nature of the offenses, a

2    $5,000 fine that's specific to this case in addition to the

3    regular fines that you would have associated with each of

4    these offenses.

5              Is that correct?  Would you agree?

6              THE DEFENDANT:  I agree.

7              THE COURT:  All right.  So for Count 1, and this is

8    in the plea agreement on page 2 if you want to look.  The

9    violation of sexual abuse, there's no mandatory minimum

10   sentence.  There is a maximum sentence of life, a fine a

11   maximum of $250 -- or $250,000, excuse me, or 2 times the

12   pecuniary financial gain or loss, a term of supervised release

13   of not less than five years and up to life.  There is a

14   mandatory restitution to the victims that the Court will have

15   to consider at some point.

16             In terms of supervised release, if you're given a

17   period of jail time you would be given a period to be

18   supervised in the community with certain conditions.  If you

19   violate those conditions by not following through with them or

20   you commit a new offense, your supervised release can be

21   revoked and there's a new sentence that is imposed.  The

22   important part for you to know is that you will not get it

23   reduced by the sentence that you've already served.  So this

24   will be a new sentence that you would need to serve time for.

25   So, for instance, now the period of time that you've been

1    locked up would go to reduce any sentence the Court gave you

2    on the four counts that you're pleading guilty to, but in

3    the -- revocation of supervised release that would not happen.

4    Do you understand that?

5                THE DEFENDANT:  I understand.

6                THE COURT:  All right.  And then Count 6, is the

7    abusive sexual conduct that carries no mandatory minimum,

8    maximum of ten years imprisonment.  Maximum fine of $250,000

9    or, again, twice the pecuniary or financial gain or loss.  A

10   term of supervised release of not less than five years, up to

11   life.  And again, there's mandatory restitution to the

12   victims.  Do you understand that?

13               THE DEFENDANT:  Yes, I do.

14               THE COURT:  And then Count 17, which is coercion and

15   enticement, carries no mandatory minimum sentence, a maximum

16   sentence of 20 years, a fine of $250,000 or two times the

17   financial gain or loss, and a term of supervised release of

18   not less than five years up to life, and a court ordered

19   restitution again, do you understand?

20               THE DEFENDANT:  Yes, I do.

21               THE COURT:  And then the last count is Count 19,

22   which is transportation of obscene material, carries no

23   mandatory minimum sentence.  A maximum sentence of five years

24   in prison.  A maximum fine of $250,000.  A term of supervised

25   release of at least one year, but not more than three.  And

1    then again, the Court ordered restitution.  So those would be

2    the mandatory minimums and the Court -- not mandatory minimum,

3    the statutory maximums that the Court could sentence you to.

4    And you would consider that in the context of your Rule

5    11(c)(1)(C).

6            The other important aspect of this that's in the

7    letter agreement is the advisory sentencing guidelines.  So in

8    terms of sentencing, the Court would consider factors that are

9    set out in a statute, 3553(a).  And they're very broad

10   factors, they're things like your background, rehabilitation

11   needs, the seriousness of the offense, just punishment,

12   deterrence to you, deterrence to others, those kinds of

13   things.

14           The probation department will prepare a presentence

15   report, they'll set out the offense conduct, they'll give

16   background information relating to you personal, any criminal

17   history.  They will discuss education, job history, your

18   finances, any substance abuse issues, your physical condition,

19   any mental health issues, those kinds of things.  They will

20   also make a recommendation to the Court of a sentence, and

21   they will also do the advisory sentencing guideline

22   calculations.  And that's going to be the official one.  The

23   ones that have been in the plea agreement is the best guess of

24   both the defense counsel and the government.  And so that

25   would give you some idea of what they're likely to come up

 1    with.

 2            So I'm going to go through those, they're on --

 3    starting on page 5 in a moment, but I also want to discuss

 4    with you in terms of within the advisory sentencing guidelines

 5    there are apart from coming up with a range which is what you

 6    do in terms of the jail time, that and a range as to the fine

 7    is what the advisory guidelines come with, there's a

 8    commission that Congress set up and this was to try to have

 9    more uniformity in sentencing by judges, so that they would

10    consider factors that every judge should relating to a

11    particular charge or particular conduct, and so it's all

12    points.  And they start with whatever the initial charge is

13    with points and then you add or subtract points to it.  And

14    then you come up with a range which the Court is expected to

15    consider in doing a sentence.

16            Now, the advisory sentencing guidelines also have

17    what we call departures.  They're very narrow because the idea

18    is that the Sentencing Commission has considered everything

19    that you're supposed to consider.  So these are -- usually

20    they're cooperation, substantial assistance, something of that

21    nature.  But they are very narrow, but they are available.

22            Also, because these advisory sentencing guidelines

23    are just that, they're advisory they're not mandatory, the

24    court can always sentence you to what we call a variance.  Now

25    it can't be above the statutory maximums.  And the Court of

1      Appeals requires me, as a judge, to do the calculation under

2      the guidelines, consider departures, and then give a very

3      specific explanation as to why I'm not sentencing you within

4      the sentencing guideline range and why I'm doing a variance.

5      Okay.  So that sort of sets out the outside scheme within

6      which you're going to consider it.

7                So if you get to page 5 on the agreement, do you

8      have that in front of you?

9                THE DEFENDANT:  I do.

10               THE COURT:  Okay.  So Count 1 talks about that and

11     it's numbers.  So the base offense level is 30, and that's

12     related to what the nature of the charge is.  And then there

13     are other what we call enhancements.  So because an intoxicant

14     was administered you get an additional four points.  Because

15     the victims were vulnerable, you get an additional two points.

16     There were a large number of vulnerable victims so you get an

17     additional two points.  And the obstruction of justice relates

18     to you trying to delete things from the iCloud, so that's an

19     additional two points, which comes to 40.

20               Now, eventually you're -- there's -- if you accept

21     responsibility, then you can deduct three points, which in

22     terms of most schemes.  And what they've indicated there is

23     that you gave them an intoxicant without their knowledge,

24     permission, which rendered them unconscious, and so they were

25     not able to control their conduct during and in relation to

the acts that you took, sexual acts that were involved with

them.

Count 6 is abusive sexual conduct, that starts again

with 20 as the base offense, and the intoxicant is an extra

four points; vulnerable victim, another two; large number of

vulnerable victims, two; obstruction of justice, two.  And

that comes up to 30.  Then you look at the coercion and

enticement, this one the base offense is 14, two points

vulnerable victim, large number of vulnerable victims, two

points, obstructing justice two, comes to 20.  Then

transportation of obscene material, base offense is 10, and

then the two points for an interactive commuter service and

the obstruction which comes to 14.

So what they then do with when you have multiple

counts they do a combined adjustment based on all the

different counts and what the total offense level is.  And

they consider different units.  And they usually go by

whatever the highest offense level.  So we have offense levels

40, 30, 20 and 14.  So the adjusted offense level is going to

be 40.

Now, ordinarily you would -- 40 would be reduced by

another three -- potentially two and three points for

acceptance of responsibility.  But my understanding is that

you're agreeing that you're not entitled to it because you

previously withdrew your guilty plea in this case.  And did

1    obstruct the investigation by making an effort to delete what

2    was in the iCloud.  So you're left with the estimated offense

3    level of 40.  So do you understand and agree everything so

4    far?

5            THE DEFENDANT:  Yes, I understand.

6            THE COURT:  Okay.  And Criminal History Category I,

7    there are no criminal history points.  In terms of your having

8    any criminal history usually you looked at convictions, how

9    long ago, and what the sentence was but you don't have any.

10   So you're in Criminal History Category I according to their

11   information at this point.  So on page 7 it talks about the

12   estimated sentencing range being between 292 months to 365

13   months.  And the fine range is $50,000 to $500,000.  And

14   you've reserved the right to request that you not have to pay

15   a fine.  So is that your understanding and agreement?

16           THE DEFENDANT:  Yes, it is.

17           THE COURT:  Okay.  So did you discuss with your

18   counsel the advisory guidelines and how they might apply to

19   your case?

20           THE DEFENDANT:  Yes, I did.

21           THE COURT:  Okay.  And do you understand that I

22   won't be able to decide on the guideline until after I get the

23   presentence report.  And you and the government will have an

24   opportunity once you get it before I get it, to object to

25   either the facts if they're incorrect, conclusions, or

1    actually to the calculation itself.  If there are objections,

2    then I will, when I get it and they're still extant, then I

3    will resolve the objection before going forward with the

4    sentence, do you understand and agree?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  So the calculation may turn out to be

7    slightly different and the sentence -- the estimate may be

8    different as well, do you understand and agree?

9              THE DEFENDANT:  I understand and agree.

10             THE COURT:  Do you also understand that after I've

11   decided on the guideline, that I have the authority to impose

12   a sentence more severe, less severe, and those are those

13   departures that I spoke about.  Do you understand that?

14             THE DEFENDANT:  Yes, I do.

15             MR. KATZOFF:  Your Honor, you're talking about in

16   the event you don't accept the plea?

17             THE COURT:  Yes, I should indicate that that some of

18   this relates to if I do not accept the Rule 11(c)(1)(C) plea.

19   So I think what I would do at this point is to move to the --

20   move from my questions to the actual plea letter.  And I'll

21   just go through it by page and indicate where we're talking

22   about.

23             So you've indicated at the top what you're pleading

24   guilty to, in terms of each one of these on page 2.  You're

25   indicating -- they're indicating that the additional charges

 1    would be -- at the time of sentencing would be, I believe

 2    would be dismissed.

 3              In additional charges they have an indication that

 4    they consulted with the U.S. Attorney's Office for the Eastern

 5    District of Virginia and they've agreed not to bring charges

 6    for your conduct in Virginia.  Also, pleading to 1, 6, 17 and

 7    19, if I accept that and the plea is not withdrawn, based on

 8    an agreement on the part of the Court that I would sentence

 9    you to the range that has been set out, which is 24 to 30

10    years, assuming that I have accepted that, then that would be

11    the range that you get.  If I don't accept it, then both you

12    and the government have an opportunity to request that it be

13    withdrawn.  Assuming that there's -- that it's not withdrawn,

14    then no additional material would be brought, and charges in

15    the U.S. Attorney's -- by the U.S. Attorney's Office for

16    Maryland.  So is that your understanding and agreement as

17    well?

18              THE DEFENDANT:  It is.

19              THE COURT:  And again, provided the plea is accepted

20    by me, and not later withdrawn by either you or the

21    government, then also no charges would be brought by the U.S.

22    Attorney's Office for the Southern District of California, or

23    the Northern District of Illinois.  Is that your understanding

24    and agreement?

25              THE DEFENDANT:  Yes, it is.

1      THE COURT:  So in other words it would -- this -- if

2  I accept the sentencing, so the plea would be fully accepted,

3  then -- and if I hadn't accepted it, nobody has withdrawn,

4  then all of these potential additional charges will not occur

5  and will not be brought against you.  Do you understand and

6  agree?

7      THE DEFENDANT:  I understand and agree.

8      THE COURT:  All right.  Page 4 talks about what the

9  sentencing range that the parties have agreed to.  And that

10  the Court is being requested to agree to it as well.  And as I

11  said, this is 24 to 30 years of incarceration and a lifetime

12  of supervised release, would be what the agreement would need

13  to be. It indicates that if the Court accepts it, that's

14  actually what you will get as your sentence.

15      Now, if I reject it then there are choices.  You can

16  decide not to withdraw your plea, in which case you would be

17  sentenced as you would in a regular defendant without any

18  particular agreement as to what the range would be, other than

19  the calculations we would do with the advisory sentencing

20  guidelines and that whole system.  Or you could decide to

21  withdraw your plea, as well as the government also has the

22  right to withdraw as well.  In which case, you know, the plea

23  would obviously be null and void, do you understand and agree?

24      THE DEFENDANT:  Yes, I do.

25      THE COURT:  So pages 6 -- and I won't go through

74

1    each one of the -- between the calculations that there's

2    language in there, I won't go through all of that, but I'm

3    assuming you've looked at it carefully as to what you're

4    acknowledging in terms of the estimations; is that correct?

5            THE DEFENDANT:  That's correct.

6            THE COURT:  Okay.  So then moving to page 7,

7    criminal history we said was I.  And the estimated guideline

8    range is 292 to 365 months.  And this assumes that the Court

9    is not accepting it and the people have not -- neither you nor

10   the government have withdrawn it, that there would not be

11   upward or downward departures.  Also, that obviously the

12   estimated guideline range is not binding on either the

13   probation document or me, it's an agreement between you and

14   the government.  Do you understand and agree?

15           THE DEFENDANT:  Yes, I do.

16           THE COURT:  Okay.  And so moving to page 8.  If I

17   reject the agreement then -- and you elect to maintain it, and

18   the government does not ask to withdraw it, then you're

19   agreeing that if I sentence you within the estimated guideline

20   range that that would be a reasonable sentence based on those

21   statutory factors I talked about.  You are reserving the right

22   under those circumstances to seek a sentence below the

23   estimated range based on the factors in the statute.  Is that

24   your understanding and agreement?

25           THE DEFENDANT:  Yes, that's correct.

1           THE COURT:  And again, if I reject the plea, but you

2    maintain the plea and the government doesn't withdraw, then

3    the Court will be considering the sentence pursuant to the

4    factors.  Is that your understanding and agreement?

5           THE DEFENDANT:  It is.

6           THE COURT:  Okay.  Again, further down, if I reject

7    the agreement, you don't withdraw, the government doesn't

8    withdraw, then the Court is authorized under those

9    circumstances to sentence you up to the statutory maximum.

10   And it's understood under those circumstances you would not

11   have a right to withdraw, but based on the fact that the --

12   what the length of the sentence, do you understand and agree?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  All right.  Moving to page 9.  And this

15   gets to whatever decisions and indications you have about what

16   you would be obviously able to make recommendations, and the

17   government as well, as to within the range, assuming that I'm

18   accepting the range that's being proposed for the sentence, as

19   to what, you know, what I should sentence you within that

20   range that's being proposed.  And there's various other

21   agreements about what the recommendations would be.  None of

22   those agreements would apply to any kind of post sentence

23   litigation that could be before the Bureau of Prisons or

24   elsewhere.

25          They're also indicating Rule 35(b).  And what that

1    is is that once the Court sentences you, the government can

2    move to reduce your sentence, usually it's based on

3    cooperation of some sort or your assistance.  They're

4    indicating to you that they're not planning on filing such a

5    motion.  Do you understand and agree?

6              THE DEFENDANT:  Yes, I understand.

7              THE COURT:  Okay.  Then moving down to other

8    waivers, we've talked about venue, which is in terms of the

9    venue as to whether it should have been brought within the

10   District of Columbia or elsewhere.  And my understanding is

11   that you've had discussions as to the pros and cons of

12   challenging that; is that correct?

13             THE DEFENDANT:  That's correct.

14             THE COURT:  And understanding that there could be

15   arguments both ways, that you have decided not to raise that

16   argument and to actually give up the right to challenge the

17   jurisdiction of the Court on venue grounds; is that correct?

18             THE DEFENDANT:  That's correct.

19             THE COURT:  All right.  The statute of limitations,

20   and this only comes up if the agreement is vacated, but it's

21   not based on the withdrawal of the -- withdrawal if I reject

22   the proposed sentencing range.  And it's -- this is vacated on

23   different grounds, okay.  So it doesn't -- it doesn't relate

24   to that.

25             The -- Congress has set out time frames for when you

1    have to prosecute the case, so it has to be done within a time

2    period of when you committed the offense as to when they

3    charge you.  And it should be that you have a defense that

4    they brought it outside that time frame.  This indicates that

5    if the plea is vacated, that at some later point, if they

6    wanted to reinstate the charges and the -- at that point the

7    statute of limitations has run, you would not be raising it as

8    a defense.  Now, this only comes up if rejected the plea,

9    nobody has withdrawn it, and then it's vacated for other

10   reasons at a later point.  Do you understand and agree?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  If I make it too complicated with this

13   don't be hesitant to ask.  I'm trying to do it in summary

14   form.

15             THE DEFENDANT:  I understand.  Thank you.

16             THE COURT:  The trial rights.  I've gone through all

17   of them.  The only one is the second sentence in terms of

18   whether you're agreeing to enter this plea without asking for

19   further information.  Is that your understanding and

20   agreement?

21             THE DEFENDANT:  Yes, it is.

22             THE COURT:  All right.  Page 10, talks about various

23   rules of evidence and procedure.  And this comes up with the

24   plea is withdrawn.  But not if it's withdrawn because I've --

25   I'm excluding, if it's withdrawn based on the fact that I have

1    not accepted the sentencing range.  So we're not in that.

2    I've rejected the, you know, the sentencing range and

3    everybody is moving forward.  If at a later point it's

4    withdrawn, ordinarily statements you've made today or by any

5    other admissions would only be used to impeach you, to

6    undercut your credibility if you got up on the stand and said

7    something different than what you said today.  What you're

8    indicating is that your statements and admissions could be

9    used against you in any further proceeding; do you understand?

10           THE DEFENDANT:  I understand.

11           MR. KATZOFF:  Your Honor, I'm not sure how much

12   longer we have --

13           THE COURT:  Sure.  No, you want to refine this.

14   That's fine.

15           MR. KATZOFF:  But you know I have a 4:00 o'clock

16   obligation to pick up a 3 and a half-year-old and I'm the only

17   one that can do it and it's quite a ways away.

18           THE COURT:  Okay.

19           MR. KATZOFF:  And so I need to have some ability to

20   perhaps continue this to complete it or --

21           THE COURT:  Okay.  We can -- we can do that.  We're

22   probably halfway through, but I understand your issue.  If you

23   would like -- I have stuff tomorrow, but let me -- are you

24   available -- what I would like to do is to have it be -- can

25   you do it first thing in the morning?  I have a civil case,

```
 1    but I'll move it.  And can the government do it?  We're

 2    probably three-quarters of the way.

 3              MS. BUCKNER:  Yes, Your Honor.

 4              MR. KATZOFF:  I can do it.  I just have to move a

 5    medical appointment and I can do that, Your Honor.

 6              THE COURT:  Are you sure, because I have a little

 7    bit of time, otherwise.  I just, in terms of continuity I

 8    think it would be better if we could do it first thing and get

 9    it finished.  As I said, we're about three-quarters of the

10    way.

11              MR. KATZOFF:  I agree, I think I would rather do it.

12    My appointment's at 11:00, if I don't make it I'll reschedule

13    it.

14              THE COURT:  That's fine.  As I say, we're almost

15    done.  The are more time consuming part was the statement of

16    offense, okay.  So we'll do it -- we'll continue this at 9:00

17    o'clock.  Okay.  And I'll pick up at the point where we're

18    talking about collateral attacks.  So it's on page 11 of the

19    plea agreement, the actual letter.

20              I'll see you tomorrow.

21              MR. KATZOFF:  Do you have any time later in the day

22    tomorrow?  I'm just noticing that I had another appointment at

23    9:30 that I'd rather not miss.  It's an appointment with the

24    prison to speak to a client that I've been trying to schedule.

25              THE COURT:  Okay.  Hold on.  I have executive
```

80

1    session for the judges at 4:30, a sentencing at 10:00, to be

2    frank I have a doctor's appointment with my husband, I need to

3    be there, that's at 12:30, trying to do it at lunch.  What

4    would you be proposing?

5              MR. KATZOFF:  I was -- well, I guess after your

6    doctor's appointment.

7              THE COURT:  The sentencing is going to be quick

8    because we all agree on the sentence, so that's at 10:00, but

9    I would have to leave by -- that's not going to work, sorry.

10   We can do that 3:30 to 4:30?

11             MR. KATZOFF:  Your Honor, let me do this, let's do

12   it first thing and I'll email the BOP and see if it's possible

13   to just push it back an hour and hopefully I can do that.

14             THE COURT:  Okay.  If not, get back to me and I'll

15   do 3:30 to 4:30.

16             MR. KATZOFF:  Very well.

17             THE COURT:  Okay.  Once you get out if you could let

18   us know quickly. I would appreciate it, so everybody knows

19   when they need to get back here.  All right.  Thank you.

20             MR. KATZOFF:  So we're tentatively set at 9:00?

21             THE COURT:  We'll set it at 9:00 unless you can't

22   move it, in which case let me know.

23             MR. KATZOFF:  All right.  I'll let you know this

24   evening, or late this afternoon.  Thank you.

25             THE COURT:  Thank you.  I appreciate the efforts.

81

1          MR. KATZOFF:  Thank you, Your Honor, I appreciate

2     it.

3          (The proceedings were concluded at 3:17 p.m.)

4

5          I, Christine Asif, RPR, FCRR, do hereby certify that
      the foregoing is a correct transcript from the stenographic
6     record of proceedings in the above-entitled matter.

7          _____/s/_____
                  Christine T. Asif
8             Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

< Dates >.
5/8/76  8:13.
67.3.  50:19.
April 21st,
  2006,
  46:10.
April 21st,
  2006.
  46:14.
April 9th,
  2017,
  35:21.
April 9th,
  2017.
  36:7.
April of 2020,
  42:12.
August 21st,
  2018,
  24:21.
December 1st,
  2017,
  45:16.
December 1st,
  2017.
  45:24.
December 21st,
  2019.   31:4,
  31:10.
December 8th,
  2013,
  34:21.
December 8th,
  2013.
  35:2.
February 2,
  2018,
  43:14.
February 2nd,
  2018.
  44:10.
February 8th,
  2019,
  33:19.
June 1st, 2020,
  24:22, 42:25,
  43:5.
June 2020,
  47:10.
June 23, 2019,

31:14.
June 23rd,
  2019,  30:23,
  31:9.
June of 2020,
  60:5.
March  42:11.
March 25th
  27:23.
March 25th,
  2020,
  27:4.
March 27th,
  2020
  42:24.
March 27th,
  2020,
  43:4.
March 27th,
  2020.
  42:14,
  42:19.
May  2:16.
May 14th, 2017,
  36:24.
May 14th, 2017.
  37:18.
May 17th, 2019,
  32:15.
May 17th, 2019.
  32:24.
May 30, 2020,
  30:7.
May 30th
  29:18.
May 30th, 2020,
  29:2.
May 31st, 2020,
  26:2, 26:17,
  29:19,
  30:8.
November 2,
  2015,
  39:25.
November 2018,
  43:25.
November 23rd
  44:19.
November 2nd
  56:12.

November 6th,
  2015,
  39:4.
November 7,
  2015,
  40:1.
November of
  2015.
  38:17.
September 15th,
  2018,
  45:3.
September 15th,
  2018.
  45:10.
September 2018,
  43:23.
$100 63:25.
$250 64:11,
  65:8, 65:16,
  65:24.
$5 64:2.
$50 70:13.
$500 70:13.
.
< 0 >.
00 78:15,
  79:12, 79:16,
  80:1, 80:8,
  80:21.
000 64:2,
  64:11, 65:8,
  65:16, 65:24,
  70:13.
.
.
< 1 >.
1 6:5, 6:9,
  7:4, 24:14,
  47:22, 48:2,
  48:5, 48:23,
  49:23, 51:8,
  51:19, 52:9,
  52:24, 64:7,
  68:10,
  72:6.
10 6:15, 15:18,
  16:5, 45:9,
  69:11, 77:22,

80:1, 80:8.
11 6:16, 49:21,
  50:7, 54:24,
  55:1, 79:12,
  79:18.
11(c)(1)(c 7:9,
  66:5,
  71:18.
12 6:16, 13:5,
  50:17, 55:5,
  80:3.
13 6:17, 42:18,
  51:4, 55:7,
  58:17.
14 6:18, 49:7,
  49:13, 55:13,
  69:8, 69:13,
  69:19.
1462(a 43:11.
15 6:18,
  27:23.
16 6:20, 45:23,
  59:15.
17 6:22, 7:6,
  50:1, 51:20,
  55:21, 61:3,
  61:14, 65:14,
  72:6, 81:3.
18 6:24, 25:6,
  26:25, 30:20,
  40:4, 40:5,
  43:10.
18.2 50:18.
19 6:25, 7:8,
  50:20, 50:24,
  51:20, 56:17,
  61:15, 65:21,
  72:7.
1:05 p.m.
  1:13.
.
.
< 2 >.
2 6:10, 48:10,
  53:2, 53:9,
  53:23, 64:8,
  64:11,
  71:24.
2-67 40:4.
20 6:25, 27:22,

65:16, 69:4,
  69:10,
  69:19.
20001 1:44.
20004 1:37.
2018 44:19.
202 1:45.
2020 27:24,
  29:19.
2023 1:12.
20530 1:30.
21 7:1.
21-0380-CKK
  1:6.
21-380 2:2.
22 7:1.
2242(2 27:1.
2244(a)(1
  30:20.
23 7:2.
24 7:2, 7:11,
  7:12, 72:9,
  73:11.
2422(a 40:6.
24th 44:19.
25 7:2,
  32:23.
26 29:12.
26th 27:24.
29 31:8.
292 70:12,
  74:8.
.
.
< 3 >.
3 6:11, 40:4,
  48:6, 48:20,
  50:13, 53:17,
  78:16, 80:10,
  80:15,
  81:3.
30 7:11, 7:12,
  29:13, 29:19,
  55:9, 68:11,
  69:7, 69:19,
  72:9, 73:11,
  79:23, 80:1,
  80:3, 80:10,
  80:15.
310 1:36.

31st 29:19.
32 50:7,
  50:10.
33 44:9, 56:2,
  58:23.
333 1:43.
34 41:13.
35 31:9,
  50:17.
35(b 75:25.
354-3247
  1:45.
3553(a 66:9.
36 51:3.
365 70:12,
  74:8.
37 51:3.
38 57:17.
39 57:20.
.
.
< 4 >.
4 6:11, 27:12,
  48:22, 49:21,
  53:23, 73:8,
  78:15, 80:1,
  80:15.
40 35:1, 57:24,
  68:19, 69:19,
  69:20, 69:21,
  70:3.
400 41:24.
42 51:9.
44 44:18.
47 8:11.
48 9:1, 10:1,
  10:5, 59:4.
49 59:12.
4:30 80:10.
4th 1:29.
.
.
< 5 >.
5 6:12, 49:13,
  54:4, 67:3,
  68:7.
50 59:12.
51 59:14.
511 41:9.
555 1:29.

56 60:4.
.
.
< 6 >.
6 6:12, 7:5,
  48:7, 48:14,
  49:2, 49:3,
  51:20, 54:8,
  54:22, 65:6,
  69:3, 72:6,
  73:25.
68 41:17.
.
.
< 7 >.
7 6:13, 70:11,
  74:6.
7(9 25:6,
  27:1.
7(9) 30:20.
717 1:35.
77 29:17,
  55:8.
7th 56:12.
.
.
< 8 >.
8 6:14,
  74:16.
.
.
< 9 >.
9 6:14, 27:23,
  28:8, 28:9,
  75:14, 79:16,
  79:23,
  80:21.
9:00 80:20.
_____/s/____
  _____
  81:9.
.
.
< A >.
A. 1:27.
ability 26:20,
  28:17, 30:11,
  32:4, 33:9,
  34:12, 35:12,
  36:15, 38:7,

39:16, 48:17,
  49:17, 54:11,
  78:19.
able 3:6, 17:1,
  56:7, 61:9,
  68:25, 70:22,
  75:16.
above 17:10,
  17:11, 17:12,
  17:17, 63:22,
  67:25.
above-entitled
  81:7.
abuse 6:9,
  6:11, 7:4,
  25:20, 28:23,
  30:17, 32:11,
  33:14, 34:17,
  35:17, 36:19,
  38:12, 39:21,
  40:22, 48:3,
  60:16, 61:12,
  64:9,
  66:18.
abused 61:9.
abusive 6:11,
  6:12, 6:13,
  6:14, 6:15,
  6:16, 6:17,
  6:18, 7:5,
  25:20, 60:17,
  65:7, 69:3.
accept 11:18,
  12:11, 14:13,
  15:20, 20:11,
  22:19, 68:20,
  71:16, 71:18,
  72:7, 72:11,
  73:2.
acceptance 8:3,
  22:17,
  69:23.
accepted 15:11,
  15:12, 72:10,
  72:19, 73:2,
  73:3, 78:1.
accepting 74:9,
  75:18.
accepts
  73:13.

according
  70:10.
account 41:5,
  41:23, 41:24,
  47:12,
  60:6.
accurate 24:9,
  52:8, 52:25,
  53:1, 57:2,
  57:3.
acknowledging
  74:4.
act 6:21, 6:23,
  7:7, 26:23,
  48:6, 48:19,
  54:12,
  60:10.
acting 56:24.
ACTION 1:5.
actions 26:11,
  26:25, 28:22,
  30:17, 30:19,
  32:10, 32:11,
  33:14, 34:16,
  35:16, 36:19,
  38:12, 39:20,
  39:23, 40:5,
  40:21, 43:10,
  51:14, 54:6,
  55:10, 55:15,
  56:9, 56:24,
  57:6, 59:18,
  62:25.
activity 50:14,
  61:6.
acts 28:19,
  30:13, 32:6,
  54:18, 58:20,
  59:1, 59:11,
  59:25, 62:20,
  62:21,
  69:1.
actual 3:17,
  19:17, 71:20,
  79:19.
actually 3:12,
  4:22, 5:18,
  12:18, 17:11,
  18:15, 18:24,
  47:14, 47:23,

47:25, 71:1,
  73:14,
  76:16.
add 67:13.
addition 8:1,
  24:1, 64:2.
additional
  21:17, 21:22,
  23:8, 23:15,
  39:24, 59:3,
  68:14, 68:15,
  68:17, 68:19,
  71:25, 72:3,
  72:14,
  73:4.
Additionally
  44:16.
adjusted
  69:19.
adjustment
  69:15.
administered
  25:8, 25:10,
  25:18, 50:21,
  53:4,
  68:14.
administering
  25:16, 26:18,
  28:15, 30:9,
  32:2, 33:7,
  34:10, 35:10,
  36:13, 38:5,
  39:14, 40:9,
  48:15, 49:11,
  49:15,
  60:22.
admissions
  63:9, 78:5,
  78:8.
admitted 16:14,
  61:23,
  63:7.
admitting
  4:24.
adult 25:11,
  25:19.
advice 19:9,
  19:14, 19:20,
  20:2,
  20:10.

advised 19:9,
  19:12,
  19:24.
advisory 5:9,
  66:7, 66:21,
  67:4, 67:7,
  67:16, 67:22,
  67:23, 70:18,
  73:19.
afford 13:15.
afternoon 2:6,
  2:10, 2:11,
  2:14, 2:15,
  27:5,
  80:24.
Afterwards
  41:1.
again. 29:15.
age 8:10.
aggravated
  6:10, 50:18,
  61:6.
ago 70:9.
agreed 7:10,
  18:14, 48:4,
  48:8, 49:7,
  49:14, 49:23,
  50:8, 50:16,
  51:15, 72:5,
  73:9.
agreeing 7:23,
  16:9, 17:24,
  18:11, 18:25,
  55:17, 69:24,
  74:19,
  77:18.
agreement 3:9,
  4:11, 5:10,
  5:16, 5:17,
  7:13, 7:20,
  8:1, 8:4,
  16:2, 17:18,
  22:19, 52:4,
  52:6, 64:8,
  66:7, 66:23,
  68:7, 70:15,
  72:8, 72:16,
  72:24, 73:12,
  73:18, 74:13,
  74:17, 74:24,

75:4, 75:7,
  76:20, 77:20,
  79:19.
agreements
  7:24, 75:21,
  75:22.
agrees 48:16,
  51:2.
Air 41:4,
  41:9.
alcohol 29:6,
  33:25, 44:3,
  62:4.
alcoholic 31:1,
  31:5, 34:22,
  42:16, 45:7,
  45:19,
  46:11.
alleged 48:22,
  48:23, 49:6,
  49:13, 49:20,
  49:23, 50:4,
  50:16,
  50:21.
allocution
  7:25.
almost 79:14.
already 20:22,
  21:25, 61:20,
  64:23.
alternative
  37:6.
although 16:21,
  19:17,
  58:3.
America 1:5,
  24:7.
anal 26:12.
and/or 16:14,
  16:16, 16:23,
  25:12, 25:14,
  26:22, 28:18,
  30:13, 32:5,
  33:11, 34:14,
  35:13, 36:16,
  38:8, 39:17,
  40:19, 41:23,
  57:21, 58:19,
  59:9,
  59:25.

Angela 1:25,
2:6.
anonymized
6:8.
answer 5:25.
answers
18:23.
antidepressants
9:24.
anybody
22:21.
apart 67:5.
apartment
24:24, 27:24,
29:4, 30:25,
32:17, 33:21,
36:2, 37:5,
37:6, 37:7,
38:20, 38:23,
38:24, 42:13,
43:16, 45:5,
49:22, 51:10,
60:15.
appeal 14:19,
14:21, 14:24,
15:2, 15:22,
16:1, 16:5,
16:11, 16:21,
16:24, 16:25,
17:1, 17:4,
17:18, 17:19,
17:20.
Appeals 14:20,
68:1.
APPEARANCES
1:23.
appears
37:20.
Apple 41:21,
43:2, 51:12,
57:25, 58:4,
61:17.
application
26:2, 27:4,
29:2, 30:23,
32:15, 33:19,
35:21, 36:24,
42:11, 43:14,
45:3, 45:16,
54:23.

apply 13:8,
70:18,
75:22.
appointed
13:16,
21:22.
appointment
79:5, 79:12,
79:22, 79:23,
80:2, 80:6.
appraise 26:21,
28:17, 30:12,
32:4, 33:10,
34:13, 35:12,
36:15, 38:7,
39:16, 48:17,
49:17,
53:7.
appraising
25:12, 48:11,
60:11.
appreciate
23:22, 80:18,
80:25,
81:1.
approximately
29:19.
area 26:14,
38:17, 39:9,
50:5, 50:6,
55:24,
61:5.
argument
76:16.
arguments
76:15.
arm 31:15,
34:3, 35:4,
42:23.
arms 44:25.
around 37:9,
47:10.
arouse 28:24,
30:18, 32:12,
33:15, 34:17,
35:18, 36:20,
38:13, 39:21,
40:23.
arrived 27:14,
29:5, 31:1,

31:4, 32:18,
33:22, 42:15,
45:6.
Asif 1:39,
81:5,
81:10.
aspect 66:6.
Assault 25:25,
27:2, 28:25,
30:21, 32:13,
33:17, 34:19,
35:19, 36:22,
38:14, 42:9,
43:12, 45:1,
45:14, 46:6,
55:22.
assaulted
26:24, 30:19,
55:18.
assaulting
26:9.
assaults
58:14.
assert 14:10.
assessment
63:25.
assigned 24:24,
25:2,
60:15.
assistance
17:20, 67:20,
76:3.
associated
64:3.
assume 62:3.
assumes 74:8.
Assuming 72:10,
72:13, 74:3,
75:17.
ASUS 41:3,
41:12,
41:15.
attacks
79:18.
attempted
47:10,
60:5.
Attorney 1:28,
2:8, 11:13,
13:19, 72:4,

72:15,
72:22.
attorney-client
20:18.
attorneys
22:20.
AUSA 2:8.
authority 17:7,
71:11.
authorized
75:8.
AV 25:11, 28:8,
28:9.
AV- 27:23.
AV-1 6:7, 6:10,
7:5, 25:21,
25:25, 26:4,
26:5, 26:7,
26:8, 26:11,
26:18, 26:19,
26:21, 26:23,
26:24, 48:3,
48:6, 48:9,
48:10, 48:15,
48:17, 48:22,
60:9.
AV-10 42:1.
AV-11 42:1.
AV-12 41:10,
42:1, 45:1,
45:2, 45:4,
45:5, 45:7,
45:8, 45:10,
45:11, 45:13,
59:7.
AV-13 41:10,
42:1.
AV-14 41:10,
42:1.
AV-15 35:19,
35:20, 35:22,
35:23, 36:1,
36:2, 36:3,
36:4, 36:5,
36:7, 36:8,
36:10, 36:12,
36:14, 36:15,
36:17, 36:18,
41:10,
42:1.

AV-16 41:11,
    42:1.
AV-17 6:23,
    7:7, 38:15,
    38:18, 38:25,
    39:2, 39:4,
    39:5, 39:8,
    39:10, 39:11,
    39:13, 39:15,
    39:16, 39:19,
    39:23, 40:2,
    41:11, 42:1,
    50:2, 50:3,
    50:4, 50:11,
    56:6, 61:4.
AV-18 41:11,
    42:2.
AV-19 41:11,
    42:2.
AV-2 41:10,
    41:25, 43:12,
    43:13, 43:15,
    43:17, 43:18,
    43:19, 43:21,
    43:24, 44:1,
    44:2, 44:4,
    44:5, 44:8,
    44:11, 44:14,
    44:16, 44:18,
    44:19, 44:23,
    44:25,
    58:22.
AV-20 41:13,
    41:16.
AV-21 41:16.
AV-22 41:14,
    46:6, 46:7,
    46:10, 46:11,
    46:12, 46:14,
    46:15, 46:17,
    46:18, 46:19,
    46:21,
    59:21.
AV-23 34:19,
    34:20, 34:24,
    34:25, 35:3,
    35:4, 35:5,
    35:6, 35:9,
    35:11, 35:12,
    35:15,

    41:18.
AV-24 41:18.
AV-25 41:11.
AV-26 25:22,
    33:17, 33:18,
    33:20, 33:22,
    33:24, 33:25,
    34:1, 34:2,
    34:3, 34:4,
    34:5, 34:9,
    34:11, 34:12,
    34:15,
    34:16.
AV-28 41:11.
AV-3 41:10,
    41:25, 45:14,
    45:15, 45:17,
    45:19, 45:20,
    45:21, 45:23,
    45:24, 46:1,
    46:2, 46:3,
    59:15.
AV-4 36:22,
    36:23, 36:25,
    37:4, 37:6,
    37:7, 37:13,
    37:14, 37:16,
    37:19, 37:22,
    37:23, 38:1,
    38:4, 38:5,
    38:7, 38:9,
    38:10, 38:11,
    41:10,
    41:25.
AV-5 25:21,
    32:13, 32:14,
    32:16, 32:18,
    32:20, 32:21,
    32:22, 32:25,
    33:2, 33:4,
    33:5, 33:6,
    33:8, 33:9,
    33:12, 33:13,
    41:10,
    41:25.
AV-6 25:21,
    30:21, 30:22,
    30:24, 31:1,
    31:2, 31:4,
    31:6, 31:7,

    31:11, 31:12,
    31:14, 31:15,
    31:17, 31:22,
    31:23, 32:1,
    32:3, 32:4,
    32:7, 32:8,
    32:9, 41:10,
    41:25.
AV-8 41:25,
    42:9, 42:10,
    42:12, 42:14,
    42:16, 42:17,
    42:19, 42:20,
    42:22, 42:23,
    43:10, 50:24,
    50:25, 51:1,
    51:17, 58:16,
    61:20.
AV-9 25:21,
    27:2, 27:3,
    27:6, 27:9,
    27:14, 27:15,
    27:17, 27:18,
    27:21, 27:25,
    28:2, 28:4,
    28:7, 28:12,
    28:14, 28:15,
    28:17, 28:20,
    28:21, 41:18,
    42:1,
    50:22.
available 3:20,
    67:21,
    78:24.
Avenue 1:43.
Avs 53:12.
aware 12:7.
awareness
    9:10.
away 78:17.
awful 47:3.
awoke 44:5.
.
.
< B >.
back 5:16,
    29:24, 30:2,
    31:18, 36:2,
    37:20, 39:12,
    43:23, 46:3,

    80:13, 80:14,
    80:19.
background
    4:12, 8:9,
    66:10,
    66:16.
bad 47:5.
balcony 37:9,
    37:12.
bar 37:2,
    37:4.
barred 6:19,
    6:21, 6:23,
    7:7.
base 68:11,
    69:4, 69:8,
    69:11.
based 13:7,
    60:11, 64:1,
    69:15, 72:7,
    74:20, 74:23,
    75:11, 76:2,
    76:21,
    77:25.
basic 4:11,
    8:4, 12:13.
basically 4:8,
    53:6.
basis 16:12,
    17:19.
bathroom 29:8,
    33:25,
    34:4.
battery 50:18,
    61:7.
became 54:17,
    59:8.
become 23:18,
    56:21,
    59:23.
bed 27:19,
    28:1, 29:9,
    29:21, 31:12,
    31:16, 31:25,
    32:21, 33:1,
    34:7, 36:9,
    37:14, 37:20,
    39:1, 39:7,
    42:21, 44:20,
    44:24, 45:12,

45:25, 46:16,
  47:4, 47:5.
bedroom 34:3.
began 26:3.
behalf 2:7,
  2:12, 13:3,
  14:4.
believe 21:5,
  46:23, 48:3,
  63:5, 72:1.
below 74:22.
benefits
  20:25.
Bernard 1:33.
best 66:23.
better 22:9,
  47:8, 79:8.
beverage
  29:6.
beverages 31:2,
  31:5, 34:22,
  42:16, 45:7,
  45:19,
  46:11.
beyond 4:21,
  14:15, 18:5,
  63:9.
binding
  74:12.
birth 8:12.
bit 20:18,
  79:7.
blue 41:3,
  41:15.
blunt 26:13.
bodies 57:13.
body 28:5,
  28:12, 30:3,
  30:5, 30:6,
  35:7, 36:11,
  39:11, 46:19,
  47:1, 55:10,
  58:19, 59:24,
  62:21.
BOP 80:12.
born 8:23.
bottle 26:4,
  37:8, 37:10,
  37:12.
bound 7:21.

boundaries
  15:14.
bra 37:22,
  37:23, 44:6,
  44:13,
  44:20.
breast 28:8,
  28:22, 31:22,
  31:23, 32:9,
  33:13, 35:8,
  35:16,
  46:17.
breasts 28:4,
  28:9, 30:1,
  31:14, 33:5,
  34:8, 34:16,
  37:23, 38:11,
  39:5, 40:21,
  42:22, 44:13,
  44:21, 45:13,
  46:4.
breathe 33:5.
Brian 2:3,
  2:12, 24:7.
BRIAN JEFFREY
  RAYMOND
  1:10.
briefly
  31:19.
bring 72:5.
bringing
  10:11.
broad 66:9.
brought 12:1,
  26:4, 36:1,
  41:6, 43:6,
  43:16, 44:3,
  57:19, 61:18,
  72:14, 72:21,
  73:5, 76:9,
  77:4.
bruise 36:11,
  47:4.
bruised 47:2.
bruises
  26:15.
bruising
  46:20.
Buckner 1:25,
  2:7.

bucks 27:12.
Bumble 27:4,
  29:2, 35:21,
  43:14,
  45:3.
burden 14:14.
Bureau 75:23.
buttocks 28:7,
  28:8, 28:22,
  33:13, 36:11,
  36:18, 40:20,
  46:4.
button 5:22.
.
.
< C >.
C. 1:11, 1:44,
  25:6, 26:25,
  30:20, 35:24,
  36:2, 37:1,
  37:2, 38:16,
  38:18, 38:20,
  40:5, 43:11,
  50:5, 50:6,
  50:11, 50:12,
  55:24,
  61:5.
calculation
  68:1, 71:1,
  71:6.
calculations
  66:22, 73:19,
  74:1.
California
  8:24, 43:16,
  72:22.
call 53:13,
  67:17, 67:24,
  68:13.
cameras
  40:12.
captures
  31:21.
card 41:4,
  41:8,
  41:17.
carefully
  11:20, 19:19,
  63:13,
  74:3.

carriage
  43:8.
carrier 43:8.
carries 65:7,
  65:15,
  65:22.
case 2:2, 7:11,
  7:19, 10:25,
  11:17, 11:21,
  12:10, 12:18,
  15:3, 15:20,
  16:1, 16:12,
  17:4, 18:3,
  24:6, 64:2,
  69:25, 70:19,
  73:16, 73:22,
  77:1, 78:25,
  80:22.
Category 70:6,
  70:10.
caused 30:16,
  32:9, 35:15,
  49:5, 49:8,
  60:18.
causes 40:20.
causing 30:4,
  31:19.
certain 5:7,
  6:20, 22:16,
  51:24, 54:17,
  55:10, 56:9,
  59:18, 59:25,
  62:20,
  64:18.
certify 81:5.
cetera 22:9,
  24:1.
chair 47:4.
challenge 15:6,
  15:10,
  76:16.
challenging
  76:12.
chance 27:12.
character
  51:16,
  61:22.
charge 67:11,
  67:12, 68:12,
  77:3.

charged 4:10,
    24:10, 40:3,
    50:15.
charges 4:22,
    6:4, 10:18,
    10:25, 71:25,
    72:3, 72:5,
    72:14, 72:21,
    73:4, 77:6.
cheek 26:16.
cheese 26:7,
    29:5, 32:18,
    33:22,
    42:15.
cheeses
    27:16.
Chicago 38:16,
    50:4, 50:11,
    55:24, 56:13,
    61:5.
chocolate
    32:19.
chocolates
    26:7.
choice 20:4.
choices
    73:15.
choose 13:4,
    18:7.
chose 14:5.
chosen 13:6.
Christine 1:39,
    81:5,
    81:10.
circumstance
    58:9.
circumstances
    74:22, 75:9,
    75:10.
citizens 12:24,
    13:6.
City 24:23,
    24:24, 25:1,
    25:4, 26:6,
    27:15, 29:4,
    30:25, 32:17,
    33:21, 42:13,
    43:5, 44:1,
    44:3, 44:19,
    45:5, 48:23,

49:22, 51:10,
    60:15,
    61:1.
civil 78:25.
claims 16:12.
clarification
    18:20.
clarify
    21:14.
clear 10:14,
    21:19.
Clearly
    21:14.
CLERK 2:2,
    4:3.
client 79:24.
close 27:7,
    29:25, 42:21,
    45:13,
    47:5.
close-up
    31:13.
close-ups 28:3,
    31:13,
    46:17.
closed 30:2,
    37:15,
    37:20.
clothes
    62:14.
clothing
    62:12.
cloud 41:23,
    42:5, 58:9.
Code 40:4,
    50:18,
    61:7.
coercion 6:18,
    6:20, 6:22,
    7:6, 38:14,
    50:1, 55:22,
    61:3, 65:14,
    69:7.
collateral
    16:25,
    79:18.
colleagues
    2:8.
Colleen
    Kollar-Kotell

y 1:18.
Columbia 1:42,
    12:24,
    76:10.
COLUMBIA 1:2.
combined
    69:15.
comes 16:22,
    68:19, 69:7,
    69:10, 69:13,
    76:20, 77:8,
    77:23.
comfortable
    21:17, 23:3,
    23:20,
    23:23.
coming 12:19,
    67:5.
commerce 40:2,
    43:9,
    50:10.
Commission
    67:8,
    67:18.
commit 6:19,
    6:21, 6:22,
    7:7, 64:20.
committed
    15:13, 54:17,
    58:20, 59:1,
    59:25, 61:6,
    77:2.
common 43:8.
communicating
    25:14, 43:22,
    48:12,
    53:8.
community
    64:18.
commuter
    69:12.
compatible
    26:13.
competency
    9:17.
complete
    78:20.
completely
    11:13, 32:25,
    46:15.

complicated
    16:9,
    77:12.
computer 3:5,
    41:20, 43:8,
    57:25.
computer-aided
    1:49.
concerning
    24:10.
concerns
    9:17.
concluded
    81:3.
conclusions
    70:25.
condition 17:6,
    60:11,
    66:18.
conditions
    9:11, 17:7,
    64:18,
    64:19.
conduct 4:24,
    16:14, 16:17,
    16:19, 16:23,
    25:13, 25:15,
    26:21, 28:18,
    30:12, 32:5,
    33:10, 34:13,
    35:13, 36:16,
    38:8, 39:17,
    40:3, 48:11,
    48:18, 49:17,
    53:7, 56:14,
    60:17, 60:24,
    61:23, 63:7,
    65:7, 66:15,
    67:11, 68:25,
    69:3, 72:6.
confer 19:13.
confirming
    23:1.
confront
    13:19.
Congress 63:21,
    67:8,
    76:25.
connecting
    51:12.

cons 11:5,
  12:4, 12:8,
  20:5, 20:7,
  76:11.
consciousness
  26:8, 27:17,
  27:18, 29:8,
  29:9, 31:2,
  31:6, 32:20,
  32:21, 34:2,
  34:6, 34:24,
  36:3, 36:4,
  37:14, 38:25,
  42:16, 43:18,
  44:5, 45:7,
  45:20, 45:22,
  46:11, 48:18,
  50:25, 55:1,
  56:4, 56:7.
consent 56:7.
consenting
  27:22, 29:17,
  31:8, 32:23,
  35:1, 36:6,
  37:17, 39:3,
  40:15, 42:18,
  44:9, 44:17,
  45:9, 45:22,
  46:13, 57:2,
  58:17,
  59:17.
consider 11:20,
  21:18, 23:15,
  64:15, 66:4,
  66:8, 67:10,
  67:15, 67:19,
  68:2, 68:6,
  69:17.
considered
  16:24,
  67:18.
considering
  75:3.
consistent
  26:12.
constitute
  24:9, 26:25,
  30:19, 40:5,
  43:10.
constitutional

4:13, 12:14,
  14:10,
  16:19.
constraints
  22:16.
consular
  25:3.
consult 2:21,
  5:20.
consulted
  72:4.
consuming
  79:15.
contact 6:12,
  6:13, 6:14,
  6:15, 6:16,
  6:17, 6:18,
  7:5, 25:20,
  26:23, 28:19,
  28:20, 30:14,
  30:15, 32:7,
  32:8, 33:12,
  34:14, 35:14,
  36:17, 38:9,
  39:18, 48:9,
  49:5, 49:7,
  49:19, 60:19,
  60:20.
containing
  29:7, 41:8.
content 51:15,
  61:22.
context 57:11,
  66:4.
continue 37:4,
  78:20,
  79:16.
continued
  33:25,
  37:3.
continuity
  79:7.
Contitution
  1:43.
control 26:21,
  28:18, 30:12,
  32:5, 33:10,
  34:13, 35:13,
  36:16, 38:8,
  39:17, 48:17,

49:17, 60:24,
  68:25.
conversations
  22:17,
  22:25.
converse
  37:3.
convicted
  14:16, 14:19,
  16:18.
conviction
  14:20, 16:11,
  17:18,
  17:21.
convictions
  70:8.
cookies 33:23,
  45:6.
cool 29:13.
cooperation
  67:20,
  76:3.
copies 3:13,
  4:5.
copy 3:8, 3:9,
  3:14, 10:17,
  24:14.
Corner 38:21,
  50:6.
Counsel 2:4,
  2:19, 5:6,
  10:23, 11:1,
  11:17, 12:22,
  13:3, 17:20,
  18:20, 19:3,
  19:8, 19:9,
  19:11, 19:24,
  21:1, 21:15,
  21:18, 21:23,
  21:24, 66:24,
  70:18.
counseling
  9:15, 9:22.
country 34:23,
  45:18, 46:9,
  58:3.
counts 4:16,
  18:5, 18:7,
  18:13, 47:18,
  51:19, 51:25,

55:21, 63:25,
  65:2, 69:15,
  69:16.
course 27:24,
  29:19,
  44:22.
courtroom
  12:25,
  13:8.
create 5:5,
  22:20.
created 27:23,
  29:18, 32:24,
  35:2, 36:7,
  37:18, 39:4,
  42:19, 45:10,
  45:23, 46:14,
  51:16.
credibility
  78:6.
crimes 63:21.
Criminal 1:5,
  2:2, 40:4,
  50:15, 66:16,
  70:6, 70:7,
  70:8, 70:10,
  74:7.
cross-examine
  13:20.
cuddling
  28:12.
current 19:8.
.
.
< D >.
dark 47:6.
date 8:12,
  12:5, 26:3,
  27:5, 27:6,
  29:3, 30:24,
  32:16, 33:20,
  35:22, 35:23,
  36:1, 36:25,
  37:1, 37:5,
  43:15, 44:2,
  45:4,
  45:17.
dates 24:18,
  42:12,
  52:9.

dating 26:1,
  27:4, 29:2,
  30:23, 32:15,
  33:19, 35:21,
  36:24, 42:11,
  43:14, 45:3,
  45:16,
  54:23.
day 27:19,
  29:10,
  79:21.
DC 1:30,
  1:37.
dealings
  9:19.
decent 29:11.
decide 7:18,
  70:22, 73:16,
  73:20.
decided 12:5,
  52:25, 71:11,
  76:15.
decision 5:20,
  14:9, 21:2,
  22:14, 22:25,
  23:2, 23:4.
decisions
  54:12,
  75:15.
decline 53:8.
declining
  25:13,
  48:12.
deduct 68:21.
deep 39:11.
defense 13:1,
  13:3, 13:25,
  63:3, 66:24,
  77:3, 77:8.
defenses 11:9,
  11:25,
  21:8.
definitely 5:8,
  27:11.
definition
  40:25, 57:11,
  61:13.
degrade 28:23,
  30:18, 32:11,
  33:15, 34:17,

35:17, 36:20,
  38:13, 39:21,
  40:22.
degree 8:16,
  8:18, 47:17,
  47:24.
delete 47:11,
  60:5, 68:18,
  70:1.
delivery
  10:8.
demonstrate
  24:11.
department
  66:14.
departures
  67:17, 68:2,
  71:13,
  74:11.
depict 28:3,
  29:21, 36:8,
  39:5,
  40:16.
depicted
  39:6.
depicting
  27:23, 29:18,
  41:9, 41:13,
  41:16, 41:18,
  41:25, 42:19,
  43:9, 45:10,
  45:23, 46:14,
  47:11, 55:8,
  60:6.
describe
  18:19.
described
  51:21,
  54:1.
describes 52:9,
  60:19.
desire 20:23,
  20:24, 28:24,
  30:18, 32:12,
  33:16, 34:18,
  35:18, 36:21,
  38:13, 39:22,
  40:23.
desires
  60:21.

detailed
  38:18.
determine 13:4,
  13:6.
determined
  17:8,
  17:12.
deterrence
  66:12.
device 31:18.
devices 41:2,
  41:23, 42:5,
  57:16,
  58:8.
diction
  24:16.
Diego 8:24.
difference
  10:9.
different
  18:22, 23:13,
  28:5, 44:24,
  56:24, 58:14,
  63:21, 69:16,
  69:17, 71:7,
  71:8, 76:23,
  78:7.
differently
  18:19.
difficult
  22:15.
dinner 38:23,
  44:4.
diplomatic
  25:3.
direct 16:25.
direction
  19:5.
disagree 52:2,
  52:4.
disagreeing
  52:24,
  53:17.
disagrees
  7:17.
discuss 10:22,
  11:17, 11:20,
  12:10, 20:5,
  21:4, 21:6,
  23:16, 24:1,

63:3, 66:17,
  67:3,
  70:17.
discussed
  10:25, 11:7,
  18:19, 18:22,
  20:7, 20:20,
  20:23, 21:25,
  24:2.
discussing
  21:1, 22:9.
discussion
  19:17, 52:12,
  52:16.
discussions
  10:24, 11:4,
  19:16, 20:15,
  76:11.
dismissed
  72:2.
dispute 3:18.
District 1:1,
  1:2, 1:19,
  1:41, 1:42,
  12:24, 72:5,
  72:22, 72:23,
  76:10.
disturbance
  9:14.
doctor 80:2,
  80:6.
document
  74:13.
documents
  2:20.
doing 10:22,
  22:3, 54:2,
  55:10, 57:13,
  60:20, 67:15,
  68:4.
done 47:17,
  55:21, 61:9,
  61:10, 77:1,
  79:15.
doubt 4:21,
  14:15,
  63:9.
down 5:22,
  16:22, 24:13,
  28:10, 37:19,

37:22, 38:1,
  39:9, 46:25,
  75:6, 76:7.
downward
  74:11.
drank 35:25.
drink 38:22,
  62:4.
drinks 27:5,
  44:4.
dropping 31:15,
  31:18.
drops 31:25.
drove 35:23,
  36:1.
Drug 25:7,
  25:8, 25:9,
  25:10, 25:16,
  25:18, 26:18,
  28:15, 30:9,
  32:2, 33:7,
  34:10, 35:10,
  36:13, 38:5,
  39:14, 40:9,
  48:15, 49:12,
  49:15, 50:22,
  53:4, 53:24,
  54:10, 56:20,
  60:22.
drugged 26:5.
During 2:16,
  3:15, 24:23,
  46:9, 52:19,
  55:8,
  68:25.
.
.
< E >.
E. 1:26,
  41:21.
earlier
  10:22.
early 10:11.
easier 24:14.
Eastern 72:4.
eat 38:19.
education 8:15,
  66:17.
effects 25:16,
  25:18.

effort 70:1.
efforts 42:8,
  80:25.
eight 37:18.
either 3:4,
  22:8, 30:4,
  48:10, 53:4,
  55:9, 56:19,
  56:22, 56:23,
  62:8, 70:25,
  72:20,
  74:12.
ejaculate
  46:5.
elaborate
  20:17.
elbow 26:15.
elect 74:17.
Element 48:5,
  48:10, 48:20,
  49:4, 49:9,
  50:2, 50:9,
  50:13.
elements 4:17,
  4:19, 4:21,
  4:24, 18:8,
  18:15, 47:15,
  47:17, 47:23,
  47:24, 48:3,
  48:4, 51:6,
  51:21, 51:22,
  60:8, 61:14,
  61:23, 63:7,
  63:10.
elsewhere 43:5,
  75:24,
  76:10.
email 80:12.
Embassy 24:23,
  25:2, 25:22,
  27:24, 52:11,
  52:20,
  60:16.
embassy-leased
  26:5, 27:14,
  29:4, 30:25,
  31:3, 32:17,
  33:21, 34:21,
  34:23, 42:13,
  45:5, 48:22,

49:21,
  51:10.
emotional
  9:13.
employee 24:20,
  25:22.
end 4:20, 5:6,
  5:13,
  12:15.
engage 25:15,
  40:3, 48:13,
  50:14,
  56:14.
engaged 26:22,
  28:19, 30:13,
  32:6, 33:12,
  34:14, 35:14,
  36:17, 38:9,
  39:18, 48:5,
  48:19, 49:4,
  49:18, 50:25,
  60:9,
  60:18.
engaging 54:12,
  61:5.
enhancements
  68:13.
enough 11:16,
  11:19, 12:9,
  29:12.
ensure 9:10.
enter 19:22,
  19:24, 20:3,
  77:18.
entered 5:14.
enticed 40:2,
  50:3,
  56:13.
enticement
  6:19, 6:21,
  7:6, 38:14,
  50:1, 55:22,
  61:3, 65:15,
  69:8.
entitled
  69:24.
entitlement
  6:21.
erect 28:13,
  30:3, 31:20,

31:21.
errors 15:2.
Especially
  47:6.
Esquire 1:25,
  1:26, 1:27,
  1:33.
established
  50:10.
estimate
  71:7.
estimated 70:2,
  70:12, 74:7,
  74:12, 74:19,
  74:23.
estimations
  74:4.
et 22:9,
  24:1.
evening 27:6,
  38:22,
  80:24.
event 71:16.
eventually
  43:21, 63:19,
  68:20.
everybody 78:3,
  80:18.
everything 4:2,
  5:3, 5:15,
  52:5, 53:9,
  67:18,
  70:3.
evidence 4:19,
  4:20, 11:8,
  11:24, 13:7,
  14:3, 14:5,
  14:7, 18:2,
  18:8, 21:7,
  23:19, 47:25,
  51:20, 60:18,
  61:4, 61:8,
  77:23.
evidently
  54:24.
exactly
  55:25.
examples
  42:8.
exceptions

17:9,
17:15.
excluding
77:25.
Excuse 50:24,
53:21, 55:20,
64:11.
executive
79:25.
exhaustion
25:17.
expected
67:14.
expecting
29:12.
explain
18:21.
explained
15:21.
explanation
68:3.
explicit 41:9,
41:13, 41:15,
41:17, 41:24,
47:11, 51:1,
60:5.
expose 44:13,
44:21,
44:22.
exposed 28:13,
39:5, 46:3,
46:5.
exposing 30:3,
39:9.
extant 71:2.
extent 11:2,
17:9.
extra 69:4.
extreme
25:17.
eyelid 28:3,
29:22, 35:5,
37:25, 39:8,
44:14, 44:25,
46:1.
eyelids 31:12,
33:2,
40:18.
eyes 37:20.
.

.
< F >.
face 31:17,
31:19.
facing 22:11.
fact 49:16,
53:24, 60:11,
75:11,
77:25.
factors 66:8,
66:10, 67:10,
74:21, 74:23,
75:4.
facts 18:5,
22:22, 24:8,
24:9, 51:3,
61:12,
70:25.
factually
52:18.
fair 13:4.
fall 16:14,
46:22.
falls 25:4,
48:24,
49:24.
false 6:2.
far 8:14,
70:4.
fast 24:13.
FCRR 1:39,
81:5.
federal 6:9,
6:20, 7:3.
feel 47:3.
feeling 47:7.
feels 47:1.
fell 34:4,
47:2.
felt 29:7,
33:24.
file 3:17.
filing 76:4.
final 5:11,
44:14.
Finally
51:14.
finances
66:18.
financial

64:12, 65:9,
65:17.
find 4:20,
18:14, 51:20,
60:8, 61:14,
61:23,
63:6.
finding 5:1,
5:13.
findings
15:2.
fine 4:7, 17:5,
47:19, 64:2,
64:10, 65:8,
65:16, 65:24,
67:6, 70:13,
70:15, 78:14,
79:14.
fines 64:3.
fingers 29:24,
40:19.
finished
79:9.
firm 5:19.
first 9:8,
42:14, 49:4,
50:2, 55:21,
78:25, 79:8,
80:12.
five 58:14,
64:13, 65:10,
65:18,
65:23.
flask 44:3.
flinches 29:23,
31:17.
floor 39:6.
focus 46:17,
47:13, 51:24,
51:25.
following 24:8,
64:19.
follows 42:9.
forced 14:6.
forcefully
28:9.
forearm
26:15.
foregoing
81:6.

foreign 34:23,
43:9, 45:18,
46:9,
50:10.
forfeiture
17:5.
form 7:22,
47:16, 53:12,
56:23, 62:3,
77:14.
forward 8:21,
10:15, 11:10,
12:19, 12:21,
13:13, 14:18,
22:4, 23:11,
23:20, 23:23,
71:3, 78:3.
four 29:18,
36:7, 55:8,
65:2, 68:14,
69:5.
frame 28:10,
77:4.
frames 76:25.
frank 80:2.
friction
26:12.
friend 27:7.
front 3:5,
10:19, 10:20,
16:6, 18:4,
39:8, 68:8.
fuck 27:13.
fuckable
29:13.
full 22:3,
22:4, 23:1,
23:2.
fully 10:25,
20:20, 21:1,
27:25, 28:1,
29:20, 31:11,
35:3, 36:8,
37:14, 42:20,
44:15, 62:8,
73:2.
.
< G >.
gain 64:12,

65:9,
65:17.
gave 20:2,
34:4, 38:17,
54:25, 55:24,
56:2, 62:3,
65:1,
68:23.
geared 23:1.
general 11:1.
generalized
26:14.
generally 10:8,
15:3, 52:3,
54:19,
58:3.
genitalia 32:9,
40:21.
genitals 28:4,
30:1, 31:14,
31:24, 39:20,
42:22, 44:13,
44:22, 46:4,
46:17.
gets 75:15.
getting 12:22,
20:18, 20:20,
27:11.
gin 29:7.
give 9:6,
12:16, 15:7,
15:21, 16:1,
16:10, 18:23,
23:8, 53:12,
66:15, 66:25,
68:2,
76:16.
given 21:9,
54:16, 58:15,
58:24, 59:8,
59:16, 59:23,
64:16,
64:17.
giving 4:14,
14:24, 15:1,
17:14,
54:9.
glass 37:3,
37:8.
glasses 37:10,

37:13.
grab 40:20.
grabbing
28:9.
grabs 33:4,
40:19.
gratify 28:24,
30:18, 32:12,
33:15, 34:18,
35:18, 36:20,
38:13, 39:22,
40:23.
gratifying
60:21.
grounds 14:25,
76:17,
76:23.
guess 22:15,
66:23,
80:5.
guideline
17:11, 17:13,
66:21, 68:4,
70:22, 71:11,
74:7, 74:12,
74:19.
guidelines 5:9,
66:7, 67:4,
67:7, 67:16,
67:22, 68:2,
70:18,
73:20.
guilt 13:7,
14:7, 14:9,
14:15.
guilty 4:14,
4:22, 4:25,
6:7, 7:4,
11:5, 12:4,
12:17, 14:13,
14:24, 15:1,
15:11, 15:12,
15:20, 15:25,
16:13, 18:6,
18:9, 18:13,
18:15, 19:21,
20:24, 21:2,
23:4, 23:11,
47:14, 52:1,
61:24, 62:1,

63:8, 65:2,
69:25,
71:24.
.
.
< H >.
hair 34:5.
half-year-old
78:16.
halfway
78:22.
ham 42:15.
hand 2:24,
28:2, 28:6,
28:7, 28:9,
28:10, 29:22,
29:24, 31:22,
31:23, 31:24,
35:8, 44:12,
44:14.
handed 4:3.
handy 3:20.
happen 4:9,
12:23, 43:20,
65:3.
happened 43:20,
47:7.
happy 3:15,
38:23.
harass 28:23,
30:17, 32:11,
33:15, 34:17,
35:17, 36:20,
38:12, 39:21,
40:22.
hard 3:3, 3:8,
3:9, 20:19,
26:13.
head 46:22,
46:25.
headed 19:5.
health 66:19.
hear 5:22,
18:24,
46:25.
held 7:23,
25:21, 34:5,
53:17.
help 14:21.
helpless 61:10,

61:12.
hereby 81:5.
herein 25:9.
hesitant
77:13.
hesitate
18:20.
high-level
25:22.
higher 16:22.
highest 8:15,
69:18.
History 66:17,
70:6, 70:7,
70:8, 70:10,
74:7.
hit 46:22.
Hold 14:8,
24:12, 37:25,
46:1,
79:25.
holding 35:4,
39:8.
home 27:6.
honest 22:13,
23:7.
Honor 2:6,
2:11, 3:8,
3:21, 4:2,
8:5, 8:8,
9:20, 19:4,
20:16, 21:13,
22:15, 47:20,
48:2, 49:3,
63:5, 71:15,
78:11, 79:3,
79:5, 80:11,
81:1.
Honorable
1:18.
hope 47:7.
Hopefully 3:4,
80:13.
hotel 44:3,
44:18, 44:20,
45:17, 45:18,
46:8.
hour 27:25,
38:23,
80:13.

hours 9:1,
  10:1, 10:5,
  29:19,
  55:9.
housing 26:6,
  27:15, 31:4,
  34:21, 34:23,
  48:23,
  50:6.
Howard 1:33,
  1:34, 2:11.
humiliate
  28:23, 30:17,
  32:11, 33:15,
  34:17, 35:17,
  36:20, 38:12,
  39:21,
  40:22.
husband 80:2.
.
.
< I >.
I. 74:7.
icloud 41:4,
  41:24, 43:1,
  47:12, 51:11,
  58:1, 60:6,
  61:17, 68:18,
  70:2.
idea 66:25,
  67:17.
identification
  6:8.
identifies
  3:12,
  41:12.
identify 2:4,
  26:1.
identities
  41:14, 41:16,
  41:19,
  42:2.
identity 27:3,
  27:8, 29:1,
  30:22, 32:14,
  33:18, 34:20,
  35:20, 36:23,
  38:15, 42:10,
  43:13, 45:2,
  45:15,

46:7.
Illinois
  72:23.
illness 9:13.
images 39:7,
  41:9, 41:13,
  41:15, 41:17,
  41:24.
impair 49:16.
impaired 25:12,
  26:20, 26:22,
  28:17, 28:18,
  30:11, 30:12,
  32:4, 32:5,
  33:9, 33:11,
  34:12, 34:13,
  35:12, 35:13,
  36:15, 36:16,
  38:7, 38:8,
  39:16, 39:17,
  48:17, 48:18,
  49:18, 54:11,
  60:23.
impartial
  13:5.
impeach 78:5.
important
  22:13, 53:2,
  64:22,
  66:6.
impose 71:11.
imposed
  64:21.
imprisonment
  17:5, 65:8.
in. 2:18,
  46:24.
incapable
  25:12, 25:13,
  27:22, 29:17,
  31:8, 32:23,
  35:1, 36:6,
  37:17, 39:3,
  40:15, 42:18,
  44:9, 44:17,
  45:9, 45:22,
  46:13, 48:10,
  48:12, 57:1,
  58:17,
  60:10.

incarceration
  73:11.
include 17:4,
  41:3.
included 4:18,
  18:5,
  24:18.
including
  16:12, 25:16,
  35:6, 36:11,
  38:19,
  39:11.
incorrect
  70:25.
incriminate
  14:6.
indicate 6:6,
  18:8, 71:17,
  71:21.
indicated 20:3,
  21:5, 21:23,
  37:5, 47:25,
  48:6, 48:8,
  61:20, 63:12,
  68:22,
  71:23.
indicates
  53:23, 57:17,
  73:13,
  77:4.
indicating
  43:24, 71:25,
  75:25, 76:4,
  78:8.
indication
  72:3.
indications
  75:15.
indictment
  4:11, 6:5,
  10:18.
individuals
  3:19, 6:6,
  61:25.
induced 40:2,
  50:3, 56:13,
  61:4.
ineffective
  17:20.
infer 14:9.

inflicted
  36:10, 39:10,
  46:19.
information
  19:18, 23:10,
  66:16, 70:11,
  77:19.
initial
  67:12.
initially
  58:1.
injuries 36:10,
  39:11, 46:19,
  54:5.
injury 26:12.
inner 30:5,
  30:16, 33:4,
  40:20,
  49:9.
innocence
  13:7.
innocent
  14:14.
inquire 19:6.
inquiry
  10:23.
inside 26:16,
  37:10.
insofar 16:10,
  16:20.
instance 58:15,
  58:16,
  64:25.
instances 58:3,
  62:10,
  62:11.
instruct
  14:8.
instructions
  13:8, 38:18,
  50:5,
  55:25.
intent 20:25,
  22:18, 28:23,
  30:17, 32:11,
  33:14, 34:17,
  35:17, 36:19,
  38:12, 39:21,
  40:22.
intention

60:20.
intentionally
    28:21, 30:15,
    32:8, 33:13,
    34:15, 35:15,
    36:18, 38:11,
    39:19, 42:25,
    49:8.
interactive
    41:20, 43:8,
    57:25,
    69:12.
interim 27:7.
International
    8:19.
internet 41:21,
    43:2,
    51:12.
interstate
    40:2, 43:9,
    50:9.
intimate
    61:13.
intimately
    23:18.
intoxicant
    25:7, 25:8,
    26:18, 30:9,
    32:2, 33:7,
    34:10, 35:10,
    36:13, 38:5,
    39:14, 40:10,
    48:16, 49:12,
    49:15, 50:22,
    53:4, 54:10,
    54:16, 54:25,
    56:3, 56:20,
    58:24, 59:8,
    59:16, 59:23,
    60:12, 60:23,
    62:4, 68:13,
    68:23,
    69:4.
intoxicants
    58:15,
    58:16.
intoxicate
    28:15.
introduction
    26:13.

investigation
    47:10, 60:4,
    70:1.
invited 34:20,
    36:25, 38:15,
    45:17,
    50:4.
involved 23:19,
    69:1.
involving
    6:13.
issue 9:17,
    10:12, 18:7,
    19:15, 21:19,
    22:6, 22:16,
    23:9, 52:13,
    52:15, 52:24,
    78:22.
issues 17:21,
    21:1, 21:14,
    21:25, 23:2,
    52:14, 66:18,
    66:19.
it. 27:13.
itself 5:10,
    63:19,
    71:1.
.
.
< J >.
jail 64:17,
    67:6.
Jay 10:24,
    12:20, 19:15,
    19:18, 20:7,
    21:3, 24:2.
Jeffrey 2:3,
    24:7.
job 66:17.
joined 2:7.
jointly 9:9.
Judge 1:19,
    67:10,
    68:1.
judges 67:9,
    80:1.
jumps 31:18.
jurisdiction
    15:7, 15:11,
    25:5, 41:7,

43:7, 48:21,
    48:25, 49:20,
    49:24, 51:7,
    51:9, 52:8,
    52:13, 60:14,
    61:1, 61:19,
    76:17.
jurisdictional
    15:14.
jury 12:17,
    12:23, 13:4,
    13:8, 13:11,
    14:8,
    24:15.
justice 68:17,
    69:6,
    69:10.
.
.
< K >.
Kate 2:8.
Katharine
    1:27.
KATZOFF 1:33,
    1:34, 2:12,
    8:7, 9:4,
    9:17, 11:2,
    11:14, 11:15,
    19:14, 19:19,
    20:14, 22:8,
    23:17, 23:18,
    52:13, 52:16,
    78:15.
keep 8:21,
    53:20.
kind 8:25,
    9:21, 15:2,
    75:22.
kinds 66:12,
    66:19.
Kingston 41:4,
    41:17.
knee 30:4.
knees 26:15,
    38:2.
knowing 21:19,
    61:20.
knowingly 5:14,
    25:8, 26:17,
    28:14, 30:8,

32:1, 33:6,
    34:9, 35:9,
    36:12, 38:4,
    39:13, 40:1,
    40:8, 41:20,
    43:7, 48:5,
    48:14, 49:4,
    49:14, 50:2,
    51:14, 53:4,
    60:9,
    60:18.
knowledge
    20:21, 26:19,
    27:21, 28:16,
    29:16, 30:10,
    31:7, 32:3,
    32:22, 33:8,
    34:11, 34:25,
    35:11, 36:5,
    36:14, 37:16,
    38:6, 39:2,
    39:15, 40:11,
    40:14, 42:17,
    44:8, 44:16,
    45:8, 45:21,
    46:12, 49:11,
    50:23, 54:11,
    56:21, 57:1,
    68:23.
known 24:10,
    26:1, 27:3,
    27:8, 29:1,
    30:22, 32:14,
    33:18, 34:20,
    34:23, 35:20,
    36:23, 38:16,
    41:12, 41:14,
    41:16, 41:19,
    42:2, 42:10,
    43:13, 45:2,
    45:15, 45:18,
    46:7, 46:9,
    61:11.
knows 29:13,
    80:18.
.
.
< L >.
laceration
    26:13,

26:15.
language 25:24,
    74:2.
laptop 41:3,
    41:4, 41:13,
    41:15.
laptops 41:7,
    41:23, 42:5,
    58:8.
Large 38:2,
    68:16, 69:5,
    69:9.
last 9:1, 10:1,
    10:5, 10:18,
    27:20, 29:11,
    46:24, 59:21,
    65:21.
late 80:24.
Later 3:18,
    16:21, 23:9,
    26:5, 27:6,
    72:20, 77:5,
    77:10, 78:3,
    79:21.
Law 1:34, 6:19,
    6:21, 6:23,
    7:7, 14:13,
    16:11,
    16:20.
lawful 17:13.
lawyer 5:20,
    13:14,
    14:20.
laying 36:8,
    46:25.
leaning 8:21.
learn 22:22.
learning 47:9,
    60:4.
leased 25:1,
    27:24.
least 19:20,
    27:20, 61:6,
    65:25.
leave 38:20,
    80:9.
leaving
    37:10.
led 26:5, 34:3,
    48:22.

left 20:3,
    20:11, 36:4,
    70:2.
legs 30:2,
    30:4, 34:4,
    35:7.
length 75:12.
less 64:13,
    65:10, 65:18,
    71:12.
letter 5:2,
    5:3, 7:24,
    15:17, 18:21,
    63:11, 63:19,
    66:7, 71:20,
    79:19.
level 8:15,
    68:11, 69:16,
    69:18, 69:19,
    70:3.
levels 69:18.
life 7:12,
    64:10, 64:13,
    65:11,
    65:18.
lifetime
    73:11.
lifts 31:15,
    44:24.
likely 66:25.
limbs 28:13,
    40:18.
limitations
    76:19,
    77:7.
limited 16:12,
    17:5.
line-by-line
    9:10.
list 57:20.
listed 50:17,
    62:2.
litigation
    75:23.
little 20:17,
    79:6.
located 34:23,
    41:21, 43:2,
    45:18, 46:9,
    51:12, 57:25,

58:4.
locked 65:1.
lol 46:25.
long 4:7,
    22:21,
    70:9.
longer 78:12.
look 2:20, 3:6,
    15:18, 16:4,
    21:25, 47:6,
    64:8, 69:7.
looked 70:8,
    74:3.
looking 51:6.
looks-wise
    29:12.
loss 64:12,
    65:9,
    65:17.
lost 26:8,
    27:17, 29:8,
    31:2, 31:6,
    32:20, 34:1,
    34:5, 34:24,
    36:3, 37:13,
    38:25, 42:16,
    43:17, 44:5,
    45:7, 45:20,
    46:11, 54:25,
    56:3.
lunch 38:19,
    80:3.
lying 28:1,
    28:11, 29:21,
    31:11, 32:21,
    33:1, 37:15,
    37:19, 42:21,
    43:19, 44:20,
    45:12, 45:25,
    46:16.
.
.
< M >.
Macbook 41:4,
    41:9.
machine 1:48.
maintain 74:17,
    75:2.
mall 26:3.
mandatory 64:9,

64:14, 65:7,
    65:11, 65:15,
    65:23, 66:2,
    67:23.
manipulate
    57:6.
manipulated
    35:7, 58:19,
    59:25,
    62:20.
manipulates
    40:18,
    44:25.
manipulating
    28:12, 42:23,
    55:10.
manipulations
    59:18.
manner 17:8.
maritime 24:15,
    25:4, 48:20,
    48:24, 49:24,
    51:8, 52:8,
    60:14,
    60:25.
marks 38:2.
Marston 10:23,
    12:20, 19:15,
    19:17, 20:6,
    21:3, 22:1,
    24:1.
Maryland 35:22,
    36:3,
    72:16.
mask 3:2.
Masters 8:16.
material 6:24,
    6:25, 7:1,
    7:2, 7:8,
    22:9, 40:7,
    50:20, 56:18,
    58:11, 61:15,
    61:16, 65:22,
    69:11,
    72:14.
materials 9:5,
    9:8, 9:9.
matter 40:25,
    41:8, 41:22,
    42:7, 42:9,

43:9, 51:2,
51:5, 51:16,
57:11, 61:20,
61:22,
81:7.
Maximum 17:10,
63:21, 64:10,
64:11, 65:8,
65:15, 65:23,
65:24,
75:9.
maximums 66:3,
67:25.
MAYER-DEMPSEY
1:26, 2:9,
21:13.
mean 19:17,
22:4,
23:12.
means 7:10,
16:10, 16:21,
22:5.
meat 26:7,
27:16, 29:5,
32:18,
45:6.
medical 79:5.
medication
9:1.
medications
9:22, 9:24.
medicine
10:12.
meet 36:25,
57:10.
meets 4:21,
18:8, 40:25,
47:23, 51:20,
61:12, 61:23,
63:7.
mental 9:13,
66:19.
Meredith 1:26,
2:8.
messaged
27:7.
met 25:25,
27:3, 27:5,
29:1, 29:3,
30:22, 30:24,

31:3, 32:14,
32:16, 33:18,
33:21, 35:19,
36:22, 42:10,
43:12, 43:15,
44:2, 45:1,
45:4, 45:14,
49:21, 53:24,
54:23.
metrorail
38:20.
Mexico 24:23,
24:24, 25:1,
25:4, 26:6,
27:15, 29:4,
30:25, 32:17,
33:21, 42:13,
42:14, 43:5,
43:25, 44:1,
44:3, 44:19,
45:5, 48:23,
49:22, 51:10,
52:20, 54:24,
60:15, 61:1,
61:16.
Mezcal 32:19.
microphone
5:21, 8:21.
military
25:3.
mind 10:14.
minimum 64:9,
65:7, 65:15,
65:23,
66:2.
minimums
66:2.
minutes 29:20,
55:9.
missed 43:24.
missions
25:3.
mix 10:7.
mobile 40:12,
41:22, 42:5,
43:1, 58:8.
moment 53:21,
67:3.
months 5:16,
70:12, 70:13,

74:8.
morning 10:7,
44:6,
78:25.
motion 76:5.
mounted 11:9.
mouth 29:23,
29:24, 33:3,
40:19.
move 8:20,
57:15, 63:12,
71:19, 71:20,
76:2, 79:1,
79:4,
80:22.
moved 41:1,
58:4.
moves 28:10,
31:23, 31:24,
40:17.
Moving 36:9,
39:10, 44:12,
46:18, 49:3,
59:14, 74:6,
74:16, 75:14,
76:7, 78:3.
MR. KATZOFF
2:11, 2:16,
3:8, 3:13,
3:20, 8:8,
9:19, 20:16,
20:19, 22:15,
22:25, 24:3,
63:5, 71:15,
78:11, 78:19,
79:4, 79:11,
79:21, 80:5,
80:11, 80:16,
80:20, 80:23,
81:1.
MS 21:13.
MS. BUCKNER
2:6, 3:24,
4:2, 19:4,
19:22, 24:6,
24:15, 24:18,
47:20, 48:2,
49:3, 79:3.
multiple
69:14.

myself 9:8,
62:15.
.
.
< N >.
N. 1:25.
named 25:9,
40:8,
40:24.
names 3:17.
narrow 14:24,
15:23, 67:17,
67:21.
native 25:24.
Nature 23:2,
25:12, 35:24,
48:11, 51:16,
53:7, 61:22,
64:1, 67:21,
68:12.
necessary
22:10.
need 3:25,
4:16, 4:20,
5:13, 5:21,
21:24, 23:7,
23:10, 23:14,
23:24, 53:20,
64:24, 73:12,
78:19, 80:2,
80:19.
needs 19:12,
21:17, 63:3,
66:11.
negotiation
23:14.
neither 74:9.
new 64:20,
64:21,
64:24.
next 2:19,
27:19, 28:11,
29:10, 31:25,
37:15, 43:19,
44:5, 47:4,
63:12.
nice 29:14.
night 27:20,
29:11.
nine 41:15.

No. 1:5,
52:24.
nobody 5:22,
73:3, 77:9.
None 9:20,
10:13,
75:21.
nor 74:9.
Northern
72:23.
Notably 30:1.
nothing 22:6,
47:7.
noticing
79:22.
November 6th
1:12.
nude 26:9,
27:18, 28:1,
28:11, 29:9,
29:20, 30:2,
31:11, 33:1,
35:3, 36:8,
39:5, 42:20,
43:18, 44:15,
45:11, 45:25,
46:15, 56:9,
59:10.
null 73:23.
number 68:16,
69:5, 69:9.
numbers
68:11.
NW 1:29, 1:35,
1:43.
.
.
< O >.
o'clock 78:15,
79:17.
oath 5:25,
10:23.
object 26:14,
70:24.
objection
71:3.
objections
71:1.
obligation
78:16.

obligations
7:22.
obscene 6:24,
6:25, 7:1,
7:2, 7:8,
40:7, 40:25,
41:8, 41:22,
42:7, 42:9,
43:9, 50:20,
51:2, 51:5,
56:18, 57:11,
58:10, 61:15,
61:19, 65:22,
69:11.
obstruct
70:1.
obstructing
69:10.
Obstruction
47:9, 68:17,
69:6,
69:13.
obviously
73:23, 74:11,
75:16.
occasion
39:24.
occasionally
5:5.
occur 73:4.
occurred 60:13,
60:25.
offenses 4:24,
18:9, 18:15,
24:10, 47:18,
47:25, 63:7,
63:10, 64:1,
64:4.
offer 11:17,
11:18, 12:10,
23:12.
offered 23:13,
37:6.
Office 1:28,
72:4, 72:15,
72:22.
Offices 1:34.
Official 1:40,
66:22,
81:11.

old 8:10.
Once 26:21,
28:18, 30:12,
32:5, 33:11,
34:13, 35:13,
36:16, 37:7,
38:8, 39:17,
48:18, 49:17,
62:19, 70:24,
76:1,
80:17.
ones 6:7,
47:14, 51:25,
57:17,
66:23.
open 35:5,
35:7, 37:12,
37:25, 39:8,
46:1.
opened 37:7.
opening 28:2,
29:22,
44:14.
opens 31:12,
33:2,
40:18.
opportunity
10:21, 23:18,
70:24,
72:12.
opposed
16:25.
order 13:4,
17:6, 18:14,
25:10.
ordered 37:2,
65:18,
66:1.
ordinarily
69:21,
78:4.
original 6:4.
others 4:18,
66:12.
otherwise 3:3,
18:22,
79:7.
outdoor 26:3.
outside 15:13,
28:6, 68:5,

77:4.
overseas
59:22.
own 13:23,
14:4, 14:7,
20:4, 28:24,
30:18, 31:21,
31:22, 32:9,
32:12, 33:15,
34:18, 35:8,
35:16, 35:18,
36:20, 38:13,
39:22, 40:23,
60:21, 60:24,
62:21.
.
.
< P >.
p.m. 81:3.
Page 15:18,
16:5, 48:6,
49:13, 49:21,
50:7, 50:17,
51:3, 53:23,
64:8, 67:3,
68:7, 70:11,
71:21, 71:24,
73:8, 74:6,
74:16, 75:14,
77:22,
79:18.
pages 73:25.
painful
36:11.
pants 44:13.
Paragraph
24:14, 48:7,
48:14, 48:22,
48:23, 49:7,
49:13, 49:21,
49:23, 50:7,
50:10, 50:17,
51:8, 51:9,
52:9, 52:24,
53:2, 53:9,
54:4, 54:8,
54:24, 55:1,
55:5, 55:7,
55:13, 55:20,
56:2, 57:17,

57:20, 57:24,
  59:4, 59:12,
  60:4.
paragraphs
  48:14, 51:3,
  51:24.
park 37:1.
part 5:15,
  5:17, 22:14,
  24:4, 60:16,
  60:20, 61:6,
  64:22, 72:8,
  79:15.
partially
  45:11, 45:25,
  56:9, 59:10,
  62:8.
participation
  25:14, 48:12,
  53:8.
particular
  4:16, 7:10,
  51:3, 51:25,
  63:2, 67:11,
  73:18.
particularly
  18:21.
parties 24:6,
  24:10,
  73:9.
parts 5:4,
  61:13.
passed 61:17.
passing 53:6.
pattern
  54:19.
Pause 53:22.
pay 70:14.
pecuniary
  64:12,
  65:9.
penalties 5:8,
  63:20,
  63:24.
pending 7:23.
penis 26:23,
  28:13, 28:20,
  30:3, 30:14,
  31:20, 31:21,
  32:7, 46:5,

48:8, 49:7.
people 74:9.
perform
  62:21.
performed
  62:20.
perhaps
  78:20.
perianal
  26:14.
period 52:19,
  64:17, 64:25,
  77:2.
perjury 6:1.
permission
  26:20, 28:16,
  30:10, 32:3,
  33:8, 34:11,
  35:11, 36:14,
  38:6, 39:15,
  40:11, 49:11,
  50:23, 54:11,
  56:21,
  68:24.
permitted
  16:11,
  16:20.
person 58:23.
personal 27:10,
  66:16.
personally
  25:17.
personnel 25:2,
  60:16.
perspective
  51:19.
persuaded 40:1,
  50:3, 55:23,
  56:13,
  61:4.
phone 43:1.
phones 40:12.
photo 28:5,
  30:1.
photograph
  33:3, 35:3,
  37:23, 37:24,
  39:7, 46:4.
photographed
  40:11,

46:3.
photos 44:14,
  51:9, 54:18,
  55:8, 60:5,
  62:13,
  62:24.
physical
  66:18.
physically
  25:13, 48:11,
  61:10,
  61:11.
pick 27:10,
  78:16,
  79:17.
picked 35:22.
place 41:7,
  43:7, 51:6,
  59:22,
  61:19.
placed 5:25,
  31:22,
  35:8.
places 38:19,
  40:19,
  56:8.
placing 30:4.
Plaintiff
  1:7.
planning
  76:4.
playing
  29:22.
plays 33:2.
Plea Hearing
  1:17.
plead 12:17,
  15:20, 15:25,
  20:24, 21:2,
  22:5, 23:4,
  23:11,
  23:16.
pleading 4:14,
  4:22, 4:25,
  6:7, 7:4,
  11:5, 12:4,
  14:23, 15:1,
  16:13, 18:6,
  18:9, 18:13,
  18:15, 19:21,

20:7, 47:14,
  52:1, 61:24,
  62:1, 63:8,
  65:2, 71:23,
  72:6.
pleadings
  3:4.
please 2:4,
  2:24.
point 2:22,
  3:19, 3:25,
  11:14, 16:18,
  16:21, 18:1,
  18:18, 19:23,
  20:1, 22:24,
  23:9, 37:11,
  52:23, 62:1,
  63:16, 64:15,
  70:11, 71:19,
  77:5, 77:6,
  77:10, 78:3,
  79:17.
points 67:12,
  67:13, 68:14,
  68:15, 68:17,
  68:19, 68:21,
  69:5, 69:8,
  69:10, 69:12,
  69:22,
  70:7.
policy 8:19.
portion
  17:14.
portions 5:7,
  5:10.
pose 56:22,
  57:6.
posed 28:4,
  44:23.
poses 30:5,
  40:18,
  46:2.
posing 36:9,
  39:10, 46:18,
  56:8.
posings
  56:24.
position
  53:7.
positioned

100

35:6.
positions 30:6,
  44:24.
possible
  80:12.
post 75:22.
potential
  73:4.
potentially
  69:22.
poured 37:8.
preparation
  19:16.
prepare 14:21,
  66:14.
prescribed
  9:23.
present 2:13,
  9:25, 13:23,
  14:3, 14:5,
  14:7.
presented
  11:25, 13:7,
  18:2.
presentence
  66:14,
  70:23.
Preserve
  35:24.
presumed
  14:13.
previously
  69:25.
prior 10:23,
  11:1, 21:1,
  21:15.
prison 65:24,
  79:24.
Prisons
  75:23.
privy 21:15.
probably 10:10,
  78:22,
  79:2.
probation
  66:14,
  74:13.
problem 5:21,
  5:23, 22:2.
problems 5:5.

procedure
  77:23.
proceed 24:5,
  47:21.
proceeding
  3:15, 21:17,
  23:3, 78:9.
Proceedings
  1:48, 81:3,
  81:7.
proceedings.
  53:22.
process 9:3,
  31:18.
produce 42:7,
  42:8.
produced
  1:48.
Production
  40:7, 40:24,
  56:18,
  57:10.
proffer 63:8.
proffered
  48:13, 51:3,
  51:7.
prominent
  36:11.
property
  61:1.
proposed 8:2,
  75:18, 75:20,
  76:22.
proposing
  80:4.
pros 11:5,
  12:3, 12:7,
  20:5, 20:7,
  76:11.
prosecute
  77:1.
prosecuted
  6:1.
prove 14:14.
provide 13:9.
provided 3:13,
  3:23, 19:18,
  50:5, 52:11,
  52:20, 60:12,
  72:19.

psychotropic
  9:22.
pubic 28:10,
  38:1, 39:9.
pulled 37:21,
  37:22, 37:24,
  39:9, 47:2.
pulls 29:24,
  38:1.
punishment
  66:11.
purple 41:3,
  41:12.
purpose 50:13,
  61:5.
pursuant 25:5,
  75:3.
push 5:22,
  80:13.
pushed 44:20.
put 5:15,
  58:1.
puts 7:22.
.
.
< Q >.
question 9:16,
  19:25, 22:12,
  46:22.
questions 4:9,
  4:13, 5:11,
  6:1, 8:10,
  12:25, 13:2,
  49:2, 63:15,
  71:20.
quick 80:7.
quickly 29:24,
  80:18.
quite 78:17.
.
.
< R >.
Raise 2:24,
  17:20, 52:25,
  76:15.
raising 52:15,
  77:7.
range 7:11,
  7:14, 7:16,
  7:20, 8:2,

17:12, 17:13,
  67:5, 67:6,
  67:14, 68:4,
  70:12, 70:13,
  72:9, 72:11,
  73:9, 73:18,
  74:8, 74:12,
  74:20, 74:23,
  75:17, 75:18,
  75:20, 76:22,
  78:1, 78:2.
rather 23:8,
  79:11,
  79:23.
Raymond 2:3,
  2:12, 2:15,
  2:18, 9:19,
  19:7, 19:10,
  19:25, 20:6,
  20:20, 21:14,
  21:16, 22:18,
  23:6, 24:7,
  51:23.
reached 43:23,
  46:21.
read 4:15, 9:5,
  9:8, 63:12.
ready 10:15.
really 9:16,
  47:1, 47:5.
reason 10:4,
  11:20.
reasonable
  4:21, 14:15,
  63:9,
  74:20.
reasons
  77:10.
receive 10:6,
  10:10.
received 9:12,
  9:15,
  10:17.
recommendation
  66:20.
recommendations
  7:25, 75:16,
  75:21.
record 2:5,
  3:3, 4:15,

5:15, 19:23,
21:20, 31:19,
81:7.
recorded 1:48,
40:12.
recording 27:2,
28:25, 31:18,
31:20, 31:22,
32:13, 33:17,
34:19, 35:19,
36:22, 38:14,
42:9, 43:12,
45:1, 45:14,
46:6,
55:22.
recordings
30:21,
58:14.
recovered 41:9,
41:13, 41:15,
41:18,
41:25.
red 37:8,
38:2.
redness
26:14.
reduce 65:1,
76:2.
reduced 64:23,
69:21.
referring
3:5.
refilled
37:12.
refine 78:13.
regained 26:8,
27:18, 29:9,
32:20, 34:2,
34:6, 36:4,
37:14, 38:25,
43:18,
54:1.
regard 22:16.
Regarding
11:15, 17:21,
19:8, 19:11,
19:24, 19:25,
50:1, 51:8,
51:16.
region 28:10,

38:2.
regular 64:3,
73:17.
regularly
10:2.
rehabilitation
66:10.
reinstate
77:6.
reject 73:15,
74:17, 75:1,
75:6,
76:21.
rejected 77:8,
78:2.
relate 51:25,
76:23.
related 58:11,
68:12.
relates 6:10,
6:23, 7:7,
19:15, 54:23,
68:17,
71:18.
relating 7:5,
7:25, 20:15,
58:9, 60:9,
66:16,
67:10.
relation
68:25.
release 7:12,
17:7, 17:8,
64:12, 64:16,
64:20, 65:3,
65:10, 65:17,
65:25,
73:12.
reliable
10:8.
remain 2:16,
2:19, 7:23.
remained
37:2.
remember 46:23,
46:24.
removed 44:22,
62:15.
render 25:11,
60:12,

62:5.
rendered 26:18,
28:14, 30:8,
32:1, 33:6,
34:9, 35:9,
36:12, 38:4,
39:13, 40:8,
48:15, 49:14,
53:13, 54:9,
56:19,
68:24.
rendering
49:10, 50:23,
50:25,
60:22.
renders
58:24.
replied 47:3.
report 66:15,
70:23.
Reported
1:39.
Reporter 1:40,
81:11.
reposed
25:23.
represent
12:22.
representation
20:23.
represented
13:14.
representing
12:21.
represents
42:6.
request 5:7,
19:10, 70:14,
72:12.
requested
73:10.
require
13:24.
required 5:4.
requires
68:1.
reschedule
79:12.
reserved
70:14.

reserving
74:21.
resided
24:24.
residence 25:1,
25:4, 52:11,
52:20.
residing
52:10.
resolve 71:3.
responsibility
68:21,
69:23.
rest 52:1.
restitution
17:6, 64:14,
65:11, 65:19,
66:1.
restroom
37:11.
result 26:11,
36:9, 39:9,
46:18,
54:5.
resulted
53:6.
resulting
46:19.
resuming
27:5.
retain 17:19.
returned 37:11,
38:24.
returning
27:6.
reveal 38:1.
review 9:7.
revocation
65:3.
revoked
64:21.
rights 4:13,
12:14, 14:24,
15:21, 16:1,
16:5,
77:16.
risk 20:25.
room 44:18,
46:8.
RPR 1:39,

81:5.
Rule 7:9, 66:4,
    71:18,
    75:25.
rules 5:4,
    16:22,
    77:23.
Run 35:24,
    77:7.
rush 11:21,
    22:2, 23:7.
.
.
< S >.
S. 1:28, 52:21,
    60:15, 60:16,
    61:1, 72:4,
    72:15,
    72:21.
safekeeping
    41:3,
    57:16.
salvaged
    27:20.
San 8:24.
sat 32:21.
satisfied
    11:13, 19:7,
    19:11, 20:25,
    24:5.
Saturday
    46:23.
schedule
    79:24.
scheme 42:6,
    68:5.
schemes
    68:22.
school 8:15.
scope 16:15.
Scott 35:24.
scratches
    39:11.
SD 41:4,
    41:17.
seal 3:17.
seated 2:16,
    2:19.
second 15:17,
    24:12, 34:1,

49:9,
    77:17.
Section 16:5,
    25:6, 40:6,
    43:11.
Sections 26:25,
    30:20.
seek 74:22.
seems 20:1.
seen 38:2,
    39:7.
send 27:9.
sense 9:6.
sent 55:5.
sentenced 7:19,
    73:17.
sentences
    63:21,
    76:1.
Sentencing 5:9,
    7:11, 7:24,
    8:1, 8:2,
    66:7, 66:8,
    66:21, 67:4,
    67:9, 67:16,
    67:18, 67:22,
    68:3, 68:4,
    70:12, 72:1,
    73:2, 73:9,
    73:19, 76:22,
    78:1, 78:2,
    80:1, 80:7.
separate 19:25,
    42:6, 58:9.
series 35:5.
serious 47:6.
seriousness
    66:11.
serve 64:24.
served 26:4,
    26:6, 27:15,
    27:17, 29:5,
    31:1, 31:5,
    32:18, 33:22,
    34:22, 42:15,
    43:17, 44:4,
    45:6, 45:19,
    46:10,
    64:23.
server 41:21,

43:2,
    61:18.
servers 51:12,
    58:4.
service 41:21,
    43:8, 57:25,
    69:12.
services 11:13,
    19:8,
    57:25.
serving
    33:25.
session 80:1.
set 4:10,
    10:18, 12:18,
    16:2, 17:7,
    28:5, 53:5,
    59:3, 63:21,
    66:9, 66:15,
    67:8, 72:9,
    76:25, 80:20,
    80:21.
sets 7:24,
    31:10, 31:12,
    31:13, 58:13,
    68:5.
seven 44:18,
    46:14,
    59:21.
several 29:25,
    30:6, 31:16,
    34:22, 36:10,
    37:21, 38:3,
    39:10, 42:12,
    44:23, 46:16,
    46:19,
    50:24.
severe 71:12.
sex. 27:11.
sexually 26:9,
    26:24, 30:19,
    51:1, 55:10,
    55:18, 56:24,
    61:9.
shirt 37:22,
    37:24.
shopping
    26:3.
shorthand
    1:48.

Shortly 14:25,
    34:24, 36:3,
    37:13,
    44:4.
shorts 38:1.
shot 46:24.
show 3:15,
    27:25, 28:2,
    29:20, 42:20,
    42:21, 44:11,
    44:12, 44:14,
    45:11, 45:24,
    46:15.
showing 37:9,
    59:10.
shows 28:6,
    28:7, 28:9,
    53:3.
sick 29:7,
    33:24.
side 25:16,
    25:18, 30:4,
    47:1.
sides 13:5.
sign 4:1.
signatures
    3:15.
signed 3:11,
    3:13, 3:14,
    4:2, 20:22,
    22:18,
    48:5.
similar 26:19,
    28:15, 30:9,
    32:2, 33:7,
    34:10, 35:10,
    36:13, 38:5,
    39:14, 39:23,
    40:10, 49:12,
    49:15,
    50:22.
Similarly
    31:3.
simply 52:1.
sir 8:10.
situated
    58:2.
situation
    22:20.
six 31:9, 39:4,

56:7.
slash 47:2.
slightly
  71:7.
somebody 22:8,
  59:16.
someone 22:1,
  22:7, 23:17,
  23:25,
  55:23.
somewhat
  16:9.
somewhere
  7:15.
Soon 26:7,
  27:17, 29:8,
  31:2, 31:6,
  32:19, 34:1,
  42:16, 43:17,
  45:7, 45:19,
  46:11.
sore 47:1.
sorry 80:9.
sort 7:22,
  10:22, 47:17,
  53:5, 54:10,
  56:3, 56:20,
  68:5, 76:3.
Southern
  72:22.
spaces 41:2,
  57:16.
Spanish
  25:24.
speaking
  43:24.
Special 24:15,
  25:4, 25:23,
  48:20, 48:24,
  49:24, 51:8,
  60:13, 60:25,
  63:25.
specific 7:20,
  55:14, 55:15,
  58:10, 60:19,
  64:2, 68:3.
specifically
  4:19,
  18:12.
spend 22:7,

23:25.
spoke 25:24,
  71:13.
spot 47:5.
spread 35:7.
stages 40:17,
  44:12, 57:5,
  58:19, 58:25,
  59:17,
  59:24.
stand 2:18,
  2:22, 78:6.
stand-by
  19:8.
standard
  61:13.
start 8:10,
  19:2, 24:14,
  52:3, 52:7,
  63:19,
  67:12.
starting 2:5,
  67:3.
starts 31:22,
  69:3.
state 18:2.
stated 53:9.
statement 3:9,
  3:12, 4:15,
  6:2, 18:4,
  18:12, 19:2,
  19:5, 20:21,
  22:19, 24:19,
  25:9, 40:9,
  40:24, 48:7,
  50:7,
  79:15.
statements
  78:4, 78:8.
States 1:1,
  1:5, 1:19,
  1:41, 2:2,
  2:7, 24:7,
  24:19, 24:23,
  24:25, 25:1,
  25:3, 25:5,
  41:6, 41:22,
  43:3, 43:6,
  48:21, 48:25,
  49:25, 51:7,

51:13, 57:12,
  57:20, 58:1,
  58:5, 60:14,
  61:18,
  61:19.
stating 27:9,
  46:22.
statute 6:10,
  6:20, 16:13,
  16:15, 16:16,
  16:17, 16:18,
  16:20, 16:22,
  16:24, 66:9,
  74:23, 76:19,
  77:7.
statutes 7:3.
statutory 5:8,
  6:6, 17:10,
  63:20, 63:24,
  66:3, 67:25,
  74:21,
  75:9.
stayed 46:8.
stenographic
  81:6.
stipulate
  24:8.
stomach 36:9,
  46:2.
stopped
  43:21.
storage 41:2,
  41:8, 41:23,
  42:6, 57:16,
  58:9.
straddles
  30:3.
strategies
  21:6,
  23:25.
strategy
  21:9.
strawberries
  27:16, 29:6,
  32:19,
  33:23.
Street 1:29,
  1:35.
strictly
  47:14.

struggles
  33:5.
study 8:17.
stuff 78:23.
subject 41:7,
  43:7, 51:6,
  61:19.
submitted
  24:11.
subpoena
  13:24.
subsequently
  46:21.
substance 25:7,
  25:8, 26:19,
  28:15, 30:10,
  32:2, 33:8,
  34:11, 35:10,
  36:13, 38:5,
  39:14, 40:10,
  49:12, 49:16,
  50:22, 53:5,
  53:13, 53:25,
  54:10, 54:16,
  56:3, 56:20,
  58:24, 60:12,
  62:4,
  66:18.
substantial
  67:20.
substantially
  25:11, 26:20,
  28:17, 30:11,
  32:4, 33:9,
  34:12, 35:12,
  36:15, 38:7,
  39:16, 48:16,
  49:16, 49:18,
  60:23.
subtract
  67:13.
Success 27:20,
  29:11.
suffered 26:12,
  54:5.
suggested
  21:9.
suggesting
  43:25.
Suite 1:36.

summary 7:22,
   47:16,
   77:13.
Supervised
   7:12, 17:6,
   64:12, 64:16,
   64:18, 64:20,
   65:3, 65:10,
   65:17, 65:24,
   73:12.
support
   61:12.
suppose
   27:12.
supposed
   67:19.
swear 2:23.
sworn 2:18.
sworn. 2:25.
system 73:20.
.
.
< T >.
T. 1:39,
   81:10.
tack 12:6.
talked 74:21,
   76:8.
talks 54:4,
   55:7, 56:17,
   68:10, 70:11,
   73:8,
   77:22.
taste 31:2,
   31:5.
TBD 29:14.
ten 32:24,
   59:9, 65:8.
tentatively
   80:20.
tequila 27:17,
   29:6,
   43:17.
term 17:5,
   17:6, 64:12,
   65:10, 65:17,
   65:24.
territorial
   24:15, 25:5,
   48:20, 48:24,

49:24, 51:8,
   52:8, 60:14,
   60:25.
testify 13:25,
   14:3, 14:5.
text 55:4.
texted 27:19,
   29:10.
THE CLERK 2:24,
   4:5.
thereafter
   37:13,
   44:5.
thereof 41:7,
   43:7.
they'll
   66:15.
They've 18:5,
   68:22,
   72:5.
thigh 33:4,
   40:20.
thighs 30:5,
   30:16,
   49:9.
though 4:18.
three 45:23,
   59:15, 65:25,
   68:21,
   69:22.
three-quarters
   79:2, 79:9.
Throughout
   26:14, 28:5,
   35:5.
thumb 37:25,
   46:1.
tie 4:16,
   6:6.
tightly 30:2.
Tinder 26:2,
   30:23, 32:15,
   33:19, 36:24,
   42:11,
   45:16.
today 10:10,
   21:17, 23:21,
   23:23, 46:25,
   78:4, 78:7.
together 13:1,

46:8,
   53:24.
tomorrow 78:23,
   79:20,
   79:22.
tongue 33:3.
tonight
   27:10.
top 26:9,
   71:23.
torso 31:19.
total 69:16.
totally
   60:13.
touch 30:5,
   30:16, 32:9,
   35:16, 40:20,
   49:9.
touched 28:21,
   33:13, 34:15,
   36:18, 38:11,
   39:19.
touches 33:4,
   40:19.
touching 28:8,
   34:7.
tour 38:19.
towards 23:1.
trance 46:25.
Transcript
   1:17, 1:48,
   81:6.
transcription
   1:49.
transferring
   61:21.
transport
   41:22,
   42:7.
transportation
   6:24, 6:25,
   7:1, 7:2,
   7:8, 40:7,
   50:20, 51:5,
   56:18, 61:15,
   65:22,
   69:11.
transported
   42:25,
   51:11.

transporting
   58:10.
travel 6:19,
   6:21, 6:22,
   7:6, 38:16,
   40:2, 50:5,
   50:9, 50:13,
   56:13, 61:3,
   61:4.
traveled 44:1,
   46:7,
   50:11.
treatment
   9:13.
Trial 2:8,
   11:5, 11:10,
   11:19, 11:25,
   12:4, 12:5,
   12:18, 12:20,
   12:21, 13:11,
   13:14, 13:15,
   13:18, 14:3,
   14:16, 14:19,
   15:2, 15:22,
   16:1, 18:3,
   19:17, 20:5,
   20:8, 20:23,
   21:7, 21:10,
   21:25, 22:4,
   22:8, 22:11,
   23:10, 23:19,
   23:25,
   77:16.
trip 46:10,
   47:4.
true 24:8,
   26:1, 27:3,
   27:8, 29:1,
   30:22, 32:14,
   33:18, 34:20,
   35:20, 36:23,
   38:15, 41:11,
   41:14, 41:16,
   41:18, 42:2,
   42:10, 43:13,
   45:2, 45:15,
   46:7.
trust 25:23.
truthfully
   6:1.

try 67:8.
trying 68:18,
  77:13, 79:24,
  80:3.
turn 71:6.
turned 35:6.
twice 65:9.
tying 4:19,
  47:15.
type 9:13.
types 9:24.
Tyson 50:6.
Tysons 38:21.
.

< U >.
Uber 27:9.
ultimate 5:1.
Ultimately 9:4,
  13:5.
unable 10:6,
  60:10,
  60:24.
unanimous
  13:10.
unavailable
  37:5.
unconsciousness
  54:1,
  54:17.
unconstitutiona
  l 16:14,
  16:16,
  16:23.
undercut
  78:6.
understanding
  8:3, 9:10,
  19:18, 20:24,
  22:4, 22:5,
  22:10, 23:1,
  23:2, 52:12,
  69:23, 70:15,
  72:16, 72:23,
  74:24, 75:4,
  76:10, 76:14,
  77:19.
understood
  75:10.
undertook

20:23.
underwear 39:6,
  39:9, 44:6,
  44:21.
undress 40:17,
  44:12, 56:22,
  57:5, 57:12,
  58:19, 58:25,
  59:17, 59:24,
  62:8.
undressed
  62:14.
uniformity
  67:9.
United 1:1,
  1:5, 1:19,
  1:41, 2:2,
  2:7, 24:6,
  24:19, 24:22,
  24:25, 25:1,
  25:3, 25:5,
  41:6, 41:22,
  43:2, 43:6,
  48:21, 48:25,
  49:25, 51:7,
  51:12, 57:20,
  58:1, 58:5,
  60:14,
  61:18.
units 69:17.
unlawful 16:17,
  16:19, 16:23,
  17:11,
  63:23.
unless 14:12,
  27:10,
  80:21.
until 14:12,
  14:15, 24:21,
  70:22.
unwillingness
  25:14,
  48:13.
upper 38:1.
ups 42:21,
  45:13.
upward 74:11.
uses 37:25,
  46:1.
using 3:16,

40:12, 43:2,
  51:11.
.
.
< V >.
vacated 76:20,
  76:22, 77:5,
  77:9.
vaginal
  26:12.
variance 67:24,
  68:4.
various 7:24,
  31:1, 31:5,
  40:17, 44:11,
  56:8, 57:5,
  57:12, 57:17,
  57:21, 58:4,
  58:13, 58:19,
  58:25, 59:11,
  59:17, 59:24,
  75:20,
  77:22.
venue 52:13,
  52:15, 76:8,
  76:9,
  76:17.
verdict 13:9.
versus 2:3,
  20:5, 20:8,
  20:24,
  22:11.
victim 25:9,
  25:11, 40:23,
  42:4, 69:5,
  69:9.
victims 4:17,
  25:19, 25:24,
  40:8, 40:10,
  40:12, 40:14,
  47:11, 53:5,
  54:17, 54:18,
  56:19, 57:21,
  58:7, 58:10,
  58:14, 60:6,
  64:14, 65:12,
  68:15, 68:16,
  69:6, 69:9.
video 28:6,
  28:7, 28:8,

28:11, 29:23,
  31:17, 31:19,
  31:20, 31:23,
  33:4, 37:25,
  42:19, 42:22,
  44:10, 44:11,
  58:18,
  58:23.
view 47:16.
viewed 16:17,
  16:18,
  16:19.
violate
  64:19.
violation 6:9,
  6:20, 7:3,
  26:25, 30:20,
  40:5, 43:10,
  50:18, 61:7,
  64:9.
Virginia 35:24,
  37:6, 37:7,
  38:21, 38:24,
  40:4, 50:6,
  50:12, 50:18,
  56:14, 61:7,
  72:5, 72:6.
virtually
  9:9.
visible 37:23,
  46:5.
visit 38:17,
  43:25,
  55:24.
voice 53:20.
void 73:23.
voluntarily
  5:14.
voluntariness
  5:12.
vomited 29:7,
  32:22, 33:24,
  34:1, 34:5.
vomiting
  25:17.
vs 1:8.
vulnerable
  68:15, 68:16,
  69:5, 69:6,
  69:9.

vulva 26:24,
  28:21, 30:15,
  32:8, 48:9,
  49:8.
.
.
< W >.
Wagner 1:27,
  2:8.
waiting
  46:25.
waive 16:10,
  17:3, 17:18,
  52:15,
  52:25.
waiver 16:10,
  16:20.
waivers 76:8.
waiving 63:4.
walked 37:2,
  37:9.
wanted 3:18,
  5:18, 12:6,
  14:4, 19:6,
  37:4, 77:6.
Washington
  1:11, 1:30,
  1:37, 1:44,
  35:24, 36:2,
  37:1, 38:18,
  50:11,
  50:12.
ways 28:5,
  76:15,
  78:17.
wear 39:1.
wearing 39:1,
  39:6, 44:6.
Wednesday
  12:19,
  23:12.
Wednesday.
  27:20.
weird 46:22.
whatever 11:9,
  24:1, 47:15,
  53:25, 54:25,
  62:3, 67:12,
  69:18,
  75:15.

whereby
  22:20.
wherein
  50:11.
wherever
  58:2.
whether 11:18,
  12:10, 12:14,
  18:11, 19:11,
  19:12, 19:15,
  19:22, 19:24,
  20:2, 20:11,
  21:16, 21:17,
  23:15, 52:2,
  52:14, 53:3,
  54:9, 76:9,
  77:18.
whole 8:20,
  73:20.
whom 25:22.
will 3:5, 4:12,
  4:14, 5:8,
  6:6, 7:15,
  12:20, 18:6,
  18:7, 24:14,
  27:13, 29:14,
  52:1, 61:25,
  63:19, 64:14,
  64:22, 64:24,
  66:14, 66:17,
  66:19, 66:21,
  70:23, 71:2,
  71:3, 73:4,
  73:5, 73:14,
  75:3.
willing 12:16,
  15:7,
  52:18.
wine 26:4,
  26:6, 27:16,
  32:19, 33:23,
  35:25, 37:2,
  37:3, 37:8,
  37:10, 37:12,
  43:16.
wish 2:21.
wit 40:4.
withdraw 7:18,
  7:19, 73:16,
  73:21, 73:22,

74:18, 75:2,
  75:7, 75:8,
  75:11.
withdrawal
  76:21.
withdrawn 72:7,
  72:13, 72:20,
  73:3, 74:10,
  77:9, 77:24,
  77:25,
  78:4.
withdraws
  7:21.
withdrew 22:21,
  69:25.
within 7:14,
  7:15, 9:1,
  16:15, 25:4,
  48:24, 67:4,
  68:3, 68:5,
  74:19, 75:17,
  75:19, 76:9,
  77:1.
withstanding
  17:17.
witness-1 27:8,
  27:19,
  29:11.
witnessed
  25:18.
witnesses
  13:20,
  13:23.
women 40:16,
  40:20,
  57:5.
wondering
  47:2.
words 13:24,
  15:12,
  73:1.
work 44:1,
  80:9.
worked 13:1,
  24:22, 29:14,
  52:19.
working
  52:10.
written 52:5,
  63:11.

.
.
< Y >.
year 65:25.
years 7:12,
  64:13, 65:8,
  65:10, 65:16,
  65:18, 65:23,
  72:10,
  73:11.
yesterday
  10:7.
yourself 2:4,
  9:5, 14:7,
  53:17.